UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of themselves
and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.

_____/

AUG 2 1 2000

CLERK, USDC / SDFL / FTL

## PLAINTIFFS' MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS, AS AUTHORIZED BY THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(b), AND INCORPORATED MEMORANDUM OF LAW

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, by and through their undersigned

counsel, and, pursuant to Local General Rule 7.1.A and 29 U.S.C. § 216(b), hereby file

their Motion to Allow Notification to Potential Class Members, as Authorized by the Fair

Labor Standards Act, 29 U.S.C. §216(b), and Incorporated Memorandum of Law, and as

grounds therefor show as follows:

1.    On or about January 31, 2000, Plaintiffs ROXANNA ESCUDERO AND

KIMBERLY DRAKE caused to be filed their Complaint and Demand for Jury Trial, on



behalf of themselves and all others similarly situated, seeking unpaid overtime compensation, liquidated damages, and other relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA").

2.    The instant case is a companion action to the lawsuit styled *Beverly Levine, et. al., on behalf of themselves and all others similarly situated, v. NationsBank, N.A.*, Case No.: 98-6306 CIV-DIMITROULEAS.

3.    As the Court is aware, in *Levine,* current and former Consumer Banker ("CB") II, III, and IV, sought overtime compensation pursuant to the FLSA.[1]  More particularly, the *Levine* Plaintiffs alleged that Defendant wilfully violated the FLSA by misclassifying the CB II, III, and IV as exempt from the overtime provisions of the FLSA.

4.    It is undisputed that Defendant re-classified the CB II, III, and IV positions as *not exempt* from overtime compensation in or about December 1997.  Thus, beginning in or about December 1997, *all* of Defendants' Consumer Bankers were paid on an hourly basis and were eligible to receive overtime compensation for all hours worked in excess of forty (40).[2]

5.    Besides *Levine* and the case at bar, other lawsuits have been, and currently are, before this Court in connection with Defendant's current and former employees seeking unpaid overtime compensation and other relief pursuant to the FLSA.  Each of these cases falls into one (1) of two (2) categories:  1) Actions alleging the Defendant

---

[1]    The Consumer Banker position is also known as "Personal Banker."

[2]    As the Court is aware, the Consumer Banker I position (also known as Consumer Banker Associate), has, at all times material hereto, been classified as non-exempt from the FLSA's overtime provisions.

2

improperly and unlawfully classified particular positions as exempt from overtime compensation; and 2) Actions brought by non-exempt employees who were nevertheless denied overtime compensation.

6.    In the latter type of cases, Defendant has indeed properly classified the position in question as non-exempt. However, Defendant, through its banking center managers and other management and supervisory personnel, refused and continue to refuse to properly pay these employees for all hours worked in excess of forty (40). More specifically, Defendant's management personnel instructed and continue to instruct the employees not to record any hours in excess of forty (40) and/or refused and continue to refuse to allow the employees to properly record their time.  In certain instances, Defendant's management personnel have actually altered an employee's time card so that it would not show any overtime hours. These cases are *Jacqueline Mintz, on behalf of herself and all others similarly situated, v. NationsBank, N.A.*, Case No. 98-8632-CIV-DIMITROULEAS (involving CB I position), *Juliet Aldred, on behalf of herself and all others similarly situated, v. NationsBank, N.A.*, Case No. 97-7547-CIV-DIMITROULEAS (involving tellers), and *Geneveve Barnes, on behalf of herself and all others similarly situated, v. Bank of America, N.A.*, Case No. 00-6980 CIV-DIMITROULEAS (also involving tellers).[3]

7.    The instant case is similar to *Mintz, Aldred,* and *Barnes.* Once Defendant re-

_____

[3]     With regard to the former type of cases, involving the misclassification of a position as exempt from overtime compensation, same include *Levine* (involving CB II, III, and IV positions), *Marla Perlman, on behalf of herself and all others similarly situated, v. NationsBank,* Case No. 98-8805-CIV-DIMITROULEAS (involving the In-Store Banker position), and the recently filed *Craig Bowie, on behalf of himself and all others similarly situated, v. Bank of America, N.A.,* Case No. 00-6934-CIV-HIGHSMITH (involving the Customer Service Manager position). (A Notice of Pendency of Other Action has been filed in *Bowie.*)

3

classified the CB II, III, and IV positions as non-exempt from overtime compensation in or about December, 1997, Defendant then began refusing to properly pay these employees for all hours worked in excess of forty (40) in the same manner as the *Mintz*, *Aldred*, and *Barnes* Plaintiffs.

8.     As the Court is further aware, the FLSA provides for a collective action provision, codified at 29 U.S.C. § 216(b), which allows for a named plaintiff(s) to bring a claim for unpaid overtime on behalf of himself, herself, or themselves and all other employees similarly situated. The courts are authorized to grant a motion to notify all potential class members of the pendency of an action and their right to affirmatively opt-into the lawsuit. *See Dybach v. State of Florida Department of Corrections,* 942 F.2d 1562 (11th Cir. 1991).

9.     In *Dybach,* the Eleventh Circuit enunciated a two part analysis which must be conducted when evaluating the motion to allow notification. It must be demonstrated that a) there exist individuals similarly situated to the named plaintiff(s), b) who may desire to "opt-in" if notified of their right to do so. *Id.* at 1567-68.

10.    Plaintiffs have met the *Dybach* requirements, and are thus entitled to an Order from this Court authorizing notification of the pendency of this action to employees similarly situated to the Plaintiffs themselves.

