UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

          Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

          Defendant.

**NIGHT BOX
FILED**

·SEP 1 8 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL:

## NATIONSBANK'S OPPOSITION TO PLAINTIFFS'
## MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America,

N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel,

state as follows in opposition to Plaintiffs Motion to Allow Notification to Potential Class

Members, As Authorized by the Fair Labor Standards Act, 29 U.S.C. §216(b)(hereinafter

"Motion to Allow Notification"):

### Statement of the Case

1. On January 31, 2000, plaintiffs Roxanna L. Escudero and Kimberly Drake filed the

above-captioned action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201, et seq.



("FLSA"), "on behalf of themselves and all others similarly situated." Plaintiffs alleged that they

worked for NationsBank as Consumer Banker IIs and IIIs; that NationsBank reclassified their

positions as non-exempt for purposes of the FLSA in December, 1997; that NationsBank paid

them on an hourly basis; and that, between December, 1997 and October 29, 1999, they worked

"many times in excess" of forty hours per week. See Complaint & Demand for Jury Trial.

2.  Plaintiffs allege, however, that NationsBank violated the FLSA by not paying her

overtime pay for those hours worked in excess of forty hours per week. See Complaint &

Demand for Jury Trial.

3.  On August 21, 2000, nearly seven months after filing their Complaint, plaintiffs filed

their Motion to Allow Notification. They alleged in their Motion that NationsBank "through its

banking center managers and other supervisory personnel" refused overtime pay to Consumer

Banker IIs, IIIs and IVs, and further prevented or intimidated the putative class from "properly

record[ing] their time." Motion to Allow Notification, ¶6.

4.  Plaintiffs contend that "[a]ll Consumer Banker II, III and IV who performed services

for Defendant anytime [sic] since the positions were re-classified as non-exempt in or about

December, 1997 are entitled to notification." Id., ¶14.

## Argument

I.    Plaintiffs' Motion to Allow Notification Should Be Denied Because They Have Failed to
      Satisfy Their Burden of Demonstrating a Reasonable Basis for a Collective Action.

Pursuant to the FLSA, an action for alleged unpaid overtime compensation may proceed

on behalf of "one or more employees for and on behalf of himself or themselves and other

employees similarly situated." 29 U.S.C. §216(b). However, whether to permit an FLSA claim

to proceed as a so-called collective action is committed to the sound discretion of the district

court, see Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir. 1991); and

2

an FLSA plaintiff must demonstrate a "reasonable basis" for class-wide treatment of her FLSA claims. See Grayson v. Kmart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996); Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). The Court "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach, 942 F.2d at 1567-68. Plaintiffs have not carried their burden in the instant case.

As plaintiffs concede in their Motion to Allow Notification, this action is identical to the Mintz and Aldred actions over which this Court presided and in which the Court denied "class" notice. See Motion to Allow Notification, ¶7. In fact, plaintiffs' Motion to Allow Notification in this action simply repackages the same conclusory arguments and unsubstantiated proof that failed to convince this Court that class notification was appropriate in those two cases; and, as was the case in Mintz and Aldred, plaintiffs cannot satisfy their burden of justifying class notification under the Dybach standard. Their Motion to Allow Notification, therefore, should be denied.

A.    Other Potential Opt-in Plaintiffs

As an initial matter, plaintiffs have failed to provide sufficient factual support for their claim that other Consumer Bankers, who have not yet opted-in, desire to opt-in to this action. Plaintiffs filed thirteen affidavits in support of their Motion. These affidavits, however, include only boilerplate assertions that the affiant "believe[s] there are other individuals who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit." See Affidavit of Juan C. Valdez, ¶7; Affidavit of Cari M. Ford, ¶10.¹ Plaintiffs' affidavits do not

---

¹ Copies of the thirteen Affidavits filed by plaintiffs in support of their Motion to Allow Notification to Potential Class Members are collectively appended hereto as Exhibit A.

3

identify: (1) where these alleged potential opt-in plaintiffs worked; (2) what positions these alleged potential opt-ins held; or (3) whether the affiants in fact worked with the alleged potential opt-ins. Significantly, the affiants also do not describe how they know the alleged potential opt-in plaintiffs worked overtime hours for which they allegedly were not compensated.[2] As this Court already has held in similar circumstances, these conclusory, hearsay statements, for which plaintiffs provide no foundation or basis in fact, do not satisfy their obligation to demonstrate that others wish to join this action.[3]

In their Motion to Allow Notification, plaintiffs place considerable stock in the fact that "approximately 100 current and former CB II, III and IV have filed a consent with the Clerk and have opted-into this lawsuit." See Motion to Allow Notification, ¶11 (emphasis in original). Plaintiffs further emphasize that these opt-in plaintiffs have so joined this action "without the benefit of notification or discovery from Defendant." Id.

Contrary to the inference plaintiffs wish the Court to draw from these circumstances, there is nothing miraculous or particularly persuasive about the number or identity of those who already have opted into this action. Of the 109 opt-in plaintiffs in this matter, 107 of them also

---

[2] In fact, given the affiants' "inaccurate reports" of the overtime hours they recorded and for which they were paid, see infra at 5-7, their statements regarding the overtime hours allegedly worked by others have no credibility whatsoever.

[3] See the Court's May 8, 2000 Order in Jacqueline Mintz, et al. v. NationsBank, N.A., Case Number 98-8632-CIV-DIMITROULEAS, denying plaintiffs Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. §216(b)(hereinafter Mintz Order), appended hereto as Exhibit B, and the Court's September 2, 1998 Omnibus Order in Juliet Aldred, et al. v. NationsBank, N.A., Case Number 97-7547-CIV-DIMITROULEAS, denying plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. §216(b) (hereinafter "Aldred Order"), appended hereto as Exhibit C. See also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983).

4

were opt-in plaintiffs in the matter of Beverly Levine, et al. v. NationsBank, N.A., Case Number 98-6306-CIV-DIMITROULEAS. See Affidavit of June C. Such, appended hereto as Exhibit D.[4]

The only reasonable inference is that plaintiffs' counsel solicited each of the opt-in plaintiffs in Levine and invited them to join the instant case. As such, there is nothing miraculous about their participation here. Indeed, given the fact that plaintiffs' counsel almost certainly contacted all 1,300 opt-in plaintiffs in Levine and invited them to join this action, the Court could conclude that all Consumer Bankers who wish to opt-into this matter already have done so and "class" notice, therefore, is unnecessary.

B.    "Similarly Situated" and the Lack of a "Common Scheme"

Plaintiffs also fail to proffer any credible or persuasive evidence that there are other "similarly situated employees" sufficient to justify notice to potential opt-in plaintiffs. They, therefore, also cannot establish the second prong of the Dybach test.

1.    "Similarly Situated"

As a threshold matter, the record establishes that many of the opt-ins upon which plaintiffs rely in support of their Motion are not even proper members of the class defined in plaintiffs' Motion to Allow Notification. Plaintiffs have filed thirteen affidavits from opt-in plaintiffs in support of their Motion. In each, the opt-in plaintiff states, under oath and under the penalty of perjury, that he or she "only indicate[d] forty (40) hours on [his or her] timecard each week even though [he or she] worked more than forty (40) hours," and that NationsBank "only paid [him or her] for forty (40) hours regardless of the number of hours worked." See Affidavits of Opt-in Plaintiffs, ¶¶4 & 6, appended hereto as Exhibit A.

---

[4]Of the two remaining, Nancy Rojas was an opt-in plaintiff in the matter of Marla Perlman v. NationsBank, N.A., Case No. 98-8805-CIV-DIMITROULEAS/Johnson.

5

Contrary to these sworn statements under oath, eleven of the thirteen opt-in plaintiffs who have submitted affidavits recorded overtime hours and were paid by NationsBank for those overtime hours. At worst, these opt-in plaintiffs have perjured themselves. At best, they have submitted affidavits which are contradicted by NationsBank's indisputable payroll records, and which defeat plaintiffs' Motion to Allow Notification. See Affidavit of Joyce Butler ("Butler Affidavit"), appended hereto as Exhibit E.[5]

Cari M. Ford stated under oath that, pursuant to her Banking Center Manager's directions, she "would only indicate forty (40) hours on [her] timecard each week even though [she] worked more than forty (40) hours." Affidavit of Cari M. Ford, ¶4, at Exhibit A. Contrary to her sworn affidavit, Ford reported 377.25 overtime hours to NationsBank in 1998. In 1999 and between January 1, 2000 and January 31, 2000, when she left NationsBank, Ford reported 232.50 overtime hours to the Bank. NationsBank paid Ford $14,659.76 in overtime pay in 1998, 1999 and 2000. See Butler Affidavit, ¶4, at Exhibit E.

Elizabeth Ann Melton stated under oath that "NationsBank only paid [her] for forty (40) hours regardless of the number of hours worked." Affidavit of Elizabeth Ann Melton, ¶6, at Exhibit A. Contrary to her sworn statements, she recorded 155.75 hours of overtime in 1998 before going on an extended leave of absence, and NationsBank paid her $2,483.17 in overtime pay in 1998. See Butler Affidavit, ¶9, at Exhibit E.

