UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

            Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,
            Defendant.



## NATIONSBANK'S MOTION FOR LEAVE
## TO FILE A SUPPLEMENTAL RESPONSE TO PLAINTIFFS'
## MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS

    Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America,

N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel,

state as follows for their Motion for Leave to File a Supplemental Response to Plaintiffs' Motion

to Allow Notification to Potential Class Members (hereinafter "Motion to Allow Notification"):

    1. On January 31, 2000, plaintiffs Roxanna L. Escudero and Kimberly Drake filed the

above-captioned action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201, et seq.

("FLSA"), "on behalf of themselves and all others similarly situated." Plaintiffs alleged that they

worked for NationsBank as Consumer Banker IIs and IIIs; that NationsBank reclassified their



positions as non-exempt for purposes of the FLSA in December, 1997; that NationsBank paid them on an hourly basis; and that, between December, 1997 and October 29, 1999, they worked "many times in excess" of forty hours per week. See Complaint & Demand for Jury Trial.

2. Plaintiffs further allege that NationsBank violated the FLSA by not paying them overtime pay for any of the hours worked in excess of forty hours per week. See Complaint & Demand for Jury Trial.

3. On August 21, 2000, nearly seven months after filing their Complaint, plaintiffs filed their Motion to Allow Notification; in which they alleged that NationsBank "through its banking center managers and other supervisory personnel" refused overtime pay to Consumer Banker IIs, IIIs and IVs, and further prevented or intimidated the putative class from "properly record[ing] their time." Motion to Allow Notification, ¶6.

4. Plaintiffs contend that "[a]ll Consumer Banker II, III and IV who performed services for Defendant anytime [sic] since the positions were re-classified as non-exempt in or about December, 1997 are entitled to notification." Id., ¶14.

5. On September 18, 2000, NationsBank filed its opposition to plaintiffs' Motion to Allow Notification. In its response, NationsBank demonstrated that plaintiffs filed thirteen suspect and unreliable affidavits in support of their Motion; that there is nothing particularly persuasive about the fact that approximately 100 of plaintiffs' counsel's clients from the Beverly Levine, et al. v. NationsBank, N.A., Case Number 98-6306-CIV-DIMTROULEAS, have opted-in to this action; and that plaintiffs' Motion to Allow Notification falls far short of the standard necessary to support "class" notification in an FLSA action.

6. Plaintiffs thereafter filed a reply memorandum in which they: (a) raise new and different arguments, and "recast" their allegations and depart from their Complaint and sworn

2

affidavits in attempt to divert the Court's attention from their thirteen suspect affidavits; and (b) mischaracterize NationsBank's position regarding plaintiffs' counsel's solicitation of additional opt-in plaintiffs.

7. NationsBank respectfully requests an opportunity to submit a supplemental response to plaintiffs' Motion to Allow Notification and thereby respond to plaintiffs' new arguments and their attempts to mischaracterize NationsBank's initial arguments in opposition to plaintiffs' Motion to Allow Notification.

8. NationsBank respectfully submits that its additional briefing will assist the Court in its resolution of plaintiffs' Motion to Allow Notification.

9. Based on the foregoing, defendant NationsBank, by counsel, respectfully requests the Court to accept for filing and consider its Supplemental Response to Plaintiffs' Motion to Allow Notification to Potential Class Members, the original of which is appended hereto as Exhibit 1.

This the 17th day of October, 2000.

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
McGuire Woods LLP
3700 NationsBank Plaza
Charlotte, North Carolina 28280
(704) 373-8999; (704) 373-8990 (Facsimile)

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; (954) 463-2444 (Facsimile)

Counsel to NationsBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing in the above-captioned

proceeding has been served this day by U.S. mail, postage prepaid, upon plaintiffs' counsel as

listed below:

Susan L. Dolin, Esquire
Daniel R. Levine, Esquire
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, Florida 33021

Caryl Boies, Esquire
Anne E. Hinds, Esquire
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, Florida 33020

This the 17th day of October, 2000.

_Richard F. Kane_

4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

               Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

               Defendant.

## NATIONSBANK'S SUPPLEMENTAL RESPONSE TO PLAINTIFFS' MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America,

N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel,

state as follows in opposition to Plaintiff's Motion to Allow Notification to Potential Class

Members (hereinafter "Motion to Allow Notification") and in response to Plaintiffs' Reply

Memorandum in Support of Motion to Allow Notification to Potential Class Members

("Plaintiffs' Reply"):

**Argument**

I.    Contrary to Plaintiffs' Assertion in their Reply Brief, the "Remaining Ninety-Four (94)
      Opt-ins' Claims" Do Not Support Plaintiffs' Motion to Allow Notification.

