UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS/Johnson

ROXANNA L. ESCUDERO, and          )
KIMBERLY DRAKE, on behalf of       )
themselves and all others similarly )
situated,                          )
                                   )
                Plaintiffs,        )
                                   )
        vs.                        )
                                   )
BANKAMERICA CORPORATION,           )
a foreign corporation d/b/a         )
BANK OF AMERICA CORPORATION,       )
a foreign corporation, f/k/a        )
NATIONSBANK, N.A., a national       )
association,                        )
                                   )
                Defendant          )
_____)



### NationsBank's
### Appeal of Magistrate Judge Johnson's Order
### Granting Plaintiffs' Emergency Motion for Protective Order

Pursuant to Rule 4(a)(1) of the Local Magistrate Judge Rules and 28 U.S.C.

§636(b)(1)(A), Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of

America, N.A. (f/k/a NationsBank, N.A.) (collectively referred to herein as "NationsBank"),

by counsel, hereby objects to and appeals from Magistrate Judge Johnson's Order granting

plaintiffs' Emergency Motion for Protective Order ("Motion for Protective Order"), and

requests the Court to enter an Order permitting NationsBank to depose the opt-in plaintiffs in

the above-captioned action. NationsBank states as follows for its objections to and appeal

from Magistrate Judge Johnson's Order:

1

## Statement of the Case & Relevant Facts

1.      On January 31, 2000, Plaintiffs Roxanna L. Escudero and Kimberly Drake filed the above-captioned action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201, et seq. ("FLSA"), "on behalf of themselves and all others similarly situated." Plaintiffs allege that they worked for NationsBank as Consumer Banker IIs and IIIs; that NationsBank reclassified their position as non-exempt for purposes of the FLSA in December, 1997; that NationsBank paid them on an hourly basis; and that, between December, 1997 and October 29, 1999, they worked "many times in excess" of forty hours per week. See Complaint and Demand for Jury Trial ("Complaint"), ¶¶ 4, 8 & 9. (Dkt. Ent. 1).

2.      Plaintiffs further alleged in their Complaint that NationsBank violated the FLSA by not paying them any overtime for those hours they worked in excess of forty hours per week, and by preventing them from recording the number of hours worked in excess of forty hours per week – that is, by forcing them to work "off the clock." See Complaint, ¶ 14 - 16.

3.      Plaintiffs also alleged in their Complaint that the putative class of plaintiffs in this action consists of Consumer Banker IIs, IIIs and IVs employed by NationsBank on or after December, 1997, who were "subject to the pay policies, practices, and procedures described" in the Complaint. See Complaint, ¶¶ 10, 14.

4.      This Court entered a scheduling Order which set a discovery deadline of March 1, 2001, and further set trial for June 11, 2001. See Order Setting Trial Date & Discovery Deadlines, ¶ 3. (Dkt. Ent. 107).

5.      On January 4, 2001, NationsBank's counsel contacted plaintiffs' counsel by telephone to discuss a deposition schedule for the opt-in plaintiffs who are not the subject of

2

v-06145-LRJ   Document 184   Entered on FLSD Docket 02/16/2001   Pa

Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

NationsBank's pending summary judgment motion. Plaintiffs' counsel agreed to produce for

deposition named plaintiff Nancy Rojas, the opt-in plaintiffs who submitted affidavits in

support of plaintiffs' Motion to Allow Notification to Potential Class Members, and "those (yet

unidentified) opt-ins who would be called to testify at trial." Motion for Protective Order,

pp. 2.[1]

6.     Plaintiffs' counsel, however, objected to NationsBank's request to depose the

remaining opt-in plaintiffs whose depositions were noticed for the weeks of February 12th and

19th, 2001.[2] Id.

7.     On January 24, 2001, Plaintiffs filed their Motion for Protective Order.

8.     On January 30, 2001, prior to the deadline by which NationsBank was required

to respond to plaintiffs' Motion for Protective Order, Magistrate Judge Johnson entered an

Order granting plaintiffs' Motion. See Magistrate Judge Johnson's Order, appended hereto as

Exhibit J.

---

[1]     Thirteen opt-in plaintiffs tendered affidavits to this Court in support of Plaintiffs' Motion to Allow Notification to Potential Class Members. However, after NationsBank filed its Motion for Sanctions based on these suspect affidavits and its Motion for Summary Judgment, seven of these thirteen affiants withdrew as plaintiffs in this action. See Notices of Withdrawal of Affidavit and/or Consent to Opt-In filed by Plaintiffs Hensley and Mintz, copies of which are collectively appended hereto as Exhibit A.

[2]     See January 9, 2001 Notice of Deposition for opt-in plaintiff, Jacqueline Mintz; January 15, 2001 Notice of Deposition for opt-in plaintiff Juan Carlos Gonzales Del Valle; and January 16, 2001 Notice of Depositions for the remaining opt-in plaintiffs, copies of which are collectively appended hereto as Exhibit B. Plaintiffs' counsel initially objected to the depositions of opt-in plaintiffs Jacqueline Mintz and Juan Carlos Gonzalez Del Valle, both of whose depositions were noticed prior to January 16, 2001. See Exhibit B. Plaintiff Mintz withdrew from this action on February 7, 2001, see Exhibit A, and plaintiffs' counsel subsequently consented to Gonzalez Del Valle's deposition.

3

9.    As of the filing of these Objections, only thirty-eight opt-in plaintiffs remain

in this action.

## Argument

1.    NationsBank is Entitled to Depose Each Opt-In Plaintiff Because the Basis of Each
Opt-In Plaintiff's Claim is Unique, Individualized and Fact-Specific.

Contrary to the inference plaintiffs wish the Court to draw from their Motion for

Protective Order, courts have authorized individualized discovery from non-representative

members of a class action or opt-in plaintiffs in an FLSA collective action. In doing so, these

courts have considered the following factors to determine whether to permit individualized

discovery: (1) whether the information sought through the individualized discovery is relevant

to the disputed issues before the court in the collective or class action; (2) whether the

information is available from the named plaintiffs; and (3) whether the discovery is tendered

in good faith and not for the purpose of harassment. See Krueger v. New York Telephone Co.,

163 F.R.D. 446, 450 (S.D.N.Y. 1995); TransAmerica Refining Corp. v. Dravo Corp., 139

F.R.D. 619, 621 (S.D. Tex. 1991). See also United States v. Trucking Employers, Inc., 72

F.R.D. 101 (D.D.C. 1976); Harris v. Jones, 41 F.R.D. 70 (D. Utah 1966); Robertson v.

National Basketball Ass'n, 67 F.R.D. 691 (S.D.N.Y. 1975); Philadelphia Electric Co. v.

Anaconda American Brass Co., 43 F.R.D. 452 (E.D. Pa. 1968).

Here, Magistrate Judge Johnson did not discuss these factors in her Order granting

plaintiffs' Motion for Protective Order. However, a review of each of these factors establishes

that NationsBank is entitled to depose the opt-in plaintiffs in the instant case and that

Magistrate Judge Johnson's Order, therefore, was contrary to law and clearly erroneous.

4

v-06145-LRJ    Document 184    Entered on FLSD Docket 02/16/2001    P:
Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

A.    Each opt-in plaintiff is the only individual with knowledge of the unique facts
bearing upon his or her particular overtime claim against NationsBank.

Plaintiffs cannot dispute that the information sought from the opt-in plaintiffs is not

only relevant to, but dispositive of, the disputed issues; nor can they dispute that this

information is not available from the named plaintiffs. Indeed, plaintiffs themselves highlight

the most compelling argument for individualized discovery. In their Memorandum of Law

in support of their Motion for Protective Order, plaintiffs acknowledge that the opt-in

plaintiffs' claims are "individualized" and concede that "**the focus** is on hourly employees

who, **on a branch-by-branch or region-by-region basis**, were victimized by a practice of

refusing them the right to record overtime which they worked and the pay therefor." See

Motion for Protective Order, pp. 3-4 (emphasis added).

When distilled to its essence, this action is a compilation of unique, individual and

factually diverse claims by former and current NationsBank employees loosely premised upon

only one common allegation in plaintiffs' Complaint – that is, that each plaintiff purportedly

worked varying amounts of overtime for which they were not paid by NationsBank. This is

not a case to determine whether NationsBank properly classified Consumer Bankers as exempt

for overtime pay purposes, where testimony from a "representative sample" of Consumer

Bankers regarding their job duties and job responsibilities would be probative of whether

NationsBank properly applied the exemption.         This also is not a case to determine

whether plaintiffs were subjected to some corporate-wide policy or practice forcing them to

work "off the clock," where testimony regarding the alleged corporate-wide policy or practice

would be probative of plaintiffs' "class" claims. Plaintiffs have not proffered any evidence to

5

v-06145-LRJ   Document 184   Entered on FLSD Docket 02/16/2001   Pa

Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

demonstrate that NationsBank had a corporate-wide policy to force Consumer Bankers to work "off the clock." Rather, as this Court found in the companion cases of Aldred and Mintz,[3] the alleged overtime transgressions about which plaintiffs complain here, if meritorious at all, apparently were dependent on the actions and policies of each plaintiff's Banking Center Manager.[4] See also Motion for Protective Order, pp. 3-4.

Instead, in order to assess whether NationsBank violated the FLSA, the jury in this case must assess whether each opt-in plaintiffs' banking center manager or regional executive forced the plaintiff to work overtime hours for which he or she was not paid. See Motion for Protective Order, pp. 3-4. This inquiry will be a function of the directions that each opt-in plaintiff received from his or her banking center manager(s) and/or the overtime "policy" existing at each opt-in plaintiffs' banking center. NationsBank has the need and right to know: (a) the identity of each manger who allegedly told each opt-in plaintiff he or she could not record overtime; (b) the identity of each banking center manager who allegedly told each opt-

---

[3]   See the Court's May 8, 2000 Order in Jacqueline Mintz, et al. v. NationsBank, N.A., Case Number 98-8632-CIV-DIMITROULEAS, denying plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b) (hereinafter "Mintz Order"), a copy of which is appended hereto as Exhibit C, and the Court's September 2, 1998 Omnibus Order in Juliet Aldred, et al. v. NationsBank, N.A., Case Number 97-7547-CIV-DIMITROULEAS, denying plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b) (hereinafter "Aldred Order"), a copy of which his appended hereto as Exhibit D.

[4]   See Mintz Order, p. 5, at Exhibit C & Aldred Order, pp. 4-5, at Exhibit D, wherein the Court recognized NationsBank maintained a policy of compensating non-exempt employees for overtime at 1.5 times their regular rate. See also Affidavit of Jill Borsky, ¶ 3, submitted to the Court in Mintz, a copy of which is appended hereto as Exhibit E, which affidavit confirms that "[I]ndividual overtime is authorized and managed at the direct supervisor and banking center manager level."

v-06145-LRJ    Document 184    Entered on FLSD Docket 02/16/2001    P

Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

in plaintiff he or she would not be paid for any overtime even if he or she worked extra hours; (c) the identity of any managers who may have properly advised each opt-in plaintiff on the recording and payment of overtime; and (d) the circumstances surrounding and substance of each such discussion.

Contrary to plaintiffs' contention and Judge Johnson's Order, and as this Court recognizes in its own Local Rules, these types of inquiries are ill-suited for written interrogatories. See Local General Rule 26.1(G)(3) ("interrogatories other than those seeking information described in paragraph 2 above may only be served if they are a more practical method of obtaining the information sought than a request for production or a deposition."). See also infra at Section B. Individual depositions are the only mechanism by which NationsBank can economically and efficiently ascertain the factual basis for each unique claim, which is critical to the Bank's ability to assess its potential liability and formulate its defenses to the opt-in plaintiffs' claims.

There also cannot be any dispute that information regarding the opt-in plaintiffs' disparate claims are outside the knowledge of the named plaintiffs; yet another factor supporting individualized discovery. See TransAmerica Refining Corp., 139 F.R.D. at 622 (information known only by absent class members warrants individualized discovery). According to the named plaintiffs, the original group of opt-in plaintiffs worked at approximately 145 banking centers in thirteen states and the District of Columbia. See Exhibit A to Plaintiffs' Motion to Allow Notification, a copy of which is appended hereto as Exhibit F. Very few of the opt-in plaintiffs apparently even worked at the same banking center. The opt-in plaintiffs who submitted affidavits, and named plaintiffs Escudero and Drake all

v-06145-LRJ   Document 184   Entered on FLSD Docket 02/16/2001   P:
Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

identified different "branch managers" who purportedly prevented them from recording any overtime they worked, or told them they would not be paid for such overtime if they did record it. See compendium of affidavits previously submitted to this court by opt-in plaintiffs appended hereto as Exhibit G; Deposition of Roxanna Escudero, pp. 23-24 and 30-37, copies of which pages are collectively appended hereto as Exhibit H; Deposition of Kimberly Drake, pp. 30-31 and 36-40, copies of which pages are collectively appended hereto as Exhibit I. Individualized discovery, therefore, is appropriate. Rosen, 1994 U.S. Dist. Lexis 16511 (S.D.N.Y. 1994) (permitting individualized discovery (including depositions) directed to each member of the plaintiff class).[5]

B.     Deposing Each Opt-In Plaintiff is the Most Expedient and Cost-Effective Means of Conducting Discovery of the Opt-In Plaintiffs' Claims.

Plaintiffs assert that NationsBank's request to depose the opt-in plaintiffs "is nothing more than an ill-fated attempt to delay these proceedings and unduly burden Plaintiffs and their counsel." See Motion for Protective Order, pp. 5-6. Plaintiffs' conclusory allegations are without merit. Plaintiffs cannot establish that NationsBank's requested discovery is in bad faith or for the purpose of harassment.

First, NationsBank does not seek to delay these proceedings. NationsBank noticed the depositions to commence and conclude before the close of the discovery period. Plaintiffs' reflexive refusal to cooperate and sit for their depositions is delaying these proceedings.

---

[5]     This action has not been bifurcated and all discovery, including that designed to elicit information regarding plaintiffs' alleged damages, must be completed by March 1, 2001. NationsBank "certainly [has] the right to conduct discovery with respect to individual damages in order to prepare for trial." Krueger, 163 F.R.D. at 452.

v-06145-LRJ   Document 184   Entered on FLSD Docket 02/16/2001   P:
Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

Second, plaintiffs' assertion that the depositions at issue will "unduly burden" the
remaining thirty-eight opt-in plaintiffs is a similar red herring. Each opt-in plaintiff made an
affirmative decision to join this action, in this District, by filing a consent to become a party
plaintiff. He or she cannot now claim in good faith that NationsBank's desire to explore the
basis of his or her claim is annoying or oppressive. Nor should it now come as any surprise
to plaintiffs that they have to testify, whether by deposition or otherwise, in the venue where
they have chosen to assert their claim.

The nature of a §216(b) collective action such as the instant case is relevant to this
inquiry. Claimants in a Fed. R. Civ. P. 23 class action generally must "opt-out" of the putative
class; otherwise, they are bound by the result. Subjecting a Rule 23 claimant to a deposition
in a venue he did not choose, therefore, may be an undue imposition. In stark contrast,
§216(b) opt-ins such as the opt-in plaintiffs here made an affirmative decision to "opt-in" as
party plaintiffs, with full knowledge of the venue in which the action was pending. Therefore,
there is nothing either unfair or unreasonable about requiring the opt-in plaintiffs to sit for a
deposition so that the defendant may explore the basis of the opt-in plaintiffs' claims.

