UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

          Plaintiffs,

vs.

BANKAMERICA CORPORATION.
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation. f/k/a
NATIONSBANK, N.A., a national
association,

          Defendant.

NIGHT BOX
FILED
FEB 26 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## NationsBank's Response to
## Plaintiffs' Motion to Compel Production

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America,

N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"). by counsel,

responds as follows to Plaintiffs' Motion to Compel Production ("Motion to Compel") served

upon its undersigned counsel on January 31, 2001:



1

**Argument**

I.    The Marginal Relevance of the Computerized Information Sought by Plaintiffs does not
Justify the Burden and Expense Imposed on NationsBank to Retrieve Such Information.

In their first and second requests for production, Plaintiffs requested NationsBank to

produce "computer logs" and "alarm records" for the following named and opt-in plaintiffs: (1)

Roxanna Escudero (1st Request); (2) Kimberly Drake (1st Request); (3) John Bari; (4) Mary F.

Bolden; (5) Cari M. Ford; (6) Diane Kirkland; (7) Julia Kozel; (8) Juan C. Valdez, Sr.; (9)

Angela Mobley; (10) Jeff Motley; and (11) Olga Valdes (all in 2nd Request).  In its response to

these discovery requests, NationsBank preserved its right to object to Plaintiffs' discovery

requests to the extent they proved to be unduly burdensome.  See NationsBank's responses to

both Plaintiffs' First Request for Production, Request Nos. 2 and 3, and Second Request for

Production, Request Nos. 1 and 2, copies of which are collectively attached hereto as Exhibit A.

NationsBank asserted these objections based on its good faith belief that production of "alarm

records" and "computer logs" for each plaintiff might prove to be excessively burdensome and

expensive. As demonstrated below, what NationsBank's initially believed to be true in theory,

has proven to be true in reality.  See generally Affidavit of Janice Curtis ("Curtis Aff."), a copy

of which is appended hereto as Exhibit B.  NationsBank, therefore, should be relieved from

responding to Plaintiffs' first and second requests for the production to the extent they direct

NationsBank to produce "computer logs" and "alarm records" for the plaintiffs named therein.

In their Motion to Compel, Plaintiffs profess that "it is incomprehensible that [their]

discovery requests would be so burdensome so as to require this length of time, considering the

fact that most of the information requested is necessarily stored in the computer system."  See

Motion to Compel, p 8. Plaintiffs' inability to comprehend NationsBank's objections is based on

their own misconception of, or disregard for, the burden their discovery requests impose on

NationsBank. Plaintiffs either do not appreciate or choose to ignore the oppressive burden and exorbitant expense that their discovery requests have already imposed, and will continue to impose, on NationsBank. NationsBank submits, however, that the Court should limit the scope of Plaintiffs' requests for production by concluding, based on the facts and circumstances, that the "burden and expense of the proposed discovery outweighs its likely benefit, . . . ." See Fed. R. Civ. P. 26(b)(2)(iii); see also, e.g., Alexander v. FBI, 2000 U.S. Dist. Lexis 9967 (D.D.C. 2000) (limiting scope of electronic discovery based upon information's questionable relevance to disputed issues) .

Contrary to Plaintiffs' contention, NationsBank cannot respond to Plaintiffs' request for "computer logs" and "alarm records" simply by producing a readily accessible paper file or printing out an existing computer report on each plaintiff; rather, the "computer logs" and "alarm records" sought by Plaintiffs exist, if at all, in the form of voluminous computer files and databases of archived raw electronic data covering approximately 150,000 employees over the span of at least three years. Indeed, NationsBank's search to date has revealed that any raw electronic data that might be responsive to Plaintiffs' discovery request is not maintained or stored in an easily accessible, readily legible or economically reproducible format.

The Court need only consider the scope of the "computer log" information sought by Plaintiffs to appreciate the enormity of the burden Plaintiffs seek to impose on NationsBank in terms of manpower, computer resources and expense. See id. at ¶¶ 9-11. Even if such data still exists, which is questionable given its age and the obvious constraints of physically storing such a large amount of data, there would be at least two daily entries (one log on and one log off) recorded for each of NationsBank's approximately 150,000 employees for three years (1998-2000). See Curtis Aff., ¶ 9. In addition, NationsBank utilized multiple computer software

3

programs and databases during the relevant time period, and multiple computer terminals were available in each banking center on to which an employee could log on. See id.[1]

Moreover, the "computer logs" and "alarm records" are of only marginal relevance to the issues involved in this case, particularly when compared to the burden and expense these discovery requests impose on NationsBank. The core issue in this action is whether Plaintiffs worked in excess of forty hours per week in any week during the relevant time period.[2] See Complaint, ¶¶ 14-16. The "computer logs" requested by plaintiffs, however, do not show when Plaintiffs began or ended their workday. The computer records, at best, merely show when a Plaintiff was signed on to NationsBank's computer system. The existence of an automatic "log off" function on most of NationsBank's software programs further skews the reliability of such data as evidence of total hours worked by any individual on any given day. See Curtis Aff., ¶ 11. In addition, Plaintiffs had access to multiple databases and computer software applications, which makes it prohibitively difficult to establish, on any given work day, when a particular individual logged on or logged off a NationsBank computer. See Curtis Aff., ¶ 11.

