UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX
FILED

APR 0 9 2001

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

CLERK, USDC / SDFL / WPB

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,

Defendant.

_____/

### PLAINTIFFS' MOTION TO CERTIFY MARCH 26, 2001 ORDER DENYING PLAINTIFFS' MOTION TO ALLOW NOTIFICATION AS INTERLOCUTORILY APPEALABLE PURSUANT TO 28 U.S.C. § 1292(b) AND INCORPORATED MEMORANDUM OF LAW

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, and, pursuant to 28 U.S.C. § 1292(b)

and S.D. Fla. L.R. 7.1, hereby file their Motion to Certify March 26, 2001 Order Denying

Plaintiffs' Motion to Allow Notification as Interlocutorily Appealable Pursuant to 28 U.S.C.

§ 1292(b) and Incorporated Memorandum of Law, and in support therefor state as follows:

1.    As the Court is aware, this is a collective action to recover unpaid overtime

compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* In

addition to the two (2) named Plaintiffs, there are sixty-nine current opt-in Plaintiffs.

2.    On or about August 21, 2001, Plaintiffs filed their Motion to Allow Notification

204
BR

to Potential Class Members as Authorized by the Fair Labor Standards Act, 29 U.S.C.

§216(b) (hereinafter "Motion to Allow Notification").[1]

    3.    On March 26, 2001, this Court, per District Court Judge Dimitrouleas, entered

an Omnibus Order, *inter alia*, denying Plaintiffs' Motion to Allow Notification.[2]

    4.    Pursuant to 28 U.S.C. § 1292(b), Plaintiffs move this Court to certify as

interlocutorily appealable that part of the Court's March 26, 2001 Omnibus Order denying

Plaintiffs' Motion to Allow Notification.[3]

## MEMORANDUM OF LAW

## A.    INTRODUCTION

    In the Order at issue, this Court employed the test adopted by the Eleventh Circuit

---

[1]    Plaintiffs' Motion to Allow Notification was supported by more than ten (10) affidavits. The affiants each testified that they worked hours over forty (40) but were not properly paid overtime compensation, all at the express instruction or acquiescence of Defendant's management personnel. The testimony also showed that other similarly situated employees were unlawfully denied overtime compensation, and that these other employees may not be aware of their legal right to recover damages.

[2]    Also on March 26, 2001, Judge Dimitrouleas entered an Order of Reference pursuant to 28 U.S.C. §636(c) and the consent of the parties to this action, referring this case to Chief United States Magistrate Judge Johnson for all further proceedings and the entry of judgment.

[3]    Plaintiffs believe that Fed. R. Civ. P. 23(f), permitting interlocutory appeals of decisions granting or denying class certification pursuant to Rule 23, is applicable to the case at bar. Accordingly, concurrent with the filing of the instant Motion Plaintiffs are also filing with the Eleventh Circuit Court of Appeals their Petition for Permission to Appeal District Court Order Denying Plaintiffs' Motion for Class Notification as Authorized by the Fair Labor Standards Act. Recognizing that the Eleventh Circuit may rule that Rule 23(f) does not apply to FLSA collective actions such as the instant case, Plaintiffs are also filing the instant Motion.

in *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991).

According to *Dybach*, in order to obtain notification to potential class members, Plaintiffs

must demonstrate that a) there exist individuals similarly situated to the named plaintiff(s),

b) who may be desirous of being notified of the action and their right to "opt-in." *Id.* at

1567-68. This Court ruled that Plaintiffs had failed to meet their burden under the *Dybach*

test.

## B.    28 U.S.C. §1292(b)

### 1.    Introduction

28 U.S.C. §1292(b) allows a district court to certify an order as interlocutorily

appealable to obtain appellate review of such order prior to the entry of final judgment.

The statute reads as follows:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves
> a controlling question of law as to which there is substantial ground for
> difference of opinion and that an immediate appeal from the order may
> materially advance the ultimate termination of the litigation, he shall so state
> in writing in such order. The Court of Appeals which would have jurisdiction
> of an appeal of such action may thereupon, in its discretion, permit an appeal
> to be taken from such order, if application is made to it within ten days after
> the entry of the order: *Provided, however,* That application for an appeal
> hereunder shall not stay proceedings in the district court unless the district
> judge or the Court of Appeals or a judge thereof shall so order.

