UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FOLORIDA
FORT LAUDERDALE DIVISION

CASE No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf
of themselves and all others
similarly situated,

　　　　Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,

　　　　Defendants.

_____/



## NATIONSBANK'S OPPOSITION TO
## PLAINTIFFS' MOTION TO CERTIFY MARCH 26, 2001 ORDER
## DENYING PLAINTIFFS' MOTION FOR CLASS NOTIFICATION AS
## INTERLOCUTORILY APPEALABLE PURSUANT TO 28 U.S.C. §1292(b)

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America,

N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel,

hereby respond in opposition to plaintiffs' Motion to Certify March 26, 2001 Order Denying

Plaintiffs' Motion as Interlocutorily Appealable Pursuant to 28 U.S.C. §1292(b) ("Motion to

Certify"). In opposition to Plaintiffs' Motion to Certify, NationsBank states as follows:



## Relevant Facts

On January 31, 2000, plaintiffs filed the above-captioned action pursuant to the Fair
Labor Standards Act, 29 U.S.C. §§201 et seq. ("FLSA") "on behalf of themselves and all others
similarly situated." Plaintiffs alleged in their Complaint: (1) that they worked for NationsBank
as Consumer Banker IIs and IIIs; (2) that NationsBank reclassified their positions as non-exempt
for purposes of the FLSA; (3) that, between December, 1997 and October 29, 1999, they worked
"many times in excess" of forty hours per week; and (4) that NationsBank failed to pay them for
the hours they worked in excess of forty per week by preventing or restricting them from
recording such hours – that is, that NationsBank required them to work "off the clock."

On August 21, 2000, nearly seven months after commencing this action, plaintiffs filed
their Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b).
("Motion for Notification"). According to plaintiffs, the potential opt-in group consists of
current and former Consumer Banker IIs, IIIs and IVs who worked for NationsBank after
December, 1997, at numerous NationsBank banking centers across the country.

On March 26, 2001, this Court denied plaintiffs' Motion for Notification. See District
Court's Order Denying Plaintiffs' Motion for Notification, appended hereto as Exhibit A. As the
Court noted, despite having "had more than enough opportunity to meet [their] opt-in burden,"
plaintiffs failed to establish pursuant to Dybach v. State of Florida Dep't of Corrections, 942 F.2d
1562 (11th Cir. 1991), that notice was appropriate. Id. After reviewing the affidavits and
deposition testimony plaintiffs submitted in support of their Motion for Notification, and the
countervailing affidavits and deposition testimony NationsBank submitted in opposition to
plaintiffs' Motion for Notification, this Court concluded that "Plaintiffs have not shown that
similarly situated persons are willing to opt-in to this case" and found "that resolution of the

2

FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions." Id. The Court, therefore, in an exercise of its discretion, denied plaintiffs' Motion for Notification. Id.

On April 9, 2001, plaintiffs filed their Motion to Certify this Court's March 26, 2001 Order denying their Motion for Notification as "interlocutorily appealable" pursuant to 28 U.S.C. §1292(b). Plaintiffs contend that the Court's denial of their Motion for Notification involves "controlling issues of law as to which there is substantial ground for difference of opinion" and "an immediate appeal. . .may materially advance the ultimate termination of the litigation." See Plaintiffs' Motion to Certify, p. 3-4. Plaintiffs' position and Motion are without merit.

## Summary of Argument

Contrary to plaintiffs' contention, this Court's denial of their Motion for Notification does not involve a "controlling question of law as to which there is a substantial ground for difference of opinion" pursuant to 28 U.S.C. §1292(b). Rather, this Court, in a proper and correct exercise of its discretion, simply refused to permit notification because plaintiffs failed to carry their evidentiary burden of demonstrating the existence of other "similarly situated" individuals who desired to opt-in to their action. This Court did so based on the well-settled law of this Circuit upon which plaintiffs consistently have relied in this and companion cases. Nor can plaintiffs offer this Court a credible, good faith explanation of how an interlocutory appeal would "materially advance the ultimate termination of the litigation" other than the inappropriate argument that the addition of additional plaintiffs may coerce NationsBank to settle. As a result, plaintiffs cannot satisfy the standard necessary to justify an exception to the Final Order Rule and their Motion to Certify should be denied.