11.    ***To date, and without the benefit of notification or discovery from Defendant, approximately 100 current and former CB II, III, and IV have filed a consent with the Clerk and have opted-into this lawsuit.***[4]

---

[4]     Defendant may argue in opposition to the instant Motion that certain of the current opt-in Plaintiffs may ultimately be ineligible to participate in this action based upon

4

12.    For the Court's convenience, attached hereto as Exhibit "A" is a list of persons who have already filed a consent form and opted-into this action, including the state, the banking center, and in some cases the city where each opt-in Plaintiff worked. As is evident, current and former similarly situated employees from ***throughout the nation*** have already chosen to join the instant action.

13.    Furthermore, attached hereto as Composite Exhibit "B" are representative affidavits from thirteen (13) current opt-in Plaintiffs, testifying to Defendant's unlawful pay practices. ***Each and every one of these individuals testifies that Defendant's management personnel indicated to themselves and other employees that Defendant would not pay for overtime work, regardless of whether it was worked, and that the employees were not to record overtime hours worked on their time records. Each individual also testifies that he or she worked hours over forty (40) but was not properly paid overtime compensation. The testimony also shows that other similarly situated employees were unlawfully denied overtime compensation, and that these other employees may not be aware of their legal right to recover damages.***[5]

14.    Plaintiffs will serve upon Defendant an interrogatory requesting the names and addresses of current and former employees similarly situated to Plaintiffs at any time

_____

their involvement in the resolution of the *Levine* lawsuit. However, this is not at all relevant to the issue of notification. The *Dybach* test does not require a certain number of persons to have already opted-into the lawsuit. Rather, *Dybach* simply requires a showing that similarly situated employees exist and are *desirous* of opting-in. Thus, even if certain persons are, or ultimately may be, ineligible to participate in the instant case as a party-Plaintiff, they have nonetheless demonstrated that they are similarly situated to the named Plaintiffs and, by filing consent forms, that they desire to join this lawsuit.

[5]    Plaintiffs reserve the right to supplement the instant Motion with additional Affidavits as individuals continue to opt-into this action.

5

since December, 1997 in order to facilitate notification of the pendency of this lawsuit to eligible individuals. All CB II, III, and IV (including "Personal Bankers") who performed services for Defendant anytime since the positions were re-classified as non-exempt in or about December, 1997 are entitled to notification. See 29 U.S.C. §255(a) (providing for a three (3) year statute of limitations where employer's violations are "willful").

15.    Should the Court be inclined to grant notification, Plaintiffs will, within ten (10) days of the Order granting notification, submit for the Court's approval a proposed form of notification, which shall be substantially similar to the form of notification previously approved by this Court in Levine and Perlman.

16.    The notification to potential class members as requested herein is the only practical and efficient method of notifying those currently eligible current and former inside salespersons of the pendency of this action and of their opt-in rights under the FLSA.

17.    Plaintiffs submit that nationwide notification is warranted, in light of the significant number of persons who have already opted-in (without the benefit of discovery or notification) and the varied geographic regions where the opt-in Plaintiffs work or worked. Alternatively, Plaintiffs seek notification to all eligible individuals who work or worked in any state where the opt-in Plaintiffs were, or are, employed by Defendant. At the very least, notification should be granted at this time to all eligible individuals who work or worked in any banking center where the opt-in Plaintiffs work were, or are, employed by Defendant, with the possibility of renewing the motion for nationwide notification at a later time.

WHEREFORE, Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, respectfully request that this

6

Honorable Court grant their Motion, enter an Order authorizing nationwide notification of this action to all CB II, III, and IV employed by Defendant anytime since December, 1997 of their statutory right to opt-in and become a party to this action, and take such further action as is just and proper. In the alternative, Plaintiffs respectfully request that notification be authorized at this time to all CB II, III, and IV employed by Defendant in any state where the opt-in Plaintiffs work(ed), or, at the very least, at any banking center where the current opt-in Plaintiffs work(ed), with the possibility of renewing the motion for nationwide notification at a later time.

## MEMORANDUM OF LAW

### A. NATURE OF COLLECTIVE ACTION UNDER THE FLSA

As the Court is well aware, 29 U.S.C. §216(b) is a *collective* action provision created by statute, independent of and unrelated to the *class* action covered by Fed. R. Civ. P. 23. *See LaChappell v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975) (*per curiam*).

In *LaChappell,* the former Fifth Circuit specifically recognized that Fed. R. Civ. P. 23 and 29 U.S.C. §216(b) are "mutually exclusive" and "irreconcilable". *LaChappell,* 513 F.2d at 289. This is because of the "opt-in" nature of 29 U.S.C. §216(b) and "opt-out" nature of Rule 23. *Id.* In opt-in actions, potential class members need considerably less protection since they are not bound by the outcome of the action unless they specifically opt-in. Conversely, in opt-out actions, potential class members are bound by the outcome of the action. Thus, more stringent protections are necessary for Rule 23 class members. *Schmit v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir. 1975); *Church v. Consolidated*

7

*Freightways, Inc.,* 137 F.R.D. 294 (N.D. Cal. 1991); *Garner v. G.D. Searle,* 802 F. Supp.

418, 421 (N.D. Ala. 1991).

## B.    THE INSTANT ACTION IS MAINTAINED PURSUANT TO 29 U.S.C. §216(b)

The FLSA specifically authorizes plaintiffs to maintain an action on behalf of

themselves and all others similarly situated. 29 U.S.C. §216(b). 29 U.S.C. §216(b)

provides, in pertinent part:

> an action to recover liability... may be maintained against any
> employer...by any one or more employees for and on behalf of
> ...themselves and other employees similarly situated. No
> employee shall be a party plaintiff to any such action unless
> she gives her consent in writing to become such party and
> such consent is filed in the court in which such action is
> brought.