Virginia Francois also stated under oath that she was not permitted to record her overtime hours and that NationsBank did not pay her overtime. See Affidavit of Virginia Francois, ¶¶4 &

---

[5]Of the two remaining, Affiant Olga Valdes did not work as a Consumer Banker during the relevant time period. See Butler Affidavit, ¶14, at Exhibit E. NationsBank is still researching Jeff Motley's payroll records.

6, at Exhibit A. In 1998, however, Francois reported to NationsBank 99.75 hours of overtime.
She reported 20 hours of overtime in 1999 and the Bank paid Francois $2,486.41 in overtime pay
in 1998 and 1999. See Butler Affidavit, ¶6, at Exhibit E.

According to Marilyn Blackmon, NationsBank refused to pay her overtime "even though
[she] worked more than forty (40) hours." See Affidavit of Marilyn Blackmon, ¶4, at Exhibit A.
Contrary to her sworn statements, in 1998, Blackmon recorded 66.75 hours of overtime through
March 15, 1998 when she left the Bank, and NationsBank paid her $1,457.79 in overtime pay in
1998. See Butler Affidavit, ¶13, at Exhibit E.

This is hardly evidence that NationsBank failed to pay a large class of potential opt-in
plaintiffs overtime pay to which they were entitled. Rather, to the contrary, plaintiffs' and
NationsBank's evidence together demonstrate that the Bank paid Consumer Bankers for the
overtime hours they worked throughout the relevant time period.

2.    Alleged "Common Scheme"

In addition, the nature of the "centralized scheme" as alleged by plaintiffs is critical to the
Court's analysis of whether this matter should proceed as a collective action. Plaintiffs do not
allege that they were misclassified as exempt for overtime pay purposes. Contrast Beverly
Levine, et al. v. NationsBank, N.A., Case Number 98-6306-CIV-DIMITROULEAS. See Motion
to Allow Notification, ¶¶6-7. Plaintiffs do not allege that they were denied overtime pay based
on a written, corporate-wide payroll or compensation policy. Contrast Beverly Levine, et al. v.
NationsBank, N.A., Case Number 98-6306-CIV-DIMITROULEAS. Rather, they allege that
NationsBank properly classified them as non-exempt, but failed to allow them to record their
overtime hours and refused to pay them for their overtime hours. As in Mintz and Aldred,
however, plaintiffs have not proffered any evidence that this purported "scheme" is a corporate-

7

wide policy. In fact, the record evidence indicates that any alleged violations of the FLSA were random, sporadic and completely dependent on the actions of each plaintiff's Banking Center Manager.

First, this Court already has recognized that NationsBank has a written policy "of compensating non-exempt employees who worked and recorded in excess of forty hours in a workweek [at] an overtime wage rate of one and one-half times the regular hourly rate." Aldred Order, pp. 4-5, at Exhibit C; Mintz Order, pp. 5, at Exhibit B.

Second, NationsBank has previously proffered evidence that "[i]ndividual overtime is authorized and managed at the direct supervisor and banking center manager level." See Affidavit of Jill Borsky, ¶3, submitted to this Court in the Mintz action, and appended hereto as Exhibit F. This decentralization of decisionmaking is confirmed by plaintiff's "evidence." See Plaintiffs' Affidavits appended hereto as Exhibit A. See also Ray v. Motel 6, 4 WH Cases.2d 573 (D. Minn. 1966), citing, Ulvin v. Northwestern Nat'l Life Ins. Co., 141 F.R.D. 130, 131 (D. Minn. 1991).

Third, plaintiffs' counsel filed an affidavit in the Mintz case from a former NationsBank manager which actually contradicts plaintiff's allegation of a "common scheme." See Affidavit of Phyllis Kennedy Brown ("Brown Affidavit"), ¶¶5 & 6, appended hereto as Exhibit G. According to the manager, she ensured that the Consumer Bankers she supervised received the overtime pay they deserved. See Brown Affidavit, ¶5 ("I refused to permit Consumer Bankers working under my direction to work overtime without being paid for it."), at Exhibit G. The manager avers that, despite allegedly feeling threatened that their jobs were in jeopardy if they permitted their employees to claim overtime, "some managers, particularly the more experienced managers such as [herself], saw to it that employees who worked overtime were paid overtime."

Brown Affidavit, ¶6, at Exhibit G. This manager's affidavit, therefore, supports NationsBank's position that it compensated its non-exempt employees properly for the overtime hours which they work, not plaintiffs' unsubstantiated allegation that NationsBank had "some centralized scheme" to deny its non-exempt employees overtime pay to which they were entitled.[6]

II.     Plaintiffs Cannot Establish that Nationwide Notice is Proper.

Based on the foregoing, plaintiffs have failed to satisfy their burden pursuant to Dybach and their Motion to Allow Notification, therefore, should be denied. Should the Court disagree, however, and decide to permit notice to potential class members, NationsBank requests that the Court limit notice to potential class members to those Consumer Banker IIs, IIIs, and IVs who were employed in the banking centers at which the **named** plaintiffs were employed.

As noted above, "[i]ndividual overtime is authorized and managed at the direct supervisor and banking center manager level," see Affidavit of Jill Borsky, ¶3, appended hereto as Exhibit F, and plaintiffs have not proffered any evidence that the alleged "scheme" to deny them overtime pay existed in any banking center other than the ones in which they worked. The only "evidence" they offer consists of thirteen spurious affidavits which do not indicate a common scheme or pattern in violation of the FLSA. Notice to Consumer Bankers who worked outside the banking centers in which plaintiffs were employed would be inappropriate and unjustified.

## Conclusion

Based on the foregoing, defendant NationsBank, by counsel, hereby respectfully requests the Court to deny Plaintiff's Motion to Allow Notification to Potential Class Members pursuant to 29 U.S.C. §216(b); and to award such other relief as the Court deems just and proper.

_____

[6]Ms. Brown further contends that "[o]ther managers" did not permit their employees to report overtime, id., but she "fails to give any names and [her] statement is merely unsupported hearsay." Aldred Order, p. 6, at Exhibit C.

This the 18th day of September, 2000.

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
McGuire, Woods, Battle & Boothe LLP
3700 NationsBank Plaza
Charlotte, North Carolina 28280
(704) 373-8999; Facsimile (704) 373-8990

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; Facsimile (954) 463-2444

Counsel for NationsBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing in the above-captioned

proceeding has been served this day by U.S. mail, postage prepaid, upon plaintiffs' counsel as

listed below:

Susan L. Dolin, Esquire
Daniel R. Levine, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the 18th day of September, 2000.

Bruce M. Steen

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.

_____/

### AFFIDAVIT OF JUAN C. VALDEZ SR.

STATE OF MARYLAND     )
                         ) ss:
COUNTY OF MONTGOMERY  )

BEFORE ME, the undersigned authority, on this date personally appeared JUAN C.

VALDEZ SR. who, after first being duly sworn deposes and says:

1.    My name is Juan C. Valdez Sr. I have personal knowledge of the facts recited in

this Affidavit.

2    In or about 1991, I was employed by NationsBank. I was employed by NationsBank

as a Consumer Banker III.

3    In or about December 1997, at which time I worked at NationsBank's Flower Avenue

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards

4    However, since December 1997, the branch manager at NationsBank's Flower

Avenue banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Cecilia Sanders, Emily Harris, and a person named "Sharda" (I cannot recall her last name). These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JUAN C. VALDEZ SR.

SWORN TO AND SUBSCRIBED before me this 20 day of July, 1999, by JUAN C. VALDEZ SR., who is personally known to me, or who produced _____ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:
C2 / 0 2 / 0 4
Acknowledger's Name Stamped,
Typed or Printed

JACQUELINE CAPUTI
Notary Public State of Maryland
Prince George's County
My Commission Expires Feb. 2, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION, ·
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF MARILYN BLACKMON

STATE OF MISSOURI    )
                    ) ss:
COUNTY OF JACKSON   )

    BEFORE ME, the undersigned authority, on this date personally appeared MARILYN

BLACKMON who, after first being duly sworn deposes and says:

    1.    My name is Marilyn Blackmon. I have personal knowledge of the facts recited in

this Affidavit

    2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

    3.    In or about December 1997, at which time I worked at NationsBank's 63 Street

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Patti Peterson, the branch manager at NationsBank's 63 Street banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Patti Peterson would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Lisa Bradley and Debbie Overton. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

MARILYN BLACKMON

SWORN TO AND SUBSCRIBED before me this //ᵗˣ day of _July_, 1999, by MARILYN BLACKMON, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires:
    HAZEL E. NUNN
Acknowledge of Name Stamped
Typed or Printed OF MISSOURI
        Jackson County
My Comm. Expires Mar. 16, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others                        -
                    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

                    Defendants.
_____/

## AFFIDAVIT OF CARI M. FORD

STATE OF MISSOURI       )
                        ) ss:
COUNTY OF ST. LOUIS     )

      BEFORE ME, the undersigned authority, on this date personally appeared CARI M.