In support of their Motion to Allow Notification, plaintiffs filed affidavits from thirteen

opt-in plaintiffs. In each, the opt-in plaintiff stated that he or she "only indicate[d] forty (40)

hours on [his or her] timecard each week even though [he or she] worked more than forty (40)

hours," and that NationsBank "only paid [him or her] for forty (40) hours regardless of the

number of hours worked."[1]  Contrary to these sworn statements, twelve of the thirteen opt-in

plaintiffs who submitted affidavits recorded overtime hours and were paid by NationsBank for

those overtime hours. (Many recorded significant overtime hours and were paid significant

overtime pay during the relevant time period.) The thirteenth, Affiant Olga Valdes, did not even

work as a Consumer Banker during the relevant time period.  See Affidavits of Joyce Butler,

appended hereto as Exhibit A.

In their Reply, plaintiffs now attempt to distract the Court's attention from the thirteen

suspect affidavits they submitted by asserting that they have satisfied their obligations pursuant

to Dybach v. State of Florida, 942 F.2d 1562 (11th Cir. 1991), by providing

> "the Court with over one hundred (100) opt-in Consents from all over the United States
> from persons who are similarly situated to the Plaintiffs, in that (1) they worked as
> Consumer Banker (personal banker) IIs, IIIs, or IVs subsequent to December, 1997, (2)
> were classified as non-exempt, (3) worked in excess of forty (40) hours in one or more
> workweeks, and (4) were either not permitted to record the excess hours or were simply
> not paid for them."

See Plaintiffs' Reply, pp. 2-3. According to plaintiffs, "the Defendant has not even attempted to

question the authenticity of the remaining ninety-four (94) opt-ins' claims. . . ." Id., p. 6.

---

[1]The thirteen affidavits submitted by plaintiffs are appended as Exhibit B to their Motion
to Allow Notification.

Contrary to these new allegations, the consent forms filed by the opt-in plaintiffs do not

even address the Dybach factors. There is no indication on the face of the consent forms that the

opt-in plaintiffs worked as non-exempt consumer bankers after December 17, 1997; nor is there

any indication on the face of the consent forms that the opt-in plaintiffs worked but were not paid

for their overtime hours. See, e.g., Consent Form of Opt-in Plaintiff Marcia Heuser, appended

hereto as Exhibit B. The consent forms are silent as to these issues.

Furthermore, in response to plaintiffs' invitation to do so, see Plaintiffs' Reply, pp. 6,

defendant has looked beyond the opt-in plaintiffs' bare consent forms and has reviewed the opt-

in plaintiffs' payroll information. That review establishes that the opt-in plaintiffs do not

constitute a class of Consumer Bankers who worked overtime hours for which NationsBank

failed to compensate them. In fact, the payroll data demonstrates that plaintiffs' claims that

NationsBank refused to pay them overtime for their work as non-exempt Consumer Banker IIs,

IIIs and IVs is frivolous and contrary to fact.

More specifically, of the 106 opt-in plaintiffs about whom NationsBank was able to

collect data[2]:

- the employment of 29 of them terminated before NationsBank re-classified the
  Consumer Banker II, III and IV positions as non-exempt on December 17, 1997;
  and

- 11 of them left the Consumer Banker position (but remained employed) before
  NationsBank re-classified the Consumer Banker II, III and IV positions as non-
  exempt on December 17, 1997.

---

[2]Although there are 109 opt-in plaintiffs, NationsBank, to date, has been unable to locate
any payroll information regarding opt-in plaintiffs Danielle L. Magan, Leslie Slater Hill or Juan
Carlos Delvalle.

These 40 opt-in plaintiffs, therefore, are not "similarly situated" to the plaintiffs' "class" defined by plaintiffs because they did not work as non-exempt Consumer Bankers after December 17, 1997. As a result, their presence in this action does not support plaintiffs' Motion to Allow Notification. See Affidavit of Debra Robinson, appended hereto as Exhibit C.[3]

The payroll data regarding the 66 remaining opt-in plaintiffs who were employed by NationsBank as Consumer Banker IIs, IIIs and IVs after December 17, 1997, is even more alarming and revealing. Of those 66:

- 59 opt-in plaintiffs – that is, 89 percent – recorded and were paid overtime in 1998.
- Many of these opt-in plaintiffs recorded and were paid significant overtime. See, e.g., Henry D. Calvillo ($26,715.12); Dayton J. Pehl ($18,726.84); Cari M. Ford ($9,224.98); Janet E. Meier ($7,338.08); Laurie K. DuPont ($7,116.29); Deborah J. Agnew ($7,093.02); Annette B. Armstrong ($6,481.20); Joyce Ann Hardy ($5,407.66).
- Of the 7 who did not record overtime in 1998, the employment of 3 of those opt-in plaintiffs terminated on or before March 24, 1998.