Third, plaintiffs' assertion that these depositions would unduly burden their counsel
and that NationsBank, therefore, should be limited to serving interrogatories on the opt-in
plaintiffs is similarly unavailing. Plaintiffs view of what discovery is permissible in an FLSA
collective action is a moving target which appears to be more a function of what is expedient
for plaintiffs' counsel rather than what is proper under the law. More specifically, plaintiffs'
counsel vociferously objected when NationsBank served written discovery on the opt-in
plaintiffs in the companion case of Levine. According to plaintiffs' counsel, such written

9

/-06145-LRJ    Document 184    Entered on FLSD Docket 02/16/2001    Pa

Case No. 00-06145-Civ-Dimitrouleas
Escudero, et al vs. BankAmerica, etc.

discovery was harassing and unduly burdensome. See Plaintiffs' Motion for Protective Order

(Dkt. Ent. 1595) and Plaintiffs' Combined Memorandum of Law in Response to Defendant's

Motion to Compel Discovery and In Support of Plaintiffs' Motion for Protective Order (Dkt.

Ent. 1627). Their current position that written discovery is not only proper but preferred in

the instant case, therefore, is disingenuous at best.

C.    The Authority Upon Which Plaintiffs Rely Does Not Support Their Reflexive
      Refusal to Produce the Opt-In Plaintiffs for Deposition.

In their Motion for Protective Order, Plaintiffs cite to and rely upon Adkins v. Mid-

America Growers, Inc., 141 F.R.D. 466 (N.D. Ill. 1992), for the proposition that individual

discovery is inappropriate in a class or collective action. Plaintiffs' reliance on Adkins is

misplaced.

The salient issue in Adkins was whether the defendant-employer properly classified

as exempt for overtime purposes an entire class of employees. Unlike the "off the clock"

allegations in the instant case, the liability question raised by the exemption issue in Adkins

was common to the entire class of plaintiffs. 141 F.R.D. at 470-471. Because of the common

liability issue, the District Court therefore concluded that discovery should be conducted on

a generalized class-wide basis. As plaintiffs themselves recognize in the instant case,

however, there is no common liability issue here; "**the focus** [in this case] is on hourly

employees who, **on a branch by branch or region by region basis**, were victimized by a

practice of refusing them the right to record overtime which they worked and the pay

therefor." See Motion for Protective Order, pp. 3-4 (emphasis added). Adkins, therefore, is

inapposite based upon the nature of the disputed issues at bar.

.

10

The decision in Adkins is further distinguished by the Court's emphasis on the number

of plaintiffs in the plaintiffs' class. In a passage quoted by plaintiffs here, the Adkins court

stated that individualized discovery in a Rule 23 class action often is "impracticable" because

"many class actions have hundreds of thousands of members." Motion for Protective Order,

pp. 5, quoting and citing, 141 F.R.D. at 468. Unlike Adkins (or even Levine where the Court

was concerned about individualized discovery directed to a plaintiffs' class comprising

approximately 1,600 members), the size of the plaintiffs' "class" at issue here should not raise

a concern regarding the scope of discovery.[6] There are approximately thirty-five named and

opt-in plaintiffs remaining in the instant case, and, as this Court has recognized elsewhere,

individualized discovery to "class" of this size is routinely permitted. See June 17, 1999,

Order in Levine, a copy of which is appended hereto as Exhibit K (citing the appropriateness

of individualized discovery in plaintiffs' classes of 162, 100, 68, 49 and 7 members).

### Conclusion

Based on the foregoing, NationsBank, by counsel, hereby respectfully requests the

Court to overrule Magistrate Judge Johnson's Order granting plaintiffs' Motion for Protective

Order; to enter an Order denying plaintiffs' Motion for Protective Order and compelling the

opt-in plaintiffs to appear for depositions in the above-captioned action; to award it the costs

and attorney fees incurred seeking this relief; and to award such other and further relief as the

Court deems just and proper.

---

[6]    Plaintiffs also rely on McGrath v. City of Philadelphia, 1994 U.S. Dist. Lexis 1495
(E.D. Pa. 1994)(4,100 members in the plaintiffs' class).

11

This the 15th day of February, 2001

Michael T. Burke
Florida Bar No. 338771
JOHNSON, ANSELMO, MURDOCH, BURKE
& GEORGE, P.A.
790 East Broward Blvd., Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:    954/463-2444
Telephone:   954/463-0100 Broward
                305/945-2000 Dade
                561/640-7448 WPB

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
J. Mark Langdon, NC State Bar # 19359
McGUIREWOODS LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999 FAX 704-373-8990

Attorneys for Bank of America Corporation

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was mailed by first-class mail, postage prepaid, to:

> Susan L. Dolin, Esq.
> Adam S. Chotiner, Esq.
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, FL 33021
>
> Caryl Boies, Esq.
> Anne E. Hinds, Esq.
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, FL 33020

This the 15th day of February, 2001.

Michael T. Burke

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,



        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## PLAINTIFFS' NOTICE OF WITHDRAWAL OF OPT-IN
## PLAINTIFFS AND WITHDRAWAL OF AFFIDAVITS

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, and hereby notifies the Court that the

following persons who have previously opted in to the above-referenced litigation and

provided affidavits in support thereof hereby withdraw from the litigation and withdraw their

affidavits:

    1.    Paul C. Barber

    2.    Virginia Francois

    3.    Elizabeth Ann Melton

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent ~~via U.S.~~ *as* *noted* ~~Mail~~ this 27th day of October, 2000 to: Michael T. Burke, Esq/, Johnson, Anselmo et al., *(mail)*

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard F. Kane, Esq/, McGuire, Woods, Battle & Boothe, 3700 NationsBank Plaza, Charlotte, NC *(Fed. Exp)*

28280.

Respectfully submitted,

MUCHNICK WASSERMAN, DOLIN & LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard
Suite 620 North
Hollywood, Florida 33021
(954) 989-8100 / (305) 624-9100

By: _Susan L. Dol_

SUSAN L. DOLIN
Fla. Bar No.: 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No.: 0146315

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,
        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,
        Defendant.

_____/

## PLAINTIFF OLGA VALDES'
## NOTICE OF WITHDRAWAL OF CONSENT TO OPT-IN

COMES NOW the Plaintiff, OLGA VALDES, by and through her undersigned

counsel, and hereby notifies this Honorable Court that she wishes to withdraw, and does

hereby withdraw, her previously filed Consent to Become a Party Plaintiff in the captioned

litigation.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: _____

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690

-and-

BOIES, SCHILLER & FLEXNER L.L.P.
2435 Hollywood Boulevard
Hollywood, Florida 33020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Mail this 5th day of December, 2000 to: Michael T. Burke, Esq., Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., McGuireWoods, 3700 NationsBank Plaza, 101 South Tyron Street,

Charlotte, NC 28280.

By: _____

SUSAN L. DOLIN
E-Mail: sldolin@mwdf-law.com

F:\WPDOCS\~SLD\Escudero\Opt-Ins\n-filingwithdrawal valdes.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/JOHNSON

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,
        Plaintiffs,



vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,
        Defendant.

_____/

### PLAINTIFF JUAN C. VALDEZ, SR.'S
### NOTICE OF WITHDRAWAL OF CONSENT TO OPT-IN

COMES NOW the Plaintiff, JUAN C. VALDEZ, SR., by and through  undersigned

counsel, and hereby notifies this Honorable Court that he wishes to withdraw, and does

hereby withdraw, his previously filed Consent to Become a Party Plaintiff in the captioned

litigation.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: _____

SUSAN L. DOLIN, ESQ.
FBN: 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Mail this [27TH] day of January, 2001 to: Michael T. Burke, Esq., Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., McGuireWoods, 3700 NationsBank Plaza, 104 South Tyron Street,

Charlotte, NC 28280.

By: _____

ADAM S. CHOTINER, ESQ.
E-Mail: aschotiner@mwdl-law.com

F:\WPDOCS\~ASC\Escudero\Opt-Ins\n-filingwithdrawal blackmon.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/JOHNSON

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,
     Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,
     Defendant.



_____/

## PLAINTIFF MARILYN BLACKMON'S
## NOTICE OF WITHDRAWAL OF AFFIDAVIT AND CONSENT TO OPT-IN

COMES NOW the Plaintiff, MARILYN BLACKMON, by and through  undersigned

counsel, and hereby notifies this Honorable Court that she wishes to withdraw, and does

hereby withdraw, her previously filed Consent to Become a Party Plaintiff in the captioned

litigation, as well as the affidavit filed in support of the Motion for Notification.

                Respectfully submitted,

                MUCHNICK, WASSERMAN, DOLIN
                & LEVINE, LLP
                Attorneys for Plaintiffs
                4000 Hollywood Boulevard, Ste 620N
                Hollywood, FL 33021
                (954) 989-8100 - Broward
                (305) 624-9100 - Dade
                (954) 989-8700 - Fax

By: _____

SUSAN L. DOLIN, ESQ.
FBN: 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Mail this [27TH] day of January, 2001 to: Michael T. Burke, Esq., Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., McGuireWoods, 3700 NationsBank Plaza, 101 South Tyron Street,

Charlotte, NC 28280.

By: _____

ADAM S. CHOTINER, ESQ.
E-Mail: aschotiner@mwdl-law.com

F:\WPDOCS\~ASC\Escudero\Opt-Ins\n-filingwithdrawal.blackmon.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,
    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,
    Defendant.

_____/

## PLAINTIFF ELOISE BATTS'
## NOTICE OF WITHDRAWAL OF CONSENT TO OPT-IN

COMES NOW the Plaintiff, ELOISE BATTS, by and through her undersigned counsel, and hereby notifies this Honorable Court that she wishes to withdraw, and does hereby withdraw, her previously filed Consent to Become a Party Plaintiff in the captioned litigation.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: _____
    SUSAN L. DOLIN, ESQ.
    Fla. Bar No. 708690
-and-

BOIES, SCHILLER & FLEXNER L.L.P.
2435 Hollywood Boulevard
Hollywood, Florida 33020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S.

Mail this 23rd day of January, 2001, to: Michael T. Burke, Esq., Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., McGuireWoods, 3700 NationsBank Plaza, 101 South Tyron Street,

Charlotte, NC 28280.

By: _____

SUSAN L. DOLIN
E-Mail: sldolin@mwdl-law.com

F:\WPDOCS\~ASC\Escudero\Notices\N-WD Batts Opt-In.wpd

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.

_____/

## PLAINTIFFS' NOTICE OF WITHDRAWAL OF OPT-IN
## PLAINTIFFS

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, and hereby notifies the Court that the

following persons who have previously opted in to the above-referenced litigation and

hereby withdraw from the litigation for reasons unrelated to the merits of their claims

herein:

1.    Rodney Hensley

2.    Jacqueline Mintz

3.    Cari Ford

4.    Michelle A. Barnett

5.  Carrie Barnette

6.  Henry Calvillo

7.  Barbara Fleming

8.  Linda Grant

9.  Stephanie Strozier

10.  Susie S. Reynolds

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP.
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: _____
       SUSAN L. DOLIN, ESQ.
       Fla. Bar No. 708690

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Linnea R. Johnson

| | |
|---|---|
| ROXANNA L. ESCUDERO, and<br>KIMBERLY DRAKE, on behalf of<br>themselves and all others similarly<br>situated,<br><br>          Plaintiffs,<br><br>      vs.<br><br>BANKAMERICA CORPORATION,<br>a foreign corporation d/b/a<br>BANK OF AMERICA CORPORATION,<br>a foreign corporation, f/k/a<br>NATIONSBANK, N.A., a national<br>association,<br><br>          Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **NOTICE OF DEPOSITION**

TO:   Jacqueline Mintz
      934 Banks Road
      Coconut Grove, Florida 33063

      c/o Susan L. Dolin, Esq.
      Muchnick, Wasserman, Dolin & Levine, LLP
      Suite 620 North
      4000 Hollywood Boulevard
      Hollywood, Florida 33021

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, the Defendant herein will take the deposition upon oral examination of

Jacqueline Mintz.

This deposition is hereby scheduled to be taken at the offices of DOWNTOWN REPORTING, 337 E. Las Olas, Fort Lauderdale, FL 33301, and will commence on Tuesday, January 30, 2001, at 11:30 a.m. Such deposition will continue from day to day until completed.

Deponent is requested to bring with her all documents reflecting her hours worked in 1998-1999.

You are invited to attend and cross-examine.

This the _9th_ day of January, 2001.

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGUIRE, WOODS, BATTLE & BOOTHE LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999 FAX 704-373-8990

Michael T. Burke
Florida Bar No. 338771
JOHNSON, ANSELMO, MURDOCH, BURKE
 & GEORGE, P.A.
790 East Broward Blvd., Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:    954/463-2444
Telephone:  954/463-0100 Broward
                    305/945-2000 Dade
                    561/640-7448 WPB

**Attorneys for Bank of America Corporation**

-2-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing "NOTICE OF

DEPOSITION" in the above-captioned proceeding has been served this day upon

Plaintiffs' counsel listed below as follows:

*By Facsimile and U.S. mail, postage prepaid:*
Susan L. Dolin, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

*By U.S. mail, postage prepaid:*
Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the _____ day of January, 2001.

Richard F. Kane

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Linnea R. Johnson

ROXANNA L. ESCUDERO, and            )
KIMBERLY DRAKE, on behalf of        )
themselves and all others similarly )
situated,                           )
                                    )
                 Plaintiffs,        )
                                    )
        vs.                         )
                                    )
BANKAMERICA CORPORATION,            )
a foreign corporation d/b/a         )
BANK OF AMERICA CORPORATION,        )
a foreign corporation, f/k/a        )
NATIONSBANK, N.A., a national       )
association,                        )
                                    )
                 Defendant          )

## NOTICE OF DEPOSITIONS

TO:   Janet E. Meier              Sheri Thomas                 Elke G. Adams
      3463 Salisbury Drive        11916 Little Stony Court     2782 S. Waterworks Rd.
      Dallas, TX 75229            Charlotte, NC 28269          Beaufort, GA 30518

      Guilbert M. Parker          Stephanie Dantos             Deborah J. Agnew
      3627 Lochearn Drive         1208 Marie Way #203A         20607 Live Oak
      Baltimore, MD 21207         N. Palm Beach, FL 33408      Leander, TX 78641

      Alex L. Harris              Patricia B. Murray           Leslie Slater Hill
      1699 Beaver Creek Drive     710 Mount Paran Road         1009 Old Lytton Springs Rd.
      Havana, FL 32333            Lizella, GA 31052            Lockhart, TX 78644

      Harold L. Willis            Samuel D. Washington         Dianne D. Dismukes
      11602 Mary Catherine Dr.    Route 2, Box 1377            7626 Kleingreen
      Clinton, MD 20735           Kents Store, VA 23084        Spring, TX 77379