---

[1]   The burden of locating and retrieving "alarm records" for each plaintiff from among the reams of records for such daily entries at literally thousands of NationsBank banking centers across the country is equally oppressive and daunting. See Curtis Aff., ¶¶ 12-15.

[2]   Computer access and alarm clearance during the relevant time period, 1998 through 2000, was premised on personalized security codes assigned to each NationsBank employee. While NationsBank has been able to retrieve the computer access codes ("NBID numbers") for Named Plaintiffs and the remaining opt-in plaintiffs, see Curtis Aff., ¶ 15, it continues to search for each plaintiff's alarm clearance code and, in fact, requests identification of each plaintiff's alarm clearance code in its First Set of Interrogatories to each plaintiff.

II.     NationsBank Intends to Produce Plaintiffs' "Timecards" and any "Vault Logs" it can
        Locate in Response to Plaintiffs' Document Requests, but the Delay in Producing these
        Documents is Due to the Scope of the Burden these Requests Impose on NationsBank.

        In their second requests for production, Plaintiffs also requested NationsBank to produce

"timecards" and "vault logs" for the following plaintiffs: (1) John Bari; (2) Mary F. Bolden; (3)

Cari M. Ford; (4) Diane Kirkland; (5) Julia Kozel; (6) Juan C. Valdez, Sr.; (7) Angela Mobley;

(8) Jeff Motley; and (9) Olga Valdes. NationsBank intends to produce all such records it can

locate; but, like the search for computer logs and alarm records, this request has imposed a

significant burden on NationsBank.

        NationsBank's search for and retrieval of each Plaintiff's timecards and timesheets has

been particularly extensive and onerous. See generally Affidavit of Adam McConnell

("McConnell Aff."), a copy of which is appended hereto as Exhibit C. Since first receiving

Plaintiffs' request for "timecards," NationsBank and its counsel have spent more than 300 hours

physically searching through 3,500 boxes, each containing thousands of timecards and time

sheets. See McConnell Aff., ¶¶ 13, 15-18; see also Affidavit of June Such ("Such Aff."), ¶¶ 3-5,

a copy of which is appended hereto as Exhibit D. Despite the magnitude of this undertaking,

NationsBank now is prepared to produce the bulk of the time cards and time sheets requested by

Plaintiffs.

        Similarly, Plaintiffs' request for "vault logs" also has imposed significant burdens on

NationsBank. To obtain those "vault logs" that still may exist, NationsBank has to make specific

inquiry of each of the approximately 70 banking centers across the country at which Plaintiffs

may have worked. See Curtis Aff., ¶¶ 6-8. As a prerequisite to such inquiry, NationsBank had

to identify the various banking centers at which each Plaintiff worked; which was a significant

undertaking in and of itself. See Such Aff., ¶¶ 6-7. NationsBank is currently in the process of

5

identifying the current managers of all of the banking center at which plaintiffs worked so that they may be contacted to determine if any hard copies of "vault logs" completed during the relevant time period still may exist. See Curtis Aff., ¶ 7. NationsBank will produce all the hard copies of any "vault logs" it collects as a result of this inquiry as soon as it receives the same.

III.    NationsBank has Acted in Good Faith to Comply with Plaintiffs' Discovery Requests.

Despite the substantial burden that Plaintiffs' discovery requests have imposed on NationsBank, it has conducted a good faith search through its electronic data and hard copy files in an attempt to locate and retrieve the information Plaintiffs seek. As a result of this search, NationsBank will soon produce timecards and timesheets completed by each plaintiff during the relevant time period. These records are directly relevant to plaintiffs' claims, and NationsBank has made a substantial effort to comply with its obligations to produce such records. NationsBank has further agreed to produce all hard copies of any "vault logs" it collects upon the completion of its search for such records.

The questionable relevance, however, of the "computer logs" and "alarm records" requested by Plaintiffs, when compared to the excessive burden the continued search, retrieval and production of such records would impose of NationsBank, justifies the denial of Plaintiffs' motion to compel the production of these materials. NationsBank has fulfilled its obligation to make a good faith effort to produce these materials within the bounds of the discovery rules, and has unequivocally established the extent and severity of the burden which the production of this information would impose on it. To force NationsBank to persist in an exercise of futility would be patently unfair under Rule 26 of the Federal Rules of Civil Procedure.