As will be shown, the Omnibus Order at issue here involves just such controlling issues of

law as to which there is substantial ground for difference of opinion. Moreover, an

immediate appeal of the Omnibus Order may materially advance the ultimate termination

of the litigation.[4]

As an initial matter, and for this Court's edification in considering the instant Motion,

Plaintiffs submit that some background information is in order.[5]  At all times material to this

action, Defendant has maintained an employment position called "Consumer Banker"

(hereinafter "CB").  There were, and are, four (4) categories of CB: CB I, CB II, CB III, and

CB IV.[6]

In the *Levine* litigation, the plaintiffs were current and former CB II, III, and IV

challenging the Defendant's classification of these positions as exempt from the FLSA's

overtime requirements.  In or about December, 1997, Defendant re-classified the CB II, III,

and IV positions as non-exempt from the FLSA's overtime requirements.

The Plaintiffs, opt-in Plaintiffs, and potential class members in the instant case are

---

[4]    Plaintiffs wish to make it clear that they are *not* seeking to have this Court, per Chief Magistrate Judge Johnson, rehear or reconsider Judge Dimitrouleas' denial of Plaintiffs' Motion to Allow Notification.  All Plaintiffs currently seek is a certification that the denial be certified as interlocutorily appealable.

[5]    This Court is already aware of much, if not all, of the "background" to the instant case.  In particular, this Court has already been exposed to the cases styled *Levine v. NationsBank* and *Perlman v. NationsBank*, as well as the other companion lawsuits styled *Aldred v. NationsBank, N.A.*, *Barnes v. NationsBank, N.A.*, and *Mintz v. NationsBank, N.A.*  Indeed, in or about December, 2000, this Court conducted the trial in the *Mintz* case.

[6]    Since the merger of NationsBank with Bank of America, consummated in or about March, 2000, the CB position has been called "Personal Banker."  This appears to have been simply an issue of internal nomenclature, inasmuch as there seems to be no functional difference in the duties and responsibilities between the two positions.  For convenience sake, Plaintiffs will refer to the position as "CB."

current and former *non-exempt* CB II, III, and IV employed by Defendant since the reclassification of these positions in or about December, 1997. In this case, the issue concerns Defendant's failure to properly pay overtime to the Plaintiffs and opt-in Plaintiffs, despite the fact that these persons were correctly classified as non-exempt and otherwise eligible to receive overtime compensation.

## 2.    Controlling Issue of Law

"A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Indeed, "[a] controlling question of law is one which is 'serious to the conduct of the litigation, either practically or legally.'" *Board of Education of Township High School District No. 214, Cook County v. Climatemp, Inc.*, 91 F.R.D. 245, 251 (N.D. III 1981), quoting *Katz v. Carte Blanche Corporation*, 496 F.2d 747, 755 (3 Cir. 1974). Further, "[a] question is 'controlling' if its incorrect disposition would require reversal of the final judgment." *Kapossy v. Mcgraw-hill, Inc.*, 942 F. Supp. 996, 1001 (D. N.J. 1996).

There are two (2) interrelated controlling issues of law as to which Plaintiffs seek certification for interlocutory appeal. The first issue of law is whether the *Dybach* test applies in a case such as this, where the issue is not whether a certain class of employees was correctly classified as exempt from the FLSA's overtime requirements, but rather where a class of correctly classified non-exempt employees was nevertheless unlawfully

-5-

denied overtime compensation. The distinction is critical since the *Dybach* case involved a *Levine* and *Perlman*-type issue involving the classification of a certain position as exempt from the FLSA's overtime requirements. In *Dybach*, the plaintiff was a probation officer employed by the State of Florida Department of Corrections ("DOC"). The underlying merits of *Dybach* involved whether the DOC had improperly classified the "probation officer" position as exempt from the FLSA overtime requirements pursuant to the "professional" exemption found at 29 U.S.C. § 213 (a)(1).

If the first issue is answered in the affirmative, the second, interrelated issue of law questions whether this Court misread and misapplied the *Dybach* test in the case at bar.

With this in mind, there can be no doubt that the issues of law in question are "controlling." Obviously, if these issues of law are ultimately resolved in favor of allowing notification in the instant case, the further course of this litigation will be substantially affected, inasmuch as the number of party-Plaintiffs could increase *by the thousands.*[7] In addition, an incorrect disposition of these issues would clearly require reversal of any final judgment.