3

cv-06145-LRJ . Document 209    Entered on FLSD Docket 04/26/2001    P
*Escudero, et al. v. BankAmerica Corp., et al.*
Case No. 00-06145-CIV-DIMITROULEAS

## Argument

I.    This Court's Denial of Plaintiff's Motion For Notification Does Not Involve a
      "Controlling Question of Law" Justifying Interlocutory Appeal Pursuant to §1292(b).

Pursuant to 28 U.S.C. §1292(b), this Court may certify an Order for interlocutory appeal

only if it involves "a controlling question of law as to which there is a substantial ground for

difference of opinion" and "an immediate appeal from the order may materially advance the

ultimate termination of the litigation." In their Motion to Certify, plaintiffs contend that this

Court's denial of their Motion for Notification raises the following "controlling issues of law"

allegedly justifying certification for interlocutory appeal: (1) whether the Eleventh Circuit's

Dybach test is the appropriate standard by which to assess notification in a non-exemption, "off

the clock" action; and (2) "whether this Court misread and misapplied the Dybach test" to the

facts before it. See Motion to Certify, p. 5. Plaintiffs distort the §1292(b) rationale and they

have not identified a "controlling question of law" justifying interlocutory appeal.

A.    Plaintiffs' Eleventh Hour Assault on Dybach is a Transparent Attempt to Mask
      their Inability to Satisfy the Standards Necessary to Justify Notification.

In an attempt to manufacture a "controlling question of law," plaintiffs now contend that

the Dybach test crafted by the Eleventh Circuit in 1991 "does not lend itself to a case like *Mintz*

and the case *sub judice*." Motion to Certify, p. 8. Plaintiffs' position is bizarre in light of their

consistent and unequivocal reliance upon Dybach in this case and its companion cases. Plaintiffs

have steadfastly championed Dybach through the fifteen-month pendency of this case, and have

repeatedly applied its standards to their proffered evidence in support of class notification. See

Plaintiffs' August 21, 2000 Motion for Notification (Dkt. Entry 111) & Plaintiffs' September 28,

2000 Reply to NationsBank's Opposition to their Motion for Notification (Dkt. Entry 116)

4

Similarly, plaintiffs' counsel never questioned the suitability of the Dybach test in Mintz

or Aldred, et al. v. NationsBank, two other FLSA "off the clock" actions in which this Court

denied plaintiffs' Motion for Notification. In Mintz, plaintiffs filed six legal memoranda in this

Court and the Eleventh Circuit in support of "class" notification. In Aldred, plaintiffs filed four

legal memoranda in support of "class" notification. In each of those ten legal memoranda,

plaintiffs expressly and unequivocally relied on the Dybach standard; never once questioning or

challenging the suitability of Dybach in an "off the clock" case. Plaintiffs sudden reversal of

position here is a transparent attempt to redefine the applicable standard because they failed to

satisfy the Dybach standard upon which they consistently relied.

B.     Rather than a Question of Law About Which There Exists "Substantial Ground
       for a Difference of Opinion," There Can be No Dispute that the Eleventh Circuit's
       Dybach Test is Applicable to and Well-Suited for "Off the Clock" Cases.

Furthermore, as a substantive matter, plaintiffs' argument that the Dybach standard is ill-

suited for "off the clock" cases strains credulity. Since Dybach, neither the Eleventh Circuit nor

the district courts in the Eleventh Circuit have altered or deviated from the Dybach standard even

in "off the clock" cases. NationsBank located thirteen "notification" decisions rendered by

district courts within the Eleventh Circuit since Dybach. In four of those thirteen cases, the

plaintiffs alleged they were forced to work "off the clock" in violation of the FLSA. The district

courts applied the Dybach standard in each, and in three of those four cases the district court

refused to permit or severely limited notification on facts similar to those at issue here. See

Baum v. Shoneys, Inc., 1998 U.S. Dist. Lexis 21484 (M.D. Fla. 1998)(denying notice to

employees in 175 restaurants in eleven states because plaintiffs' "almost identical" affidavits did

not satisfy their burden pursuant to Dybach to provide sufficient evidence justifying

notification); Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 948-49 (M.D. Fla. 1994)(limiting