The instant action is such an action. Plaintiffs allege that they and all others similarly

situated employees were subject to a payroll policy, practice and/or procedure

transgressing the requirements of the FLSA, namely the failure to pay overtime for hours

worked in excess of forty (40) on a weekly basis.

Plaintiffs recognize that they bear the initial burden of demonstrating a reasonable

basis for allowing the action to proceed as a collective action. *Haynes v. Singer Company,*

*Inc.,* 696 F.2d 884, 887 (11th Cir. 1983). ***However, under Eleventh Circuit precedent,***

***this burden "is not [a] heavy" one.*** *Grayson v. K MART Corporation,* 79 F.3d 1086 (11th

Cir. 1996).

In *Dybach v. State of Florida Department of Corrections,* 942 F.2d 1562 (11th Cir.

1991), the court determined that ***at the notice stage, a plaintiff need only establish that***

***there are similarly situated individuals, who, if given notice, may desire to opt into***

8

*the class. See also Garner v G.D. Searle Pharmaceuticals & Company*, 802 F. Supp. 418, 422 (M.D. Ala. 1991), citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482 (1989) ("to impose a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals'...of the FLSA."); *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) ("Plaintiffs would be hard pressed to prove there are similarly situated employees who *desire* to join this lawsuit if they can have no contact with any of these employees to inquire about their desires one way or the other.") (emphasis in original).

At the notice stage, because the court has minimal evidence, the district court's determination as to whether notice of the action should be given to potential class members ***"is made using a fairly lenient standard, and typically results in...certification...."*** *Mooney, et al., v. Aramco Services Co., et al.*, 54 F.3d 1207 (5th Cir. 1995). As discussed below, Plaintiffs here have fully met this "lenient standard."

***Significantly, the instant Motion in no way requires nor involves a determination on the merits of Plaintiffs' claims for unpaid overtime.*** Moreover, the fact that discovery has not been completed does not prevent notification from being granted. As the court stated in *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D. N.Y. 1997):

> [T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of "similarly situated" plaintiffs can exist here. . . . Nor must this Court wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.

*Id.* at 262 (internal citations omitted).

9

## C. PLAINTIFFS HAVE DEFINED THE POTENTIAL CLASS WITH ADEQUATE SPECIFICITY, TO-WIT, ALL CURRENT AND FORMER CONSUMER BANKER II, III, AND IV WHO WERE EMPLOYED BY DEFENDANT ANYTIME SINCE DECEMBER, 1997.

Under *Dybach*, Plaintiffs need only show that the potential class members of a proposed collective action under the FLSA are "similarly situated with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1567-68. *To be similarly situated, each class member's situation need not be identical, merely similar*. *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D.Tex. 1979). *See also Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (there is no requirement of "strict symmetry" or "absolute identity"; rather, potential class members must meet only a "sufficiently similar" standard).

While most courts have found that substantial allegations that plaintiff and members of a putative class are, and/or were, victims of the same "policy, plan or scheme" will satisfy the "similarly situated" requirement,[6] *the Eleventh Circuit has recently held that, under the "liberal", "elastic and less stringent" similarly situated requirement of §216, "a unified policy, plan, or scheme of [illegality] may not be required."* *Grayson*, 79 F.3d at 1095-96.

---

[6]    *See, e.g., Vaszlavik v. Storage Technology Corporation*, 175 F.R.D. 672 (D. Colo. 1997) (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 303 n. 12 (N.D. Cal. 1991) (same); *Thiessen v. General Electric Capital Corp.*, 1998 U.S. Dist. LEXIS 2619. Other courts hold that a plaintiff meets this burden by demonstrating some factual support for the allegations before issuance of notice. *See. e.g. Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995). The allegations of Plaintiffs' Complaint, coupled with the evidence submitted herewith, satisfies either test.

10

In *Church*, the court specifically noted that the strict class definitional and numerical requirements of Rule 23 are not necessary in § 216(b) actions. *Church*, 137 F.R.D. at 306. The court then specifically addressed the applicability of each of the Rule 23 requirements. With respect to the requirements of commonality and typicality, the court held that:

> **...the better view is that a class claim is not defeated simply because the proposed classes performed a variety of different jobs at different locations, reported to different supervisors or left employment for different reasons than the named plaintiffs. What governs the scope of the class is whether the named [plaintiff] and [her] class members were all affected by a similar plan infected by [illegality]. The [plaintiff] need not be identically situated to potential class members.**

*Id.* at 308.

The Plaintiffs have sufficiently alleged the class--all current and former Consumer Banker II, III, and IV who worked for Defendant since December, 1997, when these positions were re-classified as non-exempt and thus eligible to receive overtime compensation. *The fact that many employees who elect to opt-in to this action may have had or have different (i) supervisors or management personnel or (ii) number of overtime hours, does not in any way affect the similarity of their positions. Id.* at 308. It is, and was, after all, Defendant's policy, practice and/or procedure of denying overtime compensation that precipitated this action.

## D.    THE COURT SHOULD FACILITATE NATIONWIDE NOTICE TO ALL POTENTIAL PLAINTIFFS.

In *Hoffman-La Roche, Inc. v. Sperling*, 483 U.S. 465, 468 (1989), the United States Supreme Court held:

11

> ...a district court has both a duty and the broad authority to
> exercise control over a class action and to enter appropriate
> orders governing the conduct of counsel and the parties.

It is this "duty" and "broad authority" that Plaintiffs request this Honorable Court

exercise with respect to the notification of the affected class--all Consumer Banker II, III,

and IV employed by Defendant since December, 1997. In actions such as this, the

exercise of such authority is "inevitable". *Id* at 487.