FORD who, after first being duly sworn deposes and says:

      1.    My name is Cari M. Ford. I have personal knowledge of the facts recited in this

Affidavit.

      2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

      3.    In or about December 1997, at which time I worked at NationsBank's Olivette

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, the branch manager at NationsBank's Olivette banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for ~~(saw)~~ *Gaus* forty (40) hours regardless of the number of hours worked. *time we'll some wits that we would put our hours on ou*

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Herman Travis, Jennifer Sharp and Deborah Pollard. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_____
CARI M. FORD
2000

SWORN TO AND SUBSCRIBED before me this 12 day of ~~July~~, ~~1999~~, by CARI M. FORD, who is personally known to me, or who produced _____, as identification, and who did take an oath.

_____
Notary Public
My Commission Expires   MARIE G. BADER
                        Notary Public — Notary Seal
                        STATE OF MISSOURI
Acknowledger's Name Stamped, St. Louis County
Typed or Printed   My Commission Expires: March 8, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.  ·

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.

_____/

## AFFIDAVIT OF JOHN BARI

STATE OF CALIFORNIA    )
                      ) ss:
COUNTY OF SANTA CLARA  )

    BEFORE ME, the undersigned authority, on this date personally appeared JOHN BARI

who, after first being duly sworn deposes and says:

    1.    My name is John Bari. I have personal knowledge of the facts recited in this

Affidavit.

    2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

    3.    In or about December 1997, at which time I worked at NationsBank's Yorktown

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.    However, since December 1997, Theodore Gargagliano, the branch manager at NationsBank's Yorktown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Theodore Gargagliano would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN BARI

SWORN TO AND SUBSCRIBED before me this /4ᵈ day of ___July___, 1999, by JOHN BARI, who is personally known to me, or who produced Calif. Driver License as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:
___June 23, 2004___
Acknowledger's Name Stamped,
Typed or Printed



MARIETTA SIBILIA
Commission # 1265262
Notary Public - California
Santa Clara County
My Comm. Expires Jun 23, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF JEFF MOTLEY

STATE OF TEXAS     )
                    ) ss:
COUNTY OF COLLIN  )

BEFORE ME, the undersigned authority, on this date personally appeared JEFF MOTLEY who, after first being duly sworn deposes and says:

1.     My name is Jeff Motley. I have personal knowledge of the facts recited in this Affidavit.

2.     In or about 1996, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3.     In or about December 1997, at which time I worked at NationsBank's Plano banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Shirley Stanley, a NationsBank sales manager, acting from instructions from the North Dallas Administration, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Shirley Stanley would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Terrell Walker. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JEFF MOTLEY

SWORN TO AND SUBSCRIBED before me this 1 7 day of July , 2000, 1999, by JEFF MOTLEY, who is personally known to me, or who produced Texs Drivers L, as identification, and who did take an oath.

Notary Public
My Commission Expires:
11/02/03
Acknowledger's Name Stamped.
Typed or Printed

JONATHAN A. DAMON
Notary Public
State of Texas
My Comm Exp 11-02-03

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF JULIA KOZEL

STATE OF FLORIDA    )
                  ) ss:
COUNTY OF SARASOTA  )

BEFORE ME, the undersigned authority, on this date personally appeared JULIA KOZEL

who, after first being duly sworn deposes and says:

1.     My name is Julia Kozel. I have personal knowledge of the facts recited in this

Affidavit.

2.     In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.     In or about December 1997, at which time I worked at NationsBank's South Venice

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

Retail Marketing Manager

4.     However, since December 1997, Janet Jones, the ~~branch manager~~ at

South Sarasota/Charlotte Region

NationsBank's ~~South Venice banking center~~, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During ~~several~~ meetings with employees, Janet Jones would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit   Although I cannot remember all of their names, I do recall Tracy Blitch. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Julia Kozel
JULIA KOZEL

SWORN TO AND SUBSCRIBED before me this 5 day of July, 1999; by JULIA KOZEL, who is personally known to me, or who produced Florida driver's license as identification, and who did take an oath.

Notary Public
My Commission Expires:

Acknowledger's Name Stamped,
Typed or Printed



TAMMIE R. RIFE
MY COMMISSION # CC 838062
EXPIRES May 18, 2003
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## AFFIDAVIT OF VIRGINIA FRANCOIS

STATE OF TEXAS    )
                    ) ss:
COUNTY OF FORT BEND  )

BEFORE ME, the undersigned authority, on this date personally appeared VIRGINIA

FRANCOIS who, after first being duly sworn deposes and says:

1.    My name is Virginia Francois. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3    In or about December 1997, at which time I worked at NationsBank's Westheimer

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, ~~Barbara Baye,~~ the branch manager at NationsBank's *Westheimer banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, ~~Barbara Baye~~ *Manager* would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Elaina Sanchez. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_Virginia Francois_
VIRGINIA FRANCOIS

SWORN TO AND SUBSCRIBED before me this __3__ day of __June__, 1999, by VIRGINIA FRANCOIS, who is personally known to me, or who produced __D.L.__ (known) as identification, and who did take an oath.

_Marisela E. Rodriguez_
Notary Public
My Commission Expires:
__July Marisela E. Rodriguez__
Acknowledger's Name Stamped,
Typed or Printed

MARISELA E. RODRIGUEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 7-9-2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF MARY F. BOLDEN

STATE OF MARYLAND   )
                    ) ss:
COUNTY OF BALTIMORE  )

      BEFORE ME, the undersigned authority, on this date personally appeared MARY F.

BOLDEN who, after first being duly sworn deposes and says:

      1.    My name is Mary F. Bolden. I have personal knowledge of the facts recited in

this Affidavit.

      2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

      3.    In or about December 1997, at which time I worked at NationsBank's

Randallstown banking center, NationsBank reclassified my position as non-exempt, which

allowed me to be eligible for overtime compensation. As of this date, I was also required to

fill out time cards.

4.      However, since December 1997, Barbara Mullin, the branch manager at NationsBank's Randallstown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.      During branch meetings with employees, Barbara Mullin would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.      Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

MARY F. BOLDEN

SWORN TO AND SUBSCRIBED before me this ___ day of _____, 1999, by MARY F. BOLDEN, who is personally known to me, or who produced _____ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF PAUL C. BARBER

STATE OF FLORIDA    )
                    ) ss:
COUNTY OF SARASOTA  )

    BEFORE ME, the undersigned authority, on this date personally appeared PAUL C.

BARBER who, after first being duly sworn deposes and says:

    1.    My name is Paul C. Barber. I have personal knowledge of the facts recited in this

Affidavit.

    2.    In or about 1996, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

    3.    In or about December 1997, at which time I worked at NationsBank's Southgate

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.      However, since December 1997, Laura Russo, the branch manager at NationsBank's Southgate banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.      During branch meetings with employees, Laura Russo would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.      Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to forty-five (45) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
PAUL C. BARBER

SWORN TO AND SUBSCRIBED before me this 5 day of July , 2000 1999, by PAUL C. BARBER, who is personally known to me, or who produced FT. DRIV. Ld. as identification, and who did take an oath.

_____
Notary Public
My Commission Expires: Jan 7, 2001

_____
Acknowledger's Name Stamped, Typed or Printed

KRISTIN K. CAWTHORNE
MY COMMISSION # CC 891664
EXPIRES: January 7, 2001
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.

_____/

## AFFIDAVIT OF ELIZABETH ANN MELTON

STATE OF GEORGIA    )
                  ) ss:
COUNTY OF GLYNN    )

    BEFORE ME, the undersigned authority, on this date personally appeared ELIZABETH

ANN MELTON who, after first being duly sworn deposes and says:

    1.    My name is Elizabeth Ann Melton. I have personal knowledge of the facts recited

in this Affidavit.

    2    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

    3.    In or about December 1997, at which time I worked at NationsBank's Brunswick

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards

4.    However, since December 1997, Lorrie Ethridge, the branch manager at NationsBank's Brunswick banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Lorrie Ethridge would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Greg Hollis, Julie Wynn, and Francis Bryant. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Elizabeth Ann Melton
(ELIZABETH ANN MELTON)

SWORN TO AND SUBSCRIBED before me this _5ᵗʰ_ day of _July_, 1999, by ELIZABETH ANN MELTON, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Doretha Dunn M. Lismore
Notary Public
My Commission Expires:    Notary Public, Glynn County, Geor
Doretha Lynn M. Lismore    My Commission Expires June 3, 2
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.

_____/

## AFFIDAVIT OF ANGELA MOBLEY

STATE OF GEORGIA   )
                   ) ss:
COUNTY OF FULTON  )

     BEFORE ME, the undersigned authority, on this date personally appeared ANGELA

MOBLEY who, after first being duly sworn deposes and says:

     1.    My name is Angela Mobley. I have personal knowledge of the facts recited in this

Affidavit.