See Exhibit C. In sum, only 4 of the 106 – that is, 3.7 percent – of the opt-in plaintiffs were employed as non-exempt Consumer Bankers for any significant period in 1998 but did not record overtime.

---

[3]Contemporaneously with the filing of its Motion for Leave to File a Supplemental Response to Plaintiffs' Motion to Allow Notification to Potential Class Members, NationsBank filed a Motion for Summary Judgment requesting the Court to dismiss the claims of these forty opt-in plaintiffs who are not proper parties to this action.

Data regarding the opt-in plaintiffs employed by the Bank in 1999 is not any more comforting to plaintiffs. Forty-four of the remaining 66 opt-in plaintiffs were still employed by the Bank in 1999. Of those 44, only 31 still were employed as a Consumer Banker II, III or IV. Of those 31:

- 26 opt-in plaintiffs – that is, 84 percent – recorded and were paid overtime in 1999.

- Many of these opt-in plaintiffs recorded and were paid significant overtime. See, e.g., Dayton J. Pehl ($6,481.01); Janet E. Meier ($5,427.47); Fabiola G. Stewart ($4,004.12).

- Of the 5 opt-in plaintiffs who did not record overtime in 1999, the employment of three of them terminated on or before February 3, 1999.

See Exhibit C. In sum, only 2 of the 106 – that is, 1.8 percent – of the opt-in plaintiffs were employed as non-exempt Consumer Bankers for any significant period in 1999 but did not record overtime.

The foregoing data eviscerates plaintiffs' unsupported speculation that a "class" of Consumer Bankers exists to which the Court should send notice of this action. Neither plaintiffs' thirteen suspect affidavits nor the work histories of the remaining opt-in plaintiffs about which they now speculate establish that there exist "similarly situated" Consumer Bankers who wish to opt-in as plaintiffs in this action. Plaintiffs' Motion to Allow Notification, therefore, is without merit and should be denied.

II.    When Confronted with the Thirteen Affiants' Actual Work Histories, Plaintiffs Improperly Attempt to Recast Their Allegations Regarding Defendant's Payroll Practices.

In response to the evidence regarding plaintiffs' suspect affidavits, plaintiffs in their Reply Brief invite this Court to speculate by suggesting that "even assuming *arguendo* that the

5

v-06145-LRJ   Document 118   Entered on FLSD Docket 10/18/2000   Pa

Case No. 00-06145-CIV-DIMITROULEAS/Snow
Escudero v. NationsBank, N.A.

Defendant may have in fact paid the opt-ins for some overtime incurred, it may not have paid them in full." See Plaintiffs' Reply, pp. 5. This is yet another attempt to escape the true import of the thirteen suspect affidavits, and again is unavailing.

In their Complaint, plaintiffs allege unequivocally that their supervisors did not permit them to record any overtime hours and that the Bank refused to pay them any overtime pay. See Complaint, ¶¶14 & 15. In their affidavits, the thirteen affiants state unequivocally that their supervisors did not permit them to record any overtime hours and that the Bank refused to pay them any overtime pay.[4]  The Court should view with suspicion plaintiffs' attempt to "recast" their allegations, to depart from their Complaint and sworn affidavits, and to assert now without supporting evidence that NationsBank may have paid them for some but not all their overtime hours.

III.    The Court Should Reject Plaintiffs' Remarkable Assertion that the Credibility of the Thirteen Affidavits is Irrelevant to its Consideration of their Motion to Allow Notice.

In response to the evidence regarding plaintiffs' suspect affidavits, plaintiffs assert that NationsBank simply "raises here. . .a credibility issue that must await trial in this matter" and that it is improper "to interject this issue at this early stage of the proceedings, when the Defendant has access to all of the relevant information and the Plaintiffs have none except what can be gleaned from the limited pre-notification discovery available to them. . . ." See Plaintiffs' Reply, pp. 5 note 1. Plaintiffs' assertions are without merit.