Tracie R. Lappin-Blitch
1375 Leawood Road
Englewood, FL 34223

Donna Dickerson
12008 Hunterton Street
Largo, MD 20774

Angela Wilson
P.O. Box 14246
Newburn, NC 28561

Fabiola Stewart
18959 N. Dallas Parkway
#2114
Dallas, TX 75287

Annette Armstrong
1902 West Lakeridge Dr.
Albany, GA 31707

Tempe Aguilar-DeMarco
123 New Market Circle
Lexington, SC 29073

Suzanne Czwojdak Alsafi
789 Hammond Drive
Apt. 503
Atlanta, GA 30328

Susie S. Reynolds
141 Hardwood Lane
Albany, GA 31707

Dayton J. Pehl
400 Meadow Oaks Drive
Dripping Springs, TX
78620

Karen G. Greene
1408 Illinois Court
Woodbridge, VA 22191

Joseph A. Sierra
100 Priestly Place
Corraws, NM 87048

Margaret A. Buchanan
9609 Covey Ridge Lane
Austin, TX 78758

Kathy Foster Andrews
3000 Millwater Crossing
Dacula, GA 30019

Peggy H. Lee
3520 Cleveland Heights
#225
Lakeland, FL 33801

Henry David Calvillo
Rt. 1, Box 216K
Holland, TX 76534

Mary Rose Estrada
2200 Market
Galveston, TX 77550

Ron Valdez
4123 3rd Avenue NW
Bradenton, FL 34209

Marilyn Barnes
4324 Sea Grape Drive
Lauderdale By The Sea,
FL 33308

Jeffrey Scott Taylor
1032 Mires Road
Mt. Juliet, TN 30122

Elizabeth A. Langley
39523 Golden Beach Rd.
Mechanicsville, MD
20659

Philip M. Lee, Jr.
3423 Stonesboro Road
Ft. Washington, MD
20744

Joyce A. Hardy
1904 Verano Drive
Haines City, FL 33844

Melanie E. Rogers
Route 1, Box 3799
Celen St. Mary, FL 32040

Bryan K. Crowder
1634 38th Street
DeMoines, IA 50310

Laurie K. DuPont
2684 NW 68th Terrace
Margate, FL 33063

Steven Richardson
5229 Glen Park
Raporte, TX 77571

Debra Elias
9 Windsor Courts 51-K
Galveston, TX 77551

Deana B. Justice
1654 Haws Run Road
Maple Hill, NC 28454

Patricia J. Woods
2577 Bermuda Drive
Loganville, GA 30052

Karen Woreschinski
3535 Alwood Street
Northport, FL 34286

Nettie Parks
1000 East 9th Street
Sanford, FL 32771

Michelle A. Barnett
140 Aldo Road
Babson Park, FL 33827

Evans Yancey
4068 E. Spring Meadow
Drive
Acworth, GA 30101

-2-

| Barbara W. Wells | Danielle L. Magan | Barbara Fleming |
| 3113 Woodhome Avenue | 1308 Seabreeze Boulevard | 111 Cothran Drive |
| Baltimore, MD 21234 | Ft. Lauderdale, FL 33316 | Franklin, TN 37604 |
| | | |
| Linda H. Grant | Carrie H. Barnett | Mary Howard |
| 2072 Woodcrest Circle | 1093 Allendale Circle | 7808 Linden Road |
| Rock Hill, SC 29732 | Rock Hill, SC 29732 | Del Valle, TX 78617 |
| | | |
| Candice M. Davis-Dunn | David Perlmutter | JoAnn Skinner |
| 710 Lakebridge Drive | 7054 Waxwing Drive | 3813 Villa Lane |
| Lake Dallas, TX 75065 | New Port Richey, FL 34653 | Evans, GA |
| | | |
| William Smith | Jennifer Hilbers | Theresa Sutton Rubinfield |
| 9012 Reyes Court | 370 Peachtree Hills | 3253 Fox Croft Road G206 |
| Orlando, FL 32836 | Avenue #21 | Miramar, FL 33025 |
| | Atlanta, GA 30305 | |

c/o Susan L. Dolin, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Suite 620 North
4000 Hollywood Boulevard
Hollywood, Florida 33021

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, the Defendant herein will take the depositions upon oral examination of the

individuals shown above on such dates and times indicated on Attachment A.

These depositions are hereby scheduled to be taken at the offices of DOWNTOWN

REPORTING, 337 E. Las Olas, Fort Lauderdale, FL 33301, and will commence on

Monday, February 12, 2001, at 9:00 a.m. Such depositions will continue from day to day

until completed.

**Deponents are requested to bring with them all documents reflecting their**

**hours worked in 1998-1999.**

You are invited to attend and cross-examine.

This the 16 day of January, 2001.

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGUIRE, WOODS, BATTLE & BOOTHE LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999 FAX 704-373-8990

Michael T. Burke
Florida Bar No. 338771
JOHNSON, ANSELMO, MURDOCH, BURKE
& GEORGE, P.A.
790 East Broward Blvd., Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:    954/463-2444
Telephone:   954/463-0100 Broward
              305/945-2000 Dade
              561/640-7448 WPB

**Attorneys for Bank of America Corporation**

-4-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "NOTICE OF DEPOSITIONS" in the above-captioned proceeding has been served this day upon Plaintiffs' counsel listed below as follows:

> *By Facsimile and U.S. mail, postage prepaid:*
> Susan L. Dolin, Esq.
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, FL 33021

> *By U.S. mail, postage prepaid:*
> Caryl Boies, Esq.
> Anne E. Hinds, Esq.
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, FL 33020

This the _16_ day of January, 2001.

Richard F. Kane

*Escudero, et al.*
IONS DUAL TRACK SCHEDULE

| Wednesday, 2/14/01 | | Thursday, 2/15/01 | | Friday, 2/16/01 | |
|---|---|---|---|---|---|
| 0 a.m. | Tracie R. Lappin-Blitch | 9:00 a.m. | Angela Wilson | 9:00 a.m. | Mary Rose Estrada |
| | Margaret A. Buchanan | | Peggy H. Lee | | Debra Elias |
| 00 a.m. | Melanie E. Rogers | 11:00 p.m. | Laurie K. DuPont | 11:00 a.m. | Tempy Aguilar-DeMarco |
| | Donna Dickerson | | Fabiola Stewart | | Ron Valdez |
| 0 p.m. | Kathy Foster Andrews | 2:00 p.m. | Steven Richardson | 2:00 p.m. | Deana B. Justice |
| | Bryan K. Crowder | | Annette Armstrong | | Suzanne Cawojdak Alsafi |

| Wednesday, 2/21/01 | | Thursday, 2/22/01 | | Friday, 2/23/01 | |
|---|---|---|---|---|---|
| 0 a.m. | Joyce A. Hardy | 9:00 a.m. | Linda H. Grant | 9:00 a.m. | William Smith |
| | Evans Yancey | | Carrie H. Barnett | | Jennifer Hilbers |
| 00 a.m. | Barbara W. Wells | 11:00 p.m. | Mary Howard | 11:00 a.m. | Theresa Sutton Rubinfield |
| | Danielle L. Magan | | Candice M. Davis-Dunn | | |
| 0 p.m. | Henry David Calvillo | 2:00 p.m. | David Perlmutter | 2:00 p.m. | |
| | Barbara Fleming | | JoAnn Skinner | | |

ATTACHMENT A

JNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Linnea R. Johnson

ROXANNA L. ESCUDERO, and               )
KIMBERLY DRAKE, on behalf of           )
themselves and all others similarly    )
situated,                              )
                                       )
                    Plaintiffs,        )
                                       )
        vs.                            )
                                       )
BANKAMERICA CORPORATION,               )
a foreign corporation d/b/a            )
BANK OF AMERICA CORPORATION,           )
a foreign corporation, f/k/a           )
NATIONSBANK, N.A., a national          )
association,                           )
                                       )
                    Defendant          )

## NOTICE OF DEPOSITION

TO:    Juan Carlos Del Valle
       1410 SW 92nd Avenue
       Miami, Florida 33174

       c/o Susan L. Dolin, Esq.
       Muchnick, Wasserman, Dolin & Levine, LLP
       Suite 620 North
       4000 Hollywood Boulevard
       Hollywood, Florida 33021

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, the Defendant herein will take the deposition upon oral examination of Juan

Carlos Del Valle.

This deposition is hereby scheduled to be taken at the offices of DOWNTOWN
REPORTING, 337 E. Las Olas, Fort Lauderdale, FL 33301, and will commence on
Wednesday, January 31, 2001, at 2:00 p.m. Such deposition will continue from day to day
until completed.

Deponent is requested to bring with him all documents reflecting his hours worked
in 1998-1999.

You are invited to attend and cross-examine.

This the /5th day of January, 2001.

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGUIRE, WOODS, BATTLE & BOOTHE LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999 FAX 704-373-8990

Michael T. Burke
Florida Bar No. 338771
JOHNSON, ANSELMO, MURDOCH, BURKE
 & GEORGE, P.A.
790 East Broward Blvd., Suite 400
Post Office Box 030220
Fort Lauderdale, Florida 33303-0220
Facsimile:    954/463-2444
Telephone:    954/463-0100 Broward
              305/945-2000 Dade
              561/640-7448 WPB

**Attorneys for Bank of America Corporation**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "NOTICE OF

DEPOSITION" in the above-captioned proceeding has been served this day upon

Plaintiffs' counsel listed below as follows:

> *By Facsimile and U.S. mail, postage prepaid:*
> Susan L. Dolin, Esq.
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, FL 33021
>
> *By U.S. mail, postage prepaid:*
> Caryl Boies, Esq.
> Anne E. Hinds, Esq.
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, FL 33020

This the _15_ day of January, 2001.

_____
Richard F. Kane

```
**********************
***   TX REPORT   ***
**********************


TRANSMISSION OK

TX/RX NO              0498
CONNECTION TEL        59#0039#19549898700#
SUBADDRESS
CONNECTION ID
ST. TIME              01/15 17:17
USAGE T               00'39
PGS. SENT             4
RESULT               OK
```

# McGUIREWOODS

**Number of Pages (including Fax cover sheet):** ___4___  **DATE:** 1/15/2001
*If all pages are not received, please call the Fax Operator indicated below.*

**TO:**  Susan L. Dolin, Esq.

**OFFICE/COMPANY/FIRM:**  Muchnick, Wasserman, Dolin & Levine, LLP

**LOCATION:**  Hollywood, Florida

**PHONE NUMBER:**  954 989-8100      **FAX NUMBER:** 954 989-8700

**FROM:**  Richard F. Kane

**OFFICE:**  Charlotte South      **DIRECT FAX NUMBER:**  704 373-8828
(See list below)

**SENDER'S DIRECT DIAL PHONE NUMBER:**  704 373-8957

**REMARKS:**

This Fax is intended for the recipient indicated above. It may be confidential or protected from disclosure by the attorney-client privilege or work-product doctrine. If you have received this Fax in error, please destroy it immediately. Thank you.

**Sender Name:**  Connie Hartsell      **Charge No.:** 2009659-

**Employee No.**  _____      **Total Charge:** _____

| OFFICE | GENERAL FAX NUMBER | SWITCHBOARD | FAX OPERATOR |
|---|---|---|---|
| ATLANTA, GA | 404/443-5599 | 404/443-5500 | 404/443-5500 |
| BALTIMORE, MD | 410/659-4599 | 410/659-4400 | 410/659-4400 |
| CHARLOTTE, NC-South | 704/373-8990 | 704/373-8999 | 704/373-8999 |
| CHARLOTTE, NC-North | 704/373-8935 | 704/373-8999 | 704/373-8999 |
| CHARLOTTESVILLE, VA | 804/980-2222 | 804/977-2500 | 804/977-2517 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 98-8632-CIV-DIMITROULEAS

JACQUELINE MINTZ et al.,
on behalf of herself and all                          Magistrate Judge Johnson
others similarly situated,

      Plaintiffs,

vs.

NATIONSBANK, N.A.,
a national association,

      Defendant.

_____/

FILED by _____ D.C.

MAY 0 8 2000

CLARENCE.-MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD

## ORDER

THIS CAUSE is before the Court upon Defendant's Motion for Extension of

Time [DE 56], Defendant's Motion to Reconsider [DE 57] Order Allowing Notification to

Potential Class Members, Plaintiffs' Motion to Revise Notice to Potential Class

Members [DE 58], and Plaintiffs' Motion for Equitable Tolling of Opt-in Plaintiffs' statute of

limitations [DE 66]. The Court has carefully considered the motions, and is otherwise fully

advised in the premises.

### I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards

Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker I for

defendant Nationsbank. This Court granted Plaintiffs' motion to allow notification to potential

class members under the "opt-in" class action provision allowed under Section 216(b).

Defendant has moved for reconsideration of that order, based upon this Court's February 23,

2000 Order in Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS, as well as an

extension of time to produce to Plaintiffs the mailing list for the potential class members.

Plaintiff Mintz alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Mintz further alleges that Nationsbank supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Nationsbank's record-keeping obligation under the FLSA. Nationsbank denies the allegations and further asserts that it has a policy in place for Consumer Banker I workers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

At the time this Court initially granted the motion for class notification, the Court stated that at least five other persons with the position of Consumer Banker I had opted in to this lawsuit. In reviewing the record as of today, it appears that eight consents to become a party plaintiff were in the record at that time,[1] but since then two of the eight persons have withdrawn their consents,[2] and one additional person may be deceased.[3] Of the five remaining consents, none of these opt-in plaintiffs worked at the same location as Plaintiff Mintz, in Parkland,

---

[1] An additional consent from Traci Briggs-Ratcliff [DE 41] had been withdrawn prior to the Court's September, 1999 ruling.

[2] Lillian Berger [DE 55] and Clytus Turner [DE 67] have withdrawn their consents.

[3] Defendant's counsel reports that Plaintiffs' counsel has advised him that Ms. Pirri is now deceased and her surviving spouse does not intend to pursue her claim. See Footnote 1 to Defendant's Supplement to Defendant's Motion to Reconsider [DE 62].

2

Florida.[4]

### III. MOTION FOR CLASS NOTIFICATION

As discussed in this Court's September 24, 1999 Order, it is settled in the Eleventh Circuit that a district court has the authority under the FLSA to issue an order requiring notice to similarly situated persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991) (noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such power, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Id. at 1568.

The Court now reconsiders its conclusion in its September 24, 1999 Order. Since that Order, the Court has had the opportunity to issue rulings in similar cases involving bank tellers (Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS) and in-store bankers (Perlman, et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), and has been able to compare and contrast these rulings with a prior ruling in a similar case involving consumer bankers II, III, and

---

[4] See Consents of Vasquez (Texas) [DE 49]; Dennis [DE 37] (Salisbury, Maryland); Sanchez (Miami) [DE 33]; Van Brandt (Potomac, Maryland) [DE 21]; and Frost (Tamarac and Davie, Florida) [DE 17]; and affidavits of Frost, Van Brandt, and Dennis at DE 45.

3

IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS). In Perlman and Levine, Nationsbank had a clear policy of exempting all In-Store Bankers and Consumer Bankers II, III and IV from overtime pay. Thus, those individuals were similarly situated. In Aldred, this Court concluded that Plaintiff has not met her burden of showing similarly-situated tellers, as Nationsbank did not exempt all tellers from overtime, but rather left overtime decisions to individual branch mangers.

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers I in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. See Affidavit of Phyliss Kennedy Brown, Exhibit F of Exhibit A to Defendant's Motion for Reconsideration. The Brown affidavit is not sufficient to show that a corporate policy to deny overtime was in place. Rather, the Brown affidavit states that individual managers had the burden to "manage" the overtime while accomplishing a variety of tasks during a period of downsizing. Therefore, it appears that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker I position.

Moreover, Plaintiff Mintz has had ample time to allow for persons to file consents to become party plaintiffs in this case. The record now shows five remaining opt-in plaintiffs, only one of whom even worked in the same state as Mintz, and none worked in the same branch. Therefore, Plaintiffs have not shown that similarly situated persons to Plaintiff Mintz are willing to opt-in to this case.

4

As to the second step of <u>Dybach</u>, Defendants argue that Plaintiffs have not shown that Consumer Banker I employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that individual differences will certainly exist as to the hours, duration and location worked by individual plaintiffs, and concludes that the affidavits and deposition transcripts provided by Plaintiff Mintz are not sufficient to satisfy this Court that there are other employees of Nationsbank who are similarly situated with respect to their job requirements and with regard to their pay provisions. <u>Dybach</u>, 942 F.2d at 1567-1568; see also <u>Haynes v. Singer Co., Inc.</u>, 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members); <u>Mertz v. Treetop Enterprises, Inc.</u>, 1999 U.S. Dist. LEXIS 18386 (N.D.Ala. 1999).

As stated above, the Court notes that Plaintiff Mintz does not dispute that Nationsbank had a written policy of compensating non-exempt employees who worked and recorded in excess of forty hours in a workweek an overtime wage rate of one and one-half times the regular hourly rate. Rather, Plaintiff Mintz alleges there was an unwritten policy of preventing non-exempt employees from reporting such overtime hours. Upon review of the materials submitted by Plaintiff, and for the reasons expressed above, the Court will not permit the widespread notification of numerous current and former employees of Nationsbank of the present action under <u>Dybach</u>, as this Court finds that Plaintiff Mintz has not met her burden of showing similarly-situated tellers.