## Conclusion

For the foregoing reasons, Defendant NationsBank, by counsel, respectfully requests the

Court to enter an order denying Plaintiffs' Motion to Compel Production: (1) of the "computer

log" and "alarm records" requested by Plaintiffs in their First and Second Requests for

Production; and (2) as it relates to Plaintiffs' request for production of timecards, time sheets and

vault logs based on NationsBank's continuing efforts to retrieve these documents and its

representation that it intends to produce the documents it has been able to retrieve as soon as

practicable.

This the 27th day of February, 2001.

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; (954) 463-2444 (Facsimile)

and

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
J. Mark Langdon (NC Bar No. 19359)
McGuire Woods LLP
3700 NationsBank Plaza
Charlotte, North Carolina 28280
(704) 373-8999; (704) 373-8990 (Facsimile)

Counsel to NationsBank, N.A.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "NationsBank's Response

to Plaintiffs' Motion to Compel" in the above-captioned proceeding has been served this day by

U.S. mail, postage prepaid, upon plaintiffs' counsel as listed below:

> Susan L. Dolin, Esquire
> Daniel R. Levine, Esquire
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, Florida 33021
>
> Caryl Boies, Esquire
> Anne E. Hinds, Esquire
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, Florida 33020

This the 27th day of February, 2001.

Michael T. Burke (Fla. Bar No. 338771)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and          )
KIMBERLY DRAKE, on behalf of      )
themselves and all others similarly )
situated,                         )
                                  )
                Plaintiffs,       )
                                  )
        vs.                       )
                                  )
BANKAMERICA C·           ⸺⸺ION    )
a foreign corporatior             )
BANK OF AMERIC                    )
a foreign corporatio     77       )
NATIONSBANK,                      )
association,



                Dere⸺

## NationsBank's Responses
## to Plaintiffs' First Request for Production

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Bank of America

Corporation (f/k/a BankAmerica Corporation) and Bank of America, N.A., (f/k/a

NationsBank, N.A.), which are collectively referred to herein as "defendants" or

"NationsBank," respond as follows to Plaintiffs' First Request for Production to Defendant:

### Document Requests

1.      The original document, titled "Use For Hours Reported from 11/29/99 –

12/05/99" for Nancy Rojas. The document is marked "Mail Code: FL8-179-01-01."

Escudero , et al , v Bank of America
Case No. 00-06145-CIV-DIMITROULEAS/SNOW

### Response:

See documents D1-1 through D1-2, produced herewith. NationsBank will make the original of this document available at the office of its local counsel for inspection and copying by plaintiffs' counsel at a mutually convenient time and date.

2.    For any and all pay periods during the Plaintiffs' employment, any

documents that reflect the alarm records of the Plaintiffs' signing in and out, entering and

exiting the building.

### Response:

NationsBank has been searching for and attempting to access the "alarm records" requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete. The scope of the search, therefore, is not yet completely defined, and NationsBank, by counsel, reserves the right to rely on the objection that the foregoing document request imposes upon it an undue burden and expense.

3.    For any and all pay periods during the Plaintiffs' employment, any

documents that reflect the computer logs of the Plaintiffs logging on and off of their

computer systems.

### Response:

NationsBank has been searching for and attempting to access the "computer logs" requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete. The scope of the search, therefore, is not yet completely defined, and NationsBank, by counsel, reserves the right to rely on the objection that the foregoing document request imposes upon it an undue burden and expense.

4.    Personnel file of Rodney Sumter, including but not limited to, documents

reflecting any discipline or counseling and/or reprimand regarding the payment of overtime

compensation to subordinate employees.

2

**Response:**

NationsBank, by counsel, objects to the foregoing document request on the grounds that it seeks disclosure of confidential information regarding a NationsBank employee who is not party to the above-captioned action. NationsBank, by counsel, also objects to the foregoing document request on the grounds that it seeks information which is neither relevant to the above-captioned action nor reasonably likely to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, there are no documents in Rodney Sumter's personnel file "reflecting any discipline and/or counseling and/or reprimand regarding the payment of overtime compensation to subordinate employees."

This the 11th day of September, 2000.

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGuireWoods LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
Telephone:   (704) 373-8999
Facsimile:   (704) 373-8990

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
Telephone:   (954) 463-0100
Facsimile:   (954) 463-2444

Attorneys for Bank of America Corporation

3

Escudero , et al , v. Bank of America
Case No. 00-06145-CIV-DIMITROULEAS/SNOW

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this

day by U.S. mail, postage prepaid, upon Plaintiffs' counsel as listed below:

Daniel R. Levine, Esq.
Adam S. Chotiner, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the 11th day of September, 2000.