Accordingly, Plaintiffs seek to appeal the issues of 1) whether the legal standard for notification in a case such as this is different from the legal standard for notification in a *Levine*, *Perlman*, or *Dybach*-type case involving an alleged misclassification as exempt

---

[7]     By way of example, in *Levine* notice was provided to approximately 7,500 individuals, approximately **1,500** of which opted into the case as party-Plaintiffs.

from overtime; and, if not, 2) whether this Court misread and misapplied the Eleventh Circuit's *Dybach* for notification to the instant case involving hourly, non-exempt employees.

### 3.    Substantial Grounds for Difference of Opinion

"[A] 'substantial ground for difference of opinion' may be demonstrated by adducing 'conflicting and contradictory opinions' of courts which have ruled on the issue." *Oyster v. Johns-Manville Corp.*, 568 F. Supp. 83, 86 (E.D. Pa. 1983), quoting *Dorwood v. Consolidated Rail Corp.*, 505 F. Supp. 58, 59 (E.D. Pa.1980).

This factor is easily satisfied in the instant case. Perhaps the best indicator of the difference of opinion which exists on issue in question comes from the *Mintz* case. On September 24, 1999, Judge Dimitrouleas entered an Order Allowing Notification to Potential Class Members in *Mintz*. Defendant moved to reconsider, and on May 8, 2000 Judge Dimitrouleas reversed course and ruled that notification would not be permitted.

The instant case is factually analogous to *Mintz*. It is thus notable that, in *Mintz*, Judge Dimitrouleas himself issued "conflicting and contradictory opinions" on the issue of notification in a setting involving hourly non-exempt employees alleging the denial of overtime compensation, rather than a case like *Levine* or *Perlman*, or even *Dybach*, each involving the issue of a class-wide statutory exemption from overtime. Indeed, according to the court in *Harter v. GAF Corporation*, 150 F.R.D. 502, 503 (D. N.J. 1993), the term "substantial grounds for difference of opinion" refers "to the legal standard applied in the

decision for which certification is sought and whether other courts have substantially differed in applying that standard." In *Mintz*, the *same* court substantially differed in applying the *Dybach* standard. Thus, Judge Dimitrouleas' conflicting opinions in *Mintz* demonstrate why certification is necessary.

> *a.    Whether Dybach Applies to a Case Involving Non-Exempt Hourly Employees*

Quite simply, the *Dybach* test, arising in a class-wide exemption case (where all class members are by definition "similarly situated" given their identical classification) does not lend itself to a case like *Mintz* or the case *sub judice.*

Indeed, further demonstrating the "substantial ground for difference of opinion," other courts which have considered the issue of notification in cases encompassing hourly, non-exempt employees denied overtime at varying locations, such as *Mintz* and the case at bar, have utilized a different legal analysis than the *Dybach* test. This analysis involves a two-step approach to dealing with notification issues, which, at the very least, indicates that there is a substantial lack of conformity within the federal courts in connection with the maintenance of collective actions pursuant to 29 U.S.C. §216(b).        In *Felix de Asencio v. Tyson Foods, Inc.,___* F. Supp.2d ___, 2001 WL 96221 (E.D. Pa. 2001), a collective action where the plaintiffs, hourly employees, alleged widespread violations of the FLSA's minimum wage and overtime provisions. The court implemented a two-tier method for analyzing a collective action. The first tier involves the notification process, which "typically results in 'conditional certification' of a representative class" and the

issuance of notification to potential class members *Id.*[8] (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). This is because, at the first tier, "the plaintiffs have a fairly low burden of proving the similarly situated requirement." *Id.*[9]

"The second tier determination of the similarly situated question. . . is typically precipitated by a motion for 'decertification' by the defendant filed after discovery is largely complete and the matter is ready for trial." *Id.* At this point, "the court typically has much more information on which to base its decision, and makes the final determination of whether the plaintiffs are similarly situated." *Id.*

This two-step approach has been used by other courts in the context of an FLSA collective action. *See, e.g., Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 308 (S.D. N.Y. 1998) (certifying proposed class for notice and discovery purposes only and noting the possibility of future decertification); *Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357, *3 (D. Or. 1999) (same); *Herrera v. Unified Management Corp.*, 2000 WL 1220973, *1 (N.D. Ill. 2000) ("Initially, notice is sent to potential class members. Then, after discovery has taken place, the court determines whether the class should be restricted based on the 'similarly situated' requirement of the FLSA.").