5

notification to the plaintiff's terminal where the forecast of evidence on the issue of "similarly situated" employees revealed a decentralized determination of hours and pay rates on a terminal by terminal basis); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D. Ala. 1999)(limiting notification to plaintiff's restaurant where evidence demonstrated that putative class members worked "at different restaurants, in different states, for different managers, . . ., in quite different working conditions"); Baum, 1998 U.S. Dist. Lexis 21484 (boilerplate affidavits containing only "general statements" of FLSA violations outside of their own restaurants insufficient to warrant notice to 175 current and former employees of the defendant's restaurants in eleven different states). In these decisions, the district courts never hinted at any difficulty in applying the Dybach standards. See also Santielices v. Cable Wiring, Inc., 1999 U.S. Dist. Lexis 15781 (S.D. Fla. 1999)(relying on Dybach to deny plaintiffs' motion for notification). Perhaps this is why plaintiffs instead rely now on cases from outside the Eleventh Circuit, which are unpersuasive and inapplicable. See Motion to Certify, p. 8-14.

C.  Plaintiffs' Assertion that an "Incorrect Disposition" of the Notification Issue "Would Clearly Require Reversal of any Final Judgment" is Equally Unavailing.

Many courts have interpreted the "controlling question of law" factor to require, at the very least, an issue of such magnitude that an incorrect ruling regarding that issue would require the reversal of a final judgment. See, e.g., Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3rd Cir. 1974). Plaintiffs attempt to shoehorn their way into the protection of this principle by asserting that "an incorrect disposition of [the notification] issues would clearly require reversal of any final judgment." See Motion to Certify, p. 6. Plaintiffs' view is without merit. The Court's disposition of the notification issue will have no impact on the security or finality of any final judgment in this matter.

6

cv-06145-LRJ . Document 209 Entered on FLSD Docket 04/26/2001 P
Escudero, et al. v. BankAmerica Corp., et al.
Case No. 00-06145-CIV-DIMITROULEAS

Plaintiffs have cited no authority for their conclusory proposition that they would be precluded from raising the notification issue before the Eleventh Circuit if this Court's denial of plaintiffs' Motion for Notification is left undisturbed and plaintiffs prevail at trial. Similarly, if this Court's denial of plaintiffs' Motion for Notification is left undisturbed and NationsBank prevails at trial, plaintiffs then may appeal to the Eleventh Circuit this Court's denial of their Motion for Notification; a principle which is amply demonstrated by the current appellate status of the Mintz matter.[1]

D.      The "Controlling Question of Law" Factor is Strictly Construed.

Finally, because §1292(b) is an exception to the well-settled rule that (with rare exception) only final judgments may be appealed, courts tend to strictly define and construe the "controlling question of law" factor. Questions of fact or matters left to the sound discretion of the trial court generally are not considered good candidates for interlocutory appeal pursuant to §1292(b). See Clark-Dietz & Assocs. v. Basic Construction Co., 702 F.2d 67, 69 (5th Cir. 1983).

Here, plaintiffs contend that "this Court misread and misapplied the Dybach test" in evaluating their Motion for Notification. See Motion to Certify, p. 6. However, whether to permit notification in an FLSA collective action is committed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Dybach, 942 F.2d at 1562. As such, this Court's denial of plaintiffs' Motion for Notification is an unsuitable candidate for interlocutory appeal and plaintiffs' Motion to Certify should be denied.

---

[1]Similarly, because of the "opt-in" nature of an FLSA collective action, any current or former NationsBank employee who does not receive notice will not be prejudiced by any final ruling or determination in this matter. See Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977).

cv-06145-LRJ  Document 209  Entered on FLSD Docket 04/26/2001  P
*Escudero, et al. v. BankAmerica Corp., et al.*
Case No. 00-06145-CIV-DIMITROULEAS

II.  Contrary to Plaintiffs' Assertion, an Interlocutory Appeal of this Court's Denial of Their Motion for Notification Will Not Advance the Ultimate Termination of this Action.

As noted above, in order to justify an interlocutory appeal pursuant to the statute, plaintiffs here must establish "that an immediate appeal from the order [denying their Motion for Notification] may materially advance the ultimate termination of the litigation. . . ." 28 U.S.C. §1292(b). Plaintiffs cannot satisfy this statutory requirement.