Congress has clearly stated its policy supporting collective actions. In *Hoffman-La*

*Roche,* the Supreme Court noted:

> Congress has stated its policy that ADEA plaintiffs should have
> the opportunity to proceed collectively. A collective action
> allows age discrimination plaintiffs the advantage of lower
> individual costs to vindicate rights by the pooling of resources.
> *Id* at 486.[7]

Collective actions serve the dual interests of justice and efficient case management.

*Id.* Plaintiffs, Defendant, and this Court would benefit through avoiding a multiplicity of

duplicative suits, expediting the disposition of this action and reducing the attorneys' fees,

costs, and expenses associated with each affected individual having to pursue his or her

own action. *Id.*

Judicial intervention at an early stage ensures timely, accurate and informative

disclosure to all similarly situated employees. *Id.* Such disclosure will expedite the instant

action by apprising Defendant as to the identity of all claimants at the earliest possible

time. *Id.*

---

[7]    29 U.S.C. §216(b) applies equally to actions arising under the FLSA and
actions arising under the ADEA.

12

In the absence of a court-authorized notification to all similarly situated employees, those employees would in all likelihood (i) not receive timely, complete, and accurate information as to the pendency of this action, (ii) lack meaningful access to the court, and (iii) have no practical or efficient method of vindicating their rights. *Riojas v. Seal Products, Inc.*, 82 F.R.D. 613 (S.D. Tex. 1979) (providing notice was required through notions of fundamental fairness).

The current and former employees of Defendant who are and were similarly situated to Plaintiffs are *all* Consumer Banker II, III, and IV who worked for Defendant, on a *nationwide* basis, since December, 1997. Support for nationwide notification is found in *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996). In *Belcher*, five (5) named plaintiffs alleged that the defendant[8] had failed to properly pay overtime compensation to *hourly* employees on a nationwide basis, by, for instance, paying the hourly employees "off the clock." *Id.* at 252. The *Belcher* plaintiffs moved for nationwide notification. At the time the motion was filed approximately 400 individuals had already filed consent forms, representing 22 states and over 200 cities. *Id.*

The *Belcher* court granted *nationwide* notification, holding that the plaintiffs had "made a sufficient showing . . . that the individuals to whom they seek to send notice of [the] lawsuit are 'similarly situated' to them to warrant the issuance of Court-supervised notice." *Id.* at 251. The court stated that the affidavits submitted in support of the motion for notification "indicate[d] that these practices were not limited to a single store or region." *Id.* at 252. The court ordered that such notice would be issued to *all* persons employed

---

[8]    As the Court may already be aware, Shoney's is a large nationwide chain of family-style restaurants.

13

on a hourly basis by Shoney's anytime within the three (3) year period prior to the filing of the lawsuit. *Id.* at 252.

Significantly, the temporal and geographic scope of the notice provided in *Belcher* was for notification purposes only. In other words, simply because a person was receiving notice did not mean that they were, as a matter of law, "similarly situated" to the named plaintiffs, since, obviously, there might have existed Shoney's locations where unlawful pay practices did not occur. Also, the issuance of notice for a three (3) year period was also for notification purposes only; the court specifically noted that the issue of "wilfulness" was "*an open issue to be resolved pending further proof.*" *Id.*

*Belcher* is quite instructive with regard to the instant case, which also involves hourly employees being denied overtime compensation, rather than salaried employees claiming an improper classification as exempt from overtime. The instant case is also similar to *Belcher* inasmuch as, at this point and prior to any discovery or notification, a significant number of persons (approximately 100) have already chosen to join this lawsuit, representing fourteen (14) states as well as Washington, D.C. *See* Exhibit "A." In addition, as in *Belcher*, the Affidavits submitted herewith show that Defendant's unlawful pay practices are not limited to a single banking center or region. *See* Composite Exhibit "B." Thus, *Belcher* shows that *nationwide* notification is proper in an FLSA collective action involving hourly, non-exempt employees (as in the instant case), even where the unlawful acts may have taken place on a location-by-location basis. *See Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 309 (S.D. N.Y. 1998) (noting *Belcher* court finding that "*all*

14

[hourly] employees were 'similarly situated' **whether or not a named plaintiff had worked at each particular Shoney's location**").[9]

Individually, Defendant's current and former CB II, III, and IV who would be eligible to receive notification in the case at bar have little or no (i) access to counsel, (ii) knowledge of the relevant terms and provisions of the FLSA, or (iii) funds to finance a lawsuit seeking his/her legally required wages. To deny notice to these individuals is tantamount to rewarding Defendant for its failure to compensate them in accordance with the FLSA since the claims of these individuals in all likelihood would never be pursued for a number of reasons, not the least of which is the expiration of the statute of limitations (29 U.S.C. § 255). **In fact, each day that passes without these individuals filing their notice of consent is a windfall to Defendant because one more day of uncompensated hours is legally forfeited.** In Geller v. Markham, 19 F.E.P. Cases 622, 623 (D. Conn. 1979), a showing that the similarly situated employees were not aware of the pendency of the action was sufficient to authorize notice.

As Judge Haight aptly recognized in Allen v. Marshall Field & Co., 93 F.R.D. 438, 443 (N.D. Ill. 1982):

> to deny class treatment would be tantamount to declaring that any employer can escape ADEA class liability so long as it discriminates against a diverse group of people over a wide geographic range in a number of ways, such as termination, salary, promotions, and working conditions.