     2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

     3.    In or about December 1997, at which time I worked at NationsBank's Bankhead

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Tamara Lomax, the branch manager at NationsBank's Bankhead banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Tamara Lomax would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

ANGELA MOBLEY

SWORN TO AND SUBSCRIBED before me this 11 day of \\.\., 1999, by ANGELA MOBLEY, who is personally known to me, or who produced \.\ \\ as identification, and who did take an oath.

Notary Public
My Commission Expires: Notary Public Fulton County, Georgia
My Commission Expires
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.
_____/

## AFFIDAVIT OF DIANE KIRKLAND

STATE OF FLORIDA    )
               ) ss:
COUNTY OF POLK     )

    BEFORE ME, the undersigned authority, on this date personally appeared DIANE

KIRKLAND who, after first being duly sworn deposes and says:

    1.     My name is Diane Kirkland. I have personal knowledge of the facts recited in this

Affidavit.

    2.     In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

    3.     In or about December 1997, at which time I worked at NationsBank's South Winter

haven banking center, NationsBank reclassified my position as non-exempt, which allowed me

to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Louise Horne, the branch manager at NationsBank's South Winter haven banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Louise Horne would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty-five (65) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Mickey Barnett. This individual worked hours in excess of forty (40) in given workweeks for which he-did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

DIANE KIRKLAND

SWORN TO AND SUBSCRIBED before me this 7 day of July, 1999, by DIANE KIRKLAND, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires: 09/29/00

Acknowledger's Name Stamped,
Typed or Printed  CC 589229
My Commission Exp. 09-29-2000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF OLGA VALDES

STATE OF FLORIDA   )
                ) ss:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, on this date personally appeared OLGA

VALDES who, after first being duly sworn deposes and says:

1.    My name is Olga Valdes. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Brickell

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Donna Marie Kirlew, the regional manager for consumer bankers, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Donna Marie Kirlew would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
OLGA VALDES

SWORN TO AND SUBSCRIBED before me this 28 day of ___July___, 1999, by OLGA VALDES, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires
Ana Diaz
Commission # CC 876880
Expires Oct. 5, 2003
Bonded Thru
Acknowledged Name Stamped, In-
Typed or Printed

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 98-8632-CIV-DIMITROULEAS

JACQUELINE MINTZ et al.,
on behalf of herself and all
others similarly situated,

Magistrate Judge Johnson

Plaintiffs,

vs.

NATIONSBANK, N.A.,
a national association,

Defendant.

_____/

FILED By _____ D.C.

MAY 0 8 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## ORDER

THIS CAUSE is before the Court upon Defendant's Motion for Extension of

Time [DE 56], Defendant's Motion to Reconsider [DE 57] Order Allowing Notification to

Potential Class Members, Plaintiffs' Motion to Revise Notice to Potential Class

Members [DE 58], and Plaintiffs' Motion for Equitable Tolling of Opt-in Plaintiffs' statute of

limitations [DE 66]. The Court has carefully considered the motions, and is otherwise fully

advised in the premises.

## I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards

Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker I for

defendant Nationsbank. This Court granted Plaintiffs' motion to allow notification to potential

class members under the "opt-in" class action provision allowed under Section 216(b).

Defendant has moved for reconsideration of that order, based upon this Court's February 23,

2000 Order in Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS, as well as an

extension of time to produce to Plaintiffs the mailing list for the potential class members.

Plaintiff Mintz alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Mintz further alleges that Nationsbank supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Nationsbank's record-keeping obligation under the FLSA. Nationsbank denies the allegations and further asserts that it has a policy in place for Consumer Banker I workers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

At the time this Court initially granted the motion for class notification, the Court stated that at least five other persons with the position of Consumer Banker I had opted in to this lawsuit. In reviewing the record as of today, it appears that eight consents to become a party plaintiff were in the record at that time,[1] but since then two of the eight persons have withdrawn their consents,[2] and one additional person may be deceased.[3] Of the five remaining consents, none of these opt-in plaintiffs worked at the same location as Plaintiff Mintz, in Parkland,

---

[1] An additional consent from Traci Briggs-Ratcliff [DE 41] had been withdrawn prior to the Court's September, 1999 ruling.

[2] Lillian Berger [DE 55] and Clytus Turner [DE 67] have withdrawn their consents.

[3] Defendant's counsel reports that Plaintiffs' counsel has advised him that Ms. Pirri is now deceased and her surviving spouse does not intend to pursue her claim. See Footnote 1 to Defendant's Supplement to Defendant's Motion to Reconsider [DE 62].

2

Florida.[4]

## III. MOTION FOR CLASS NOTIFICATION

As discussed in this Court's September 24, 1999 Order, it is settled in the Eleventh

Circuit that a district court has the authority under the FLSA to issue an order requiring notice to

similarly situated persons.  See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562

(11th Cir.1991) (noting a split in the circuits and "concluding that the 'broad remedial purpose of

the Act' is best served if the district court is deemed to have the power to give such notice to

other potential members of the plaintiff class to 'opt-in' if they so desire and by the district

court's exercise of that power under appropriate conditions.") (citations omitted).  Before

determining whether to exercise such power, however, Dybach instructs the district court that it

"should satisfy itself that there are other employees of the department-employer who desire to

'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to

their pay provisions."  Id. at 1567-1568.  If the district court concludes that there are such other

employees, the court then has the discretion to establish the specific procedures to be followed

with respect to such possible opting-in.  Id. at 1568.

The Court now reconsiders its conclusion in its September 24, 1999 Order.  Since that

Order, the Court has had the opportunity to issue rulings in similar cases involving bank tellers

(Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS) and in-store bankers (Perlman,

et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), and has been able to compare and

contrast these rulings with a prior ruling in a similar case involving consumer bankers II, III, and

---

[4] See Consents of Vasquez (Texas) [DE 49]; Dennis [DE 37] (Salisbury, Maryland); Sanchez (Miami) [DE 33]; Van Brandt (Potomac, Maryland) [DE 21]; and Frost (Tamarac and Davie, Florida) [DE 17]; and affidavits of Frost, Van Brandt, and Dennis at DE 45.

IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS). In Perlman and Levine, Nationsbank had a clear policy of exempting all In-Store Bankers and Consumer Bankers II, III and IV from overtime pay. Thus, those individuals were similarly situated. In Aldred, this Court concluded that Plaintiff has not met her burden of showing similarly-situated tellers, as Nationsbank did not exempt all tellers from overtime, but rather left overtime decisions to individual branch mangers.

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers I in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. See Affidavit of Phyliss Kennedy Brown, Exhibit F of Exhibit A to Defendant's Motion for Reconsideration. The Brown affidavit is not sufficient to show that a corporate policy to deny overtime was in place. Rather, the Brown affidavit states that individual managers had the burden to "manage" the overtime while accomplishing a variety of tasks during a period of downsizing. Therefore, it appears that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker I position.

Moreover, Plaintiff Mintz has had ample time to allow for persons to file consents to become party plaintiffs in this case. The record now shows five remaining opt-in plaintiffs, only one of whom even worked in the same state as Mintz, and none worked in the same branch. Therefore, Plaintiffs have not shown that similarly situated persons to Plaintiff Mintz are willing to opt-in to this case.

4

As to the second step of Dybach, Defendants argue that Plaintiffs have not shown that Consumer Banker I employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that individual differences will certainly exist as to the hours, duration and location worked by individual plaintiffs, and concludes that the affidavits and deposition transcripts provided by Plaintiff Mintz are not sufficient to satisfy this Court that there are other employees of Nationsbank who are similarly situated with respect to their job requirements and with regard to their pay provisions. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members); Mertz v. Treetop Enterprises, Inc., 1999 U.S. Dist. LEXIS 18386 (N.D.Ala. 1999).

As stated above, the Court notes that Plaintiff Mintz does not dispute that Nationsbank had a written policy of compensating non-exempt employees who worked and recorded in excess of forty hours in a workweek an overtime wage rate of one and one-half times the regular hourly rate. Rather, Plaintiff Mintz alleges there was an unwritten policy of preventing non-exempt employees from reporting such overtime hours. Upon review of the materials submitted by Plaintiff, and for the reasons expressed above, the Court will not permit the widespread notification of numerous current and former employees of Nationsbank of the present action under Dybach, as this Court finds that Plaintiff Mintz has not met her burden of showing similarly-situated tellers.