_____

[4]In her affidavit, Cari M. Ford includes a handwritten note that "[t]here were some weeks we would put our hours on our timecards." The only reasonable inference to be drawn from Ford's affidavit, however, is that she claims that she worked significant overtime hours for which NationsBank denied her overtime compensation. As noted elsewhere, contrary to the clear import of her affidavit, Ford recorded more than 600 hours of overtime in 1998 and 1999 and NationsBank paid her more than $14,000 for those overtime hours. See Exhibit A.

6

As a threshold matter, plaintiffs in their opposition memorandum do not dispute NationsBank's evidence that, contrary to their sworn statements, twelve of their thirteen affiants received overtime pay and the thirteenth did not work as a Consumer Banker during the relevant time period. There is, therefore, no credibility issue for the Court to resolve.

Furthermore, plaintiffs' remarkable assertions that the credibility of the affidavits is irrelevant to the Court's consideration of plaintiffs' Motion to Allow Notification because, inter alia, "the Defendant has access to all of the relevant information and the Plaintiffs have none" is based on a false premise and faulty logic. First, whether the thirteen affiants recorded and were paid overtime is equally known to them as it is to the Bank. Plaintiffs were responsible for completing their own time cards; they were paid twice per month; and they received tax forms at the end of each calendar year. This information and knowledge was available to plaintiffs and their counsel when they prepared and executed their affidavits.

Moreover, it strains credulity to suggest that Affiant Cari Ford could forget that she recorded 609.75 hours of overtime and that the Bank paid her $14,659.76 for those overtime hours; it strains credulity to suggest that Affiant Elizabeth Ann Melton could forget that she recorded 155.75 hours of overtime and that the Bank paid her $2,483.17 for those overtime hours; it strains credulity to suggest that Affiant Virginia Francois could forget that she recorded 119.75 hours of overtime and that the Bank paid her $2,486.41 for those overtime hours. See Exhibit A. That the Bank has access to its payroll records and plaintiffs do not, therefore, is of no moment in the Court's analysis of the class notice issue.

Second, on plaintiffs' logic the Court would be compelled by Dybach to order nationwide class notice anytime a plaintiff came forward with "evidence" that other similarly situated employees wished to opt-in to the action; regardless of whether that evidence was concocted,

7

perjurous or otherwise incredible or unreliable. Such a result would be contrary to law and logic. As a threshold matter, plaintiffs must at least proffer credible evidence that similarly situated employees exist who wish to opt-in to the FLSA action. Without at least this minimal showing, the Court cannot comfortably rely on plaintiffs' proffer and class notice is improper.

IV.    In an Attempt to Cloud the Relevant Issues, Plaintiffs Mischaracterize Defendant's Argument Regarding their Counsel's Solicitation of Additional Opt-In Plaintiffs.

Plaintiffs accuse NationsBank of "hinting at some nefarious conduct on the part of counsel" because defendant pointed out to the Court that 107 of the 109 opt-in plaintiffs in this case also were members of the plaintiffs' class in the Levine matter. See Plaintiffs' Reply, pp. 3-4. Plaintiffs' counsel then attempts to justify their solicitation of the Levine plaintiffs based on their ethical obligations to advise their existing clients of other potential claims. They argue that there is nothing wrong with these solicitations; indeed, according to plaintiffs' counsel, they were obligated to do so. Plaintiffs' argument is a straw man and mischaracterizes defendant's position.

In its initial response, defendant merely pointed out to the Court that, in their Motion to Allow Notification, plaintiffs place considerable stock in the fact that "approximately 100 current and former CB II, III and IV [sic] have filed a consent with the Clerk and have opted-into this lawsuit" and that these opt-in plaintiffs have so joined this action "without the benefit of notification or discovery from Defendant." Id. NationsBank did not argue that these solicitations were proper or improper. Rather, NationsBank simply stated that, contrary to the inference plaintiffs wish the Court to draw from these circumstances, there is nothing miraculous or particularly persuasive about the number or identity of those who already have opted into this action.

Of the 109 opt-in plaintiffs in this matter, 107 of them also were opt-in plaintiffs in the Levine matter. The only reasonable inference – one which plaintiffs now acknowledge – is that

8

plaintiffs' counsel notified each of the opt-in plaintiffs in Levine and invited them to join the instant case. As such, there is nothing significant about their participation here.