5

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Extension of Discovery Deadline [DE 54] is hereby **DENIED as moot**, given this Court's Order of September 24, 1999 [DE 53];

2.  Defendant's Motion to Reconsider [DE 57] Order Allowing Notification to Potential Class Members, is hereby **GRANTED**. The Court has reconsidered and hereby **VACATES** the relevant part of its Order of September 24, 1999 [DE 53] related to notification of potential class members. This case will now proceed based on at most the particular circumstances of the five remaining opt-in consents listed in footnote 4 above;

3.  Defendant's Motion for Extension of Time [DE 56] is hereby **DENIED as moot.**

4.  Plaintiffs' Motion to Revise Notice to Potential Class Members [DE 58] is hereby **DENIED as moot**;

5.  Plaintiffs' Motion for Equitable Tolling of Opt-in Plaintiffs' statute of limitations [DE 66] is hereby **DENIED as moot.**

6.  The Court will extend some pretrial deadlines to allow the parties to complete discovery and pretrial motions practice prior to trial in this case;

7.  The discovery deadline is hereby extended until June 2, 2000 and the substantive motion deadline is hereby extended until June 16, 2000;

8.  The pretrial stipulation deadline and motions in limine deadline is now August 11, 2000, while responses to motions in limine and proposed jury instructions shall be due August 21, 2000.

9.  This case is reset for Calendar Call at 10:00am on Friday, August 25, 2000, and for trial

6

the two-week period beginning 9:00am on Monday, August 28, 2000;

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this _____ day of May, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

copies to:   .

Daniel R. Levine, Esq./Susan Dolin, Esq.
Caryl L. Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq.

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-7547-CIV-DIMITROULEAS

JULIET ALDRED, on behalf of
herself and all others similarly
situated,

    Plaintiffs,

vs.

NATIONSBANK, N.A.,

    Defendant.

_____/



## OMNIBUS ORDER

THIS CAUSE is before the Court upon the following motions:

1. Plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29

U.S.C. § 216(b) [DE 29];

2. Plaintiff's Motion to Correct Scrivener's Error in Complaint [DE 31], which the Court

construes as the Plaintiff's Motion for Leave to Amend; and

3. Plaintiff's Motion to Reconsider and Objections to Magistrate Judge's June 23, 1998

Order [DE 46];

The Court has carefully considered the motions and is otherwise fully advised in the

premises.

### I. BACKGROUND

The plaintiff, Juliet Aldred, a former employee and bank teller with Nationsbank, filed

the instant action asserting a claim for unpaid overtime under the Fair Labor Standards Act, 29

U.S.C. § 216, ("FLSA") on behalf of herself and all others similarly situated. Aldred alleges that

she and other similarly situated current and former non-exempt employees worked the number of

hours required of them, many times in excess of forty (40), but were not paid overtime. Aldred further alleges that Nationsbank supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed the plaintiff that she was not allowed to record the number of hours she worked in excess of forty (40), both in clear violation of Nationsbank's record-keeping obligation under the FLSA. Nationsbank denies the allegations and further asserts that it has a policy in place that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40). To date, no other plaintiffs have opted-in the present action as permitted by 29 U.S.C. § 216(b).[1]

## II. DISCUSSION

### A. Notification of Putative Class Members

Aldred has filed the instant motion seeking leave of this Court to notify all potential class members, pursuant to 29 U.S.C. § 216(b), that they have the right to opt-in the present action. Aldred has defined the potential class, without any geographic limitation, as "all current and former non-exempt employees" of Nationsbank.

Section 216(b) of the FLSA provides that an action for unpaid overtime compensation may be maintained by "any one or more employees for and on behalf of [themselves] . . . and other employees similarly situated." It is settled in this Circuit that a district court has the authority under the FLSA to issue an order requiring notice of an action to such similarly situated persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991)

---

[1] The Court also has a separate class action, Levine v. Nationsbank, Case No. 98-6306 (S.D. Fla.), brought by consumer banker employees, who were classified as exempt employees, against Nationsbank for unpaid overtime compensation under the FLSA. These plaintiffs are also represented by the same attorneys representing Aldred. In the Levine case, twenty-five individuals had already elected to opt-in prior to this Court's resolution of the plaintiffs' motion to allow notification of potential class members.

2

(noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such discretion, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. The Eleventh Circuit has held that while plaintiffs bear the burden of demonstrating a "reasonable basis" for a class-wide action, the burden "is not heavy." Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996); Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Dybach, 942 F.2d at 1568.

Turning to the first step of the Dybach test, Aldred has provided no support that any other non-exempt employees would desire to opt-in to the present action. Rather, Aldred asserts that she needs some discovery to obtain the names of other similarly situated employees in order to ascertain whether they would wish to opt in. The Court will address the discovery issue below. At this point in the litigation, however, the Court is not satisfied that there are other non-exempt employees who desire to opt-in this case.

Turning to the second step of the Dybach test, the parties dispute whether there are other similarly situated employees with respect to their job requirements and with regard to their pay provisions. Specifically, Aldred argues that each non-exempt employee who performed services for Nationsbank on or after December 15, 1994, three years prior to the filing of the instant

3

lawsuit,[2] is a similarly situated employee. Aldred also asserts she has served an interrogatory upon Nationsbank requesting the identity of such potential class members.

The defendants respond by asserting the potential class is overbroad and such potential class members are not similarly situated to Aldred. Specifically, Nationsbank argues that Aldred's employment position code was one of 228 non-exempt job codes used in Florida and there were 899 different job codes for non-exempt personnel nationwide. Further, Nationsbank notes as of December 31, 1997, there were 4,991 non-exempt employees in Florida and 52,353 non-exempt employees nationwide.

In support of her motion, Aldred has submitted an affidavit from herself, an affidavit from Jason Royal, a former consumer banker employee with Nationsbank, and a transcript of a deposition of Cindy Haimowitz, a Nationsbank Regional Sales Support Manager. The Court finds that these affidavits and transcripts, along with the other support provided by Aldred, are not sufficient to satisfy this Court that there are other employees of Nationsbank who are similarly situated with respect to their job requirements and with regard to their pay provisions. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

At the outset, the Court notes that Aldred does not dispute that Nationsbank had a written policy of compensating non-exempt employees who worked and recorded in excess of forty

---

[2] The Court notes that the statute of limitations continues to run with respect to any individual who may wish to opt-in to the present action until such individual files a written consent to specifically opt-in to the present action. Grayson v. K Mart Corporation, 79 F.3d 1086, 1106 (11th Cir. 1996).

4

hours in a workweek an overtime wage rate of one and one-half times the regular hourly rate. Rather, Aldred alleges there was an unwritten policy of preventing non-exempt employees from reporting such overtime hours. At this point, Aldred has not provided any support that this alleged unwritten policy was either a corporate policy from the upper management of Nationsbank or a widespread practice among several Nationsbank's branches. Moreover, the only allegations to date are by Aldred that this practice occurred in the branches where she worked. Therefore, the Court finds that Aldred has failed to provide any support that there were other similarly situated non-exempt employees who were subjected to the same unwritten practices which violate the FLSA, other than at the branches where she worked.

The Court further notes that Aldred was employed as a bank teller, which was only one of numerous categories of non-exempt employees. Aldred has provided no support for the proposition that all non-exempt employees, regardless of the job description and requirements, are similarly situated to bank tellers. The Court notes that the numerous categories of non-exempt jobs would encompass different job responsibilities, salaries, and locations. Most importantly, in light of the allegation of an unwritten policy of supervisors prohibiting employees from reporting overtime hours, the various non-exempt employees would report to different supervisors. Therefore, the Court finds that at a minimum, any potential class should be limited to Aldred's employment position of bank teller.

Turning to the affidavits and transcripts, Aldred's affidavit states that the practices complained of occurred "no matter at which branch [she] worked." Aldred states she was employed by Nationsbank from January 1996 to November 1997, or approximately 100 weeks.[3]

---

[3] Nationsbank argues that Aldred admitted in her deposition that she did not work any overtime at the Coral Ridge or Deerfield branches. Aldred attempts to refute this argument. For

5

Although not stated in her affidavit, Aldred's complaint estimates the total number of overtime hours she worked (in excess of forty hours each week) totaled only fifty hours for the entire period she was employed by Nationsbank, or approximately one hour of overtime every other week. This is insufficient to establish a widespread practice of directing employees not to record and be compensated for hours which the employees actually worked. Further, while Aldred's affidavit also states there were other non-exempt persons she knew of who were not permitted to record their overtime hours, she has not provided affidavits from these individuals nor have any of these individuals sought to opt-in to the present action. See Tucker v. Labor Leasing, Inc., 872 F.Supp. 941, 948-949 (M.D. Fla.1994).

Moreover, neither the affidavit of Jason Royal nor the transcript of Cindy Haimowitz provide much additional support. Jason Royal was an exempt employee who states that several non-exempt employees complained to him that they were required to work overtime but were not allowed to record their overtime hours. However, he fails to give any names and his statement is merely unsupported hearsay. Further, the testimony of Cindy Haimowitz was that Nationsbank prohibited the practices complained of by Aldred. She testified that she became aware of only one instance where an employee worked more than forty hours without recording the overtime. However, this employee received compensation in the form of additional vacation (comp time) in another week. This isolated instance is certainly not sufficient to establish the widespread practice alleged by Aldred.

Finally, Aldred asserts that she has been denied discovery concerning other potential class members, which has hampered her ability to establish the existence of other similarly

_____

purposes of the present motion, the Court assumes that Aldred had unreported overtime at all branches where she worked.

6

situated employees. This argument has some merit, and as discussed below, the Court will permit some limited discovery. At this stage of the proceedings, however, it appears that the plaintiff is merely on a fishing expedition. Therefore, the Court will not permit the widespread notification of numerous current and former employees of Nationsbank of the present action without the sufficient showing under Dybach.

## B. Motion to Correct Scrivener's Error/ Motion for Leave to Amend Complaint

Aldred has filed a motion to correct scrivener's error asserting the original complaint contained scrivener's errors she now seeks to correct. Nationsbank has responded asserting the scrivener's errors amount to an attempt to amend the complaint. This Court agrees, and therefore, the Court will construe the motion as a motion for leave to amend.

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires." In construing Rule 15(a), the Supreme Court has held that

In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Nationsbank asserts that the time period for filing any amendments passed one month prior to the filing of the present motion, and therefore, any amendment to the complaint would be untimely. The Court notes, however, that the case is not set for trial until November 1998. Accordingly, the Court will grant Aldred leave to file the Corrected Complaint as an Amended Complaint.

7

## C. Discovery Objections

On June 23, 1998, Magistrate Judge Linnea R. Johnson issued an Order granting Aldred's

Motion to Compel in all respects except for the following two interrogatories:

> 6. Please identify all employees (including former employees) who were
> terminated or resigned from employment with Defendant, NATIONSBANK, for
> the last three (3) years who held the same or similar position Plaintiff held with
> Defendant, and for each, provide their last known residential address and
> telephone number.

> 10. Please identify every past and present "Teller" of Defendant, who worked for
> Defendant since December 15, 1994.

Aldred asserts this information is necessary to determine whether other similarly situated

employees exist. To a limited extent, this Court agrees.

As noted above, the Court finds that any potential class members are limited to current or

former bank tellers. Further, the Court notes that Aldred has agreed to limit her discovery

requests to branches located in Broward County, Florida. The Court notes that Aldred has

provided some support for her allegations that the complained of practices occurred at the

branches where she worked as a teller. The Court further notes that former and current tellers at

these branches may have relevant information concerning Aldred's own claim. Therefore, the

Court will permit limited discovery of tellers who were employed at the same branches where

Aldred worked. This information should also provide Aldred with sufficient information to find

additional plaintiffs to opt-in and meet the requirements of Dybach, if possible.

III. CONCLUSION

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Allow Notification to Potential Class Members Pursuant to 29

U.S.C. § 216(b) [DE 29] is hereby **DENIED,** without prejudice, for leave to refile at a later point

if Aldred can meet the requirements for such notification under Dybach.

2. Plaintiff's Motion to Correct Scrivener's Error in Complaint [DE 31], which the Court

construes as the Plaintiff's Motion for Leave to Amend, is hereby **GRANTED** and the Plaintiff's

Corrected Complaint [annexed to DE 31] is deemed filed; and

3. Plaintiff's Motion to Reconsider and Objections to Magistrate Judge's June 23, 1998

Order [DE 46] is hereby **GRANTED** in part and **DENIED** in part as follows:

A. Within fifteen (15) days of the date of this Order, the Defendant shall respond to

Plaintiff's Interrogatories 6 and 10 solely with respect to all bank tellers who worked at

the same branches as Aldred after December 15, 1994; and

B. In all other respects, Plaintiff's Motion to Reconsider and Objections to Magistrate

Judge's June 23, 1998 Order [DE 46] is hereby **DENIED;**

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida, this ⸻ day of

September, 1998.

WILLIAM P. DIMITROULEAS

United States District Judge

9

Copies furnished to:

Susan L. Dolin, Esq.
Daniel R. Levine, Esq.
Richard F. Kane, Esq.
Gary K. Harris, Esq.
Michael T. Burke, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JULIET ALDRED, on behalf of
herself and all others similarly
situated,

CASE NO. 97-7547-CIV-UNGARO- BENAGES

Plaintiff,

v.

NATIONSBANK OF FLORIDA, N.A.,
a national associates,

Defendant

## AFFIDAVIT

1.    I am Jill Borsky. I am a personnel generalist for NationsBank in the Northeast
Broward Region. Prior to that, I was the personnel generalist for NationsBank in the East
Broward Region. I am aware of NationsBank's policies and procedures concerning the payment
of overtime compensation, the keeping of timecards and other general personnel matters. I am
aware of the lawsuit involving Juliet Aldred and NationsBank concerning the alleged violation
of the Fair Labor Standards Act. I have been deposed by Plaintiff's attorney in a separate case
involving related issues.

2.    I have been informed and I can verify that currently in Broward County there
are 714 active tellers in the NationsBank system as of 1 May, 1998. Also, as of that date, from
January, 1998, 110 tellers have terminated their positions. For the State of Florida, there are
5,599 total tellers and to-date, 828 have terminated their position. As of the year-end of 1997
the turnover rate for tellers in Broward County has been 53.8%. Florida wide the turnover rate
for tellers has been 46.7%

3    Currently in Broward County, there are over 90 NationsBank individual
banking centers. Each banking center manager and a teller coordinator. The teller coordinator

is the direct supervisor of the other tellers who work in the bank. The banking center manager controls personnel issues, hours worked and general management of each banking center. The banking center manager at each banking center is charged with the responsibility for staffing and implementing bank policy. NationsBank's pay policy has been that overtime must be calculated on a completed workweek (Monday - Sunday) and is paid at time and one half for hours worked over forty (40). Associates to include tellers are encouraged to accurately complete their "in and out" times on a daily basis. Each week the associates should total the daily hours and record the results in weekly blocks. At the end of the pay period the associates should initial the timecard and return the timecard to the supervisor. Supervisors review the card for accuracy. Individual overtime is authorized and managed at the direct supervisor and banking center manager level.

Jill Borsky

STATE OF FLORIDA
COUNTY OF BROWARD

SWORN to and subscribed before me
this the ___6___ day of ___May___, 1998.

Notary Public            (SEAL)

DEBORAH D. COOK
MY COMMISSION # CC 541272
EXPIRES: June 20, 2000
Bonded Thru Notary Public Underwriters

## TIMECARDS
(Timecards cont.)

- o **Distribution:**   The timecard for an upcoming pay period will be distributed with the pay check or deposit advice each payday (i.e., the card for the 16th - 31st will be received on the 15th).

- o **Deadlines:**   Timecards should be received by the Payroll Department by Payroll cutoff (refer to schedule in the Introduction). Any cards received after cutoff will be processed the following pay period.

**EXCEPTION HOURS:** Exception hours are other than normally scheduled and are defined as additional straigt time, ovbertime, absence without pay and worked holiday hours.