Richard F. Kane

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS/Snow

| | |
|---|---|
| ROXANNA L. ESCUDERO, and | ) |
| KIMBERLY DRAKE, on behalf of | ) |
| themselves and all others similarly | ) |
| situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| BANKAMERICA CORPORATION, | ) |
| a foreign corporation d/b/a | ) |
| BANK OF AMERICA CORPORATION, | ) |
| a foreign corporation, f/k/a | ) |
| NATIONSBANK, N.A., a national | ) |
| association, | ) |
| | ) |
| Defendant | ) |

## NationsBank's Responses
## to Plaintiffs' Second Request for Production

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Bank of America

Corporation (f/k/a BankAmerica Corporation) and Bank of America, N.A., (f/k/a

NationsBank, N.A.), which are collectively referred to herein as "defendants" or

"NationsBank," respond as follows to Plaintiffs' Second Request for Production to Defendant:

## Document Requests

1.    For any and all pay periods during the Plaintiffs' employment from December

17, 1997 to the present, any documents reflecting the alarm records of the Plaintiffs' signing

in and out, entering and exiting the building where they worked.

### Response:

NationsBank has been searching for and attempting to access the "alarm records" requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete. The scope of the search, therefore, is not yet completely defined, and NationsBank, by counsel, reserves the right to rely on the objection that the foregoing document request imposes upon it an undue burden and expense.

2.    For any and all pay periods during the Plaintiffs' employment from December

17, 1997 to the present, any documents that reflect a computer log for the Plaintiffs logging

on and off of their NationsBank computer systems.

### Response:

NationsBank has been searching for and attempting to access the "computer logs" requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete. The scope of the search, therefore, is not yet completely defined, and NationsBank, by counsel, reserves the right to rely on the objection that the foregoing document request imposes upon it an undue burden and expense.

3.    For any and all pay periods during the Plaintiffs' employment from December

17, 1997 to the present, all time cards for the Plaintiffs.

### Response:

NationsBank is in the process of gathering the documents requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete.

v-06145-LRJ     Document 187     Entered on FLSD Docket 02/27/2001     Pa
Escudero , et al., v. Bank of America
Case No. 00-06145-CIV-DIMITROULEAS/SNOW

4.     For any and all pay periods during the Plaintiffs' employment from December

17, 1997 to the present, all vault logs which reflect the Plaintiffs logging in and out of the

banking center at which they were employed.

**Response:**

NationsBank has been searching for and attempting to access the "vault logs" requested by the foregoing document request. NationsBank will produce these documents as soon as they are located and available. The process involves a significant undertaking and is not yet complete. The scope of the search, therefore, is not yet completely defined, and NationsBank, by counsel, reserves the right to rely on the objection that the foregoing document request imposes upon it an undue burden and expense.

This the 11th day of December, 2000.

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
Telephone:   (954) 463-0100
Facsimile:   (954) 463-2444

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGuireWoods LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
Telephone:   (704) 373-8999
Facsimile:   (704) 373-8990

Attorneys for Bank of America Corporation

v-06145-LRJ . Document 187    Entered on FLSD Docket 02/27/2001    P
Escudero., et al.. v. Bank of America
Case No. 00-06145-CIV-DIMITROULEAS/SNOW

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served this day

by U.S. mail, postage prepaid, upon Plaintiffs' counsel as listed below:

> Daniel R. Levine, Esq.
> Adam S. Chotiner, Esq.
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, FL 33021
>
> Caryl Boies, Esq.
> Anne E. Hinds, Esq.
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, FL 33020

This the 11th day of December, 2000.

Michael T. Burke

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS/Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,
        Defendant.

## AFFIDAVIT OF JANICE CURTIS

Janice Curtis, being first duly sworn, deposes and says as follows:

1.    I am over 21 years of age, and suffer from no legal or mental disability or duress. I am competent to be a witness in this matter, and have personal knowledge of the facts to which I attest herein.

2.    I am currently employed by the Defendant (the "Bank") in the above-captioned action as a Vice President/Personnel and Corporate Affirmative Action Officer.

3.    As part of my duties for the Bank, I was asked to assist the Bank's counsel, McGuireWoods LLP, with the coordination and monitoring of the Bank's efforts to search for and retrieve several components of the information on each plaintiff that I understand Plaintiffs' counsel have requested through discovery. As a result of my participation in the coordination

and monitoring of the Bank's efforts in this regard, I possess personal knowledge of the matters and facts stated herein, and I am authorized by the Bank to execute this affidavit on its behalf.

4.        I have assisted with the coordination and monitoring of the Bank's efforts to search for and retrieve the following information requested by plaintiffs' counsel: (1) hard copies of vault logs maintained at the banking centers for which each plaintiff worked during his or her relevant employment tenure with the Bank; (2) records of the various times each day at which each plaintiff logged on to and/or logged off from the Bank's computer system(s) during his or her relevant employment tenure; and (3) building access alarm records documenting the dates on which each plaintiff entered his or her security code to activate or deactivate the alarm system of the respective banking centers at which he or she worked.