---

[8]    At the time the instant Motion was filed, publication page references were not available for the *Felix de Asencio* case.

[9]    Interestingly, this comports with the Eleventh Circuit's holding in *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), that a plaintiff's burden to establish the basis for notification "is not [a] heavy" one. *Id.* at 1086.

### b.    Erroneous Application of the Dybach Test

Assuming, *arguendo*, that the *Dybach* test applies equally in cases involving similarly-classified exempt employees and cases involving hourly, non-exempt employees, the question becomes whether this Court misread and misapplied the *Dybach* test.

In the Order at issue, this Court distinguished its prior order in the afore-mentioned *Levine* litigation granting notification by pointing out what it perceived to be key differences in the two cases. The problem with this Court's *Dybach* analysis is that, if correct, it would essentially mean that notification can never be granted in a non-exemption case like the one at bar, in contract to an "exemption" case like *Dybach* or *Levine*.

The District Court found that there were no "similarly situated " individuals with respect to the named Plaintiffs. According to this Court's March 26, 2001 Omnibus Order, the

> resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions. Individual differences will certainly exist as to the hours, duration and location worked by individual plaintiffs.

*See* March 26, 2001 Omnibus Order, pp. 5-6.

This Court contrasted this holding with its previous decision to grant notification in the afore-mentioned *Levine* and *Perlman* litigation by noting that in *Levine* and *Perlman* Defendant "had a clear policy of exempting all In-Store Bankers and Consumer Banker II, III and IV from overtime pay. . . ." Omnibus Order, p. 4. Thus, according to this Court, all

-10-

potential class members in *Levine* and *Perlman* were "similarly situated." *Id.*

In addition, although dozens of other CB II, III, and IV have opted-into this case, none of them worked in the same banking center as the two (2) named Plaintiffs. This Cour believed this fact required it to hold that there are no "similarly situated persons willing to opt-in to this case." Omnibus Order, p. 5.

The infirmity of this Court's ruling on Plaintiffs' Motion to Allow Notification flows from its unduly narrow, and thus clearly erroneous, view of what it means to be "similarly situated" in the context of an FLSA collective action. The Eleventh Circuit's *Dybach* test for notification refers to other employees "'similarly situated with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1568.

Plaintiffs submit that all of the Plaintiffs and opt-in Plaintiffs are in fact "similarly situated," as the Eleventh Circuit defined the phrase in *Dybach*, since they each were unlawfully denied overtime compensation as alleged in the Complaint. Their "similarity" comes from the fact that they all held the same non-exempt position, with the same employer, doing the same job, with the same unlawful denial of overtime. The fact that these individuals worked at different branches is no more material in this case than it was in the companion *Levine* litigation, or for that matter than it was in *Dybach*, where the "probation officers" worked at different locations. In *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 303 (N.D. Cal. 1991), the court held as follows:

> ...the better view is that a class claim is not defeated simply because the proposed classes performed a variety of different jobs at different locations,

reported to different supervisors or left employment for different reasons than the named plaintiffs. What governs the scope of the class is whether the named [plaintiff] and [her] class members were all affected by a similar plan infected by [illegality]. The [plaintiff] need not be identically situated to potential class members.

*Id.* at 308. *See also Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D. N.Y. 1988) (to be "similarly situated," there is no requirement of "strict symmetry" or "absolute identity"; rather, potential class members must meet only a "sufficiently similar" standard).

Further compounding this Court's error was its improper reliance on whether a corporate-wide scheme lay at the heart of the unlawful actions of which Plaintiffs complain. The Eleventh Circuit has held that, under the "liberal", "elastic and less stringent" similarly situated requirement of 29 U.S.C. § 216, "a unified policy, plan, or scheme of [illegality] may not be required." *Grayson*, 79 F.3d at 1095-96. In addition, the Eleventh Circuit has also held that Plaintiffs' burden to establish the basis for notification "is not [a] heavy" one. *Id.* at 1086.