Plaintiffs postulate that if this Court certifies for interlocutory appeal its denial of their Motion for Notification, and if the Eleventh Circuit (in its discretion) accepts the appeal, and if the Eleventh Circuit then overrules this Court's denial of plaintiffs' Motion for Notification, then "the ultimate termination of this litigation could easily be advanced by a settlement." See Motion to Certify, p. 15. Plaintiffs, however, distort the utility and purpose of §1292(b). The statute was enacted to facilitate resolution of "controlling questions of law" which may facilitate the ultimate termination of the litigation; Congress did not enact the statute to provide plaintiffs a means to coerce settlements from defendants.

III.  The Factual Record Before This Court Illustrates Why Appellate Courts are Loathe to Revisit a Trial Court's Resolution of a Factual Issue Committed to its Sound Discretion.

As noted above, appellate courts generally resist the invitation to revisit a trial court's factual findings, and if the matter at issue is committed to the sound discretion of the trial court, the matter generally is a poor candidate for interlocutory review pursuant to §1292(b). See Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386-87 (11th Cir. 1998), citing Link v. Mercedes-Benz of N. Am., 550 F.2d 860, 862-63 (3rd Cir. 1976) and Kohler v. Bank of Bermuda, Ltd., 101 F.3d 863, 866 (2nd Cir. 1996)("§1292(b) was not meant to substitute an appellate court's judgment for that of the trial court"). Justification for this reluctance is amply demonstrated by the significant record evidence supporting this Court's denial of plaintiffs'

8

cv-06145-LRJ    Document 209    Entered on FLSD Docket 04/26/2001    P
*Escudero, et al. v. BankAmerica Corp., et al.*
Case No. 00-06145-CIV-DIMITROULEAS

Motion for Notification. See generally NationsBank's September 5, 2000 Opposition to
Plaintiffs' Motion for Notification (Dkt. Entry 114); NationsBank's October 17, 2000 Motion for
Leave to File a Supplemental Response to Plaintiffs' Motion for Notification (Dkt. Entry 118).

A.    Plaintiffs' Failure to Meet the Dybach Standard

As plaintiffs themselves have argued on several occasions, see supra at 4-5, to justify
notice in an FLSA collective action the plaintiff must demonstrate a "reasonable basis" for class-
wide treatment of his or her FLSA claims. See Grayson v. Kmart Corp., 79 F.3d 1086, 1097
(11th Cir. 1996); Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). An FLSA
plaintiff, therefore, must demonstrate that "there are other employees of the department-
employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job
requirements and with regard to their pay provisions." Dybach, 942 F.2d at 1567-68.
Unsupported claims of widespread FLSA violations, or pools of potential "similarly situated"
plaintiffs desiring to opt-in, will not satisfy a plaintiff's burden. Haynes, 696 F.2d at 887. As
this Court concluded here, plaintiffs failed to satisfy these standards and the Court correctly
rejected their Motion for Notification.

1.    Other Potential Opt-in Plaintiffs

For example, plaintiffs failed to provide this Court sufficient factual support for their
claim that other Consumer Bankers, who have not yet opted-in, desire to opt-in to this action.
Plaintiffs filed thirteen affidavits in support of their Motion for Notification. These affidavits,
however, included only boilerplate assertions that the affiant "believe[s] there are other
individuals who would desire to opt-in to this lawsuit if they were provided Court-approved
notice of this lawsuit." Plaintiffs' affidavits, however, did not identify: (1) where these alleged
potential opt-in plaintiffs worked; (2) what positions these alleged potential opt-ins held; or (3)

9

v-06145-LRJ  Document 209  Entered on FLSD Docket 04/26/2001  P.

*Escudero, et al. v. BankAmerica Corp., et al.*
Case No. 00-06145-CIV-DIMITROULEAS

whether the affiants in fact worked with the alleged potential opt-ins. Significantly, the affiants also did not describe how they know the alleged potential opt-in plaintiffs worked overtime hours for which they allegedly were not compensated. These conclusory, hearsay statements, for which plaintiffs provided no foundation or basis in fact, did not satisfy their obligation of demonstrating that others wish to join this action. See Haynes, 696 F.2d at 887.