---

[9]     The Belcher court also stated that the "record before [it] indicates a likelihood that there are similarly situated employees who would benefit from an awareness of the pending suit." Belcher, 927 F. Supp. at 252. Likewise, in the case sub judice, the Affidavits submitted herewith clearly reflect the existence of similarly situated persons who would desire to join this lawsuit if notification were provided to them. See Composite Exhibit "B."

The reasoning of Judge Haight was quite correctly followed by Judge Jansen in *Church*, 137 F.R.D. at 309, and Judge Dearie in *Heagney*, 122 F.R.D. at 127. Imposing the strict class action requirements of Fed. R. Civ. P. 23 to the instant actions is certainly counter to both the remedial nature of the FLSA and the congressional policy of allowing collective actions to recover overtime compensation. *Braunstein*, 600 F.2d at 336; *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759 (9th Cir. 1979).

## E.   CONCLUSION

Based upon the approximately 100 persons who have already opted-into this lawsuit *without the benefit of discovery or notification*, as well as the representative affidavits attached hereto as Exhibit "B," it is manifest that Plaintiffs have met the *Dybach* requirements and that *nationwide* notification should be authorized with respect to *all* current and former Consumer Banker II, III, and IV who worked for Defendant since December, 1997.

In the alternative, and if this Court is not inclined at this time to authorize nationwide notification, Plaintiffs request that notification be authorized to all Consumer Banker II, III, and IV who work or worked in any state where the opt-in Plaintiffs were, or are, employed by Defendant. At the very least, notification should be granted at this time to all eligible individuals who work or worked in any banking center where the opt-in Plaintiffs work were, or are, employed by Defendant, with the possibility of renewing the motion for nationwide notification at a later time.

Respectfully submitted,

MUCHNICK WASSERMAN, DOLIN &
LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard
Suite 620 North
Hollywood, Florida 33021
(954) 989-8100  / (305) 624-9100

By

    DANIEL R. LEVINE, ESQ.
    Fla. Bar No.: 0057861
    ADAM S. CHOTINER, ESQ.
    Fla. Bar No.:  0146315

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Mail this day of August, 2000 to: Michael T. Burke, Esq., Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., McGuire, Woods, Battle & Boothe, 3700 NationsBank Plaza, Charlotte, NC

28280.

Respectfully submitted,

MUCHNICK WASSERMAN, DOLIN &
LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard
Suite 620 North
Hollywood, Florida 33021
(954) 989-8100 / (305) 624-9100

By: _____

DANIEL R. LEVINE, ESQ.
Fla. Bar No.: 0057861
ADAM S. CHOTINER, ESQ.
Fla. Bar No.: 0146315

18

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Albritton, Tina | | Florida | Midtown |
| Andrews, Kathy Foster | | Georgia | Lilburn Instore |
| Armstrong, Annette | | Georgia | East Albany |
| Banks, Patrick | | Texas | DeSoto |
| Barber, Paul | Sarasota | Florida | Southgate |
| Bari, John | Falls Church | Virginia | Yorktown |
| Barnes, Marilyn | | Florida | Downtown, Galleria |
| Barnett, Michelle | | Florida | Garden Grove |
| Barnette, Carrie | | South Carolina | Rockhill Mall |
| Batts, Eloise | Surf City, Holly Ridge | North Carolina | Surf City, Holly Ridge |
| Beach, Lisa | | Texas | |
| Biggs, Peggy | | Texas | Conroe |
| Blackmon, Marilyn | | Missouri | 63rd Street, 85 Holmes |
| Blitch, Tracie | | Florida | South Venice |
| Bolden, Mary | | Maryland | Randallstown |
| Buchanan, Margaret | Austin | Texas | Northwest, Showal Creek, Bevo's, Longhorn |
| Calvillo, Henry | Austin | Texas | Northwest Austin |
| Carlos Del Valle, Juan | Coral Gables | Florida | Coral Gables |

-1-



**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|------|------|-------|----------------|
| Cole, Janice | | Maryland | Beltway Plaza, Belair-Bowie |
| Coleman, Chris | | Georgia | Roswell Instore |
| Copeland, James | | Georgia | Midtown |
| Cordell-Proper, Andrea | | Michigan | Baltimore Main Branch |
| Cox, Lydia | Columbia | South Carolina | Richland Mall |
| Crowder, Bryan | Des Moines Urbandale | Iowa | South Office Aurora Avenue |
| Czwojdak (Alsafi), Suzanne | Atlanta Ft. Myers | Georgia Florida | Perimeter Cypress Lake |
| Dantos, Stephanie | | Florida | Palm Beach Lakes Blvd. |
| Davis-Dunn, Candice | | Texas | Highland Village |
| Dickerson, Donna | | Maryland | Camp Springs |
| Dismukes, Dianne | | Texas | Tenneco, Red Oak, Hinble |
| DuPont, Laurie | | Florida | Venetian Isles Plaza |
| Elias, Debra | | Texas | Galveston - Downtown |
| Estrada, Rosemarie | | Texas | Galveston |
| Fleming, Barbara | Franklin | Tennessee | Public Square |
| Ford, Cari | | Missouri | Clayton, Olivette |
| Francois, Virginia | | Texas | Westheimer, Stafford |