5

IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Extension of Discovery Deadline [DE 54] is hereby **DENIED as moot**, given this Court's Order of September 24, 1999 [DE 53];

2.  Defendant's Motion to Reconsider [DE 57] Order Allowing Notification to Potential Class Members, is hereby **GRANTED**. The Court has reconsidered and hereby **VACATES** the relevant part of its Order of September 24, 1999 [DE 53] related to notification of potential class members. This case will now proceed based on at most the particular circumstances of the five remaining opt-in consents listed in footnote 4 above;

3.  Defendant's Motion for Extension of Time [DE 56] is hereby **DENIED as moot.**

4.  Plaintiffs' Motion to Revise Notice to Potential Class Members [DE 58] is hereby **DENIED as moot;**

5.  Plaintiffs' Motion for Equitable Tolling of Opt-in Plaintiffs' statute of limitations [DE 66] is hereby **DENIED as moot.**

6.  The Court will extend some pretrial deadlines to allow the parties to complete discovery and pretrial motions practice prior to trial in this case;

7.  The discovery deadline is hereby extended until June 2, 2000 and the substantive motion deadline is hereby extended until June 16, 2000;

8.  The pretrial stipulation deadline and motions in limine deadline is now August 11, 2000, while responses to motions in limine and proposed jury instructions shall be due August 21, 2000.

9.  This case is reset for Calendar Call at 10:00am on Friday, August 25, 2000, and for trial

6

the two-week period beginning 9:00am on Monday, August 28, 2000;

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this _____ day of May, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

copies to:   .

Daniel R. Levine, Esq./Susan Dolin, Esq.
Caryl L. Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq.

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-7547-CIV-DIMITROULEAS

JULIET ALDRED, on behalf of
herself and all others similarly
situated,

    Plaintiffs,

vs.

NATIONSBANK, N.A.,

    Defendant.

_____/

FILED by _____ D.C.

SEP 0 2 1998

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

## OMNIBUS ORDER

THIS CAUSE is before the Court upon the following motions:

1. Plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29

U.S.C. § 216(b) [DE 29];

2. Plaintiff's Motion to Correct Scrivener's Error in Complaint [DE 31], which the Court

construes as the Plaintiff's Motion for Leave to Amend; and

3. Plaintiff's Motion to Reconsider and Objections to Magistrate Judge's June 23, 1998

Order [DE 46];

The Court has carefully considered the motions and is otherwise fully advised in the

premises.

### I. BACKGROUND

The plaintiff, Juliet Aldred, a former employee and bank teller with Nationsbank, filed

the instant action asserting a claim for unpaid overtime under the Fair Labor Standards Act, 29

U.S.C. § 216, ("FLSA") on behalf of herself and all others similarly situated. Aldred alleges that

she and other similarly situated current and former non-exempt employees worked the number of

hours required of them, many times in excess of forty (40), but were not paid overtime. Aldred further alleges that Nationsbank supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed the plaintiff that she was not allowed to record the number of hours she worked in excess of forty (40), both in clear violation of Nationsbank's record-keeping obligation under the FLSA. Nationsbank denies the allegations and further asserts that it has a policy in place that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40). To date, no other plaintiffs have opted-in the present action as permitted by 29 U.S.C. § 216(b).[1]

## II. DISCUSSION

### A. Notification of Putative Class Members

Aldred has filed the instant motion seeking leave of this Court to notify all potential class members, pursuant to 29 U.S.C. § 216(b), that they have the right to opt-in the present action. Aldred has defined the potential class, without any geographic limitation, as "all current and former non-exempt employees" of Nationsbank.

Section 216(b) of the FLSA provides that an action for unpaid overtime compensation may be maintained by "any one or more employees for and on behalf of [themselves] . . . and other employees similarly situated." It is settled in this Circuit that a district court has the authority under the FLSA to issue an order requiring notice of an action to such similarly situated persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991)

---

[1] The Court also has a separate class action. Levine v. Nationsbank, Case No. 98-6306 (S.D. Fla.), brought by consumer banker employees, who were classified as exempt employees, against Nationsbank for unpaid overtime compensation under the FLSA. These plaintiffs are also represented by the same attorneys representing Aldred. In the Levine case, twenty-five individuals had already elected to opt-in prior to this Court's resolution of the plaintiffs' motion to allow notification of potential class members.

(noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such discretion, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. The Eleventh Circuit has held that while plaintiffs bear the burden of demonstrating a "reasonable basis" for a class-wide action, the burden "is not heavy." Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996); Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Dybach, 942 F.2d at 1568.

Turning to the first step of the Dybach test, Aldred has provided no support that any other non-exempt employees would desire to opt-in to the present action. Rather, Aldred asserts that she needs some discovery to obtain the names of other similarly situated employees in order to ascertain whether they would wish to opt in. The Court will address the discovery issue below. At this point in the litigation, however, the Court is not satisfied that there are other non-exempt employees who desire to opt-in this case.

Turning to the second step of the Dybach test, the parties dispute whether there are other similarly situated employees with respect to their job requirements and with regard to their pay provisions. Specifically, Aldred argues that each non-exempt employee who performed services for Nationsbank on or after December 15, 1994, three years prior to the filing of the instant

3

lawsuit,[2] is a similarly situated employee. Aldred also asserts she has served an interrogatory upon Nationsbank requesting the identity of such potential class members.

The defendants respond by asserting the potential class is overbroad and such potential class members are not similarly situated to Aldred. Specifically, Nationsbank argues that Aldred's employment position code was one of 228 non-exempt job codes used in Florida and there were 899 different job codes for non-exempt personnel nationwide. Further, Nationsbank notes as of December 31, 1997, there were 4,991 non-exempt employees in Florida and 52,353 non-exempt employees nationwide.

In support of her motion, Aldred has submitted an affidavit from herself, an affidavit from Jason Royal, a former consumer banker employee with Nationsbank, and a transcript of a deposition of Cindy Haimowitz, a Nationsbank Regional Sales Support Manager. The Court finds that these affidavits and transcripts, along with the other support provided by Aldred, are not sufficient to satisfy this Court that there are other employees of Nationsbank who are similarly situated with respect to their job requirements and with regard to their pay provisions. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

At the outset, the Court notes that Aldred does not dispute that Nationsbank had a written policy of compensating non-exempt employees who worked and recorded in excess of forty

---

[2] The Court notes that the statute of limitations continues to run with respect to any individual who may wish to opt-in to the present action until such individual files a written consent to specifically opt-in to the present action. Grayson v. K Mart Corporation, 79 F.3d 1086, 1106 (11th Cir. 1996).

4

hours in a workweek an overtime wage rate of one and one-half times the regular hourly rate.
Rather, Aldred alleges there was an unwritten policy of preventing non-exempt employees from
reporting such overtime hours. At this point, Aldred has not provided any support that this
alleged unwritten policy was either a corporate policy from the upper management of
Nationsbank or a widespread practice among several Nationsbank's branches. Moreover, the
only allegations to date are by Aldred that this practice occurred in the branches where she
worked. Therefore, the Court finds that Aldred has failed to provide any support that there were
other similarly situated non-exempt employees who were subjected to the same unwritten
practices which violate the FLSA, other than at the branches where she worked.

The Court further notes that Aldred was employed as a bank teller, which was only one of
numerous categories of non-exempt employees. Aldred has provided no support for the
proposition that all non-exempt employees, regardless of the job description and requirements,
are similarly situated to bank tellers. The Court notes that the numerous categories of non-
exempt jobs would encompass different job responsibilities, salaries, and locations. Most
importantly, in light of the allegation of an unwritten policy of supervisors prohibiting employees
from reporting overtime hours, the various non-exempt employees would report to different
supervisors. Therefore, the Court finds that at a minimum, any potential class should be limited
to Aldred's employment position of bank teller.

Turning to the affidavits and transcripts, Aldred's affidavit states that the practices
complained of occurred "no matter at which branch [she] worked." Aldred states she was
employed by Nationsbank from January 1996 to November 1997, or approximately 100 weeks.[3]

---

[3] Nationsbank argues that Aldred admitted in her deposition that she did not work any
overtime at the Coral Ridge or Deerfield branches. Aldred attempts to refute this argument. For

5

Although not stated in her affidavit, Aldred's complaint estimates the total number of overtime hours she worked (in excess of forty hours each week) totaled only fifty hours for the entire period she was employed by Nationsbank, or approximately one hour of overtime every other week. This is insufficient to establish a widespread practice of directing employees not to record and be compensated for hours which the employees actually worked. Further, while Aldred's affidavit also states there were other non-exempt persons she knew of who were not permitted to record their overtime hours, she has not provided affidavits from these individuals nor have any of these individuals sought to opt-in to the present action. See Tucker v. Labor Leasing, Inc., 872 F.Supp. 941, 948-949 (M.D. Fla. 1994).

Moreover, neither the affidavit of Jason Royal nor the transcript of Cindy Haimowitz provide much additional support. Jason Royal was an exempt employee who states that several non-exempt employees complained to him that they were required to work overtime but were not allowed to record their overtime hours. However, he fails to give any names and his statement is merely unsupported hearsay. Further, the testimony of Cindy Haimowitz was that Nationsbank prohibited the practices complained of by Aldred. She testified that she became aware of only one instance where an employee worked more than forty hours without recording the overtime. However, this employee received compensation in the form of additional vacation (comp time) in another week. This isolated instance is certainly not sufficient to establish the widespread practice alleged by Aldred.