Indeed, based on their asserted ethical obligations, plaintiffs' counsel almost certainly contacted all 1,300 opt-in plaintiffs in Levine and invited them to join this action. The Court, therefore, could conclude that all Consumer Bankers who wish to opt-into this matter already have done so and "class" notice, therefore, is unnecessary. Furthermore, on a related note, less than nine percent of the Levine plaintiffs opted-in to this action despite plaintiffs' counsel's invitation to do so. This miniscule percentage is further support for the conclusion that "class" notice is not appropriate.[5]

V.    Plaintiffs' Counsel's Affidavits Do Not Satisfy Plaintiffs' Dybach Obligations.

Plaintiffs attached to their Reply affidavits from Susan L. Dolin and Daniel R. Levine in which Ms. Dolin and Mr. Levine assert that they "have had telephonic conversations" with former NationsBank employees and that those employees were "witnesses to and/or victims of" NationsBank's alleged unlawful pay practices. See Exhibit 6 to Plaintiffs' Reply.

Putting aside the implications of plaintiffs' counsel now making themselves material witnesses in this action, their affidavits do not satisfy plaintiffs' obligations pursuant to Dybach. The affidavits were executed in and relate to the Aldred matter which involved tellers, not Consumer Bankers. There is no evidence that the witnesses either worked as Consumer Bankers

---

[5] This is not the only instance in which plaintiffs mischaracterize defendant's position. For example, according to plaintiffs, "Defendant faults the affidavits for. . .not naming the names of persons whom the affiants believe may be interested in opting in." See Plaintiffs' Reply, pp. 5-6. Defendant makes no such argument in opposition to plaintiff's Motion to Allow Notification. Defendant did fault plaintiffs, however, for failing to identify where the alleged potential opt-ins worked, what positions they held, or how they knew that the potential opt-ins worked overtime hours for which they were not compensated. See NationsBank's opposition to Plaintiffs' Motion to Allow Notification to Potential Class Members, pp. 3-4.

Case No. 00-06145-CIV-DIMITROULEAS/Snow
Escudero v. NationsBank, N.A.

or have any information relevant to Consumer Bankers. Plaintiffs' counsel's affidavits, therefore,

do not establish that "similarly situated" Consumer Bankers wish to opt-in to the instant case.

## Conclusion

In sum, the evidence before the Court establishes that "class" notification is not

appropriate in the instant case. The credible evidence demonstrates that there is no company-

wide, systemic or even localized scheme or policy to deprive Consumer Bankers of overtime pay

to which they are entitled. Some Consumer Bankers received significant overtime pay, others

received a more modest amount; a very small percentage received no overtime pay in 1998 and

1999. This is precisely the pattern one would expect in an organization as diverse as Bank of

America which is committed to ensuring that its employees are properly compensated.

Based on the foregoing, defendant NationsBank, by counsel, hereby respectfully requests

the Court to deny Plaintiff's Motion to Allow Notification to Potential Class Members pursuant

to 29 U.S.C. §216(b); and to award such other relief as the Court deems just and proper.

This the 17th day of October, 2000.

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
McGuire Woods LLP
3700 NationsBank Plaza
Charlotte, North Carolina 28280
(704) 373-8999; Facsimile (704) 373-8990

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; Facsimile (954) 463-2444

Counsel for NationsBank, N.A.

10

Case No. 00-06145-CIV-DIMITROULEAS/Snow
Escudero v. NationsBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing in the above-captioned

proceeding has been served this day by U.S. mail, postage prepaid, upon plaintiffs' counsel as

listed below:

> Susan L. Dolin, Esquire
> Daniel R. Levine, Esquire
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, Florida 33021

> Caryl Boies, Esquire
> Anne E. Hinds, Esquire
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, Florida 33020

This the 17th day of October, 2000.

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

                Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

                Defendant.

## AFFIDAVIT OF JOYCE BUTLER

Joyce Butler, being first duly sworn, deposes and says as follows:

1.　　I am currently employed by the Defendant in the above-captioned action (the "Bank") as Loan Processor for the Montgomery/Frederick, Maryland Region. Prior to my promotion to this position in August of this year, I served as Vice President and Personnel Manager for the Bank. I am authorized by the Bank to make this Affidavit on its behalf.