- o **Additional Straight Time:**   Any hours worked over those regularly scheduled (as noted in the Sunday blocks on the Part-time Current card) and less than 40 are paid as additional straight time.

- o **Overtime:**   Must be caculated on a completed work week (Monday - Sunday) and is paid at time and a half for hours worked over 40.

- o **Worked Holiday:**   When an associate works on a paid holiday, the hours regularly scheduled for that day sould be recorded on the " Regular"

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

### LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|------|------|-------|----------------|
| Albritton, Tina | | Florida | Midtown |
| Andrews, Kathy Foster | | Georgia | Lilburn Instore |
| Armstrong, Annette | | Georgia | East Albany |
| Banks, Patrick | | Texas | DeSoto |
| Barber, Paul | Sarasota | Florida | Southgate |
| Bari, John | Falls Church | Virginia | Yorktown |
| Barnes, Marilyn | | Florida | Downtown, Galleria |
| Barnett, Michelle | | Florida | Garden Grove |
| Barnette, Carrie | | South Carolina | Rockhill Mall |
| Batts, Eloise | Surf City, Holly Ridge | North Carolina | Surf City, Holly Ridge |
| Beach, Lisa | | Texas | |
| Biggs, Peggy | | Texas | Conroe |
| Blackmon, Marilyn | | Missouri | 63rd Street, 85 Holmes |
| Blitch, Tracie | | Florida | South Venice |
| Bolden, Mary | | Maryland | Randallstown |
| Buchanan, Margaret | Austin | Texas | Northwest, Showal Creek, Bevo's, Longhorn |
| Calvillo, Henry | Austin | Texas | Northwest Austin |
| Carlos Del Valle, Juan | Coral Gables | Florida | Coral Gables |

-1-



**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|------|------|-------|----------------|
| Cole, Janice | | Maryland | Beltway Plaza, Belair-Bowie |
| Coleman, Chris | | Georgia | Roswell Instore |
| Copeland, James | | Georgia | Midtown |
| Cordell-Proper, Andrea | | Michigan | Baltimore Main Branch |
| Cox, Lydia | Columbia | South Carolina | Richland Mall |
| Crowder, Bryan | Des Moines Urbandale | Iowa | South Office Aurora Avenue |
| Czwojdak (Alsafi), Suzanne | Atlanta Ft. Myers | Georgia Florida | Perimeter Cypress Lake |
| Dantos, Stephanie | | Florida | Palm Beach Lakes Blvd. |
| Davis-Dunn, Candice | | Texas | Highland Village |
| Dickerson, Donna | | Maryland | Camp Springs |
| Dismukes, Dianne | | Texas | Tenneco, Red Oak, Hinble |
| DuPont, Laurie | | Florida | Venetian Isles Plaza |
| Elias, Debra | | Texas | Galveston - Downtown |
| Estrada, Rosemarie | | Texas | Galveston |
| Fleming, Barbara | Franklin | Tennessee | Public Square |
| Ford, Cari | | Missouri | Clayton, Olivette |
| Francois, Virginia | | Texas | Westheimer, Stafford |

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and
all others similarly situated, v. BANKAMERICA CORPORATION
Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Fyffe, Sherry | | Maryland | Northwood, Charles St. |
| German, Nancy | | Florida | Baymeadows |
| Grant, Linda | Rock Hill | South Carolina | Rock Hill Mall, Rock Hill Main |
| Greene, Karen | | Virginia | Lake Ridge |
| Guerin-Davidson, M. Christine | | Maryland | Loch Raven, Lutherville, Security, Slade Avenue |
| Hardy, Joyce | Haines City | Florida | Haines City |
| Harris, Alex | | Florida | Capital |
| Hensley, Rodney | | Alabama | Harris Teeter Instore |
| Heuser, Marcia | | Florida | Bayshore |
| Hill, Todd | | Florida | McNab, University |
| Hill, Leslie Slater | Austin | Texas | South Park |
| Howard, Mary | | Texas | South Austin - Bevo's |
| Justice, Deana | Jacksonville | North Carolina | New River, Northwoods, Country Club, Brynn Marr |
| Kennedy, Katherine | Tamarac Coral Springs | Florida | Tamarac Wiles Road |
| Kirkland, Diane | | Florida | South Winter |
| Kozel, Julia | | Florida | South Venice |
| Langley, Elizabeth | | Maryland | La Plata |
| Lee, Philip | Baltimore | Maryland | 100 East Street |
| Lee, Peggy | | Florida | #207, #1544 |

-3-

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION**
**Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|------|------|-------|----------------|
| Louderback, Wendy | | Florida | Sunrise Lakes & Shenandoah |
| Martinez, Kathleen | | Maryland | Annapolis Road, Riverdale, Hanover Parkway, Cip-Square |
| McKinley, June | | Florida | Gulf-to-Bay, Countryside, Delaney, University, Titusville |
| Meier, Janet | | Texas | Marsh Lane |
| Melton, Elizabeth Ann | Brunswick | Georgia | Main Branch (Brunswick) |
| Mobley, Angela | | Georgia | Bankhead |
| Monroe, Anastasia | | Florida | Southgate |
| Moreno, Lillian a.k.a Lillian Vaccato | | Florida | Pembroke Commons (formerly Citizens Federal) |
| Motley, Jeff | Plano | Texas | Plano |
| Murray, Patricia | | Georgia | Hartley Bridge Road Instore |
| Northcutt, Joe | | Texas | Southwest |
| Osavio, Miriam a.k.a. Miriam Penick | | Georgia | Market Square & Dekalb College |
| Parial, Anita | Lake Worth Boca Raton | Florida | Winn-Dixie Instore Boca Hamptons |
| Parker, Guilbert | | Maryland | Middlesex |

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION**
**Case No. 00-6145-CIV-DIMITROULEAS**

## LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Parks, Nettie | | Florida | Longwood, Lake Mary |
| Pehl, Dayton | Austin | Texas | Austin |
| Perlmutter, David | | Florida | Gulfview Square Mall Hudson |
| Powell, Irma | Lawrenceville | Virginia | Lawrenceville |
| Pumphrey, Jennie | | Pennsylvania | Benfield Road, Hillsmere, Oakland Church |
| Pye-Lee, Deborah | | Texas | Two Houston Center |
| Queen, Antoinette | | Maryland | Georgia Avenue |
| Ratcliff, Traci | | Florida | Jacksonville & Lake City |
| Reynolds, Susie | | Georgia | East Albany |
| Richardson, Steven | | Texas | Friendswood Instore |
| Rogers, Melanie | Lake City | Florida | Lake City |
| Rubenstein, Lily | | Florida | Northeast |
| Sierra, Joseph | Rio Rancho | New Mexico | Country Club |
| Silverman, Riitta | | Virginia | Old Town Alexandra |
| Skinner, Joann | | Georgia | Peach Orchard |
| Smith, Adelia | | Washington DC | 2001 Penn. Ave, Georgia Ave. |
| Smith, William | Naples | Florida | 5th Ave |
| Stewart, Fabiola | | Texas | Carrolltown |
| Strozier, Stephanie | Atlanta | Georgia | Kroger Citi-Center |

**ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION**
**Case No. 00-6145-CIV-DIMITROULEAS**

### LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Taylor, Jeffrey | | Tennessee | Hermitage, Donelson, Opryland |
| Thomas, Sheri | Charlotte | North Carolina | South Park |
| Valdes, Olga | | Florida | Downtown |
| Valdez, Sr., Juan | | Maryland | Flower Avenue |
| Valdez, Ron | | Florida | DeSoto Square, Westside |
| Waddington, Julia | | Maryland | Hillsmere |
| Washington, Samuel | | Virginia | University, Orange |
| Wells, Barbara | | Maryland | Cross Keys, Roland Ave., Merritt Blvd. |
| Willis, Harold | | Maryland | Vermont Ave., 1801 K Street & Cleveland Park |
| Wilson, Angela | | North Carolina | South Park |
| Wood, Patricia | | Georgia | Stone Mountain, Conyers, Five Forks |
| Woroschinski, Karen | | Florida | Shamrock |
| Yancy, Evans | | Georgia | West Fork |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

### AFFIDAVIT OF JUAN C. VALDEZ SR.

STATE OF MARYLAND    )
                    ) ss:
COUNTY OF MONTGOMERY    )

BEFORE ME, the undersigned authority, on this date personally appeared JUAN C.

VALDEZ SR. who, after first being duly sworn deposes and says:

1.    My name is Juan C. Valdez Sr. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1991, I was employed by NationsBank. I was employed by NationsBank

as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Flower Avenue

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, the branch manager at NationsBank's Flower


EXHIBIT
B

Avenue banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Cecilia Sanders, Emily Harris, and a person named "Sharda" (I cannot recall her last name). These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JUAN C. VALDEZ SR.

SWORN TO AND SUBSCRIBED before me this 2U day of JULY, 1999, by JUAN C. VALDEZ SR., who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires:
    C 2 | 0 2 | 0 4

Acknowledger's Name Stamped,
Typed or Printed

JACQUELINE CAPUTI
Notary Public, State of Maryland
George's County
My Commiss: expires Feb 2 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.

_____/

## AFFIDAVIT OF CARI M. FORD

STATE OF MISSOURI      )
                       ) ss:
COUNTY OF ST. LOUIS    )

BEFORE ME, the undersigned authority, on this date personally appeared CARI M.

FORD who, after first being duly sworn deposes and says:

1.    My name is Cari M. Ford. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Olivette

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.     However, since December 1997, the branch manager at NationsBank's Olivette banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.     During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.     Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for ~~them~~ forty (40) hours regardless of the number of hours worked. *Jille wille some weeks that we would put our hours in own.*

7.     I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Herman Travis, Jennifer Sharp and Deborah Pollard. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

CARI M. FORD

SWORN TO AND SUBSCRIBED before me this 12 day of ~~July~~, 2000, by CARI M. FORD, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires: MARIE G. BADER
                            Notary Public — Notary Seal
                            STATE OF MISSOURI
Acknowledger's Name Stamped St. Louis County
Typed or Printed     My Commission Expires: March 8, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.
_____/

### AFFIDAVIT OF ELIZABETH ANN MELTON

STATE OF GEORGIA    )
                   ) ss:
COUNTY OF GLYNN    )

BEFORE ME, the undersigned authority, on this date personally appeared ELIZABETH

ANN MELTON who, after first being duly sworn deposes and says:

1.    My name is Elizabeth Ann Melton. I have personal knowledge of the facts recited

in this Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Brunswick

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.     However, since December 1997, Lorrie Ethridge, the branch manager at NationsBank's Brunswick banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.     During branch meetings with employees, Lorrie Ethridge would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.     Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for· forty (40) hours regardless of the number of hours worked.

7.     I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Greg Hollis, Julie Wynn, and Francis Bryant. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Elizabeth Ann Melton
(ELIZABETH ANN MELTON

SWORN TO AND SUBSCRIBED before me this _5th_ day of _July_, 1999, by ELIZABETH ANN MELTON, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Dorotha Flynn M. Lismore
Notary Public    Notary Public, Glynn County, Georgi
My Commission Expires:    My Commission Expires June 3, 200
Doretha Lynn M. Lismore
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
            Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

            Defendants.
_____/

## AFFIDAVIT OF VIRGINIA FRANCOIS

STATE OF TEXAS          )
                        ) ss:
COUNTY OF FORT BEND  )

BEFORE ME, the undersigned authority, on this date personally appeared VIRGINIA

FRANCOIS who, after first being duly sworn deposes and says:

1.    My name is Virginia Francois. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Westheimer

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, ~~Barbara Baye,~~ the branch manager at
NationsBank's Westheimer banking center, indicated to myself and the other employees that
NationsBank would not pay for overtime work, regardless of whether it was worked, and that we
were not to record overtime hours worked on our time records. As a result of these instructions,
I would only indicate forty (40) hours on my timecard each week even though I worked more
than forty (40) hours.

5.    During branch meetings with employees, ~~Barbara Baye~~ manager would reiterate that
NationsBank would not pay for overtime work, regardless of whether it was worked, and that we
were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked
anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for
forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this
lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember
all of their names, I do recall Elaina Sanchez. This individual worked hours in excess of forty
(40) in given workweeks for which she did not receive appropriate compensation. I do not
believe that she is aware of her legal right to recover damages; I certainly was not until I
consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_Virginia Francois_
VIRGINIA FRANCOIS

SWORN TO AND SUBSCRIBED before me this 3 day of June , 1999, by VIRGINIA
FRANCOIS, who is personally known to me, or who produced D. L. (known) as
identification, and who did take an oath.

Notary Public
My Commission Expires:
MARISELA E. RODRIGUEZ
Acknowledger's Name Stamped,
Typed or Printed

MARISELA E. RODRIGUEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 7-9-2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.
_____/

## AFFIDAVIT OF MARILYN BLACKMON

STATE OF MISSOURI      )
                       ) ss:
COUNTY OF JACKSON       )

BEFORE ME, the undersigned authority, on this date personally appeared MARILYN

BLACKMON who, after first being duly sworn deposes and says:

1.    My name is Marilyn Blackmon. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

3.    In or about December 1997, at which time I worked at NationsBank's 63 Street

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Patti Peterson, the branch manager at NationsBank's 63 Street banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Patti Peterson would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Lisa Bradley and Debbie Overton. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

MARILYN BLACKMON

SWORN TO AND SUBSCRIBED before me this //ᵗʰ day of _____, 1999, by MARILYN BLACKMON, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires:
HAZEL E. NUNN
Acknowledger's Name Stamped,
Typed or Printed
STATE OF MISSOURI
Jackson County
My Comm. Expires Mar. 16, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

    Defendants.
_____/

## AFFIDAVIT OF ANGELA MOBLEY

STATE OF GEORGIA    )
                       ) ss:
COUNTY OF FULTON    )

BEFORE ME, the undersigned authority, on this date personally appeared ANGELA

MOBLEY who, after first being duly sworn deposes and says:

1.    My name is Angela Mobley. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

3.    In or about December 1997, at which time I worked at NationsBank's Bankhead

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Tamara Lomax, the branch manager at NationsBank's Bankhead banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Tamara Lomax would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

ANGELA MOBLEY

SWORN TO AND SUBSCRIBED before me this ⊥⁺ day of \\.(., _____, 1999, by ANGELA MOBLEY, who is personally known to me, or who produced⟨⟩\ \_____ as identification, and who did take an oath.

Notary Public
My Commission Expires: County, Georgia
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association.
      Defendants.
_____/

## AFFIDAVIT OF JULIA KOZEL

STATE OF FLORIDA    )
                    ) ss:
COUNTY OF SARASOTA  )

BEFORE ME, the undersigned authority, on this date personally appeared JULIA KOZEL

who, after first being duly sworn deposes and says:

1.    My name is Julia Kozel. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's South Venice

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Janet Jones, the ~~branch manager~~ Retail Marketing Manager at

South Sarasota/Charlotte Region

NationsBank's ~~South Venice banking center~~, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During ~~several~~ meetings with employees, Janet Jones would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Tracy Blitch. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JULIA KOZEL

SWORN TO AND SUBSCRIBED before me this 5 day of July, 1999, by JULIA KOZEL, who is personally known to me, or who produced Florida drivers license as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed



TAMMIE R. RIFE
MY COMMISSION # CC 838062
EXPIRES: May 18, 2003
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

    Defendants.
_____/

## AFFIDAVIT OF MARY F. BOLDEN

STATE OF MARYLAND  )
              ) ss:
COUNTY OF BALTIMORE  )

BEFORE ME, the undersigned authority, on this date personally appeared MARY F.

BOLDEN who, after first being duly sworn deposes and says:

1.    My name is Mary F. Bolden. I have personal knowledge of the facts recited in

this Affidavit.

2.    In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's

Randallstown banking center, NationsBank reclassified my position as non-exempt, which

allowed me to be eligible for overtime compensation. As of this date, I was also required to

fill out time cards.