5.        The task of searching for and retrieving the information requested by plaintiffs' counsel has proved exceedingly tedious, burdensome and slow in practice because of the following factors: (1) the large number of banking centers at which the plaintiffs worked during their relevant employment tenures with the Bank; (2) the electronically encrypted and archived nature of the requested computer and building access alarm records; and (3) the substantial period of time for which these records have been requested. The number of plaintiffs involved in this action when the Bank first commenced its efforts to locate the above-referenced information, i.e., approximately 110 to 115, has also compounded the difficulty and burden the Bank has encountered in searching for and retrieving the requested information.    To minimize the increased costs and delays that would result from a piecemeal search for information related to small groups of plaintiffs, the Bank, upon learning of the request for the above-referenced information, expanded its search to include all the plaintiffs then involved in the case.

6.    Before the Bank could commence its search for the "vault logs" and building access alarm records for each plaintiff, it was necessary to research the specific banking centers at which each plaintiff worked during his or her relevant employment tenure with the Bank. I understand that Ms. June Such of McGuireWoods analyzed a large amount of personnel records and data to identify the specific banking centers at which each Plaintiff worked during his or her relevant employment tenure. The identification of the banking centers at which each plaintiff worked was a critical prerequisite to the Bank's search for any vault logs and building access alarm records that still exist.

7.    The "vault logs" that plaintiffs' counsel requested are maintained, if at all, at each individual banking center rather than a central repository; therefore, the Bank and its counsel, upon first receiving this request in November, 2000, had to review its entire corporate directory to identify the current banking center manager at the banking centers at which each plaintiff worked during his or her relevant employment tenure. Once the current banking center managers at the subject banking center are identified, which review is still in progress, the Bank and its agents will then be able to contact each banking center manager to ascertain whether his or her banking center has the "vault logs" on file.

8.    Given the wide geographic range in which the plaintiffs worked during their relevant employment tenures with the Bank, i.e., essentially from Pennsylvania south to Florida and west through California, and the large number of banking centers at which they worked, the search for hard copies of any "vault logs" that the plaintiffs may have signed has taken a great deal of time. In fact, the Bank has just completed its identification of all the banking centers at which the plaintiffs worked during their relevant employment tenures with the Bank. The Bank is now in the process of identifying the current banking center manager at each location.

3

9.    With respect to records documenting the daily times at which each plaintiff logged on to and logged off from the Bank's computer systems during his or her relevant employment tenure, the Bank is currently in the process of searching its excessively voluminous computer databases and archived data records to determine whether such information exists and, if so, whether it can be isolated and extracted for reproduction in a legible format.  The sheer number of times that the Bank's approximately 150,000 employees log on to and log off from its various computer systems in any one given day render the identification and isolation of such information exceedingly difficult.  Moreover, the volume of such information that accumulates over a short period of time presents a physical limit on the length of time that such information can be retained.

10.    The Bank's search for the computer log on/off records for each plaintiff has been further complicated and slowed by the following factors:  (1) the existence of multiple Bank databases and software programs on to which an employee could log on or off from their terminal during the relevant time period; and (2) the existence of automatic log off security features on a number of the Bank's databases and software programs during the relevant time period that terminated a computer connection after a set period of inactivity.

11.    At present, I understand that employees in the Bank's Information Management Systems Department are searching the pertinent Bank database(s) in which the computer log on/log off records for each plaintiff would be recorded to determine whether such data still exists and, if so, whether it can be reconstructed in a legible format.  As I indicated earlier, this information may no longer exist because of the sheer volume of data generated daily, the storage limitations of the same, and the age of the requested information.  Even if this information is located, its relevance to the issues at bar in this case may be questionable because of the

4

numerous databases and computer systems on to which an employee could log on or off during the relevant time period, and the existence of the automatic log off feature on many of the Bank's computer systems during that time.

12.    The Bank's search for records documenting each plaintiff's activation and deactivation of the building access alarm system(s) at the banking centers for which he or she worked has proved to be a burdensome and tedious process as well. The process of identifying and retrieving the building access alarm records for each banking center at which the plaintiffs worked during their relevant employment tenures has required the devotion of two Bank employees to a full time search of the massive database in which the entry of employee security codes are recorded. Due to the sheer volume of raw data that is recorded daily in this database, and the space limitations for storing such information, the search for the building access alarm records for the banking centers at which the plaintiffs worked has required the identification and retrieval of a substantial number of archived data storage tapes.

13.    A substantial portion of the building access alarm information is stored on archived tapes encoded under a different format than currently utilized by the Bank; therefore, the search for the building access alarm records during the relevant time period has also required the enlistment of outside vendors possessing the expertise to review the differently formatted data on these archived tapes. This use of outside vendors to assist in the search process has further slowed the progress of finding and  retrieving what building access alarm records may still exist.

14.    The Bank also maintains archived tapes containing building access alarm records encoded under the Bank's current computer software that monitors the entry of employee security codes at banking centers across the country. To access the information on these tapes,

the Bank had to set up a separate computer terminal on which to upload the information from pertinent archived data storage tapes. It is my understanding that it takes approximately two hours just to upload the information contained one tape onto the computer system, after which time the raw data from the tape must then be analyzed.