Demonstrating the polar-opposite result reached by other courts in considering motions to allow notification to non-exempt, hourly employees, Plaintiffs would direct this Court to *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996). In *Belcher*, five (5) named plaintiffs alleged that the defendant[10] had failed to properly pay overtime compensation to **hourly** employees on a nationwide basis, by, for instance, paying the

---

[10]     As the Court may be aware, Shoney's is a large nationwide chain of family-style restaurants.

-12-

hourly employees "off the clock." *Id.* at 252. The *Belcher* plaintiffs moved for nationwide notification. At the time the motion was filed approximately 400 individuals had already filed consent forms, representing 22 states and over 200 cities. *Id.*

The *Belcher* court granted nationwide notification, holding that the plaintiffs had "made a sufficient showing . . . that the individuals to whom they seek to send notice of [the] lawsuit are 'similarly situated' to them to warrant the issuance of Court-supervised notice." *Id.* at 251. The court stated that the affidavits submitted in support of the motion for notification "indicate[d] that these practices were not limited to a single store or region." *Id.* at 252. The court ordered that such notice would be issued to **all** persons employed on a hourly basis by Shoney's anytime within the three (3) year period prior to the filing of the lawsuit. *Id.* at 252.

Significantly, the temporal and geographic scope of the notice provided in *Belcher* was for notification purposes only. In other words, simply because a person was receiving notice did not mean that they were, as a matter of law, "similarly situated" to the named plaintiffs, since, obviously, there might have existed Shoney's locations where unlawful pay practices did not occur. Also, the issuance of notice for a three (3) year period was also for notification purposes only; the court specifically noted that the issue of "wilfulness" was "an open issue to be resolved pending further proof." *Id.*

Thus, a substantial difference of opinion exists between this Court and the *Belcher* court with regard to the same issue, concerning hourly employees being denied overtime

-13-

compensation, rather than salaried employees claiming an improper classification as exempt from overtime.

Other courts have also issued opinions differing from this Court's Omnibus Order, authorizing notification to potential class members in FLSA collective actions where the affected individuals were hourly, non-exempt employees working in various geographic locations. In *Foster v. The Food Emporium*, 2000 WL 1737858 (S.D. N.Y. 2000), the four named plaintiffs worked at the defendants' supermarkets. The alleged unlawful pay practices in *Foster* nearly mirrored those involved in the case *sub judice*. The court ruled that the named Plaintiffs and the proposed class members were "similarly situated":

> All are hourly employees of the defendants. All are alleged to have been subjected to the same illegal work conditions. All are alleged not to have been paid for hours worked, to have been paid overtime, and to have been forced to work during lunch and break periods [sic].

*Id.* at *2 (footnotes omitted).

A motion for class notification was also granted in *McNeil v. District of Columbia*, 1999 WL 571004 (D. D.C. 1999). The named plaintiffs, guards employed on an hourly basis with the D.C. Department of Corrections, alleged that they and other similarly situated employees "worked during their lunch periods every day for thirty minutes and were not paid overtime for the resulting two and a half hours a week which exceeded forty hours." *Id.* at *1. Notably, the court was not impressed by the defendant's claim that it would suffer "prejudice" if notification was granted:

> [I]f the defendant did not pay the guards what was due them, it broke the

-14-

> law. The defendants cannot claim any right to nevertheless escape liability
> for what is due by asking judicial assistance to keep the number of claimants
> to the barest minimum. Reduced to essentials, that is the only prejudice the
> defendants can claim from a successfully judicially supervised effort to locate
> potential claimants. I do not believe this is the kind of "prejudice" this court
> should recognize.

*Id.* at *2.

## 4.    Materially Advance the Ultimate Termination of the Litigation

This factor is principally concerned with avoiding the "wasteful and time-consuming

duplication of discovery efforts and judicial resources in the event of reversal after trial. .

. ." *Board of Education of Township High School District No. 214, Cook County v.

Climatemp, Inc.*, 91 F.R.D. 245, 252 (N.D. III 1981). Clearly, the issue of class certification

holds the potential for implicating such a concern. Indeed, in the absence of appellate

review at this juncture, the parties could easily continue discovery and litigate this matter

to a jury verdict, only to have to do it all over if the Order at issue is reversed on appeal

after final judgment is entered. On the other hand, if this Court certifies the Order at issue

for interlocutory review, and if the Order is reversed, it is reasonable to conclude that notice

will issue to as many as 7,500 persons, and is further reasonable to conclude that

thousands of individuals may choose to join this litigation as party-Plaintiffs. In such an

event, the ultimate termination of this litigation could easily be advanced by a settlement.[11]

---

[11]    Indeed, in *Levine*, where approximately 7,500 persons received notice and
approximately 1,500 persons opted-into the lawsuit, the parties ultimately resolved their
differences to the mutual satisfaction of all parties concerned.