NationsBank also has raised serious questions regarding the credibility and veracity of the affidavits plaintiffs filed in support of their Motion for Notification and this Court was free to discount or discard the affidavits on that basis as well. More specifically, in each affidavit the opt-in plaintiff stated, under oath and under the penalty of perjury, that he or she "only indicate[d] forty (40) hours on [his or her] timecard each week even though [he or she] worked more than forty (40) hours," and that NationsBank "only paid [him or her] for forty (40) hours regardless of the number of hours worked." Contrary to these sworn statements under oath, eleven of the thirteen opt-in plaintiffs who submitted affidavits recorded overtime hours and were paid by NationsBank for those overtime hours. One of the affiants recorded overtime in virtually every pay period during the relevant time period and received overtime pay of more than $14,600. Many of the remaining affiants received significant overtime pay during the relevant time period.[2] At worst, these opt-in plaintiffs perjured themselves. At best, they submitted affidavits which NationsBank contradicted with its indisputable payroll records. Either conclusion supports this Court's decision to deny plaintiffs' Motion for Notification.

In their Motion for Notification, plaintiffs also placed considerable stock in the argument that "sixty-nine" opt-in plaintiffs have filed consents to join this collective action "without the

---

[2]NationsBank also established that, contrary to plaintiffs' allegations in their Complaint that they were not allowed to record any of their overtime, virtually all of the opt-in plaintiffs recorded overtime hours and received overtime pay during the relevant time period.

benefit of Court-authorized notification." This argument also is unavailing. As plaintiffs know and have acknowledged, in reality, only approximately thirty-five opt-in plaintiffs should remain as parties to this action. Moreover, there is nothing miraculous or particularly persuasive about the number or identity of those who already have opted into this case.

First, contrary to plaintiffs' prediction that a large untapped group of potential plaintiffs exists, the group of opt-in plaintiffs in this matter continues to diminish at a rapid pace; further justifying this Court's decision to deny plaintiffs' Motion for Notification. As this Court noted in its Order denying plaintiffs' Motion for Notification, see Exhibit A, although approximately 110 Consumer Bankers initially opted into this matter, approximately twenty opt-in plaintiffs have withdrawn their consents, and this Court dismissed approximately forty additional opt-in plaintiffs because they did not work as Consumer Bankers during the relevant time period. Plaintiffs' counsel also have acknowledged to NationsBank's counsel that many additional opt-in plaintiffs must be dismissed from the instant case because they participated in the settlement of a related action in which they have released any additional claims they may have against NationsBank; leaving approximately thirty-five opt-in plaintiffs in the instant case.[3]

Second, as this Court is aware, the opt-in plaintiffs in this matter also were opt-in plaintiffs in other matters being prosecuted against NationsBank by plaintiffs' counsel in the instant case. See Exhibit A. The only reasonable inference is that plaintiffs' counsel solicited each of the opt-in plaintiffs in these other cases and invited them to join here. As such, there is nothing miraculous about their participation. Indeed, given the fact that plaintiffs' counsel

---

[3]NationsBank intends to file a Motion for Summary Judgment seeking dismissal of those opt-in plaintiffs who are barred from participating in the instant case due to their participation in the settlement of the case of Levine, et al. v. NationsBank, et al.

11

almost certainly contacted all opt-in plaintiffs in these other cases and invited them to join this action, this could rightfully have concluded that all Consumer Bankers who wish to opt-into this matter already have done so and "class" notice, therefore, is unnecessary.[4]

    2.    "Similarly Situated" and the Lack of a "Common Scheme"

Plaintiffs also failed to proffer any credible or persuasive evidence that there are other "similarly situated employees" sufficient to justify notice to potential opt-in plaintiffs. Plaintiffs, therefore, also failed to establish the second prong of the Dybach test.

Plaintiffs correctly note that the nature of the alleged overtime violations in this action was of critical importance to this Court's analysis of whether this matter should proceed as a collective action. See Motion to Certify, p. 10. Plaintiffs do not allege that NationsBank misclassified their positions as exempt for overtime pay purposes. Plaintiffs do not allege that NationsBank denied them overtime pay based on a written, corporate-wide payroll or compensation policy. Rather, they allege that NationsBank properly classified them as non-exempt, but failed to allow them to record their overtime hours and refused to pay them for their overtime hours – that is to work "off the clock." Plaintiffs, however, did not proffer any evidence that this purported "scheme" is a corporate-wide policy or was sufficiently wide-spread or similar as to justify notification. In fact, as this Court concluded, the record evidence indicates that any alleged violations of the FLSA were random, sporadic and completely dependent on the actions of each plaintiff's Banking Center Manager. See Exhibit A.