-2-

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
| --- | --- | --- | --- |
| Fyffe, Sherry | | Maryland | Northwood, Charles St. |
| German, Nancy | | Florida | Baymeadows |
| Grant, Linda | Rock Hill | South Carolina | Rock Hill Mall, Rock Hill Main |
| Greene, Karen | | Virginia | Lake Ridge |
| Guerin-Davidson, M. Christine | | Maryland | Loch Raven, Lutherville, Security, Slade Avenue |
| Hardy, Joyce | Haines City | Florida | Haines City |
| Harris, Alex | | Florida | Capital |
| Hensley, Rodney | | Alabama | Harris Teeter Instore |
| Heuser, Marcia | | Florida | Bayshore |
| Hill, Todd | | Florida | McNab, University |
| Hill, Leslie Slater | Austin | Texas | South Park |
| Howard, Mary | | Texas | South Austin - Bevo's |
| Justice, Deana | Jacksonville | North Carolina | New River, Northwoods, Country Club, Brynn Marr |
| Kennedy, Katherine | Tamarac Coral Springs | Florida | Tamarac Wiles Road |
| Kirkland, Diane | | Florida | South Winter |
| Kozel, Julia | | Florida | South Venice |
| Langley, Elizabeth | | Maryland | La Plata |
| Lee, Philip | Baltimore | Maryland | 100 East Street |
| Lee, Peggy | | Florida | #207, #1544 |

-3-

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

### LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Louderback, Wendy | | Florida | Sunrise Lakes & Shenandoah |
| Martinez, Kathleen | | Maryland | Annapolis Road, Riverdale, Hanover Parkway, Cip Square |
| McKinley, June | | Florida | Gulf-to-Bay, Countryside, Delaney, University, Titusville |
| Meier, Janet | | Texas | Marsh Lane |
| Melton, Elizabeth Ann | Brunswick | Georgia | Main Branch (Brunswick) |
| Mobley, Angela | | Georgia | Bankhead |
| Monroe, Anastasia | | Florida | Southgate |
| Moreno, Lillian a.k.a Lillian Vaccato | | Florida | Pembroke Commons (formerly Citizens Federal) |
| Motley, Jeff | Plano | Texas | Plano |
| Murray, Patricia | | Georgia | Hartley Bridge Road Instore |
| Northcutt, Joe | | Texas | Southwest |
| Osavio, Miriam a.k.a. Miriam Penick | | Georgia | Market Square & Dekalb College |
| Parial, Anita | Lake Worth Boca Raton | Florida | Winn-Dixie Instore Boca Hamptons |
| Parker, Guilbert | | Maryland | Middlesex |

-4-

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Parks, Nettie | | Florida | Longwood, Lake Mary |
| Pehl, Dayton | Austin | Texas | Austin |
| Perlmutter, David | | Florida | Gulfview Square Mall Hudson |
| Powell, Irma | Lawrenceville | Virginia | Lawrenceville |
| Pumphrey, Jennie | | Pennsylvania | Benfield Road, Hillsmere, Oakland Church |
| Pye-Lee, Deborah | | Texas | Two Houston Center |
| Queen, Antoinette | | Maryland | Georgia Avenue |
| Ratcliff, Traci | | Florida | Jacksonville & Lake City |
| Reynolds, Susie | | Georgia | East Albany |
| Richardson, Steven | | Texas | Friendswood Instore |
| Rogers, Melanie | Lake City | Florida | Lake City |
| Rubenstein, Lily | | Florida | Northeast |
| Sierra, Joseph | Rio Rancho | New Mexico | Country Club |
| Silverman, Riitta | | Virginia | Old Town Alexandra |
| Skinner, Joann | | Georgia | Peach Orchard |
| Smith, Adelia | | Washington DC | 2001 Penn. Ave, Georgia Ave. |
| Smith, William | Naples | Florida | 5th Ave |
| Stewart, Fabiola | | Texas | Carrolltown |
| Strozier, Stephanie | Atlanta | Georgia | Kroger Citi-Center |

-5-

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|------|------|-------|----------------|
| Taylor, Jeffrey | | Tennessee | Hermitage, Donelson, Opryland |
| Thomas, Sheri | Charlotte | North Carolina | South Park |
| Valdes, Olga | | Florida | Downtown |
| Valdez, Sr., Juan | | Maryland | Flower Avenue |
| Valdez, Ron | | Florida | DeSoto Square, Westside |
| Waddington, Julia | | Maryland | Hillsmere |
| Washington, Samuel | | Virginia | University, Orange |
| Wells, Barbara | | Maryland | Cross Keys, Roland Ave., Merritt Blvd. |
| Willis, Harold | | Maryland | Vermont Ave., 1801 K Street & Cleveland Park |
| Wilson, Angela | | North Carolina | South Park |
| Wood, Patricia | | Georgia | Stone Mountain, Conyers, Five Forks |
| Woroschinski, Karen | | Florida | Shamrock |
| Yancy, Evans | | Georgia | West Fork |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## AFFIDAVIT OF JUAN C. VALDEZ SR.

STATE OF MARYLAND    )
                      ) ss:
COUNTY OF MONTGOMERY  )

BEFORE ME, the undersigned authority, on this date personally appeared JUAN C.

VALDEZ SR. who, after first being duly sworn deposes and says:

1.    My name is Juan C. Valdez Sr. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1991, I was employed by NationsBank. I was employed by NationsBank

as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Flower Avenue

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, the branch manager at NationsBank's Flower


EXHIBIT

B

Avenue banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Cecilia Sanders, Emily Harris, and a person named "Sharda" (I cannot recall her last name). These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JUAN C. VALDEZ SR.