Finally, Aldred asserts that she has been denied discovery concerning other potential class members, which has hampered her ability to establish the existence of other similarly

---

purposes of the present motion, the Court assumes that Aldred had unreported overtime at all branches where she worked.

6

situated employees. This argument has some merit, and as discussed below, the Court will permit some limited discovery. At this stage of the proceedings, however, it appears that the plaintiff is merely on a fishing expedition. Therefore, the Court will not permit the widespread notification of numerous current and former employees of Nationsbank of the present action without the sufficient showing under Dvbach.

B. Motion to Correct Scrivener's Error/ Motion for Leave to Amend Complaint

Aldred has filed a motion to correct scrivener's error asserting the original complaint contained scrivener's errors she now seeks to correct. Nationsbank has responded asserting the scrivener's errors amount to an attempt to amend the complaint. This Court agrees, and therefore, the Court will construe the motion as a motion for leave to amend.

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires." In construing Rule 15(a), the Supreme Court has held that

> In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

Forman v. Davis, 371 U.S. 178, 182 (1962).

Nationsbank asserts that the time period for filing any amendments passed one month prior to the filing of the present motion, and therefore, any amendment to the complaint would be untimely. The Court notes, however, that the case is not set for trial until November 1998. Accordingly, the Court will grant Aldred leave to file the Corrected Complaint as an Amended Complaint.

7

## C. Discovery Objections

On June 23, 1998, Magistrate Judge Linnea R. Johnson issued an Order granting Aldred's

Motion to Compel in all respects except for the following two interrogatories:

6. Please identify all employees (including former employees) who were terminated or resigned from employment with Defendant, NATIONSBANK, for the last three (3) years who held the same or similar position Plaintiff held with Defendant, and for each, provide their last known residential address and telephone number.

10. Please identify every past and present "Teller" of Defendant, who worked for Defendant since December 15, 1994.

Aldred asserts this information is necessary to determine whether other similarly situated employees exist. To a limited extent, this Court agrees.

As noted above, the Court finds that any potential class members are limited to current or former bank tellers. Further, the Court notes that Aldred has agreed to limit her discovery requests to branches located in Broward County, Florida. The Court notes that Aldred has provided some support for her allegations that the complained of practices occurred at the branches where she worked as a teller. The Court further notes that former and current tellers at these branches may have relevant information concerning Aldred's own claim. Therefore, the Court will permit limited discovery of tellers who were employed at the same branches where Aldred worked. This information should also provide Aldred with sufficient information to find additional plaintiffs to opt-in and meet the requirements of Dybach, if possible.

### III. CONCLUSION

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b) [DE 29] is hereby **DENIED**, without prejudice, for leave to refile at a later point if Aldred can meet the requirements for such notification under Dvbach.

2. Plaintiff's Motion to Correct Scrivener's Error in Complaint [DE 31], which the Court construes as the Plaintiff's Motion for Leave to Amend, is hereby **GRANTED** and the Plaintiff's Corrected Complaint [annexed to DE 31] is deemed filed; and

3. Plaintiff's Motion to Reconsider and Objections to Magistrate Judge's June 23, 1998 Order [DE 46] is hereby **GRANTED** in part and **DENIED** in part as follows:

A. Within fifteen (15) days of the date of this Order, the Defendant shall respond to Plaintiff's Interrogatories 6 and 10 solely with respect to all bank tellers who worked at the same branches as Aldred after December 15, 1994; and    *Sept 17, 1998*

B. In all other respects, Plaintiff's Motion to Reconsider and Objections to Magistrate Judge's June 23, 1998 Order [DE 46] is hereby **DENIED**;

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida, this _____ day of September, 1998.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Susan L. Dolin, Esq.
Daniel R. Levine, Esq.
Richard F. Kane, Esq.
Gary K. Harris, Esq.
Michael T. Burke, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,
                    Defendant.

_____

## AFFIDAVIT OF JUNE C. SUCH

June C. Such, being first duly sworn, deposes and says as follows:

1.    I am currently employed as a paralegal by the law firm defending the Defendant

in the above-captioned action, *McGuireWoods LLP* ("McGuireWoods"). I am authorized by

McGuireWoods to make this affidavit.

2.    I make this affidavit based upon my personal knowledge and my review of both

the docket and Consents to Become Party Plaintiffs filed to date in the following cases: (a)

Beverly Levine, et al. v. NationsBank, N.A., Case No.: 98-6306-CIV-Dimitrouleas *("Levine")*;

and (b) Roxanna L. Escudero v. Bank of America Corporation, Case No.: 00-06145-CIV-

Dimitrouleas *("Escudero")*.

3.      The chart appended hereto as Exhibit "1" lists all of the plaintiffs who have opted

into the *Escudero* action who also participated as party plaintiffs in the *Levine* action.

Further this affiant sayeth not.

June C. Such

STATE OF NORTH CAROLINA

COUNTY OF LINCOLN

I, Elizabeth N. Collins, a Notary Public for said county and state, do hereby certify that

JUNE C. SUCH, in her capacity as Legal Assistant for the Law Firm of McGuireWoods LLP,

personally appeared before this day and acknowledged the due execution of the foregoing

affidavit.

WITNESS MY HAND AND OFFICIAL SEAL, this the 15th day of September 2000.

Elizabeth N. Collins
Notary Public

{Official Seal}

My Commission Expires: June 16, 2002

Escudero v. NationsBank
Chart of Opt-Ins
United States District Court, Southern District of Florida, Fort Lauderdale Division
00-06145-CIV-FERGUSON

### EXHIBIT 1

| NAME | Levine Docket No. and Filing Date | Levine DOCKET ENTRY DATE |
|---|---|---|
| 1.   Janet E. Meier | 126 - 10/16/98 | 10/22/98 |
| 2.   Sheri Thomas | 725 - 11/6/98 | 11/13/98 |
| 3.   Olga Valdez | ** | 10/07/98 ** |
| 4.   Cindy C. MacDonald | 1307 - 12/14/98 | 12/16/98 |
| 5.   Lyndia Cox | 328 - 10/19/98 | 10/26/98 |
| 6.   Elke G. Adams | 605 - 10/30/98 | 11/03/98 |
| 7.   Guilbert M. Parker | 151 - 10/16/98 | 10/22/98 |
| 8.   June McKinley | 787 - 11/12/98 | 11/17/98 |
| 9.   Stephanie Dantos | 332 - 10/19/98 | 10/26/98 |
| 10.  Janice M. Cole | 72 – 10/18/98 | 10/19/98 |
| 11.  Riitta Silverman | 197 – 10/19/98 | 10/23/98 |
| 12.  Peggy J. Biggs | 453 – 10/22/98 | 10/26/98 |
| 13.  Julia L. Waddington | 529 – 10/26/98 | 10/28/98 |
| 14.  Deborah J. Agnew | 78 – 10/15/98 | 10/20/98 |
| 15.  Elizabeth Ann Melton | 644 – 10/30/98 | 11/03/98 |
| 16.  Diane M. Kirkland | 1239 – 12/14/98 | 12/15/98 |
| 17.  Anastasia Monroe | 339 – 10/19/98 | 10/26/98 |
| 18.  Alex L. Harris | 304 – 10/19/98 | 10/23/98 |
| 19.  Patricia B. Murray | 317 – 10/19/98 | 10/23/98 |
| 20.  Leslie Slater Hill | 137 – 10/16/98 | 10/22/98 |
| 21.  Deborah A. Pye-Lee | ? – 01/07/99 | 01/14/99 |
| 22.  Adelia Smith | 356 – 10/22/98 | 10/26/98 |
| 23.  Paul C. Barber | 329 – 10/19/98 | 10/26/98 |
| 24.  Julia Kozel | 204 – 10/19/98 | 10/23/98 |
| 25.  Harold L. Willis | 1321 – 12/14/98 | 12/16/98 |
| 26.  James Copeland | 649 – 10/30/98 | 11/03/98 |
| 27.  Miriam A. Osavio (a/k/a Penick) | 628 – 10/29/98 | 11/03/98 |
| 28.  Christopher J. Coleman | 679 – 11/3/98 | 11/4/98 |
| 29.  Sally M. Savage | 417 – 10/22/98 | 10/26/98 |
| 30.  Samuel D. Washington | 402 – 10/22/98 | 10/26/98 |
| 31.  Eloise M. Batts | 1196 – 12/11/98 | 12/15/98 |
| 32.  Dianne D. Dismukes | 1395 – 12/14/98 | 12/17/98 |
| 33.  Virginia Francois | 1483 – 12/22/98 | 12/31/98 |
| 34.  Tracie R. Lappin-Blitch | 315 – 10/19/98 | 10/23/98 |
| 35.  Kathleen M. Stuchbery-Martinez | 97 – 10/16/98 | 10/20/98 |
| 36.  Margaret A. Buchanan | 446 – 10/22/98 | 10/23/98 |
| 37.  Traci B. Ratcliff | 1463 – 12/16/98 | 12/29/98 |
| 38.  Melanie E. Rogers | 298 – 10/19/98 | 10/23/98 |
| 39.  Jeff Motley | 293 – 10/19/98 | 10/23/98 |
| 40.  Donna Dickerson | 412 – 10/22/98 | 10/26/98 |
| 41.  Cari M. Ford | 1009 – 12/3/98 | ? |
| 42.  Jennie Pumphrey | 578 – 10/27/98 | 10/30/98 |
| 43.  Kathy Foster Andrews | 785 – 11/12/98 | 11/17/98 |
| 44.  Marilyn D. Blackmon | 1337 – 12/14/98 | 12/17/98 |