2.　　I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records.

3.　　The Bank has employed Juan C. Valdez, Sr. as a Consumer Banker III/Senior Personal Banker since February 1, 1994. Mr. Valdez's current title is "Senior Personal Banker", as all Consumer Banker III and IV positions were so renamed by the Bank on September 1, 2000. The Bank reclassified Mr. Valdez's Consumer Banker III/Senior Personal Banker position



EXHIBIT

A

as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Valdez reported 19.75 hours of overtime on the time records he submitted to the Bank in 1998. Mr. Valdez reported 17.5 hours of overtime on the time records he submitted to the Bank in 1999, and between January 1 and August 31, 2000. The Bank's payroll register also indicates that the Bank paid Mr. Valdez overtime pay totaling $372.79 during 1998 and $336.96 during 1999 and 2000.

4.      The Bank employed Cari M. Ford as a Consumer Banker III from January 1, 1997 through January 31, 2000. The Bank reclassified Ms. Ford's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Ford reported 377.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Ford reported 232.5 hours of overtime on the time records she submitted to the Bank in 1999. through January 1 and January 31, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Ford overtime pay totaling $9,224.98 during 1998 and $5,434.78 during 1999 and 2000.

5.      The Bank employed John Bari as a Consumer Banker II from November 3, 1997 through June 22, 1998. The Bank reclassified Mr. Bari's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Bari reported 52.50 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Bari a total of $814.91 in overtime pay during 1998.

6.      The Bank employed Virginia Francois as a Consumer Banker III from September 1, 1996 through October 12, 1999. The Bank reclassified Ms. Francois' Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my

2

review of the Bank's payroll register, Ms. Francois reported 99.75 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Francois reported 20 hours of overtime on the time records she submitted to the Bank in 1999. The Bank's payroll register also indicates that the Bank paid Ms. Francois overtime pay totaling $2,078.17 during 1998 and $408.24 during 1999 and 2000.

7.    The Bank employed Mary F. Bolden as a Consumer Banker III from July 1, 1996 through April 18, 2000. The Bank reclassified Ms. Bolden's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Bolden reported 7.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Bolden reported 36.7 hours of overtime on the time records she submitted to the Bank in 1999, and January 1 through April 18, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Bolden overtime pay totaling $143.58 during 1998 and $768.98 during 1999 and 2000.

8.    The Bank employed Paul Barber as a Consumer Banker II from December 1, 1996 through April 23, 1998. The Bank reclassified Mr. Barber's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Barber reported 21.25 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Barber a total of $331.64 in overtime pay during 1998.

9.    The Bank employed Elizabeth Ann Melton as a Consumer Banker II from December 16, 1997 through January 12, 1999. Ms. Melton requested a leave of absence beginning September 10, 1998, which leave of absence was extended through her termination date of January 12, 1999. The Bank reclassified Ms. Melton's Consumer Banker II position as

3

non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Melton reported 155.75 hours of overtime on the time records she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Melton a total of $2,483.13 in overtime pay during 1998.

10.    The Bank employed Diane Kirkland as a Consumer Banker II from December 16, 1993 through March 13, 1998. The Bank reclassified Ms. Kirkland's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kirkland reported 11.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kirkland a total of $170.20 in overtime pay during 1998.

11.    The Bank employed Angela Mobley as a Consumer Banker III from June 30, 1997 through February 25, 1998. The Bank reclassified Ms. Mobley's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Mobley reported 49.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Mobley a total of $990.99 in overtime pay during 1998.

12.    The Bank employed Julia Kozel as a Consumer Banker III from December 1, 1995 through August 31, 1998. The Bank reclassified Ms. Kozel's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kozel reported 41 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kozel a total of $979.17 in overtime pay during 1998.

4

13.    The Bank employed Marilyn Blackmon as a Consumer Banker IV from March 1, 1997 through March 15, 1998. The Bank reclassified Ms. Blackmon's Consumer Banker IV position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Blackmon reported 66.75 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Blackmon a total of $1,457.79 in overtime pay during 1998.

14.    The Bank's personnel records indicate that Olga Valdes was only employed as a Consumer Banker II from September 15, 1995 through April 30, 1996. After that date, Ms. Valdes was employed as a Relationship Associate in the Consumer International Banking Group until the end of her employment tenure with the Bank on September 11, 1998.

Further this affiant sayeth not.

_Joyce Butler_

STATE OF __Virginia__

COUNTY OF __Fairfax__

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me, __Carol Koobatian__, a Notary Public for the above-referenced jurisdiction, on September __15th__, 2000 by JOYCE BUTLER.

_Carol Koobatian_
Notary Public

(Official Seal)

My Commission expires: April 30, 2002

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

            Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

            Defendant.