4.     However, since December 1997, Barbara Mullin, the branch manager at NationsBank's Randallstown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.     During branch meetings with employees, Barbara Mullin would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.     Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

MARY F. BOLDEN

SWORN TO AND SUBSCRIBED before me this ___ day of _____, 1999, by MARY F. BOLDEN, who is personally known to me, or who produced _____ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.
_____/

### AFFIDAVIT OF JOHN BARI

STATE OF CALIFORNIA     )
                      ) ss:
COUNTY OF SANTA CLARA  )

BEFORE ME, the undersigned authority, on this date personally appeared JOHN BARI

who, after first being duly sworn deposes and says:

1.    My name is John Bari. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Yorktown

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.    However, since December 1997, Theodore Gargagliano, the branch manager at NationsBank's Yorktown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.  As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Theodore Gargagliano would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week.  However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN BARI

SWORN TO AND SUBSCRIBED before me this /4ᵈ day of __July__, 1999, by JOHN BARI, who is personally known to me, or who produced Calf. Drivers License as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:
    June 23, 2004
Acknowledger's Name Stamped,
Typed or Printed



MARIETTA SIBILIA
Commission # 1265262
Notary Public - California
Santa Clara County
My Comm. Expires Jun 23, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others
              Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

              Defendants.
_____/

## AFFIDAVIT OF PAUL C. BARBER

STATE OF FLORIDA        )
                        ) ss:
COUNTY OF SARASOTA       )

BEFORE ME, the undersigned authority, on this date personally appeared PAUL C.

BARBER who, after first being duly sworn deposes and says:

1.    My name is Paul C. Barber. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1996, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Southgate

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.    However, since December 1997, Laura Russo, the branch manager at NationsBank's Southgate banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.  As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Laura Russo would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to forty-five (45) hours per week.  However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

PAUL C. BARBER

SWORN TO AND SUBSCRIBED before me this  5  day of  July , 1989, by PAUL C. BARBER, who is personally known to me, or who produced  Fl. Driv. Lic.  as identification, and who did take an oath.

Notary Public
My Commission Expires:  Jan 7, 2001

Acknowledger's Name Stamped, Typed or Printed



KRISTIN K. CAWTHORNE
MY COMMISSION # CC 891664
EXPIRES: January 7, 2001
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## AFFIDAVIT OF DIANE KIRKLAND

STATE OF FLORIDA   )
                ) ss:
COUNTY OF POLK    )

BEFORE ME, the undersigned authority, on this date personally appeared DIANE

KIRKLAND who, after first being duly sworn deposes and says:

1.    My name is Diane Kirkland. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's South Winter

haven banking center, NationsBank reclassified my position as non-exempt, which allowed me

to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Louise Horne, the branch manager at NationsBank's South Winter haven banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Louise Horne would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty-five (65) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Mickey Barnett. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

DIANE KIRKLAND

SWORN TO AND SUBSCRIBED before me this 7 day of July, 2000, by DIANE KIRKLAND, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires: 09/29/00

Acknowledger's Name Stamped
Typed or Printed Name

DIANE C. Edmunds
My Commission No. CC 589229
My Commission Exp. 09/29/2000
1-800-NOTARY FL - FL Notary Service & Bonding Co.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## AFFIDAVIT OF JEFF MOTLEY

STATE OF TEXAS      )
                   ) ss:
COUNTY OF COLLIN   )

BEFORE ME, the undersigned authority, on this date personally appeared JEFF MOTLEY who, after first being duly sworn deposes and says:

1.     My name is Jeff Motley. I have personal knowledge of the facts recited in this Affidavit.

2.     In or about 1996, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3.     In or about December 1997, at which time I worked at NationsBank's Plano banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.      However, since December 1997, Shirley Stanley, a NationsBank sales manager, acting from instructions from the North Dallas Administration, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.      During branch meetings with employees, Shirley Stanley would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.      Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.      I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Terrell Walker. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JEFF MOTLEY

SWORN TO AND SUBSCRIBED before me this _17_ day of _July_, 1999, by JEFF MOTLEY, who is personally known to me, or who produced _Texas Driver L,_ as identification, and who did take an oath.

JONATHAN A. DAMON
Notary Public
State of Texas
My Comm. Exp. 11-02-03

Notary Public
My Commission Expires:
_11/02/03_
Acknowledger's Name Stamped, Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.
_____/

## AFFIDAVIT OF OLGA VALDES

STATE OF FLORIDA    )
                   ) ss:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, on this date personally appeared OLGA

VALDES who, after first being duly sworn deposes and says:

1.    My name is Olga Valdes. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1993, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Brickell

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, Donna Marie Kirlew, the regional manager for consumer bankers, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Donna Marie Kirlew would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

OLGA VALDES

SWORN TO AND SUBSCRIBED before me this 2 day of ___ 1999, by OLGA VALDES, who is personally known to me, or who produced ___ as identification, and who did take an oath.

Notary Public
Ana Diaz
My Commission Expires
Commission # CC 876836
Expires Oct. 5, 2003
Bonded Thru
Acknowledged Name Stamped, in.
Typed, or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,



Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

Defendants.

_____/

## PLAINTIFFS' NOTICE OF FILING OF CORRECTED/AMENDED AFFIDAVITS

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, and hereby notify the Court that the

following persons who have previously opted in to the above-referenced litigation and

provided affidavits in support thereof are hereby filing corrected/amended affidavits in

support thereof:

1.    John Bari

2.    Mary F. Bolden

3.    Cari M. Ford

4.    Diane Kirkland

5.    Julia Kozel

6.    Juan C. Valdez, Sr.

7.    Angela Mobley

Plaintiffs also anticipate filing a corrected/amended affidavit on behalf of Olga

Valdes.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent ~~via U.S.~~ *as*

*Noted* ~~Mail~~ this 27th day of October, 2000 to: Michael T. Burke, Esq., *(mail)* Johnson, Anselmo et al.,

790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220 and Richard

F. Kane, Esq., *(Fed. Exp)* McGuire, Woods, Battle & Boothe, 3700 NationsBank Plaza, Charlotte, NC

28280.

Respectfully submitted,

MUCHNICK WASSERMAN, DOLIN &
LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard
Suite 620 North
Hollywood, Florida 33021
(954) 989-8100  / (305) 624-9100

By: _Susan L. Dolin_
SUSAN L. DOLIN
Fla. Bar No.: 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No.: 0146315

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.
_____/

## CORRECTED AFFIDAVIT OF JOHN BARI

STATE OF CALIFORNIA   )
                 ) ss:
COUNTY OF SANTA CLARA  )

BEFORE ME, the undersigned authority, on this date personally appeared JOHN

BARI who, after first being duly sworn deposes and says:

1.    My name is John Bari. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's Yorktown

banking center, NationsBank reclassified my position as non-exempt, which allowed me to

be eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.      During the period December 1997 to March 1998, the Yorktowne banking center had no branch manager, although it did have a customer service manager, named Brenda, whose last name I cannot recall. During December of 1997, I did not feel I was receiving proper training and approached the Regional Manager on this issue, John Stuntz. In early January, I was then sent to the Turnpike banking center in Northern Virginia for about two (2) months (January and February 1998) and I recall working some Saturdays during that time which put my time worked at over forty (40) hours per week. In fact, I was probably working between forty-six (46) and forty-eight (48) hours during that time. During this time, I do recall that I did fill out time cards, and I believe that I did indicate my overtime hours on time sheets during this time. However, in late February 1998, I was then transferred back to the Yorktowne branch, where NationsBank had recently hired a banking center manager, Theodore Gargagliano. Theodore indicated to myself and other employees that we were "not to record overtime hours on our time record and that NationsBank would not pay overtime." As a result of these instructions, I only recorded forty (40) hours on my time card each week even though I worked more than forty (40) hours (as I continued to work six (6) days a week including Saturdays). If I got paid for overtime work during this period, I neither recall it, nor do I know how I would have been paid for it based on the instructions I received from Theodore Gargagliano as mentioned above. At any rate, even if I was paid overtime hours, it is not nearly equal to the amount of hours worked in total.

5.      During branch meetings with employees, Theodore Gargagliano would reiterate that he and NationsBank would not pay for overtime work, and that we were not to record overtime hours worked on our time records. He did state that he would give us time off as reimbursement for overtime hours worked; however, I do not recall ever taking time off for this purpose.

6.     After returning to the Yorktowne branch in March 1998, I worked anywhere from

forty-four (44) to forty-six (46) hours per week as I worked six (6) days which included

Saturdays.  However, because of management directives, I recorded and was paid for only

forty (40) hours per week to the best of my recollection.

FURTHER AFFIANT SAYETH NAUGHT.

JOHN BARI

SWORN TO AND SUBSCRIBED before me this 23 day of October , 2000 by JOHN
BARI, who is personally known to me, or who produced A Drivers Lic. as
identification, and who did take an oath.

Notary Public
My Commission Expires:
DENNIS PEREZ
Acknowledger's Name Stamped,
Typed or Printed

DENNIS PEREZ
Comm. # 1132203
NOTARY PUBLIC CALIFORNIA
Santa Clara County
My Comm. Expires April 25, 2001

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.

_____/

## CORRECTED AFFIDAVIT OF MARY F. BOLDEN

STATE OF MARYLAND  )
               ) ss:
COUNTY OF BALTIMORE )

      BEFORE ME, the undersigned authority, on this date personally appeared MARY F.

BOLDEN who, after first being duly sworn deposes and says:

      1.     My name is Mary F. Bolden. I have personal knowledge of the facts recited in

this Affidavit.

      2.     In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

      3.     In or about December 1997, at which time I worked at NationsBank's

Randallstown banking center, NationsBank reclassified my position as non-exempt, which

allowed me to be eligible for overtime compensation. As of this date, I was also required to

fill out time cards.

4.    However, since December 1997, Barbara Mullin, the branch manager at NationsBank's Randallstown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.    During branch meetings with employees, Barbara Mullin would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. The only exception to this was that we were allowed to record overtime for hours in excess of forty (40) that were spent at cluster meetings and regional meetings. If it was for actual individually performed work, it was not to be recorded or paid.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-eight (58) hours per week. I would work on some Saturdays from 10:00 a.m. to 12:00 or 1:00 p.m., and during the week, sometimes until 7:00 p.m. or 8:00 p.m. In fact, I was there late enough to be seen often by the janitor. Particularly in 1998, NationsBank installed new systems, and we had to spend time learning those. It was not possible to get the job done in forty (40) hours. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked, except for the branch meetings or promotions mentioned in paragraph 5.

FURTHER AFFIANT SAYETH NAUGHT.

MARY F. BOLDEN

SWORN TO AND SUBSCRIBED before me this _12_ day of _October_ , 1999, by MARY F. BOLDEN, who is personally known to me, or who produced _____ as

identification, and who did take an oath.

_Jean L. Hayes_

Notary Public
My Commission Expires:
_April 19, 2003_

Acknowledger's Name Stamped,
Typed or Printed

_Jean L. Hayes_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.
_____/

## CORRECTED AFFIDAVIT OF CARI M. FORD

STATE OF MISSOURI    )
                    ) ss:
COUNTY OF ST. LOUIS  )

      BEFORE ME, the undersigned authority, on this date personally appeared CARI M.

FORD who, after first being duly sworn deposes and says:

      1.     My name is Cari M. Ford. I have personal knowledge of the facts recited in this

Affidavit.

      2.     In or about 1990, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

      3.     In or about December 1997, at which time I worked at NationsBank's Olivette

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.      However, since December 1997, the branch manager at NationsBank's Olivette banking center, indicated to myself and the other employees that NationsBank did not want to pay for overtime work, regardless of whether it was worked, and many times we were instructed not to record overtime hours worked on our time records. As a result of these instructions, I would only put on my time cards the number of overtime hours I worked which I thought would get processed and not be returned to me. I did not, however, record all of my overtime hours.

5.      For example, it was expected that we would not take lunch. We would put out cookies and other refreshments for the customers, but we used to joke that NationsBank should fit us with IVs and catheters and just infuse us with food at our desks. I did not put down the hours on my time cards that I did not take for lunch. There was so much work to do that it was impossible to get it done during forty (40) hours, so I would come in early, and not put those hours down on my time card either.

6.      There were times when I would records closer to the true number of hours I worked (i.e., more overtime hours) on my time card than others, depending on who the managers were. Sometimes the hub managers would come down on the banking center managers about the number of overtime hours, and the banking center managers would then come down on us, so I was not able to records as many hours (i.e., closer to the true number of hours that I worked) as I might otherwise have done.

7.      During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.      Despite these instructions, I did record some, but not nearly all, of the overtime hours which I worked.

7.      I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Herman Travis, Jennifer Shar, and Deborah Pollard. These

individuals worked hours in excess of forty (40) in given workweeks for which they did not

receive appropriate compensation. I do not believe that they are aware of their legal right to

recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime,

although I felt that what NationsBank was doing was wrong and unfair.

FURTHER AFFIANT SAYETH NAUGHT.

CARI M. FORD

SWORN TO AND SUBSCRIBED before me this _18_ day of _Oct_____,2000 by CARI M.
FORD, who is personally known to me, or who produced _Drivers License._ as
identification, and who did take an oath.

Notary Public
My Commission Expires:
_3·8·02_

Acknowledger's Name Stamped
Typed or Printed

MARIE G. BADER
Notary Public — Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: March 8, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.
_____/

## AMENDED AFFIDAVIT OF DIANE KIRKLAND

STATE OF FLORIDA    )
                 ) ss:
COUNTY OF POLK    )

BEFORE ME, the undersigned authority, on this date personally appeared DIANE
KIRKLAND who, after first being duly sworn deposes and says:

1.    My name is Diane Kirkland. I have personal knowledge of the facts recited in this
Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by
NationsBank as a Consumer Banker II.

3.    In or about December 1997, at which time I worked at NationsBank's South Winter
haven banking center, NationsBank reclassified my position as non-exempt, which allowed me
to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Louise Horne, the branch manager at NationsBank's South Winter haven banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. The usual hours which I worked were from 7:30 a.m. through 6:30 p.m. with an hour lunch, although sometimes I took a shorter lunch. I did not work Saturdays. I did record only forty (40) hours, usually 8:00 a.m. until 5:00 p.m. with an hour's lunch.

5. I left the Bank on or about March 13, 1998, and found out that after some nineteen years of service (including NationsBank's predecessors), I was not going to get my vacation pay when I left. I was told that that was because I left in March and did not work a full year. I told my branch manager, Louise Horne, around February that I would be quitting and that I was upset that I would not get my vacation pay, and she advised me to put down some of the overtime hours that I had in fact worked so that I could get some compensation. As to the other overtime shown on NationsBank's records, I believe that this represents approved call nights, which we were allowed to record as overtime. However, we were not allowed to record overtime that we necessarily worked to finish our individual work, and the overtime reflected by NationsBank as having been paid to me is not nearly the full amount of the overtime that I in fact worked.

6. During branch meetings with employees, Louise Horne would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Mickey Barnett. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

DIANE KIRKLAND

SWORN TO AND SUBSCRIBED before me this 25 day of October, 1999, by DIANE KIRKLAND, who is personally known to me, or who produced _____ as identification, and who did take an oath.

Notary Public
My Commission Expires June 2, 2002

Acknowledger's Name Stamped,
Typed or Printed



TRICIA A. GILDER
MY COMMISSION # CC 747617
EXPIRES: 06/02/2002
1-800-3-NOTARY  Fla. Notary Service & Bonding Co.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

      Defendants.
_____/

## AMENDED AFFIDAVIT OF JULIA KOZEL

STATE OF FLORIDA    )
                  ) ss:
COUNTY OF SARASOTA  )

BEFORE ME, the undersigned authority, on this date personally appeared JULIA KOZEL

who, after first being duly sworn deposes and says:

1.    My name is Julia Kozel. I have personal knowledge of the facts recited in this

Affidavit.

2.    In or about 1986, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's South Venice

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

                                                                Retail Marketing

4.    However, since December 1997, Janet Jones, the ~~branch manager at~~ Retail Marketing

Manager at

South Sarasota/Charlotte Region

NationsBank's ~~South Venice banking center~~ indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours, except that we were allowed to record Saturday hours worked, even if it took us over forty (40) hours. I worked Saturdays from 8:30 a.m. until 12:30 p.m. and did record that time. However, it was not possible to complete my regular work load in forty hours, and during the week I would come in early and stay late. However, I was not allowed to record those hours on my time card, and did not do so, even though I worked them. ....

5.    During branch meetings with employees, Janet Jones would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours as described in paragraph 5 on our time records.

6.    Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked, except when I worked Saturdays as described above.

7.    I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Tracy Blitch. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

8.    I worked for NationsBank's predecessors from March 1979 through all the mergers and considered myself a good employee. I would in no way try to defraud anyone in any way.

FURTHER AFFIANT SAYETH NAUGHT.

Julia Kozel
JULIA KOZEL

SWORN TO AND SUBSCRIBED before me this 16 day of ___October___, 2000, by JULIA KOZEL, who is personally known to me, or who produced __FL Drivers License__ as identification, and who did take an oath.



Notary Public
My Commission Expires:

_____
Acknowledger's Name Stamped,
Typed or Printed

TAMMIE R. RIFE
MY COMMISSION # CC 838062
EXPIRES May 16, 2003
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

       Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

       Defendants.
_____/

## AMENDED AFFIDAVIT OF JUAN C. VALDEZ SR.

STATE OF MARYLAND     )
                       ) ss:
COUNTY OF MONTGOMERY   )

BEFORE ME, the undersigned authority, on this date personally appeared JUAN C.

VALDEZ SR. who, after first being duly sworn deposes and says:

1.    My name is Juan C. Valdez Sr. I have personal knowledge of the facts recited in

this Affidavit.

1994 JCV

2.    In or about ~~1994~~, I was employed by NationsBank. I was employed by NationsBank

as a Consumer Banker III.

3.    In or about December 1997, at which time I worked at NationsBank's Flower Avenue

banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4.    However, since December 1997, the branch manager at NationsBank's Flower

Avenue banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would, to the best of my recollection, indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5.  During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6.  Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-five (55) hours per week. However, to the best of my recollection, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7.  From December 1997 through the present time, we have had more than four managers at the Flower Avenue Branch. I was the one conducting the loan-a-thon, during this period, which is the after-hours telemarketing. This often extended late into the evening. Some of the telemarketing was done from our office and some other times we were directed to go to different offices to do the telemarketing.

8.  If there were some overtime hours paid for or reflected on my time cards, it was time that was overlooked by the manager or whoever was in charge of checking my timecards. However, the overtime NationsBank claims to have paid me in no way represents the full amount of overtime which I worked. To this day, the managers continue to direct us not to work overtime and not to report overtime which we do work.

7.  I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Cecilia Sanders, Emily Harris, and a person named "Sharda" (I cannot recall her last name). These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of

their legal right to recover damages; I certainly was not until I consulted an attorney regarding

unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JUAN C. VALDEZ SR.

SWORN TO AND SUBSCRIBED before me this 23 day of October 1999, by JUAN C.
VALDEZ SR., who is personally known to me, or who produced _____ as
identification, and who did take an oath.

Notary Public
My Commission Expires:

JACQUELINE CAPI
Notary Public. State of Mar
Prince George's Count
. My Commission Expires· Feb

Acknowledger's Name Stamped,
Typed or Printed

JACQUELINE CAPUTI
Notary Public, State of Maryland
Prince George's County
My Commission Expires  Feb  2  2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated of herself and
all others

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendants.
_____/

## CORRECTED AFFIDAVIT OF ANGELA MOBLEY

STATE OF GEORGIA    )
                       ) ss:
COUNTY OF FULTON    )

    BEFORE ME, the undersigned authority, on this date personally appeared ANGELA

MOBLEY who, after first being duly sworn deposes and says:

    1.    My name is Angela Mobley. I have personal knowledge of the facts recited in

this Affidavit.

    2.    In or about 1997, I was employed by NationsBank. I was employed by

NationsBank as a Consumer Banker IV.

    3.    In or about December 1997, at which time I worked at NationsBank's Bankhead

banking center, NationsBank reclassified my position as non-exempt, which allowed me to

be eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4.    At the time we became required to fill out time cards, our start time was moved up from 8:00 a.m. to 8:30 a.m. I was still so busy that I did not take a lunch. Also, my manager, Tamara Lomax, instructed my to sign out at 5:00 p.m. or 5:30 p.m., even though I frequently was not through with my work at that time. Nevertheless, because Ms. Lomax instructed me to do so, I signed out at that time and kept working, sometimes until 8:00 p.m. or 9:00 p.m.

5.    I worked on Saturdays from approximately 8:30 a.m. until 1:00 p.m. Sometimes I would stay later on Saturdays as well, but I was instructed to sign out by 1:00 p.m., which I did. I was, however, paid for Saturday work (at least some of it) even if it put me over forty (40) hours.

6.    The banking center was open on Fridays late, and my working hours were 8:00 a.m. until 7:00 p.m. I was told by Tamara Lomax that I had to sign out at 7:00 p.m., even if I had to continue working, which I did frequently. In fact, I was registered for school then, and I had signed up for a Friday evening class which began at 7:15 p.m., and I recall missing the class frequently because I was stuck at work. I was not paid for these hours.

7.    Even if NationsBank did in fact pay me some overtime, what it paid me was not the true amount of overtime which I had worked, as I was not permitted to record my true hours.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ANGELA MOBLEY

SWORN TO AND SUBSCRIBED before me this 26 day of _October_, 2000 by ANGELA MOBLEY, who is personally known to me, or who produced _Drivers License_ as identification, and who did take an oath.

_____
Notary Public
My Commission Expires:

Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO and    )
KIMBERLY DRAKE, on behalf of )
themselves and all others )
Similarly situated,    )
                       )
              Plaintiffs, )
Vs.                    )
                       )
BANKAMERICA CORPORATION, a )
Foreign corporation d/b/a BANK )
OF AMERICA CORPORATION, a    )
Foreign corporation f/k/a    )
NATIONSBANK, N.A., a national )
Association,    )
                       )
              Defendant.    )

**COPY**

--------------------------------

337 E. Las Olas Boulevard
Fort Lauderdale, Florida
July 14th, 2000
12:45 p.m. - 2:07 p.m.

APPEARANCES:

MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP
By SUSAN DOLIN, ESQ.
Attorney for the Plaintiffs

McGUIRE, WOODS, BATTLE & BOOTHE, LLP
By RICHARD F. KANE, ESQ.
Attorney for the Defendant

Also Present:  Kimberly Drake

- - - - - - - -
DEPOSITION

OF

ROXANNA ESCUDERO
- - - - - - - -

23

```
 1              Q.    What was your beginning salary as a
 2      consumer banker?
 3              A.    I'm really terrible with numbers.  I don't
 4      remember.
 5              Q.    What was your ending salary?
 6              A.    Maybe 26,3, 26.  I'm not exactly sure.
 7              Q.    Do you recall how much money you made while
 8      employed at NationsBank, including everything?
 9              A.    Last year?
10              Q.    In 1998.
11              A.    '98, I don't.
12              Q.    How about '99?
13              A.    '99, I want to say about 58,000, maybe a
14      little bit more, maybe a little bit less.
15              Q.    Is it your recollection that your base
16      salary was less than half of your earnings?
17              A.    Uh-huh.  I believe so, yes.  I'm sorry.
18              Q.    When you first started at Nob Hill --
19                    And let's begin with after the training.
20      Who was your supervisor?
21              A.    My manager was John Martinez.  And Jackie
22      Garber, G-A-R-B-E-R, was the person what I worked side
23      by side with.  I actually took her position there.  So
24      she worked on a daily basis with me, then she moved into
25      the training department.
```

24

```
 1              Q.    What was Jackie Garber's -- Garber?
 2              A.    (Witness nodding.)
 3              Q.    -- what was her position?
 4              A.    She was a CB-3 or CB-4.  She's been with
 5      the bank like seventeen, eighteen, nineteen years.  One
 6      of their top performers.
 7              Q.    But supervisors were John Martinez --
 8              A.    John Martinez was my branch manager.
 9      Michelle Mazzella, M-A-Z-Z-E-L-L-A, was our customer
10      service manager.
11              Q.    Okay.  How long was John Martinez your
12      supervisor?
13              A.    October of '97 to -- John left sometime in
14      '98, maybe '99.  He left maybe at the beginning or
15      halfway through the Beverly Hills campaign, I believe.
16              Q.    Okay.  How about Michelle Mazzella?
17              A.    Michelle, I'm not sure exactly how long she
18      was there, at least six months and then she transferred.
19              Q.    Did you report to Michelle or to John?
20              A.    I reported to John but I turned my
21      timecards in to Michelle.
22              Q.    Okay.  And who replaced Michelle?
23              A.    I believe it was Elaine Stewart.
24              Q.    Did she perform the same functions?
25              A.    Yes, I believe so.
```

1          Q.    Okay.   Now, when did Jackie Garber tell you

2    that?

3          A.    When I first started, back in October or

4    November '97.

5          Q.    Okay.

6          A.    She even made the comment to me, and asked

7    me -- told me that I would do very well because I was

8    Jewish.  And I said I'm not Jewish.  And she said,

9    you're not.  She said, well, you'll do good anyway, you

10   look like you have the right determination to do good in

11   this company.

12         Q.    And where is Jackie Garber now?

13         A.    Last I heard Jackie was working at the Op

14   Center.  She was in training, but I don't believe she's

15   in training anymore.

16         Q.    And she was a Consumer Banker 3?

17         A.    Three or 4.  I think she was a 4.

18         Q.    Now, how long was she in Nob Hill while you

19   were there?

20         A.    About four months, maybe.

21         Q.    Okay.

22         A.    She was there before that, though, for

23   quite awhile.

24         Q.    Was it after that discussion with Jackie

25   Garber that you began the use of a dummy time sheet?

```
 1              A.    No.   Actually we started with our time
 2       sheets in, I believe, January.  And --
 3              Q.    Of '98?
 4              A.    I believe so, yes.
 5                    And we would record time and I would have
 6       my time sheet sent back to me if it had more then forty
 7       hours and told to change my time sheets to forty hours.
 8              Q.    Who told you that?
 9              A.    Michelle Mazzella.
10              Q.    Michelle.  How do you spell her name?
11              A.    I think it's M-A-Z-Z-E-L-L-A or maybe there
12       is one Z, I'm not sure.
13              Q.    Did you ask her about why you couldn't
14       record more than forty hours?
15              A.    She said that there was no overtime.  We
16       were only allowed to work forty hours.
17              Q.    When was the first time you submitted a
18       time card that showed more than forty hours?
19              A.    I'm not sure.
20              Q.    Did all your timecards show forty hours,
21       even if you worked less?
22              A.    No, I don't believe so.  I don't know.
23              Q.    Do you remember ever showing hours of less
24       than forty?
25              A.    I don't -- I'm not sure.
```

```
 1              Q.    All right.  Do you remember if this
 2   conversation with Michelle was on the first occasion
 3   where you submitted a timecard showing overtime?
 4              A.    There were a few times that I actually had
 5   hours over forty that she allowed.  But then it would
 6   be, Roxanne, you know there is no overtime.  And I would
 7   submit them a couple of times and she would say there is
 8   no overtime, you only get paid for forty hours.
 9              Q.    Did you ever get paid for overtime?
10              A.    There were a few times, yes.
11              Q.    A few times?
12              A.    (Witness nodding.)
13              Q.    How many?
14              A.    I don't know for sure exactly how many.
15              Q.    Well, what I'm trying to understand,
16   Ms. Escudero, is why she would let a few go through for
17   which you got pay and then on other occasions she
18   wouldn't let you submit it.
19              A.    I have no idea, unless it came from her
20   supervisor.
21              Q.    Okay.  But your recollection is that you
22   submitted a few and that she did let those go through?
23              A.    I believe so, yes.
24                    I also remember that --
25                    MS. DOLIN:  There is no question pending.
```

```
 1    BY MR. KANE:

 2         Q.    Was she at the banking center, Nob Hill,

 3    when you were assigned there?

 4         A.    She was.

 5         Q.    Okay.  Did you testify that she was

 6    replaced by Elaine Stewart?

 7         A.    I believe so, yes.

 8         Q.    Okay.  Tell me again, how long was Michelle

 9    there?

10         A.    I'm not exactly sure, maybe six, seven

11    months.  I'm not sure though.

12         Q.    After Michelle left did you turn in

13    timecards with hours showing more than forty in a week?

14         A.    To Elaine?

15         Q.    To anybody.

16         A.    Uh-huh.

17         Q.    All right.

18               MS. DOLIN:  You have to say yes or no.

19               THE WITNESS:  Yes.  I'm sorry.  I'm sorry.

20    BY MR. KANE:

21         Q.    And who did you submit those to?

22         A.    Before Elaine came there was a short time

23    where we didn't have a CSM.  To the manager.

24         Q.    That would be John Martinez?

25         A.    Yes.  Or to a head teller.
```

```
 1              Q.    Okay.
 2              A.    And there were times on there that there
 3    were more than forty hours and, again, I was told that
 4    we only got paid for forty hours.
 5              Q.    And who told you?
 6              A.    The head teller.
 7              Q.    What was her name?
 8              A.    I don't remember at the time.  We had so
 9    many tellers.
10              Q.    Okay.
11              A.    John Martinez.
12              Q.    John Martinez, too?
13              A.    (Witness nodding.)
14              Q.    And this is during the period where there
15    is no CSM in the bank?
16              A.    I believe so, yes.
17              Q.    Okay.  And were you directed to change the
18    timecard?
19              A.    The comment was made to me you know we only
20    get paid for forty hours, there is no overtime.
21              Q.    All right.  And how about when Elaine came
22    on?
23                    How many times did John Martinez talk to
24    you?
25              A.    I don't remember.
```

```
 1              Q.    How about the head teller?

 2              A.    I don't remember.

 3              Q.    Was it ten times, one time, five times?

 4              A.    I don't remember.

 5              Q.    Any idea?

 6              A.    No.

 7              Q.    Okay.   Then do you remember what month

 8     Elaine Stewart came in?

 9              A.    I don't.

10              Q.    Did you have a conversation with her about

11     overtime?

12              A.    Elaine would tell me the same thing,

13     that -- after awhile you just stop putting anything over

14     forty.

15              Q.    All right.   I'm trying to figure out how

16     many times -- perhaps you had a conversation with

17     Elaine.  Did you have it or had you already stopped the

18     practice of putting anything in over forty?

19              A.    Probably a couple of times with Elaine.

20              Q.    A couple of times?

21              A.    Maybe.

22              Q.    Did you have a conversation with her each

23     time you submitted a timecard over forty?

24              A.    She would ust tell us that, guys -- and she

25     would talk to everybody in general, you know, there is
```

```
 1      no overtime.  I need your time sheets.  Make sure that
 2      there is no overtime.  Overtime is not allowed.
 3          Q.    Okay.  At what point in time did you stop
 4      submitting --
 5          A.    I don't remember.
 6          Q.    Was Elaine the CSM the entire time you
 7      were -- once she was assigned, was she the CSM until the
 8      time you were separated?
 9          A.    I believe so.
10          Q.    All of this started when I was asking you
11      about the Wednesdays.  And is it your testimony it
12      really didn't matter what you showed on your timecard,
13      you were only going to get paid for forty?
14          A.    Yes.
15          Q.    So, let me understand, did you show
16      Saturdays on your timecard?
17          A.    I did, because I worked almost every
18      Saturday.
19          Q.    Did you show Wednesdays on your timecard?
20          A.    If I worked them --
21                Say if I worked a half a day on
22      Wednesday --
23          Q.    Yes.
24          A.    -- I would put the hours on Wednesday.  I
25      would have put my Monday, Tuesday through the end of the
```

```
 1    week, and sometimes I would show it on Wednesday.  It
 2    just equaled forty.
 3            Q.    What I'm trying to get at, Ms. Escudero, is
 4    no matter, once you got to forty, you just stopped,
 5    whatever day of the week it was?
 6            A.    No.  There was usually something on every
 7    day, even if it showed a couple of hours.
 8            Q.    So the hours that you might put on Monday
 9    or Tuesday may or may not be accurate?
10            A.    Yes.
11            Q.    Did you sign these timecards?
12            A.    Yes.
13            Q.    Who did you complain to about this?
14            A.    We all complained to our managers, to our
15    CSMs.
16            Q.    Who did you specifically complain to?
17            A.    I talked to John Martinez before about it.
18    I talked to Michelle about it.  I talked to Elaine about
19    it.  I talked to Helen about it.
20                  MS. DOLIN:  To who?  I missed the last one.
21                  THE WITNESS:  Helen.  Probably not that
22              much with Helen because by the time Helen came
23              you just wrote forty hours.
24    BY MR. KANE:
25            Q.    Okay.  No more no less?
```

```
1                    CERTIFICATE OF OATH

2

    STATE OF FLORIDA        )
3                            : SS
    COUNTY OF BROWARD        )
4

5          I, the undersigned authority, certify that

6    ROXANNA ESCUDERO personally appeared before me and was

7    duly sworn.

8

9          WITNESS my hand and official seal this 31st

10   day of July, 2000.

11

12

13

14   _____
        Victoria Paez
15      Notary Public - State of Florida
        My Commission No. CC458833
16      My Commission Expires: 7-14-03

17

18

19

20

21

22

23

24

25
```

```
 1                REPORTER'S DEPOSITION CERTIFICATE

 2    STATE   OF   FLORIDA    )
                             : SS
 3    COUNTY OF BROWARD       )

 4            I, VICTORIA PAEZ, Shorthand Reporter, certify

 5    that I was authorized to and did stenographically report

 6    the deposition of ROXANNA ESCUDERO; that a review of the

 7    transcript was requested; and that the transcript is a

 8    true and complete record of my stenographic notes.

 9

10            I further certify that I am not a relative,

11    employee, Attorney, or counsel of any of the parties,

12    nor am I a relative or employee of any of the parties'

13    Attorney or counsel connected with the action, nor am I

14    financially interested in the action.

15

16            Dated this 31st day of July, 2000.

17

18

19

20            _____
                        Victoria Paez
21

22

23

24

25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO and         )
KIMBERLY DRAKE, on behalf of    )
themselves and all others       )
Similarly situated,             )
                                )    **COPY**
            Plaintiffs,          )
Vs.                             )
                                )
BANKAMERICA CORPORATION, a      )
Foreign corporation d/b/a BANK  )
OF AMERICA CORPORATION, a       )
Foreign corporation f/k/a       )
NATIONSBANK, N.A., a national   )
Association,                    )
                                )
            Defendant.           )
--------------------------------

                        337 E. Las Olas Boulevard
                        Fort Lauderdale, Florida
                        July 13th, 2000
                        9:30 a.m. - 12:05 p.m.

APPEARANCES:

        MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP
        By ADAM S. CHOTINER, ESQ., ESQ.
        Attorney for the Plaintiffs

        McGUIRE, WOODS, BATTLE & BOOTHE, LLP
        By RICHARD F. KANE, ESQ.
        Attorney for the Defendant

        Also Present:  Roxanna L. Escudero

                - - - - - - - -
                    DEPOSITION

                        OF

                    KIMBERLY DRAKE
                - - - - - - - -

```
 1              A.    Coral Springs.
 2              Q.    So at the start of your employment were you
 3    assigned to Wiles Road?
 4              A.    Uh-huh.  That's the bank I was hired for.
 5              Q.    While you were training, you were at Wiles
 6    Road.  After your three months of training, did you stay
 7    at Wiles Road?
 8              A.    I stayed there for six months, then moved
 9    to Rock Island.
10              Q.    Did the six months include the three months
11    of training?
12              A.    Yes.  From October of '97 till March of '98
13    was Wiles Road.  March of '98 was just supposed to be a
14    temporary move to Rock Island.  It became permanent.
15              Q.    Okay.  So Rock Island is March of '98?
16              A.    Uh-huh.
17              Q.    Now, who were your supervisors or who was
18    your supervisor at Wiles Road?
19              A.    Lorraine Roth.
20              Q.    And what was her title?
21              A.    Bank manager.
22              Q.    She was the center manager, banking center
23    manager?
24              A.    Uh-huh.
25              Q.    Anyone else that you reported to?
```

```
 1          A.     My customer service manager was kind of an
 2   equal but I did not report to her directly.  But her
 3   name was Kathleen Spidle.
 4          Q.     Okay.  What sort of interaction did you
 5   have with Kathleen Spidle?
 6          A.     If I had any customer problems that they
 7   had with their accounts, I would go to Kathleen.
 8          Q.     Did she have any responsibility for
 9   scheduling consumer bankers at that time?
10          A.     No, not at that time.
11          Q.     Did she ever, to your knowledge?
12          A.     Not to my knowledge, no.
13          Q.     Okay.  Did Lorraine Roth do the scheduling
14   of consumer bankers?
15          A.     Yes, she did.
16          Q.     How would you be notified of your schedule?
17          A.     There wasn't really any notification other
18   than verbal.
19          Q.     And would Lorraine give you that
20   notification?
21          A.     Yes, she would.
22          Q.     How often?
23          A.     I think it was given to me maybe once or
24   twice my whole entire time there.
25          Q.     So were you on a set schedule or did it
```

36

```
 1              A.    In '98.  January through May of '98.
 2              Q.    Did you win anything in the San Francisco
 3      campaign?
 4              A.    I won the opportunity to go to the awards
 5      dinner for the top one-fifty, but I did not win a trip.
 6              Q.    Okay.  Now, you say March of '98 you went
 7      to Rock Island, correct?
 8              A.    Yes, I did.
 9              Q.    Who was your supervisor at Rock Island?.
10              A.    Nancy Parness.
11              Q.    Was she the banking center manager?
12              A.    Yes, she was.
13              Q.    Was she there when you were transferred
14      there?
15              A.    Yes.  I was -- yes, she was.
16              Q.    Did she remain banking center manager at
17      Rock Hill (sic) the entire time you were at Rock Hill
18      (sic)?
19              A.    No, she did not.
20              Q.    Approximately how long was she there while
21      you were there?
22              A.    She got into a terrible car accident a week
23      before my vacation and my vacation was in July.
24              Q.    Of what year?
25              A.    '98?
```

```
 1              Q.    Okay.  And how long was she out?

 2              A.    Over a year.

 3              Q.    And did you say this was, I'm sorry, the

 4    same time of your vacation or following?

 5              A.    It was -- I went on vacation towards the

 6    end of July, the day before she got into a car accident.

 7              Q.    Okay.  So was yours a week's vacation?

 8              A.    Two weeks.  I didn't know about it until I

 9    was on my way to Montana when I found out that she was

10    in the car accident.

11              Q.    Okay.  So you say it was late July.  You

12    came back, what, after two weeks in early August?

13              A.    Yeah, early August.

14              Q.    Okay.  Was there a new banking center

15    manager there at the time?

16              A.    There was fill-ins from different banks.

17    There was no permanent person.

18              Q.    How long was it before a permanent banking

19    center manager was assigned?

20              A.    I would have to say probably September or

21    October of '98.

22              Q.    And who was that?

23              A.    Karen, but I don't know her last name.  She

24    got married, that's why I don't know.

25              Q.    How long was Karen there?
```

```
 1              A.    Karen, if she started in September,
 2    October, which I'm not sure on, she was there until a
 3    month before the campaign ended, which would be May of
 4    '99.
 5              Q.    Okay.
 6              A.    She left the first part of May because she
 7    was forfeiting her trip to take a transfer.  She already
 8    knew she was winning a trip.
 9              Q.    You say she was getting married?
10              A.    She got married during that period.
11              Q.    Okay.  Was the marriage tied to the time
12    she left?  Did she get married because --
13              A.    No.  She got married because she took a
14    promotion in the training department.
15              Q.    And who was the banking center manager
16    after Karen?
17              A.    Rodney Sumpter.  Well, there was a
18    temporary, again, for like a month, temporary people.
19    For three weeks, myself and the head teller ran the bank
20    and then they brought in a couple temporaries from
21    different banks and then around I guess July of '99
22    Rodney took over.
23              Q.    Do you remember any of the names of those
24    temporary banking center managers?
25              A.    It was Liz but I don't know her last name.
```

```
 1   I guess that's short for Elizabeth.  And Patti Frisch.

 2   And Chauncey.  I don't know his last name.  And that's

 3   pretty much.  Justine Smale was there.  She was our

 4   customer service manager.  She filled in for awhile.

 5   But it was mainly me and Josette for a three-week period

 6   that ran it.

 7        Q.    Josette who?

 8        A.    Josette Nigro.  She was the head teller.

 9        Q.    And did you have a customer service manager

10   at that time?

11        A.    Off and on we had Justine.  Justine went to

12   have a baby and then Justine came back just to fill in

13   and then she went to another bank.  'Cause at the time

14   the customer service managers at the smaller banks, the

15   position was dissolved when the merger was going on.

16        Q.    What merger?

17        A.    The Bank of America one.  I mean, the

18   merger already happened but they were making changes and

19   they were dissolving customer service managers at

20   smaller banking centers.

21        Q.    Are you by chance confusing the Bank of

22   America and Barnett merger?

23        A.    There were two mergers.  There were a

24   Barnett merger and a Bank of America merger.

25        Q.    You're talking about the Bank of America
```

```
 1   merger?
 2           A.    Yes, I am.    The title change and the CSM
 3   both happened during Bank of America.
 4           Q.    Okay.    Now, how long of a period was it
 5   between Karen's leaving the Rock Island branch or
 6   banking center and Rodney's assignment?
 7           A.    I would say two -- maybe two months,
 8   two-and-a-half.    He was in training that's why he didn't
 9   take over right away.
10           Q.    And these people that you're referring, and
11   I didn't capture all the name, but Liz, Patti and some
12   others, those were all in that two-month period,
13   approximately?
14           A.    Yes.
15           Q.    Okay.    Now, with regard to the consumer
16   banker position or synonymously the personal banker
17   position, okay, as it was later called, what were your
18   duties?
19           A.    Open and close accounts, do car loans, home
20   loans, any type of loan you can think of.    Handle
21   customer service needs such as balancing checkbooks,
22   getting banking statements, notary service.    What else?
23   There was notary.    There was -- my mind just drew blank.
24   Hold on.    I don't know.    My mind just drew blank for
25   just a second.
```

```
 1                         CERTIFICATE OF OATH

 2
         STATE OF FLORIDA       )
 3                              : SS
         COUNTY OF BROWARD      )

 4

 5                I, the undersigned authority, certify that

 6       KIMBERLY DRAKE personally appeared before me and was

 7       duly sworn.

 8

 9                WITNESS my hand and official seal this 28th

10       day of July, 2000.

11

12

13

14                        _____
                          Victoria Paez
15                        Notary Public - State of Florida
                          My Commission No. CC458833
16                        My Commission Expires: 7-14-03

17

18

19

20

21

22

23

24

25
```

```
 1              REPORTER'S DEPOSITION CERTIFICATE

 2    STATE   OF   FLORIDA   )
                            : SS
 3    COUNTY OF BROWARD      )

 4            I, VICTORIA PAEZ, Shorthand Reporter, certify

 5    that I was authorized to and did stenographically report

 6    the deposition of KIMBERLY DRAKE; that a review of the

 7    transcript was requested; and that the transcript is a

 8    true and complete record of my stenographic notes.

 9

10            I further certify that I am not a relative,

11    employee, Attorney, or counsel of any of the parties,

12    nor am I a relative or employee of any of the parties'

13    Attorney or counsel connected with the action, nor am I

14    financially interested in the action.

15

16                 Dated this 28th day of July, 2000.

17

18

19

20                              _____
                                Victoria Paez
21

22

23

24

25
```

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.  00-6145-CIV-DIMITROULEAS/JOHNSON

ROXANNA L. ESCUDERO, et al,

    Plaintiff,

vs



BANKAMERICA CORPORATION, etc.,

    Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Emergency Motion for Protective Order and Incorporated Memorandum of aw, filed January 24, 2001. This Court has reviewed the pleadings filed incident to this matter and is otherwise duly advised in the premises. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that said motion is **GRANTED**. The depositions currently set of all opt-in plaintiffs, if allowable at all, is premature at this time. Plaintiffs have offered to allow Defendant to propound written interrogatories to the opt-in plaintiffs. This form of discovery, under the circumstances herein, should precede any discovery by deposition that may be permitted in this case.

**DONE AND ORDERED** on January 30, 2001, in Chambers, at West Palm Beach,

Florida.

_____

LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE

CC:    The Honorable William P. Dimitrouleas
        Susan L. Dolin, Esquire
        Caryl Boies, Esquire
        Richard Kane, Esquire
        Michael T. Burke, Esquire

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 98-6306-CIV-DIMITROULEAS**

BEVERLY LEVINE, et al.,

    Plaintiffs,

vs.

NATIONSBANK, N.A.,
a national association,

    Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiffs' Motion For Protective Order (D.E.

#1595) and Defendant's Motion To Compel Discovery (D.E. #1598).

The Court having considered the pleadings filed herein, and being otherwise duly

advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Protective Order is

**GRANTED** and Defendant's Motion to Compel Discovery is **DENIED**.

Discovery from opt-in plaintiffs should be allowed only in very rare circumstances

where there is particularized need for the information. In re Carbon Dioxide Industry

Antitrust Litigation, 155 F.R.D. 209 (M.D. Fla. 1993)(holding that "[a]bsent a showing of

such particularized need, the court will not permit general discovery from [opt-ins].", (citing

Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1555-57 (11th Cir.), cert. denied, 479

U.S. 883 (1986)). This principle applies equally to traditional class actions pursuant to Fed.

R. Civ. P. 23 and collective actions brought under the provisions of the FLSA. See Adkins

v. Mid-America Growers, Inc., 141 F.R.D. 466, 468-69 (N.D. Ill. 1992).

In the instant case Plaintiffs have failed to demonstrate the requisite particularized need. As a preliminary matter, much of the discovery sought is discovery which Plaintiffs already possess. Secondly, much of the discovery sought concerns issues which have already been ruled upon. Finally, the cases Plaintiffs cite in support of their position are either factually distinguishable from the instant case or, read closely, are supportive of Defendant's position. Here we are dealing with over 1,600 opt-in plaintiffs as compared with the much fewer number faced in the cases cited by Plaintiffs. See, e.g., Krueger v. New York Telephone Co., 163 F.R.D. 446 (S.D. N.Y. 1995)(162 opt-in plaintiffs); Rosen v. Reckitt & Colman, Inc., 1994 WL 652534 (S.D. N.Y. 1994)(49 opt-in plaintiffs); Kaas v. Pratt & Whitney, 1991 WL 158943 (S.D. Fla. 1991)(approximately 100 opt-in plaintiffs); United States v. Trucking Employers, Inc., 72 F.R.D. 101 (D.D.C. 1976)(7 class members); Redmond v. Moody's Investor Service, 1995 WL 276150 (S.D. N.Y. 1995)(68 class members).

**DONE AND ORDERED** this 17th day of June 1999, in Chambers, at West Palm Beach, Florida.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

CC:    The Honorable William P. Dimitrouleas
       Susan L. Dolin, Esq.
       Gary K. Harris, Esq.
       Michael T. Burke, Esq.
       Richard F. Kane, Esq.