          15.    In order to determine the specific dates on which each plaintiff entered his or her respective security code to either activate or deactivate a particular banking center's building access alarm, I had to first obtain clearance from the Bank's Security Department to obtain the identification numbers ("NBID" number) assigned to each plaintiff during his or her relevant employment tenure with the Bank. When a Bank employee enters his or her security code to either activate or deactivate the building access alarm at a banking center, his or her NBID number is recorded to memorialize the entry of their security code, rather than the security code itself. Each plaintiff's NBID number, therefore, must be compared to the numerous entries on the monthly building access alarm reports for the banking centers at which he or she worked in order to determine the specific dates on which that person activated or deactivated the banking center's building access alarm.

      Further this affiant sayeth not.

_____
JANICE CURTIS

Sworn to and subscribed before me,
a Notary Public, this 21st day of
February, 2001.

_____
Notary Public

My Commission Expires: 10/2/2004

OFFICIAL SEAL
Notary Public, North Carolina
County of Mecklenburg
JUNE C. SUCH
My Commission Expires 10/2/2004

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS/Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
Themselves and all others similarly
Situated,

               Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
Association,
               Defendant.

## AFFIDAVIT OF ADAM McCONNELL

Adam McConnell, being first duly sworn, deposes and says as follows:

1.    I am over 21 years of age, and suffer from no legal or mental disability or duress.

I am competent to be a witness in this matter, and have personal knowledge of the facts to which

I attest herein.

2.    I am currently employed by the Defendant (the "Bank") in the above-captioned

action as the manager of Time Keeping Support team in its Personnel Operations department

("Time Keeping Support") located in Charlotte, North Carolina.  Time Keeping Support is

responsible for providing operational support to the Bank's entire Personnel Department, and

currently handles record processing for and inquiries from approximately 105,000 employees

working for the Bank at its various locations throughout the entire eastern half of the United States.

3.      Time Keeping Support is currently comprised of fifteen employees who are charged with performing the following duties, among others: (1) scanning of and data entry from timesheets submitted by approximately 60,000 Bank employees; (2) employment verification requests for the Bank's workforce in the eastern United States; (3) customer service issues related to personnel record processing and data entry; and (4) Q&A reporting for the Bank's processing and data entry operations related to personnel records. Time Keeping Support scans and records data from approximately 60,000 timesheets submitted to it each week.

4.      Through my management responsibilities for Time Keeping Support, 1 have monitored, and supervised the participation of Personnel Operation employees in, the identification, retrieval and collection of timecards and timesheets for each person whom I understand are plaintiffs in this action. Upon first receiving a request for the timecards of several individuals in mid-November 2000, I had to devise a plan that would allow the Bank to search as economically and efficiently as possible its voluminous records to pinpoint the timecards and timesheets completed by each plaintiff during their employment tenure with the Bank. To minimize future delay and costs, I decided to expand the scope of the Bank's search beyond the nine individuals for whom timecards and timesheets originally were requested to encompass each of the approximately seventy to seventy-five employees whom I understood to still have claims pending against the Bank in this action at that time. It is now my understanding that only 38 plaintiffs remain in this action for whom timecards and timesheets must be produced.

5.      The first step of this search involved composing a computer program to search the Bank's database for timesheets, and its limited database for timecards utilized by the Bank until

2

mid- December, 1998. I assigned this aspect of the search to one of the employees in Time Keeping Support under my supervision, Bill Bousquet.    Mr. Bousquet devoted a substantial amount of time to use a program that would search the Bank's timesheet database by each plaintiff's Social Security Number to determine the batch number and sequence number assigned to each weekly timesheet completed by the them during their employment tenure with the Bank. A spreadsheet was generated on each plaintiff that listed the batch and sequence number assigned to each timesheet they completed while employed with the Bank after mid-December, 1998.

6.      Once a batch and sequence number spreadsheet was compiled for each plaintiff, that information was then cross-referenced against a hard copy file of transmittal forms that recorded the specific box number in which particular batches of timesheet were stored. The identification of the specific boxes in which a plaintiff's timesheet could be stored was particularly tedious and time consuming.    The box transmittal forms utilized by the Bank employed carbon paper to create multiple records of the documented information. Many of the carbon copies were difficult to read because the person who had completed the form did not bear down sufficiently to make a clear impression in the carbon copy. Second, a particular box could contain more than one plaintiff's timesheet for a particular week; therefore, once the box numbers were recorded on each plaintiff's spreadsheet, each spreadsheet had to be cross-referenced against the others to identify boxes containing more than one plaintiff's timesheet. This cross-referencing was required to streamline the actual search of the boxes so that all relevant records could be pulled from a particular box during the first round of searching it.

7.    The process of compiling batch and sequence number spreadsheets on each plaintiff, and then pinpointing the specific boxes in which their timesheets could be located took approximately three (3) weeks to complete in and of itself.

8.    The same general search protocol was employed to locate timecards completed by each plaintiff between mid-December, 1997, and mid-December, 1998; however, retrieval of the specific boxes containing timecards for each plaintiff was substantially more cumbersome and time consuming than the process described above for locating timesheets. Prior to December 1998, timecards were processed and stored at one of five different processing facilities maintained by the Bank depending on the state in which the plaintiff worked. Although the timecards were indexed by batches, the cards themselves were only loosely indexed sequentially by Social Security numbers. Thus, a plaintiff's timecard for a specific pay period could be contained in any one of the three boxes required at each storage site to store the cards corresponding to one pay period. Once the specific boxes were located, the employees of Time Keeping Support assigned to this project had to requisition their shipment to Charlotte from storage facilities in the following locations: (1) Atlanta, Georgia; (2) Jacksonville, Florida; and (3) St. Louis, Missouri. Boxes of timecards warehoused here in Charlotte were also ordered.

9.    Through the search protocols described above, the employees in Time Keeping Support assigned to this project discovered a rough correlation between the number of boxes earmarked for retrieval and the number of weeks each plaintiff worked for the Bank after mid-December, 1997; e.g., one year's worth of a plaintiff's timecards during 1998 required retrieval of approximately 78 boxes, while one year's worth of their timesheets during 1999 required the retrieval of approximately 52 boxes. Accordingly, if a plaintiff worked for the Bank in both

4

1998 and 1999, then my department had to locate, request and receive approximately 130 boxes of time records from various storage facilities around the U.S.

10.    Once all of the boxes believed to contain each plaintiff's timesheets and timecards were identified, they were ordered from the particular warehouse at which they were stored in lots of approximately 350 boxes. With respect to the requisitioning of boxes located here in Charlotte believed to contain timesheets, the turnaround time for the warehouse to pull the requested boxes averaged about two days. The boxes located at out-of-state warehouse facilities naturally took somewhat longer to arrive in Charlotte after their shipment was requested. The individuals dedicated to the actual physical search of the boxes often found that all of the requested boxes had not been pulled upon their arrival at the local warehouses where the searches took place.

11.    The boxes were delivered to the Charlotte warehouse facility hosting each physical search session stacked 40 to palate. To conduct the physical search of the boxes containing timesheets, one person would remove the boxes from the palate one by one. Upon removing each box from the palate, its number would be called out to the five or six individuals reviewing the spreadsheets compiled on each plaintiff. Each plaintiff's spreadsheet consisted of two to three pages listing the box, batch and sequence number for each timecard and timesheet completed by each plaintiff during their tenure with the Bank.

12.    The individuals reviewing the spreadsheets for each plaintiff would alert the person searching the box itself if they found the called box number on a spreadsheet.    The plaintiff name, batch number and sequence number corresponding to the called box number would then be relayed to the person actually searching the box to enable him or her to locate the particular timesheet(s) contained therein. Using this name, batch number and sequence number

information, the person searching the box would review approximately 500 timesheets in the identified batch to locate the pertinent timesheet(s) located therein.

13.    Several problems were encountered during the actual physical search of the boxes that slowed the speed of the search. A substantial number of boxes containing timesheets had apparently broken open during handling, and their contents were stuffed back into the box in no particular order. Under these circumstances, each timesheet within a box required review. Each box of timesheets contained approximately five to seven batches consisting of approximately 500 timesheets each, or approximately 2500 to 3000 timesheets per box.

14.    Another problem encountered by the search teams involved the assignment of "X" batch numbers to the timesheets completed by several plaintiffs for a particular week. The assignment of an "X" batch number to a timesheet indicated a problem with the particular timesheet, i.e., a missing field or character, illegible information, or some other problem that prevented the normal scanning and indexing of the timesheet. Timesheets catalogued in "X" batches also had to be reviewed one by one because the problem thereon prevented the Bank's scanning program from assigning a standard sequence number to the timesheet.

15.    Again, the physical search of the boxes containing timecards presented additional and unique problems. The timecards in each box were only loosely indexed sequentially by Social Security number, rendering quick location of any plaintiff's particular timecard in a box virtually impossible. Any timecard bearing an irregularity that prevented normal processing was stored at the rear of the box in random order. Many of the boxes containing timecards required card by card review to locate a plaintiff's particular timecard located therein. Each box of timecards contained approximately 1500 cards, and the physical search of each such box often took approximately two hours.

6

16.     To date, the employees in Time Keeping Support assigned to this project, the additional Bank personnel drafted to assist with the project and employees of McGuireWoods LLP have searched approximately 1,000 boxes of timecards and 2,000 boxes of timesheets. Of this 3,000 box total, approximately 400 boxes required sheet by sheet or card by card review to locate any pertinent records that may be stored therein. I further estimate that approximately 500 boxes remain to be searched, the search of which boxes should be accomplished by March 1, 2001.

17.     Based on my empirical observations made during the above-described search process, I estimate a total turnaround time of seven (7) to (8) business days has been required on average to complete the following tasks for each lot of 350 boxes: (1) identify the boxes believed to contain requested time records; (2) order the pulling and shipment of those boxes from the particular warehouse at which they were stored; (3) physically search the contents of each box in a once a lot was received in Charlotte; (4) inventory the time records recovered for each plaintiff during each search session; (5) ascertain any missing records for each plaintiff after each search session; and (6) determine the possible location of any such missing records.

18.     To date, I estimate that the employees of Time Keeping Support assigned to this project alone have expended approximately 250 man hours identifying, retrieving and searching through the 3,000 boxes believed to contain the timecards and timesheets requested by Plaintiffs' counsel for each Plaintiff remaining in this action.

Further this affiant sayeth not.

This the 22nd day of February, 2001.

Adam McConnell

7

STATE OF North Carolina

COUNTY OF Mecklenburg

To Wit:

    The foregoing Affidavit was personally subscribed and sworn by Adam McConnell before me, June C. Such , a Notary Public for the above-referenced jurisdiction, on February 22nd, 2001.

June C Such

Notary Public

(Official Seal)

My Commission Expires:



OFFICIAL SEAL
Notary Public, North Carolina
County of Mecklenburg
JUNE C. SUCH
My Commission Expires 10/2/2004

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

             Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

             Defendant.

## AFFIDAVIT OF JUNE C. SUCH

June C. Such, being first duly sworn, deposes and says as follows:

1.    I am over twenty-one years of age, and suffer from no legal or mental disability or duress. I am competent to be a witness in this matter, and have personal knowledge of the facts to which I attest herein.

2.    I am currently employed as a paralegal by the law firm defending the Defendant in the above-captioned action (the "Bank"), McGuireWoods LLP ("McGuireWoods"). I am authorized by McGuireWoods to execute this affidavit on its behalf. The facts and matters to which I attest herein are based upon my participation in and supervision of the McGuireWoods' personnel who assisted the Bank in the search for and collection of time sheets requested by Plaintiffs' counsel for

each Plaintiff in this action. The facts and matters to which I attest herein are further based upon my research and review of personnel records maintained by the Bank on each plaintiff.

3.      I have reviewed the Affidavit of Adam McConnell, Manager of the Time Keeping Support Team of the Bank's Personnel Operations Department. Mr. McConnell has supervised the entire process of identifying, locating, retrieving and collecting the timecards and time sheets requested by Plaintiffs' counsel for each Plaintiff in this action. His affidavit accurately describes the process the Bank has employed to identify, retrieve and collect the requested timecards and time sheets.

4.      I, along with several other paralegals employed by McGuireWoods, assisted the Bank with the actual physical search of the approximately 2,000 boxes of time sheets in an attempt to locate those records for each plaintiff. McGuireWoods personnel assisted with the physical search for time sheets on the following dates for the following periods of time:

| Date | Number of McGuireWoods Employees | Hours Expended |
|------|----------------------------------|----------------|
| January 19, 2001 | 3 Paralegals | Approximately 15 hours total |
| February 5, 2001 | 4 Paralegals | Approximately 16 hours total |
| February 5, 2001 | 4 Paralegals | Approximately 17.5 hours total |
| February 7, 2001 | 2 Paralegals | Approximately 2.8 hours total |
| February 9, 2001 | 3 Paralegals | Approximately 15 - 16.5 hours total |

5.      Thus, McGuireWoods paralegals spent approximately 65 to 67 total hours engaged in the actual physical search of boxes for time sheets requested by Plaintiffs' counsel on each plaintiff. I and several other McGuireWoods paralegals are scheduled to physically search approximately 300 more boxes of timesheets within the next several days.

6.      I estimate that I have spent at least 35 hours involved in the process of identifying the various banking centers at which each Plaintiff worked during his or her relevant employment

2

tenures with the Bank. This process has been both tedious and burdensome; but a necessary prerequisite for the Bank's search for any "vault logs" the plaintiffs may have signed during their employment tenures with NationsBank, as well as its search for the building access alarm records for each banking centers at which the Plaintiffs worked during their employment tenures. This process has been further complicated by the multiple banking centers at which a number of plaintiffs worked during their employment tenures with the Bank.

7.    Once I had identified the specific banking centers at which each plaintiff worked, I then could begin to identify the current banking center managers at each identified banking center.

8.    I further understand that the identification of the specific banking centers at which each plaintiff worked during his or her relevant employment tenure with the Bank has also been a critical prerequisite for the search for the building access alarm records requested by Plaintiffs' counsel for each plaintiff.

Further this affiant sayeth not.



June C. Such

Sworn to and subscribed before me,
a Notary Public, this 23rd day of
February, 2001.

Notary Public

My Commission Expires: _____

"OFFICIAL SEAL"
Notary Public. North Carolina
County of Mecklenburg
Connie R Hartsell
My Commission Expires 12/21/2004

4