-15-

## 5.    The Eleventh Circuit Has Previously Heard Interlocutory Appeals in Similar Cases Pursuant to 28 U.S.C. § 1292(b)

In *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), the district court certified several questions as interlocutorily appealable, including issues concerning the maintenance of an opt-in collective action.[12]  The Eleventh Circuit agreed to hear the interlocutory appeal of the class certification issues.  Moreover, in *LaChappell v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975), the former Fifth Circuit similarly agreed to hear an interlocutory appeal of an ADEA class certification decision.  In *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2nd Cir. 1978), *cert. denied*, 441 U.S. 944 (1979), the Second Circuit heard an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) with regard to the same question presently at issue, to wit, notification to potential class members in an FLSA collective action.

## 6.    Plaintiffs are *Not* Seeking a Stay of this Case Pending Appeal

As noted above, 28 U.S.C. § 1292(b) dictates that an interlocutory appeal under that section does not stay proceedings in the district court unless ordered.  Should this Court grant the instant Motion, and should the Eleventh Circuit agree to hear the appeal,

---

[12]     *Grayson* involved an age discrimination "class action" pursuant to the Age Discrimination in Employment Act ("ADEA").  However, *Grayson* is equally applicable to FLSA cases like the instant case since the ADEA incorporates the FLSA's enforcement provision, 29 U.S.C. §216(b).  Indeed, just as in an FLSA collective action, class members in an ADEA action must affirmatively opt-in to the action in order to be part of the class, and, like the FLSA, Fed. R. Civ. P. 23 is inapplicable to ADEA "class" actions. *Grayson*, 79 F.3d at 1096, n. 12.

Plaintiffs do not intend to seek a stay of proceedings in this Court. In fact, inasmuch as

there are two (2) named Plaintiffs and sixty-nine (69) current opt-in Plaintiffs, as well as

correlating witnesses on the Defendant's side, Plaintiffs believe that discovery can continue

as normal during the course of such an appeal. Accordingly, there is no concern that an

interlocutory appeal may unnecessarily delay these proceedings.

## C.    CONCLUSION

Based on the foregoing, it is clear that the Court's March 26, 2001 Order denying

Plaintiffs' Motion to Allow Notification falls under the category of orders contemplated for

interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiffs submit that the following

question be certified to the Eleventh Circuit Court of Appeals:

> Whether the standard for notification pursuant to 29 U.S.C. §216(b) announced in *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991), applies equally to cases alleging exempt employees challenging their exempt status (as in *Dybach*) and cases involving non-exempt hourly employees at varying locations alleging the unlawful denial of overtime compensation, and if so, whether the District Court properly applied the *Dybach* standard in the instant case?

WHEREFORE, Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, respectfully submit that this Court

grant their Motion to Certify March 26, 2001 Order Denying Motion to Allow Notification as

Interlocutorily Appealable Pursuant to 28 U.S.C. § 1292(b), enter an Order certifying the

Court's March 26, 2001 Order denying Plaintiffs' Motion to Allow Notification as

interlocutorily appealable pursuant to 28 U.S.C. § 1292(b), or alternatively amend its March

-17-

*Escudero, et al.v. BankAmerica Corporation, etc.*
Case No. 00-06145-CIV-DIMITROULEAS

26, 2001 Omnibus Order to include such a certification, and take such further action as is

just and proper.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By:_____

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

*Escudero, et al.v. BankAmerica Corporation, etc.*
Case No. 00-06145-CIV-DIMITROULEAS

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent via

U.S. Mail this ____ day of April, 2001 to: Michael T. Burke, Esq., Johnson, Anselmo et

al., 790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220, and

Richard F. Kane, Esq., McGuireWoods LLP, 3700 NationsBank Plaza, 101 South Tyron

Street, Charlotte, NC 28280, and BOIES, SCHILLER & FLEXNER, LLP, 2435 Hollywood

Boulevard, Hollywood, Florida 33020.

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: _____

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

-19-