---

[4]NationsBank does not suggest that these solicitations were proper or improper. Rather, contrary to the inference plaintiffs wish the Court to draw from these circumstances, there is nothing miraculous or particularly persuasive about the number or identity of those who have opted into this action.

B.    Plaintiffs' Erroneous Contention that the Court Misapplied Dybach

Finally, plaintiffs assert that "[t]he problem with this Court's Dybach analysis is that, if correct, it would essentially mean that notification can never be granted in a non-exemption case like the one at bar, in contra[s]t to an 'exemption' case like Dybach. . . ." See Motion to Certify, p. 10. Again, plaintiffs' strawman argument is without merit. This Court's analysis simply means that notice (and collective action treatment generally) is not appropriate in the instant case because, based on the facts before the District Court, resolution of the FLSA overtime issues "will vary from branch to branch" and manager to manager. See Exhibit A. Accord Baum v. Shoney's Inc., 1998 U.S. Dist. Lexis 21484 (M.D. Fla. 1998) (noting that although a "common scheme" may not be required to confirm the existence of "similarly situated" potential class members, such a showing would be "probative" on the issue). See also Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 566-69 (N.D. Ala 1995)(denying class notification in an ADEA case under Dybach, in part, on plaintiffs' failure to demonstrate any "common scheme" of discrimination).

## Conclusion

Based on the foregoing, NationsBank requests that the Court reject Plaintiffs' Motion to

Certify this Court's denial of their Motion for Notification as appropriate for interlocutory appeal

pursuant to 28 U.S.C. §1292(b), award it the costs and attorneys' fees incurred in responding to

plaintiffs' Motion to Certify, and grant such other relief as is just and proper.

This the 25th day of April, 2001.

Richard F. Kane, NC Bar No. 5694
Bruce M. Steen, VA Bar No. 31062
J. Mark Langdon, NC Bar No. 19359
MCGUIREWOODS LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999
(704) 373-8990 (Facsimile)

Michael T. Burke, Florida Bar No. 338771
JOHNSON, ANSELMO, MURDOCH, BURKE
& GEORGE, P.A.
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100
(954) 463-2444 (Facsimile)

Attorneys for NationsBank

*Escudero, et al. v. BankAmerica Corp., et al.*
Case No. 00-06145-CIV-DIMITROULEAS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was mailed by first-class mail,

postage prepaid, to plaintiffs' counsel as listed below:

> Daniel R. Levine, Esq.
> Adam S. Chotiner, Esq.
> Muchnick, Wasserman, Dolin & Levine, LLP
> Presidential Circle Building, Suite 620 North
> 4000 Hollywood Blvd.
> Hollywood, Florida 33021

> Caryl Boies, Esq.
> Ann E. Hinds, Esq.
> Boies, Schiller & Flexner, LLP
> 2435 Hollywood Boulevard, Suite 200
> Hollywood, Florida 33020

This the 25th day of April, 2001.

_____
Michael T. Burke

CC Magistrate Johnson

15



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6145-CIV-DIMITROULEAS

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly situated,

       Plaintiff,

vs.

BANKAMERICA CORPORATION,
d/b/a BANK OF AMERICA, f/k/a NATIONSBANK,

       Defendant.

_____/

Magistrate Judge Johnson



FILED BY _____ D.C.

MAR 2 6 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## OMNIBUS ORDER

THIS CAUSE is before the Court upon Plaintiffs' Motion to Allow Notification to

Potential Class Members [DE 111], Defendant's Motion for Leave to File a Supplemental

Response to motion for notification [DE 118], Defendant's Motion for Summary

Judgment [DE 120], Defendant's Motion for Sanctions [DE 130], Plaintiffs' Motion to Amend

Complaint to Add Rodney Hensley [DE 148], the parties' Joint Motion for Extension of

Discovery and other deadlines [DE 183], Defendant's Appeal [DE 184] of Order of Magistrate

Judge, and the parties' joint consent to magistrate judge jurisdiction. The Court has carefully

considered the motions, and is otherwise fully advised in the premises.

At the outset, the Court notes that the parties jointly executed a Consent to Exercise of

Jurisdiction by a United States Magistrate Judge on February 2, 2001. This Court did not enter

an order of reference, however, until today, in order to resolve the pending motions prior to

referral to the magistrate judge. Because of this Court's experience in handling similar motions

for notification to potential class members (see below), the Court concluded that judicial

EXHIBIT

A

economy would best be served by the undersigned first resolving the motions, and then transferring the case to the magistrate judge.

## I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker II, III or IV for defendant Bank of America (formerly known as Nationsbank). Plaintiff Escudero alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Plaintiff further alleges that Bank of America supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Bank of America's record-keeping obligation under the FLSA. Bank of America denies the allegations and further asserts that it has a policy in place for Consumer Bankers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

The docket for this case reflects that approximately 110 persons with the position of Consumer Banker II, III or IV have opted in to this lawsuit at one time or another.[1] In reviewing the record as of today, it appears that approximately 20 persons have withdrawn their consents,

---

[1] There were 100 persons who had filed consent forms at the time of Plaintiff's motion for notification. See Exhibit A to Plaintiff's Motion to Allow Notification to Potential Class Members [DE 111]. At the time of Defendant's response, there were 109.

2

and 40 persons are subject to Defendant's Motion for Summary Judgment because they were not

employed as a Consumer Banker II, III or IV after December 17, 1997, the time period at issue in

this lawsuit.[2] Upon a review of the remaining 55 persons[3] who have opt-ed in to this lawsuit,

only 20 worked in Florida. Of those twenty, only four (4) worked in Broward County, and only

two (2) may have worked at the same branch as the two name plaintiffs.[4]

## II. DISCUSSION

### A. Motion for Notification

Plaintiff seeks an order of this court allowing nationwide notification of potential class

members under Section 216(b) of the FLSA. It is settled in the Eleventh Circuit that a district

court has the authority under the FLSA to issue an order requiring notice to similarly situated

persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991)

(noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best

served if the district court is deemed to have the power to give such notice to other potential

---

[2] Plaintiffs filed a Non-Opposition to Defendant's Motion for Summary Judgment [DE 178] after several interim responses directed to individual plaintiffs.

[3] There was some overlap among the withdrawn consents and those subject to summary judgment. This figure does not include name plaintiffs Roxanna Escudero and Kimberly Drake.

[4] Named Plaintiffs Roxanna Escudero and Kimberly Drake list an address in Sunrise, Florida as either their residence or their work address. No other opt-in Plaintiff is listed either by themselves on their consent forms or in Plaintiffs' motions as working in Sunrise, a city in western Broward County. One opt-in Plaintiff, Mary Ann O'Connor [DE 180] lists Plantation, Florida, a neighboring city to Sunrise, while another, Theresa Sutton Rubinfield lists Miramar, Florida, a city within commuting distance to Sunrise. Two additional opt-in Plaintiffs, Danielle Magan and Marilyn Barnes, either live on the east side of Broward County (Magan, see DE 109) or worked in a branch on the east side of Broward County (Barnes, See Exhibit A to Plaintiff's Motion to Allow Notification).

3

members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such power, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Id. at 1568.

As the parties are aware, the Court has had the opportunity to issue rulings in similar cases involving bank tellers (Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS), In-store Bankers (Perlman, et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), Consumer Bankers I (Mintz v. Nationsbank, 98-8632-CIV-DIMITROULEAS) and Consumer Bankers II, III, and IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS).[5] In Perlman and Levine, Bank of America (or its predecessors) had a clear policy of exempting all In-Store Bankers and Consumer Bankers II, III and IV from overtime pay, respectively. Thus, in those two cases the Court concluded under Dybach that those individuals were similarly situated. In Aldred and Mintz, the Court concluded that Plaintiffs had not met their burden of showing similarly-situated employees, as Bank of America did not exempt such employees from overtime, but rather left overtime decisions to individual branch mangers.

---

[5] The Levine case involved Consumer Bankers II, III, and IV who were allegedly wrongly classified as exempt from the overtime provisions of the FLSA, in comparison to the instant case in which the time period of alleged FLSA violations begins after Consumer Bankers II, III, and IV were classified as non-exempt on December 17, 1997.

4

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers II, III and IV in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers, making this case similar to Aldred and Mintz. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. Defendant argues that there was no such policy of discouragement, and whether an individual Consumer Banker received overtime depending on working conditions at each branch.

The record as described above shows only four (4) opt-in plaintiffs from Broward County, and no evidence that any of the opt-in plaintiffs worked in the same branch as Escudero or Drake. Moreover, Plaintiffs have had more than enough opportunity to meet this opt-in burden, as this case was filed in January, 2000. Therefore, Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case.

As to the second step of Dybach, Defendant argues that Plaintiffs have not shown that Consumer Banker II, III, and IV employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions. Individual

5

differences will certainly exist as to the hours, duration and location worked by individual plaintiffs. The Court also concludes that the affidavits and deposition transcripts provided by Plaintiffs are not sufficient to satisfy this Court that there are other employees of Bank of America who are similarly situated with respect to their job requirements and with regard to their pay provisions as the two named plaintiffs, since no person who worked at the same branch as named plaintiffs have opted in to this case. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

## B. Motion for Summary Judgment

Defendants moved for summary judgment as to forty different opt-in plaintiffs because they were not employed as a Consumer Banker II, III or IV after December 17, 1997. All of these persons either were terminated by Defendant prior to December 17, 1997, or transferred out of these positions at issue prior to that date. After several interim responses disputed the facts as to certain individuals among the forty, Plaintiffs eventually filed a notice of non-opposition to the motion [DE 178]. Therefore, Defendant's motion is granted. Because these persons subject to this motion were not eligible for the proposed opt-in class in this case, they were not considered by this Court as similarly situated for purposes of the notification issue described above.

## C. Appeal of Discovery Order

Defendant has appealed Magistrate Judge Johnson's January 30, 2001 Order [DE 171] granting Plaintiffs' Emergency Motion for Protective Order stopping Defendant from taking depositions of all opt-in Plaintiffs. The Order stated that such depositions were premature at this

6

time, but strongly implied that after written discovery is propounded to these opt-in Plaintiffs, such depositions may be allowed at a further time. Although Defendant consented to Magistrate Jurisdiction on February 2, 2001, Defendant filed this appeal.[6]

Pursuant to 28 U.S.C. § 636(b)(1)(A), Magistrate Judges may decide non-dispositive motions. Upon objection by a party, the District Court may reconsider any pretrial matter where it has been shown that the Magistrate Judge's order is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1); Massey v. United Transp. Union, 868 F. Supp. 1385, 1388 (S.D.Ga.1994) (stating that a magistrate judge's order will be set aside when clearly erroneous or contrary to law), aff'd, 65 F.3d 183 (11th Cir.1995). Accordingly, unless Magistrate Judge Johnson's determination with respect to the timing of opt-in Plaintiffs' depositions was clearly erroneous, or contrary to law, that determination shall not be disturbed.

Upon a review of the record by this Court, Judge Johnson's Order is affirmed, as it was not erroneous nor contrary to law. In addition, her order is not a final order, but merely postpones the depositions of opt-in Plaintiffs until after written discovery has been completed. Finally, as noted above, the Court is now entering an Order of Reference, in accordance with the parties' consent to magistrate jurisdiction, which in effect would moot the appeal.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111] is hereby

---

[6] The Court does not imply that the appeal is improper for this reason, since at the time the Court had not accepted the consent and entered an Order of Reference. However, such consent, now being approved by this Court, does moot the appeal.

**DENIED**;

2.  Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118] is hereby **DENIED**;

3.  Defendant's Motion for Summary Judgment [DE 120] is hereby **GRANTED**;

4.  Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148] is hereby **DENIED as moot**, given Plaintiff's Suggestion of Mootness given Hensley's withdrawal from the case;

5.  Defendant's Appeal [DE 184] of Order of Magistrate Judge is hereby **DENIED**, and Magistrate Judge Johnson's Order granting a protective order to Plaintiffs is affirmed

6.  Defendant's Motion for Sanctions [DE 130] and the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183] are hereby **REFERRED** to Magistrate Judge Johnson;

7.  The Court will separately enter an Order of Reference of this case for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the parties' written consent;

8.  The Clerk may formally transfer this case to Magistrate Judge Johnson.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of March, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

8

Copies furnished to:

Chief Magistrate Judge Linnea R. Johnson (WPB)
Susan Dolin, Esq./Daniel R. Levine, Esq.
Caryl Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq./J. Mark Langdon, Esq.