SWORN TO AND SUBSCRIBED before me this ____ day of ___JULY___, 1999, by JUAN C. VALDEZ SR., who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires:
   C 2 | 0 2 | 0 4
Acknowledger's Name Stamped, Typed or Printed

JACQUELINE CAPUTI
Notary Public, State of Maryland
George's County
My Commission Expires Feb 2 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.
_____/

## AFFIDAVIT OF MARILYN BLACKMON

STATE OF MISSOURI    )
                     ) ss:
COUNTY OF JACKSON    )

BEFORE ME, the undersigned authority, on this date personally appeared MARILYN

BLACKMON who, after first being duly sworn deposes and says:

1.    My name is Marilyn Blackmon. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

3.    In or about December 1997, at which time I worked at NationsBank's 63 Street

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Patti Peterson, the branch manager at NationsBank's 63 Street banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Patti Peterson would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Lisa Bradley and Debbie Overton. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

MARILYN BLACKMON

SWORN TO AND SUBSCRIBED before me this //ᵏ day of _Quly_, 1999, by MARILYN BLACKMON, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires:
HAZEL E. NUNN
Acknowledger's Name Stamped,
Typed or Printed
STATE OF MISSOURI
Jackson County
My Comm. Expires Mar. 16, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.

_____/

### AFFIDAVIT OF CARI M. FORD

STATE OF MISSOURI     )
                        ) ss:
COUNTY OF ST. LOUIS   )

BEFORE ME, the undersigned authority, on this date personally appeared CARI M.

FORD who, after first being duly sworn deposes and says:

1.    My name is Cari M. Ford. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Olivette

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, the branch manager at NationsBank's Olivette banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for *(over)* forty (40) hours regardless of the number of hours worked. *little well some weeks that we would put our hours on our-7*

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Herman Travis, Jennifer Sharp and Deborah Pollard. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime. FURTHER AFFIANT SAYETH NAUGHT.

<u>_____</u>
CARI M. FORD

SWORN TO AND SUBSCRIBED before me this 12 day of _____, 2000, by CARI M. FORD, who is personally known to me, or who produced _____ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires: MARIE G. BADER
                      Notary Public — Notary Seal
                      STATE OF MISSOURI
Acknowledger's Name Stamped St. Louis County
Typed or Printed    My Commission Expires: March 8, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.

_____/

## AFFIDAVIT OF JOHN BARI

STATE OF CALIFORNIA    )
                    ) ss:
COUNTY OF SANTA CLARA   )

BEFORE ME, the undersigned authority, on this date personally appeared JOHN BARI

who, after first being duly sworn deposes and says:

1.    My name is John Bari. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Yorktown

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.     However, since December 1997, Theodore Gargagliano, the branch manager at NationsBank's Yorktown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.     During branch meetings with employees, Theodore Gargagliano would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.     Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN BARI

SWORN TO AND SUBSCRIBED before me this /4ᵈ day of _July_ , 1999, by JOHN BARI, ~~who is personally known to me~~, or who produced _Calif. Drivers License_ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:
_June 23, 2004_
Acknowledger's Name Stamped,
Typed or Printed



MARIETTA SHELIA
Commission # 1245282
Notary Public - California
Santa Clara County
My Comm. Expires Jun 23, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

     Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

     Defendants.

_____/

## AFFIDAVIT OF JEFF MOTLEY

STATE OF TEXAS    )
                 ) ss:
COUNTY OF COLLIN   )

BEFORE ME, the undersigned authority, on this date personally appeared JEFF

MOTLEY who, after first being duly sworn deposes and says:

1.    My name is Jeff Motley. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1996, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Plano banking

center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for

overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Shirley Stanley, a NationsBank sales manager, acting from instructions from the North Dallas Administration, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Shirley Stanley would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Terrell Walker. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JEFF MOTLEY

SWORN TO AND SUBSCRIBED before me this _17_ day of _July_, _2000_, by JEFF MOTLEY, who is personally known to me, or who produced _Texas Driver L,_ as identification, and who did take an oath.

JONATHAN A. DAMON
Notary Public
State of Texas
My Comm. Exp. 11-02-03

Notary Public
My Commission Expires:
_11/02/03_
Acknowledger's Name Stamped, Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,
      Defendants.

_____/

## AFFIDAVIT OF JULIA KOZEL

STATE OF FLORIDA   )
                ) ss:
COUNTY OF SARASOTA )

BEFORE ME, the undersigned authority, on this date personally appeared JULIA KOZEL

who, after first being duly sworn deposes and says:

1.    My name is Julia Kozel. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's South Venice

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.
                                                           Retail Marketing Manager

4.    However, since December 1997, Janet Jones, the ~~branch manager~~ at

South Sarasota/Charlotte Region
NationsBank's ~~South Venice banking center~~, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During ~~their such~~ meetings with employees, Janet Jones would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Tracy Blitch. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_Julia Kozel_
JULIA KOZEL

SWORN TO AND SUBSCRIBED before me this 5 day of July, ~~1999~~ 2000, by JULIA KOZEL, who is personally known to me, or who produced Florida drivers license as identification, and who did take an oath.

_Tammie Rife_
Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed


TAMMIE R. RIFE
MY COMMISSION # CC 838062
EXPIRES: May 18, 2003
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF VIRGINIA FRANCOIS

STATE OF TEXAS    )
                   ) ss:
COUNTY OF FORT BEND  )

BEFORE ME, the undersigned authority, on this date personally appeared VIRGINIA

FRANCOIS who, after first being duly sworn deposes and says:

1.    My name is Virginia Francois. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Westheimer

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.     However, since December 1997, ~~Barbara  Baye,~~ the branch manager at NationsBank's Westheimer banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.  As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.     During branch meetings with employees, ~~Barbara Baye~~ *manager* would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.     Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week.  However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.     I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit.  Although I cannot remember all of their names, I do recall Elaina Sanchez.  This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation.  I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_____
VIRGINIA FRANCOIS

SWORN TO AND SUBSCRIBED before me this ⅃ day of ᴊᴜɴᴇ , 1999, by VIRGINIA FRANCOIS, who is personally known to me, or who produced ᴅ.ʟ. (ᴋɴᴏᴡɴ) as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:
MARISELA E. RODRIGUEZ
Acknowledger's Name Stamped,
Typed or Printed

MARISELA E. RODRIGUEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 7-9-2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

         Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

         Defendants.

_____/

## AFFIDAVIT OF MARY F. BOLDEN

STATE OF MARYLAND  )
                    ) ss:
COUNTY OF BALTIMORE )

BEFORE ME, the undersigned authority, on this date personally appeared MARY F.

BOLDEN who, after first being duly sworn deposes and says:

1.    My name is Mary F. Bolden. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's

Randallstown banking center, NationsBank reclassified my position as non-exempt, which

allowed me to be eligible for overtime compensation. As of this date, I was also required to

fill out time cards.

4.    However, since December 1997, Barbara Mullin, the branch manager at NationsBank's Randallstown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Barbara Mullin would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

MARY F. BOLDEN

SWORN TO AND SUBSCRIBED before me this ___ day of _____, 1999, by MARY F. BOLDEN, who is personally known to me, or who produced _____ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.
_____/

## AFFIDAVIT OF PAUL C. BARBER

STATE OF FLORIDA        )
                        ) ss:
COUNTY OF SARASOTA   )

BEFORE ME, the undersigned authority, on this date personally appeared PAUL C.

BARBER who, after first being duly sworn deposes and says:

1.    My name is Paul C. Barber. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1996, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Southgate

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.    However, since December 1997, Laura Russo, the branch manager at NationsBank's Southgate banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Laura Russo would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to forty-five (45) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
PAUL C. BARBER

SWORN TO AND SUBSCRIBED before me this ⟋ day of _____, 2000, by PAUL C. BARBER, who is personally known to me, or who produced F. DRIV. Lid. as identification, and who did take an oath.

_____
Notary Public
My Commission Expires: Jan 7, 2001

_____
Acknowledger's Name Stamped,
Typed or Printed



KRISTIN K. CAWTHORNE
MY COMMISSION # CC 891664
EXPIRES: January 7, 2001
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF ELIZABETH ANN MELTON

STATE OF GEORGIA    )
                       ) ss:
COUNTY OF GLYNN    )

BEFORE ME, the undersigned authority, on this date personally appeared ELIZABETH

ANN MELTON who, after first being duly sworn deposes and says:

1.    My name is Elizabeth Ann Melton. I have personal knowledge of the facts recited

in this Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Brunswick

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Lorrie Ethridge, the branch manager at NationsBank's Brunswick banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Lorrie Ethridge would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for · forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Greg Hollis, Julie Wynn, and Francis Bryant. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Elizabeth Ann Melton<br>
(ELIZABETH ANN MELTON)

SWORN TO AND SUBSCRIBED before me this 5ᵗʰ day of July , 1999, by ELIZABETH ANN MELTON, who is personally known to me, or who produced ꓯꓯ Dꓕ _____ as identification, and who did take an oath.

Doretha Lynn M. Lismore

Notary Public

My Commission Expires: Doretha Lynn M. Lismore

Notary Public, Glynn County, Georgia
My Commission Expires June 3, 2003.

Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## AFFIDAVIT OF ANGELA MOBLEY

STATE OF GEORGIA    )
                     ) ss:
COUNTY OF FULTON    )

BEFORE ME, the undersigned authority, on this date personally appeared ANGELA

MOBLEY who, after first being duly sworn deposes and says:

1.    My name is Angela Mobley. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

3.    In or about December 1997, at which time I worked at NationsBank's Bankhead

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Tamara Lomax, the branch manager at NationsBank's Bankhead banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Tamara Lomax would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

ANGELA MOBLEY

SWORN TO AND SUBSCRIBED before me this ___ day of ___, 1999, by ANGELA MOBLEY, who is personally known to me, or who produced ___ as identification, and who did take an oath.

Notary Public

My Commission Expires:

Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## AFFIDAVIT OF DIANE KIRKLAND

STATE OF FLORIDA    )
                  ) ss:
COUNTY OF POLK    )

BEFORE ME, the undersigned authority, on this date personally appeared DIANE

KIRKLAND who, after first being duly sworn deposes and says:

1.    My name is Diane Kirkland. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's South Winter

haven banking center, NationsBank reclassified my position as non-exempt, which allowed me

to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Louise Horne, the branch manager at NationsBank's South Winter haven banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.   As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Louise Horne would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty-five (65) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Mickey Barnett. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

DIANE KIRKLAND

SWORN TO AND SUBSCRIBED before me this __7__ day of __JUly__, 1999, by DIANE KIRKLAND, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires: 09/29/00

Acknowledged
Printed
Type: Printed
My Commission Exp. 09/29/2000
Notary Service & Bonding Co.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.
_____/

## AFFIDAVIT OF OLGA VALDES

STATE OF FLORIDA    )
               ) ss:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, on this date personally appeared OLGA

VALDES who, after first being duly sworn deposes and says:

1.    My name is Olga Valdes. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Brickell

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Donna Marie Kirlew, the regional manager for consumer bankers, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Donna Marie Kirlew would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
OLGA VALDES

SWORN TO AND SUBSCRIBED before me this 28day of _____, 2000, by OLGA VALDES, who is personally known to me, or who produced _____ Known as identification, and who did take an oath.

Notary Public
My Commission Expires # CC 87688
Expires Oct. 5, 2003
Ana Diaz
Acknowledger's Name Stamped, Inc
Typed or Printed