| NAME | Levine Docket No. and Filing Date | Levine DOCKET ENTRY DATE |
|------|------|------|
| 45. Bryan K. Crowder | 1002 – 12/1/98 | 12/3/98 |
| 46. Angela Wilson | 96 – 10/16/98 | 10/20/98 |
| 47. Peggy H. Lee | 997 – 12/1/98 | 12/3/98 |
| 48. Laurie K. DuPont | 438 – 10/22/98 | 10/26/98 |
| 49. Katherine B. Kennedy | 946 – 11/25/98 | 12/2/98 |
| 50. Fabiola Stewart | 88 – 10/16/98 | 10/20/98 |
| 51. Juan C. Valdez | 1474 – 12/21/98 | 12/31/98 |
| 52. Angela Mobley | 581 – 10/27/98 | 10/30/98 |
| 53. Mary F. Bolden | 458 – 10/22/98 | 10/26/98 |
| 54. John Bari | 663 – 10/30/98 | 11/04/98 |
| 55. Juan Carlos Del Valle | 1384 – 12/14/98 | 12/17/98 |
| 56. Carolyn Walker | 281 – 10/19/98 | 10/23/98 |
| 57. Lisa Beach | 505 – 10/23/98 | 10/27/98 |
| 58. Wendy Louderback | 672 – 10/30/98 | 11/04/98 |
| 59. Steven Richardson | 1541 – 01/06/99 | 01/08/99 |
| 60. Antoinette G. Queen | 320 – 10/19/98 | 10/23/98 |
| 61. Annette Armstrong | 1014 – 12/03/98 | 12/04/98 |
| 62. Mary Rose Estrada | 569 – 10/27/98 | 10/30/98 |
| 63. Debra Elias | 690 – 11/03/98 | 11/04/98 |
| 64. Tempy Aguilar-DeMarco | 212 – 10/19/98 | 10/23/98 |
| 65. Ron Valdez | 892 – 11/19/98 | 11/20/98 |
| 66. Deana B. Justice | 1194 – 12/11/98 | 12/15/98 |
| 67. Suzanne Czwojdak (last name is Alsafi) | 678 – 11/03/98 | 11/04/98 |
| 68. Marilyn Barnes | 181 – 10/19/98 | 10/23/98 |
| 69. Lillian Moreno a/k/a Vaccato | 1504 – 12/17/98 | 12/17/98 |
| 70. Patricia J. Wood | 363 – 10/22/98 | 10/26/98 |
| 71. Lily Rubenstein | 631 – 10/29/98 | 11/03/98 |
| 72. Susie S. Reynolds | 1193 – 12/11/98 | 12/15/98 |
| 73. Jeffrey Scott Taylor | 1160 – 12/11/98 | 12/14/98 |
| 74. Rodney Hensley | 1092 – 12/08/98 | 12/09/98 |
| 75. Karen Woreschinski | 506 – 10/23/98 | 12/27/98 |
| 76. Dayton J. Pehl | 266 – 10/19/98 | 10/23/98 |
| 77. Joe J. Northcutt | 609 – 10/30/98 | 11/03/98 |
| 78. Elizabeth A. Langley | 792 – 11/12/98 | 11/17/98 |
| 79. Nettie Parks | 196 – 10/19/98 | 10/23/98 |
| 80. Stephanie M. Strozier | 552 – 10/27/98 | 10/30/98 |
| 81. Karen G. Greene | 1081 – 12/08/98 | 10/09/98 |
| 82. Philip M. Lee, Jr. | 244 – 10/19/98 | 10/23/98 |
| 83. Henry David Calvillo | 265 – 10/19/98 | 10/23/98 |
| 84. Sherry E. Fyffe | 475 – 10/22/98 | 10/26/98 |
| 85. Michelle A. Barnett | 407 – 10/22/98 | 10/26/98 |
| 86. Tina R. Albritton | 437 – 10/22/98 | 10/26/98 |
| 87. Joseph A. Sierra | 650 – 10/30/98 | 11/03/98 |
| 88. Barbara Fleming | 593 – 10/28/98 | 10/30/98 |
| 89. Joyce A. Hardy | 122 – 10/22/98 1122 – 12/09/98 | 10/22/98 12/14/98 |
| 90. Linda H. Grant | 292 – 10/19/98 | 10/23/98 |
| 91. Carrie H. Barnett | 201 – 10/19/98 | 10/23/98 |
| 92. Andrea M. Cordell-Proper | 1292 – 12/14/98 | 12/06/98 |
| 93. Todd A. Hill | 234 – 10/19/98 | 10/23/98 |
| 94. Evans Yancey | 817 – 11/12/98 | 11/17/98 |

| NAME | Levine Docket No. and Filing Date | Levine DOCKET ENTRY DATE |
|---|---|---|
| 95.  Patrick A. Banks | 659 – 10/30/98 | 11/04/98 |
| 96.  Mary Howard | 603 – 10/30/98 | 11/03/98 |
| 97.  Barbara W. Wells | 1540 – 1/6/99 | 1/8/99 |
| 98.  Candice M. Davis-Dunn | 77 – 10/15/98 | 10/20/98 |
| 99.  Anita S.A. Parial | 1342-12/14/98 | 12/17/98 |
| 100. Nancy E. German | 979-11/27/98 | 12/3/98 |
| 101. David Perlmutter | 418-10/22/98 | 10/26/98 |
| 102. JoAnn Skinner | 183-10/19/98 | 10/23/98 |
| 103. M. Christine Guerin - Davidson | 490-10/22/98 | 10/27/98 |
| 104. William Smith | 580-10/27/98 | 10/30/98 |
|  | 1223-12/14/98 | 12/15/98 |
| 105. Irma W. Powell | 548-10/27/98 | 10/30/98 |
| 106. Danielle L. Magan | 704-11/03/98 | 11/04/98 |
| 107. Willie B. Brice | 641-10/30/98 | 11/03/98 |
|  |  |  |
|  |  |  |

** - Plaintiff Olga Valdes contends she was added to the *Levine* docket on this date.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

           Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

           Defendant.

## **AFFIDAVIT OF JOYCE BUTLER**

Joyce Butler, being first duly sworn, deposes and says as follows:

1.    I am currently employed by the Defendant in the above-captioned action (the "Bank") as Loan Processor for the Montgomery/Frederick, Maryland Region. Prior to my promotion to this position in August of this year, I served as Vice President and Personnel Manager for the Bank. I am authorized by the Bank to make this Affidavit on its behalf.

2.    I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records.

3.    The Bank has employed Juan C. Valdez, Sr. as a Consumer Banker III/Senior Personal Banker since February 1, 1994. Mr. Valdez's current title is "Senior Personal Banker", as all Consumer Banker III and IV positions were so renamed by the Bank on September 1, 2000. The Bank reclassified Mr. Valdez's Consumer Banker III/Senior Personal Banker position

as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Valdez reported 19.75 hours of overtime on the time records he submitted to the Bank in 1998. Mr. Valdez reported 17.5 hours of overtime on the time records he submitted to the Bank in 1999, and between January 1 and August 31, 2000. The Bank's payroll register also indicates that the Bank paid Mr. Valdez overtime pay totaling $372.79 during 1998 and $336.96 during 1999 and 2000.

4.    The Bank employed Cari M. Ford as a Consumer Banker III from January 1, 1997 through January 31, 2000. The Bank reclassified Ms. Ford's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Ford reported 377.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Ford reported 232.5 hours of overtime on the time records she submitted to the Bank in 1999, through January 1 and January 31, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Ford overtime pay totaling $9,224.98 during 1998 and $5,434.78 during 1999 and 2000.

5.    The Bank employed John Bari as a Consumer Banker II from November 3, 1997 through June 22, 1998. The Bank reclassified Mr. Bari's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Bari reported 52.50 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Bari a total of $814.91 in overtime pay during 1998.

6.    The Bank employed Virginia Francois as a Consumer Banker III from September 1, 1996 through October 12, 1999. The Bank reclassified Ms. Francois' Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my

2

review of the Bank's payroll register, Ms. Francois reported 99.75 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Francois reported 20 hours of overtime on the time records she submitted to the Bank in 1999. The Bank's payroll register also indicates that the Bank paid Ms. Francois overtime pay totaling $2,078.17 during 1998 and $408.24 during 1999 and 2000.

7.      The Bank employed Mary F. Bolden as a Consumer Banker III from July 1, 1996 through April 18, 2000. The Bank reclassified Ms. Bolden's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Bolden reported 7.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Bolden reported 36.7 hours of overtime on the time records she submitted to the Bank in 1999, and January 1 through April 18, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Bolden overtime pay totaling $143.58 during 1998 and $768.98 during 1999 and 2000.

8.      The Bank employed Paul Barber as a Consumer Banker II from December 1, 1996 through April 23, 1998. The Bank reclassified Mr. Barber's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Barber reported 21.25 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Barber a total of $331.64 in overtime pay during 1998.

9.      The Bank employed Elizabeth Ann Melton as a Consumer Banker II from December 16, 1997 through January 12, 1999. Ms. Melton requested a leave of absence beginning September 10, 1998, which leave of absence was extended through her termination date of January 12, 1999. The Bank reclassified Ms. Melton's Consumer Banker II position as

3

non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Melton reported 155.75 hours of overtime on the time records she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Melton a total of $2,483.13 in overtime pay during 1998.

10.    The Bank employed Diane Kirkland as a Consumer Banker II from December 16, 1993 through March 13, 1998. The Bank reclassified Ms. Kirkland's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kirkland reported 11.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kirkland a total of $170.20 in overtime pay during 1998.

11.    The Bank employed Angela Mobley as a Consumer Banker III from June 30, 1997 through February 25, 1998. The Bank reclassified Ms. Mobley's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Mobley reported 49.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Mobley a total of $990.99 in overtime pay during 1998.

12.    The Bank employed Julia Kozel as a Consumer Banker III from December 1, 1995 through August 31, 1998. The Bank reclassified Ms. Kozel's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kozel reported 41 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kozel a total of $979.17 in overtime pay during 1998.

13.    The Bank employed Marilyn Blackmon as a Consumer Banker IV from March 1, 1997 through March 15, 1998. The Bank reclassified Ms. Blackmon's Consumer Banker IV position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Blackmon reported 66.75 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Blackmon a total of $1,457.79 in overtime pay during 1998.

14.    The Bank's personnel records indicate that Olga Valdes was only employed as a Consumer Banker II from September 15, 1995 through April 30, 1996. After that date, Ms. Valdes was employed as a Relationship Associate in the Consumer International Banking Group until the end of her employment tenure with the Bank on September 11, 1998.

Further this affiant sayeth not.

Joyce Butler

STATE OF ___Virginia___

COUNTY OF ___Fairfax___

To Wit:

    The foregoing Affidavit was personally subscribed and sworn to before me,

___Carol Kobustreen___, a Notary Public for the above-referenced

jurisdiction, on September 15th, 2000 by JOYCE BUTLER.

Notary Public

(Official Seal)

My Commission Expires:  April 30, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JULIET ALDRED, on behalf of
herself and all others similarly
situated.

CASE NO. 97-7547-CIV-UNGARO- BENAGES

Plaintiff,

v.

NATIONSBANK OF FLORIDA, N.A.,
a national associates,

Defendant

## AFFIDAVIT

1.      I am Jill Borsky. I am a personnel generalist for NationsBank in the Northeast
Broward Region. Prior to that, I was the personnel generalist for NationsBank in the East
Broward Region. I am aware of NationsBank's policies and procedures concerning the payment
of overtime compensation, the keeping of timecards and other general personnel matters. I am
aware of the lawsuit involving Juliet Aldred and NationsBank concerning the alleged violation
of the Fair Labor Standards Act. I have been deposed by Plaintiff's attorney in a separate case
involving related issues.

2.      I have been informed and I can verify that currently in Broward County there
are 714 active tellers in the NationsBank system as of 1 May, 1998. Also, as of that date, from
January , 1998, 110 tellers have terminated their positions. For the State of Florida, there are
5,599 total tellers and to date, 828 have terminated their position. As of the year-end of 1997
the turnover rate for tellers in Broward County has been 53 8%. Florida wide the turnover rate
for tellers has been 46.7%.

3      Currently in Broward County, there are over 90 NationsBank individual
banking centers. Each banking center manager and a teller coordinator  The teller coordinator

is the direct supervisor of the other tellers who work in the bank. The banking center manager controls personnel issues, hours worked and general management of each banking center. The banking center manager at each banking center is charged with the responsibility for staffing and implementing bank policy. NationsBank's pay policy has been that overtime must be calculated on a completed workweek (Monday - Sunday) and is paid at time and one half for hours worked over forty (40). Associates to include tellers are encouraged to accurately complete their "in and out" times on a daily basis. Each week the associates should total the daily hours and record the results in weekly blocks. At the end of the pay period the associates should initial the timecard and return the timecard to the supervisor. Supervisors review the card for accuracy. Individual overtime is authorized and managed at the direct supervisor and banking center manager level.

Jill Borsky

STATE OF FLORIDA
COUNTY OF BROWARD

SWORN to and subscribed before me
this the ___6___ day of _May_, 1998.

Notary Public                (SEAL)

DEBORAH D. COOK
MY COMMISSION # CC 541272
EXPIRES: June 20, 2000
Bonded Thru Notary Public Underwriters

## TIMECARDS
(Timecards cont.)

o **Distribution:**   The timecard for an upcoming pay period will be distributed with the pay check or deposit advice each payday (i.e., the card for the 16th - 31st will be received on the 15th).

o **Deadlines:**   Timecards should be received by the Payroll Department by Payroll cutoff (refer to schedule in the Introduction). Any cards received after cutoff will be processed the following pay period.

**EXCEPTION HOURS:** Exception hours are other than normally scheduled and are defined as additional straight time, ovbertime, absence without pay and worked holiday hours.

o **Additional Straight Time:**   Any hours worked over those regularly scheduled (as noted in the Sunday blocks on the Part-time Current card) and less than 40 are paid as additional straight time.

o **Overtime:**   Must be caculated on a completed work week (Monday - Sunday) and is paid at time and a half for hours worked over 40.

o **Worked Holiday:**   When an associate works on a paid holiday, the hours regularly scheduled for that day sould be recorded on the " Regular"

Page 22.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JACQUELINE MINTZ, on behalf
of herself and all others
similarly situated,

CASE NO.: 98-8632-CIV-DIMITROULEAS
Magistrate Judge Vitunic

Plaintiff,

vs.

NATIONSBANK, N.A.,
a national association

Defendant.
_____/

## AFFIDAVIT OF PHYLLIS KENNEDY BROWN

STATE OF MARYLAND        )
                         ) SS:
COUNTY OF PRINCE GEORGE'S )

BEFORE ME, the undersigned authority, on this date personally appeared PHYLLIS KENNEDY BROWN, who, after first being duly sworn deposes and says:

1.    My name is PHYLLIS KENNEDY BROWN.

2.    I have personal knowledge of the facts recited in this Affidavit.

3.    Prior to September 1, 1995, I was employed as a manager by NationsBank, N.A. at the Seat Pleasant, Maryland branch.

4.    At one point while I was a manager, we had a managers' meeting at which it was announced that all Consumer Bankers, regardless of their level, i.e. I-IV, were expected to do telemarketing in the evenings. I opposed this measure, because I knew that NationsBank did not want to pay its employees overtime. I voiced my opposition at the meeting, stating that to require the Consumer Bankers to work without paying them overtime, at least those who were classified as non-exempt, was against the law. I was told, "You are the manager. Manage it."

5.    I refused to permit Consumer Bankers working under my direction to work overtime without being paid for it. I attempted to schedule them so that they would not work overtime and still get their telemarketing done, but it was very difficult because NationsBank had just gone through a downsizing and we did not have sufficient people to get all of the work done without having employees work overtime at least occasionally.

6.    NationsBank put the burden on the individual managers to "manage" the overtime but still have the Consumer Bankers work evenings doing telemarketing. NationsBank made us managers feel threatened that our jobs were in jeopardy if we paid overtime or let the employees claim overtime. Despite this, however, some managers, particularly the more experienced managers such as me, saw to it that employees who worked overtime were paid overtime. Other managers, however, did not allow their employees to report overtime, nor were the employees paid for the overtime.

7.    After I protested NationsBank's directive, I was demoted to a Consumer Banker IV on September 1, 1995.

Further Affiant Sayeth Naught.

PHYLLIS KENNEDY BROWN

SWORN TO AND SUBSCRIBED before me this $\underline{21}$ day of $\underline{October}$ 1998, by PHYLLIS KENNEDY BROWN, who is personally known to me, or who produced $\underline{Maryland\ Licence}$ as identification, and who did/did not take an oath.

Notary Public, State of Maryland
My Commission Expires:

KEITH FORNEY
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 26, 1999

Acknowledger's Name Stamped,
Typed or Printed