## SUPPLEMENTAL AFFIDAVIT OF JOYCE BUTLER

Joyce Butler, being first duly sworn, deposes and says as follows:

1.    I am currently employed by the Defendant in the above-captioned action (the "Bank") as Loan Processor for the Montgomery/Frederick, Maryland Region. Prior to my promotion to this position in August of this year, I served as Vice President and Personnel Manager for the Bank. I am authorized by the Bank to make this Affidavit on its behalf.

2.    I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records.

3.    The Bank employed Jeff Motley as a Consumer Banker III from February 16, 1997 through February 4, 1999. The Bank reclassified Mr. Motley's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Motley reported 19.50 hours of overtime on the time

records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Motley a total of $365.62 in overtime pay during 1998.

Further this affiant sayeth not.

Joyce Butler

STATE OF MARYLAND

COUNTY OF Montgomery

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me, John D. Sindair _____, a Notary Public for the above-referenced jurisdiction, on October 16, 2000 by JOYCE BUTLER.

Notary Public

(Official Seal)

My Commission Expires: 8-1-02

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ROXANNA ESCUDERO, on
behalf of herself and all others
similarly situated,

Case No.:00-06145-CIV-
FERGUSON

Plaintiff

vs.

NATIONSBANK, N.A.,

Defendant.

_____/

## CONSENT TO BECOME PARTY PLAINTIFF

I understand that I may be eligible to join this lawsuit filed by a former employee of
BankAmerica corporation d/b/a Bank of America Corporation f/k/a NationsBank N.A. to recover
overtime wages.

By choosing to join this lawsuit, I understand that I designate the representative Plaintiff,
Roxanna Escudero, as my agent to make decisions on my behalf concerning the litigation,
including the method and manner of conducting this litigation, entering into settlement
agreements, entering into agreements with Plaintiffs' counsel concerning attorneys fees and
costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and
entered into by the representative Plaintiff will be binding on me if I join this lawsuit.

I understand that the designated representative Plaintiff has entered in a Contingency Fee
Agreement with the law firms of Boies Schiller & Flexner LLP, and Muchnick Wasserman Dolin
& Levine LLP which applies to all Plaintiffs who join in this lawsuit. If I join the lawsuit, I
agree to be bound by such Contingency Fee Agreement. I understand that under the terms of that
Contingency Fee Agreement, the law firms' attorneys fees and costs shall only be paid out of a
recovery, by judgment or settlement, in this action; and that if no such recovery is obtained, I
will not be held responsible for such attorneys fees or costs. I further understand that I may
obtain a copy of the Contingency Fee Agreement upon requesting it from Plaintiffs' counsel.

By choosing to join in this lawsuit, I understand that I will be bound by the judgment, whether it
is favorable or unfavorable. I will also be bound by, and will share in, as the court may direct,
any settlement that may be negotiated on behalf of all Plaintiffs.



EXHIBIT

B

If I choose not to join this lawsuit, I acknowledge and understand that I will not be affected by any judgment or settlement rendered or reached in this lawsuit, whether favorable or unfavorable to the Plaintiffs and I will not be entitled to share in any amounts recovered by the Plaintiffs whether by judgment or settlement.

I hereby consent to join in this lawsuit:

_Marcia Heuser_
Signature

_5-8-00_
Date

PLEASE PRINT OR TYPE THE FOLLOWING INFORMATION:

Name _MARCIA HEUSER_

Street address _6711 34th Ave West_

Mailing address _☒ SAME_

City, State & Zip code _BRADENTON FL 34209_

Daytime Phone _~~941 795-8239~~ 941 350-4571_

Evening Phone _941 795-8239_

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ROXANNA ESCUDERO, on                    CASE NO. 00-06145-CIV-FERGUSON
behalf of herself and all others
similarly situated,

     Plaintiff

vs.

NATIONSBANK, N.A.,

     Defendant.

_____/

## NOTICE OF FILING

COMES NOW the Plaintiff, ROXANNA ESCUDERO, by and through her undersigned counsel, and notifies the court of the following filings:

1.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Marcia Heuser

2.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Janet Meier

3.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Sheri Thomas

4.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Olga Valdes

5.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Cindy MacDonald

6.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Lyndia Cox

7.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Elke Adams

8.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Guilbert Parker

9.    Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for June McKinley

10.   Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Stephanie Dantos

11.   Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Janice Cole

12.   Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Riitta Silverman

13.   Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Peggy Biggs

1

14. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Julia Waddington

15. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Deborah Agnew

16. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Elizabeth Ann Melton

17. *Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Diane Kirkland*

18. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Anastasia Monroe

19. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Alex Harris

20. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Patricia Murray

21. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Leslie Slater Hill

22. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Deborah A. Pye-Lee

23. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Adelia Smith

24. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Paul Barber

25. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Julia Kozel

26. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Harold Willis

27. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for James Copeland

28. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Miriam Osavio a/k/a Miriam Penick

29. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Chris Coleman

30. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Sallie Savage

31. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Samuel Washington

32. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Eloise Batts

33. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Dianne Dismukes

34. Consent to Become Party Plaintiff pursuant to 29 U.S.C. §216(b) for Virginia Francois

Dated: May __19__, 2000

Respectfully submitted,

BOIES, SCHILLER & FLEXNER
Attorneys' for Plaintiffs
2435 Hollywood Boulevard
Hollywood, FL 33020
(954) 929-1190
(954) 929-1185 - Fax

By:

Anne E. Hinds, Esq.
Fla. Bar No. 0964972

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail this __19__ day of May 2000 to: Michael T. Burke, Esq., Johnson, Anselmo et al., 790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard F. Kane. Esq., McGuire, Woods, Battle & Boothe, 3700 NationsBank Plaza, Charlotte, North Carolina 28280.

> BOIES, SCHILLER & FLEXNER
> Attorneys for Plaintiffs
> 2435 Hollywood Boulevard
> Hollywood, FL 33020
> (954) 929-1190
> (954) 929-1185 - Fax
>
> By:
>
> Anne E. Hinds, Esq.
> Fla. Bar No. 0964972

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

               Plaintiffs,

    vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,
               Defendant.

## AFFIDAVIT OF DEBRA ROBINSON

Debra Robinson, being first duly sworn, deposes and says as follows:

1. I am currently employed by Bank of America (the "Bank") as an Analyst II-Business

Analysis, and am authorized by the Bank to make this Affidavit on its behalf.

2. As an Analyst II-Business Analysis for the Bank, I have authority to access personnel

and payroll records and computer databases maintained by the Bank. I make this Affidavit based

upon my personal knowledge and my review of the Bank's personnel and payroll records and

computer databases, to which I have access in order to accomplish my daily job duties and

responsibilities.

3. I understand from reviewing plaintiffs' Complaint in this action that the relevant time

period for this lawsuit begins when Consumer Banker IIs, IIIs and IVs were re-classified as non-

exempt employees.

EXHIBIT

C

4. My understanding is that the Bank re-classified Consumer Banker IIs, IIIs, and IVs as non-exempt on December 17, 1997.

5. Attached to my affidavit as Exhibit 1 is a chart listing the current and former Bank employees who I understand have joined as plaintiffs in the above-referenced lawsuit against the Bank pending in South Florida. My understanding from reviewing plaintiffs' Complaint is that the plaintiffs in this lawsuit contend that, while they worked as non-exempt Consumer Banker IIs, IIIs and IVs, the Bank failed to pay them overtime pay to which the plaintiffs believe they were entitled.

6. To date, I have collected and reviewed payroll and work history information from 1995, 1996, 1998 and 1999 contained in the Bank's files, business records and computer databases for 106 of the 109 plaintiffs listed on Exhibit 1. The data contained in Exhibit 1 accurately summarizes the information I found in the Bank's personnel, payroll and work history files, records and computer databases regarding these plaintiffs.

7. Exhibit 1 includes the plaintiff's name, the period of time, if any, during which the plaintiff worked as a Consumer Banker II, III or IV, the plaintiff's termination date (if a former employee), the plaintiff's employment status (full or part-time), the number of overtime hours recorded for each plaintiff in 1998 and 1999, and the amount of overtime pay the Bank paid each plaintiff in 1998 and 1999.

8. The entries on Exhibit 1 highlighted in yellow indicate plaintiffs who terminated their employment with the Bank before December 17, 1997.

9. The entries on Exhibit 1 highlighted in red indicate plaintiffs who transferred out of their Consumer Banker II, III or IV positions with the Bank prior to December 17, 1997.

2

Further this affiant sayeth not.

Debra Robinson

STATE OF __Virginia__

COUNTY OF __Norfolk__

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me,

__Everett F. Barnes__, a Notary Public for the above-referenced

jurisdiction, on October __13__, 2000 by Debra Robinson.

Everett F. Barnes
Notary Public

(Official Seal)

My Commission Expires:  9/30/2003

3

# ADDITIONAL

# LEGAL SIZE

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE