UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendant.

**NationsBank's Motion**
**to Decertify and to Dismiss Opt-In Plaintiffs,**
**and Incorporated Memorandum of Law**

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America, N.A. (f/k/a NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel, hereby move the Court to decertify the above-captioned collective action and to dismiss the opt-in plaintiffs. NationsBank states as follows in support of its Motion to Decertify and to Dismiss the remaining opt-in plaintiffs:



**Statement of the Case & Relevant Facts**

1. On January 31, 2000, plaintiffs Roxanna L. Escudero and Kimberly Drake filed the above-captioned action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201, et seq. ("FLSA"), "on behalf of themselves and all others similarly situated." In their Complaint, plaintiffs alleged that they worked for NationsBank as Consumer Banker IIs and IIIs; that NationsBank reclassified their positions as non-exempt for purposes of the FLSA in December, 1997; that NationsBank paid them on an hourly basis; that, between December, 1997, and October 29, 1999, they worked "many times in excess" of forty hours per week; that NationsBank violated the FLSA by not paying them and other similarly situated employees overtime pay; and that they and those similarly situated to them are entitled to certain damages and other relief. See Complaint & Demand for Jury Trial ("Complaint"), ¶¶ 8-10, 13-15. (Dkt. Entry 1).

2. On August 21, 2000, nearly seven months after commencing this action, plaintiffs filed their Motion to Allow Notification to Potential Class Members pursuant to 29 U.S.C. §216(b) ("Motion for Notification"). (Dkt. Entry 111). They alleged in their Motion for Notification that NationsBank, "through its banking center managers and other supervisory personnel," refused overtime pay to Consumer Banker IIs, IIIs and IVs, and further prevented or intimidated the putative class from "properly record[ing] their time." See Motion for Notification, ¶¶ 6-7. (Dkt. Entry 111).

3. On March 26, 2001, this Court denied plaintiffs' Motion for Notification. See District Court's March 26, 2001 Omnibus Order (Dkt. Entry 199) regarding, inter alia, plaintiffs' Motion for Notification, appended hereto as Exhibit A. According to the Court, despite having "had more than enough opportunity to meet [their] opt-in burden," plaintiffs failed to establish pursuant

to Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir. 1991), that notice was appropriate. Id. After reviewing the affidavits and deposition testimony plaintiffs submitted in support of their Motion for Notification, and the countervailing affidavits and deposition testimony NationsBank submitted in opposition to plaintiffs' Motion for Notification, this Court concluded that "Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case" and found "that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions." Id. The Court, therefore, denied plaintiffs' Motion for Notification. Id.

4. In support of their Motion for Notification, plaintiffs tendered affidavits from thirteen opt-in plaintiffs as a "representative" cross sample of the putative "class," appended hereto collectively as Exhibit B, as well as a "master list" providing the location and name of the banking centers at which each opt-in plaintiff in the putative class worked, appended hereto as Exhibit C.

5. Plaintiffs subsequently filed "corrected" affidavits from several members of their "representative" cross sample of opt-in plaintiffs, as well affidavits from other opt-in plaintiffs in support of or opposition to other motions.[1]

6. NationsBank's counsel have deposed six named and opt-in plaintiffs, and plaintiffs' counsel have deposed seven current or former NationsBank managerial employees.

---

[1] See Notice of Filing of "Corrected Affidavits" (Dkt. Entry 125), Corrected Affidavit of Olga Valdes (Dkt. Entry 125), and Corrected Affidavit of Jeff Motley (Dkt. Entry 147). Plaintiffs filed the affidavit of Rodney Hensley (Dkt. Entry 153) in support of their Motion to Amend Complaint, which they later abandoned. Plaintiffs filed the Affidavit of Eloise Batts (Dkt. Entry 152) in opposition to NationsBank first Motion for Summary Judgment, to which they eventually acceded.

7. NationsBank also has responded to three sets of interrogatories and eight sets of requests for production of documents served upon it by plaintiffs' counsel.

8. During the course of this litigation, one hundred sixteen individuals opted-in as plaintiffs in this action. (One hundred seven of these individuals also were members of the plaintiff "class" in the case of Levine, et al. v. NationsBank, 98-6306-CIV-DIMITROULEAS, which comprised approximately 1,300 opt-in plaintiffs.)

9. On March 26, 2001, the Court dismissed forty opt-in plaintiffs pursuant to NationsBank's October 23, 2000 Motion for Summary Judgment, see Dkt. Entries 120-22, because the opt-in plaintiffs at issue did not work as non-exempt Consumer Bankers. See Exhibit A.[2]

10. A total of twenty-seven opt-in plaintiffs have voluntarily withdrawn from this action without explanation, see Dkt. Entries 123, 144, 156, 164, 168-69, 177, 192, 198, 208 & 210-11, including eight of the "representative" plaintiffs who tendered sworn testimony to this Court in support of plaintiffs' argument that other Consumer Bankers were willing to opt-in to this action and were "similarly situated" to the named plaintiffs. See Dkt. Entries 123, 144, 168, 169, 177 (Plaintiff Ford) and 192.

11. On May 25, 2001, NationsBank filed a second Motion for Summary Judgment to dismiss twenty-three additional opt-in plaintiffs who waived their FLSA claims in the present action by signing a General Release in the Levine matter.

---

[2] During the pendency of NationsBank's October 23, 2000 Motion for Summary Judgment, five opt-in plaintiffs subject to that Motion withdrew from this action. See Dkt. Entries 144, 156, 164 & 177 (plaintiffs Hensley and Strozier).

12. As a result, if the Court grants NationsBank's pending Motion for Summary Judgment, thirty-one opt-in plaintiffs will remain in this action.

**Argument**

Plaintiffs asserting FLSA claims do not have an unfettered right to proceed together in a collective action. Rather, to justify a collective action under §216(b) of the FLSA, the plaintiffs must "demonstrat[e] a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they propose[]," Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983) – that is, they must prove that the plaintiffs with whom they wish to proceed to trial are "similarly situated." See Bayles v. American Medical Response of Colorado, Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996).

At this stage of the litigation, an FLSA plaintiff's burden is formidable. Indeed, at this stage of the litigation, "the vast majority of district courts deny certification. . . ." See Thiessen v. General Electric Capital Corporation, 996 F. Supp. 1071, 1080 (D. Kan. 1998)(hereinafter "Thiessen I").[3]

---

[3] Most courts, including the Eleventh Circuit, rely on a two-tiered analysis for making certification determinations under §216(b) of the FLSA. The "first determination is made at the so-called 'notice stage'" to assess whether "class" notice is appropriate. See Hipp v. Liberty Nat'l Life Ins. Co., ___ F.3d ___, 2001 U.S. App. LEXIS 11005 (11th Cir. 2001). See also Thiessen I, quoting Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 568 (N.D. Ala. 1995), aff'd, 114 F.3d 1202 (1997). The district court then revisits the certification issue – typically in response to the defendant's motion to decertify – later in the litigation to determine whether the matter should proceed to trial as a collective action. See Hipp, 2001 U.S. App. LEXIS 11005. See also Brooks, 164 F.R.D. at 568 quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). At this second stage, the trial court holds the plaintiff to a higher and more exacting standard for proving that the members of the putative "class" are similarly situated. See Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000). See also Mertz v. Treetop Enterprises, Inc., 1999 U.S. Dist. LEXIS 18386 (N.D. Ala 1999); Thiessen I, 996 F. Supp. at 1080; Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 947 (M.D. Fla. 1994), quoting Dybach v. State of Florida, 942 F.2d 1562, 1567 (11th Cir. 1991).

I. NationsBank's Motion to Decertify Should be Granted Because Individual Claims Predominate and Neither Judicial Economy nor the Purposes of a Collective Action Would be Served by Permitting this Matter to Proceed Further as a Collective Action.

At this stage of the litigation, courts generally focus on two factors or issues in determining whether plaintiffs are "similarly situated" and, therefore, entitled to proceed collectively: (1) whether individual issues predominate – issues regarding liability and defenses to liability; and (2) fairness and procedural considerations – that is, "whether a trial of this action could be coherently managed and evidence presented in a manner that would not confuse the jury or unduly prejudice any party." See Thiessen v. General Electric Capital Corp., 13 F. Supp.2d 1131, 1141-44 (D. Kan. 1998)("Thiessen II"). See also Brooks, 164 F.R.D. at 568; Reeves v. Alliant TechSystems, Inc., 77 F. Supp. 2d 242, 247 (D.R.I. 1999).

Here, it is beyond peradventure that individual issues predominate, and continued consolidation of the remaining opt-in plaintiffs' claims would not provide for an efficient resolution of what actually are thirty-one distinct claims. Like the "vast majority" of other cases, plaintiffs' claims here should not proceed as a collective action.

A. The Opt-ins are not "Similarly Situated" to the Named Plaintiff's Allegations.

As a threshold matter, the thirty-one opt-in plaintiffs remaining in this action are not even "similarly situated" with respect to the core allegations of the Complaint. As noted above, the named plaintiffs allege in their Complaint that NationsBank essentially forbade them and other similarly situated employees, either through direct instruction or intimidation, from recording any of the overtime hours they purportedly worked, and consequently did not pay them any compensation for those alleged overtime hours. See Complaint , ¶¶ 14-15. (Dkt. Entry 1). However, according to the

undisputed record evidence, the Bank paid overtime compensation to the vast majority of the remaining opt-in plaintiffs who were employed by the Bank in 1998 or 1999.

More specifically, approximately eighty-five percent of the remaining opt-ins recorded and were paid overtime in 1998. See Affidavit of Joyce Butler ("Butler Affidavit") (See Dkt. Entry 114, Ex. F), ¶¶ 5, 7, 10-11, appended hereto as Exhibit D; Supplemental Affidavit of Joyce Butler ("Butler Supplemental Affidavit") (Dkt. Entry 119), ¶ 3, appended hereto as Exhibit E; Affidavit of Debra Robinson ("Robinson Affidavit") (Dkt. Entry 118), ¶ 7, appended hereto as Exhibit F. Approximately eighty-three percent of the remaining opt-ins who remained employed by the Bank in 1999 recorded and were paid overtime. Id. Indeed, contrary to the conclusory allegations in plaintiffs' Complaint, in 1998 and 1999, the Bank paid many thousands of dollars of overtime compensation to many of the remaining opt-in plaintiffs.[4] Thus, the members of the putative "class"

---

[4] For example, in 1998 and 1999, the Bank paid overtime compensation to the following opt-in plaintiffs in the following amounts:

| Opt-in | 1998 Overtime | 1999 Overtime |
|---|---|---|
| Deborah S. Agnew | $7,093.02 | $ 567.90 |
| Janet E. Meier | 7,338.08 | 5,427.47 |
| Laurie K. DuPont | 7,116.29 | 1,058.80 |
| Annette B. Armstrong | 6,481.20 | 332.50 |
| Peggy H. Lee | 3,835.77 | 4,004.12 |
| Angela Wilson | 3,680.16 | 142.79 |
| Ron Valdez | 1,465.12 | 208.75 |
| Harold Willis | 1,985.28 | not employed |
| Stephanie Dantos | 1,542.43 | not employed |
| Steven K. Richardson | 1,379.39 | not employed |

See Exhibits D-F for further information regarding the time period during which each of the plaintiffs were entitled to receive overtime compensation – e.g., many of the above-listed individuals left the Bank early in 1999 – and the overtime compensation NationsBank paid to the remaining opt-in plaintiffs.

are not even similarly situated with respect to the core allegations of the Complaint and this matter should not proceed as a collective action. See Ray v. Motel 6, 1996 U.S. Dist. LEXIS 22565 (D. Minn. 1996) ("amount of overtime hours worked varies between Plaintiffs, which demonstrates a lack of commonality for damages").

B.    Individual Issues Predominate

Furthermore, whether such a common scheme or policy exists which violates the law is probative, and often critical to whether a court will permit a group of plaintiffs to proceed collectively. See Lusardi v. Xerox Corp., 122 F.R.D. 463, 466 (D.N.J. 1988) (collective action decertified because plaintiffs failed to "uncover[] any policy or practice of age discrimination"). That is, the more decentralized the alleged wrongdoing, the less likely it is that the court will permit plaintiffs to proceed collectively. See Baum v. Shoney's Inc., 1998 U.S. Dist. LEXIS 21484 (M.D. Fla. 1998)(existence of a "centralized" scheme or policy probative in the determination whether putative class members are "similarly situated"). See also Brooks, 164 F.R.D. at 567; Mertz, 1999 U.S. Dist. LEIXS 18386; Reeves, 77 F. Supp. 2d at 249; Ray, 1996 U.S. Dist. LEXIS 22565 and Harper v. Lovett's Buffett, 185 F.R.D. 358, 363 (M.D. Ala. 1999).

Here, the evidence is devoid of even a hint of any "centralized scheme" or pervasive practice to deny any bank employees overtime pay to which they were entitled.  Plaintiffs do not allege that NationsBank misclassified their positions as exempt for overtime pay purposes.  Plaintiffs do not allege that NationsBank denied them overtime pay based on a written, corporate-wide payroll or compensation policy. Rather, they allege that NationsBank properly classified them as non-exempt, but failed to allow them to record their overtime hours and refused to pay them for their overtime hours – that is to work "off the clock." Plaintiffs, however, have not proffered any evidence that this

purported "scheme" is a corporate-wide policy or was sufficiently wide-spread or pervasive as to justify collective treatment.

In fact, as this Court concluded in denying plaintiffs' Motion for Notification, rather than illustrating a common scheme of alleged FLSA violations, the record evidence indicates that any alleged violations of the FLSA were random, sporadic and completely dependent on the actions of each plaintiff's Banking Center Manager. See Exhibit A. The record evidence establishes that "[i]ndividual overtime is authorized and managed at the direct supervisor and banking center manager level," see Affidavit of Jill Borsky ("Borsky Affidavit") (Dkt. Entry 114), appended hereto as Exhibit G, ¶ 3, and "resolution of the FLSA overtime issues in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions." Exhibit A (p. 5). Collective treatment of plaintiffs' myriad claims, therefore, is inappropriate. See Ulvin v. Northwestern Nat'l Life Ins. Co., 141 F.R.D. 130, 131 (D. Minn. 1991) (implementation of policy on a decentralized level by local management insufficient to render class similarly situated).

The disparate nature of these individualized inquiries is compounded by the fact that each of the thirty-one opt-in plaintiff's claims will hinge upon how his or her manager administered overtime at a particular banking center based upon distinctive working conditions at that center. See Borsky Affidavit, ¶ 3. Banking center managers are responsible for authorizing and regulating overtime at his or her banking center based on factors such as associate work loads and staffing models/shortfalls. These disparate inquiries are ill-suited for collective treatment. See, e.g., Brooks, 164 F.R.D. at 569 (noting disparate nature of claims asserted by plaintiffs who worked for defendant

in separate departments under separate supervisors in nine different states). See also Harper, 185 F.R.D. at 363; and Mertz, 1999 U.S. Dist. LEXIS 18386.

That this matter is ill-suited for collective action treatment is further underscored by the significant differences in the length of time the remaining opt-ins worked as non-exempt Consumer Bankers and, therefore, the disparate nature of their alleged entitlement to damages. For example, opt-in plaintiff Diane Dismukes worked as a non-exempt Consumer Banker for only fourteen days. See Exhibit F. Opt-in plaintiffs Guilbert Parker and Trace Blitch worked as non-exempt Consumer Bankers for less than two months. Id. Others worked as non-exempt Consumer Bankers for two, three, four, five or six months. Id. Still others worked as a non-exempt Consumer Bankers for much longer periods of time. Id. This variation among the damages to which the opt-in plaintiffs assert they are entitled "demonstrates a lack of commonality" and further illustrates why plaintiffs' claims should not proceed as a collective action. See Ray, 1996 U.S. Dist. LEXIS 22565.

C. Individualized Defenses

Section 216(b) certification also is improper in the instant case because NationsBank will assert "numerous individualized defenses with respect to the varied claims of the opt-in plaintiffs." See Thiessen I, 996 F. Supp. at 1083; see also Brooks, 164 F.R.D. at 569 and Bayles, 950 F. Supp. at 1067. By way of explanation but not limitation, as it did in the related case of Mintz v. NationsBank, 98-8632-CIV-DIMITROULEAS tried before this Court in December, 2000, in which the jury ruled in the Bank's favor, NationsBank: (1) may deny the plaintiff worked any overtime; (2) may assert that it paid the particular opt-in plaintiff for all the overtime hours he or she worked; or (3) may contend that a particular opt-in plaintiff was not paid for all the overtime hours he or she

worked because, contrary to the Bank's policy, the opt-in plaintiff failed to report accurately his or her overtime hours. None of these defenses is applicable to the putative "class" as a whole.

Rather, the existence, scope and substance of these defenses will depend on factors such as each plaintiff's overtime recordation practices, his or her banking center manager's overtime policy, the work loads and customer traffic of the banking center(s) at which he or she worked, the hours his or her banking center was open for customer traffic, the opt-in plaintiff's attendance record, and the staffing model/practices at the banking center(s) at which he or she worked. In other words, this action "is fraught with questions requiring distinct proof as to individual plaintiffs" and this Court, therefore, should decertify this action as a collective action pursuant to §216(b) of the FLSA. See Bayles, 950 F. Supp. at 1067; Brooks, 164 F.R.D. at 569

D. A Procedural Quagmire

A trial court has the inherent discretion to manage litigation before it in a manner that ensures procedural fairness and promotes judicial economy. See, e.g., Fed. R. Civ. P. 42; see also Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126-27 (S.D. Fla. 1987); and Young v. City of Augusta ex rel DeVarey, 59 F.3d 1160, 1168 (11th Cir. 1995). Indeed, the collective action provisions of §216(b) of the FLSA are designed to assist the judicial system by allowing the "efficient resolution in one proceeding of common issues of law and fact." Reeves, 77 F. Supp. 2d at 246 (emphasis added), quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L. Ed. 2d 480 (1989). Where, however, the disparate factual nature and sheer size of the case would undermine the very goal §216(b) is designed to promote, then the trial court should not hesitate to decertify an FLSA collective action. See Bayles, 950 F. Supp. at 1067-68. See also Hipp,

2001 U.S. App. LEXIS 11005 at *17 ("[i]t may have been prudent for the district court in this case to have decertified the class upon defendant's motion").

Plaintiffs have asserted that litigating the opt-in plaintiffs' claims in a collective action furthers judicial economy. However, trying the thirty-one opt-in plaintiffs' claims under the auspices of a collective action is tantamount to consolidating almost three dozen separate FLSA actions for trial; and "given the number of individual issues that must be resolved, [the Court cannot be] persuaded that a single trial would save significant time or effort." Bayles, 950 F. Supp. at 1067. Because there are no "class" issues which predominate, each plaintiff will have to call his or her witnesses and NationsBank will have to call its witnesses to rebut each plaintiff's claims. This would result in a parade of witnesses which would occupy the Court's calendar for weeks and perhaps months.

Plaintiff Drake provides a sobering example. Ms. Drake was supervised by at least six different managers at three different banking centers; although she does not claim that she was denied overtime pay by each banking center manager or at each banking center at which she worked. See Exhibit H hereto, Response to Interrogatory No. 1; See Drake Deposition, pp. 82, 88, cited excerpts of which are appended hereto as Exhibit I. She claims that several Customer Service Managers, temporary Banking Center Managers and five co-workers also were aware of her overtime hours. Exhibit I at pp. 64-65, 77-79 & 117. Ms. Drake further contends she discussed her overtime claims with two NationsBank regional executives. Exhibit I, pp. 114-16. In all, Ms. Drake identifies fifteen witnesses with information purportedly relevant to her overtime claim against NationsBank. If each remaining plaintiff identifies only one-half as many witnesses as Ms. Drake, the jury will face the task of receiving and sifting through the testimony of almost three hundred

witnesses – in the plaintiffs' case-in-chief! Moreover, NationsBank will be required to call many additional witnesses to rebut plaintiffs' allegations. Trying this matter as a collective action, therefore, would not significantly serve judicial economy and it is ill-suited for collective action treatment. See Morisky, 111 F. Supp. 2d at 499 and Lusardi, 122 F.R.D. at 467.

In addition, unless the Court decertifies this action, there is a significant risk of jury confusion and prejudice to NationsBank (and plaintiffs). As the trial court astutely noted in Thiessen I, which involved the disparate claims of twenty-three plaintiffs,

> "[t]he court is concerned with coherently managing a trial of the action and presenting evidence in a manner that will not confuse the jury or unduly prejudice any party. If the defendants actually do possess substantial evidence of bona fide individualized defenses, the result may be such a mish-mash of highly detailed evidence that in a collective action both the defendants and the opt-in plaintiffs would run the risk of having any individualized consideration of the claims lost in the mire. There is simply a realistic limit on what a jury may reasonably be expected to absorb, retain and process. . . ."

996 F. Supp. at 1084. Accord Bayles, 950 F. Supp. at 1065-67.

Similarly, if this matter proceeds to trial as a collective action, the Court would have to instruct the jury that, as a matter of law, "all members of the plaintiff class (or subclass) are similarly situated." Bayles, 950 F. Supp. at 1066. Based on the disparate nature of the evidence regarding each plaintiff's claims, NationsBank

> "would then be forced to argue to the jury that the plaintiffs, in effect, are not similarly situated, and some or all plaintiffs deserve no relief. A jury is likely to be confused. Indeed, a collective action is designed to permit the presentation of evidence regarding certain representative plaintiffs that will serve as evidence for the class as a whole. It is oxymoronic to use such a device in a case where proof regarding each individual plaintiff is required to show liability."

Id.

The District of Kansas' decision in Thiessen II, 13 F. Supp.2d 1131, is particularly instructive regarding why the Court in the instant case should decertify plaintiff Escudero's and plaintiff Drake's putative "class." Like the opt-in plaintiffs here, the twenty-three plaintiffs in Thiessen II failed to show the defendants had any overarching policy or practice which violated the law; the plaintiffs' claims of wrongdoing were based on the actions of many different supervisors; the defendants asserted individualized defenses regarding plaintiffs' various claims; and the volume of the evidence forecast for the trial was "far beyond the limit of what a jury could reasonably be expected to absorb, retain and process." Id. at 1136-37. According to the Court, the disparate nature of the parties' proffer of the anticipated evidence were

> "a mere prelude to what would most likely prove to be 23 individual jury trials to determine defendants' liability to each plaintiff. To proceed in a collective action with the defenses and circumstances surrounding each of the 23 plaintiffs and their respective claims is to defeat the purposes of collective action. . . Simply put, consolidation of these claims into a collective action with the underlying defenses would not provide for an efficient proceeding to the resolution of what appears to be 23 distinct cases."

Id. at 1143 (citations omitted).

Despite the potential benefits of proceeding as a collective action, "plaintiffs still must meet their burden of showing that they are similarly situated." Id. Here, they cannot do so. And, NationsBank respectfully submits that this failure, together with the potential for jury confusion and prejudice to NationsBank, requires the Court to decertify plaintiffs' "class."

**Conclusion**

Based on the foregoing, defendant NationsBank, by counsel, hereby requests the Court to enter an Order: (1) decertifying this action as a collective action pursuant to 29 U.S.C. §216(b); (2) dismissing the claims of all opt-in plaintiffs in this action; (3) awarding it the costs and attorneys'

v-06145-LRJ Document 232 Entered on FLSD Docket 06/11/2001 Pa

**Case No. 00-06145-CIV-DIMITROULEAS/Johnson**
**Escudero v. NationsBank, N.A.**

fees incurred in prosecuting this Motion; and (4) granting such other relief as the Court deems just and proper.

This the 8th day of June, 2001.

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; Facsimile (954) 463-2444

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
J. Mark Langdon (NC Bar No. 19359)
McGuireWoods LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999; Facsimile (704) 373-8990

Counsel for NationsBank, N.A

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing in the above-captioned proceeding has been served this day by U.S. Mail upon plaintiffs' counsel as listed below:

Susan L. Dolin, Esquire
Adam S. Chotiner, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the 8th day of June, 2001.

Michael T. Burke

cc Magistrate Judge Johnson

RECEIVED 3|28|01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6145-CIV-DIMITROULEAS

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Magistrate Judge Johnson

Plaintiff,

vs.

FILED by ___ D.C.
MAR 26 2001
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

BANKAMERICA CORPORATION, d/b/a BANK OF AMERICA, f/k/a NATIONSBANK,

Defendant.

______________________________/

**OMNIBUS ORDER**

THIS CAUSE is before the Court upon Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111], Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118], Defendant's Motion for Summary Judgment [DE 120], Defendant's Motion for Sanctions [DE 130], Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148], the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183], Defendant's Appeal [DE 184] of Order of Magistrate Judge, and the parties' joint consent to magistrate judge jurisdiction. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

At the outset, the Court notes that the parties jointly executed a Consent to Exercise of Jurisdiction by a United States Magistrate Judge on February 2, 2001. This Court did not enter an order of reference, however, until today, in order to resolve the pending motions prior to referral to the magistrate judge. Because of this Court's experience in handling similar motions for notification to potential class members (see below), the Court concluded that judicial

economy would best be served by the undersigned first resolving the motions, and then transferring the case to the magistrate judge.

I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker II, III or IV for defendant Bank of America (formerly known as Nationsbank). Plaintiff Escudero alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Plaintiff further alleges that Bank of America supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Bank of America's record-keeping obligation under the FLSA. Bank of America denies the allegations and further asserts that it has a policy in place for Consumer Bankers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

The docket for this case reflects that approximately 110 persons with the position of Consumer Banker II, III or IV have opted in to this lawsuit at one time or another.[1] In reviewing the record as of today, it appears that approximately 20 persons have withdrawn their consents,

---

[1] There were 100 persons who had filed consent forms at the time of Plaintiff's motion for notification. See Exhibit A to Plaintiff's Motion to Allow Notification to Potential Class Members [DE 111]. At the time of Defendant's response, there were 109.

and 40 persons are subject to Defendant's Motion for Summary Judgment because they were not employed as a Consumer Banker II, III or IV after December 17, 1997, the time period at issue in this lawsuit.[2] Upon a review of the remaining 55 persons[3] who have opt-ed in to this lawsuit, only 20 worked in Florida. Of those twenty, only four (4) worked in Broward County, and only two (2) may have worked at the same branch as the two name plaintiffs.[4]

II. DISCUSSION

**A. Motion for Notification**

Plaintiff seeks an order of this court allowing nationwide notification of potential class members under Section 216(b) of the FLSA. It is settled in the Eleventh Circuit that a district court has the authority under the FLSA to issue an order requiring notice to similarly situated persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991) (noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential

---

[2] Plaintiffs filed a Non-Opposition to Defendant's Motion for Summary Judgment [DE 178] after several interim responses directed to individual plaintiffs.

[3] There was some overlap among the withdrawn consents and those subject to summary judgment. This figure does not include name plaintiffs Roxanna Escudero and Kimberly Drake.

[4] Named Plaintiffs Roxanna Escudero and Kimberly Drake list an address in Sunrise, Florida as either their residence or their work address. No other opt-in Plaintiff is listed either by themselves on their consent forms or in Plaintiffs' motions as working in Sunrise, a city in western Broward County. One opt-in Plaintiff, Mary Ann O'Connor [DE 180] lists Plantation, Florida, a neighboring city to Sunrise, while another, Theresa Sutton Rubinfield lists Miramar, Florida, a city within commuting distance to Sunrise. Two additional opt-in Plaintiffs, Danielle Magan and Marilyn Barnes, either live on the east side of Broward County (Magan, see DE 109) or worked in a branch on the east side of Broward County (Barnes, See Exhibit A to Plaintiff's Motion to Allow Notification).

members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such power, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Id. at 1568.

As the parties are aware, the Court has had the opportunity to issue rulings in similar cases involving bank tellers (Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS), In-store Bankers (Perlman, et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), Consumer Bankers I (Mintz v. Nationsbank, 98-8632-CIV-DIMITROULEAS) and Consumer Bankers II, III, and IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS).[5] In Perlman and Levine, Bank of America (or its predecessors) had a clear policy of exempting all In-Store Bankers and Consumer Bankers II, III and IV from overtime pay, respectively. Thus, in those two cases the Court concluded under Dybach that those individuals were similarly situated. In Aldred and Mintz, the Court concluded that Plaintiffs had not met their burden of showing similarly-situated employees, as Bank of America did not exempt such employees from overtime, but rather left overtime decisions to individual branch mangers.

---

[5] The Levine case involved Consumer Bankers II, III, and IV who were allegedly wrongly classified as exempt from the overtime provisions of the FLSA, in comparison to the instant case in which the time period of alleged FLSA violations begins after Consumer Bankers II, III, and IV were classified as non-exempt on December 17, 1997.

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers II, III and IV in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers, making this case similar to Aldred and Mintz. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. Defendant argues that there was no such policy of discouragement, and whether an individual Consumer Banker received overtime depending on working conditions at each branch.

The record as described above shows only four (4) opt-in plaintiffs from Broward County, and no evidence that any of the opt-in plaintiffs worked in the same branch as Escudero or Drake. Moreover, Plaintiffs have had more than enough opportunity to meet this opt-in burden, as this case was filed in January, 2000. Therefore, Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case.

As to the second step of Dybach, Defendant argues that Plaintiffs have not shown that Consumer Banker II, III, and IV employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions. Individual

differences will certainly exist as to the hours, duration and location worked by individual plaintiffs. The Court also concludes that the affidavits and deposition transcripts provided by Plaintiffs are not sufficient to satisfy this Court that there are other employees of Bank of America who are similarly situated with respect to their job requirements and with regard to their pay provisions as the two named plaintiffs, since no person who worked at the same branch as named plaintiffs have opted in to this case. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

**B. Motion for Summary Judgment**

Defendants moved for summary judgment as to forty different opt-in plaintiffs because they were not employed as a Consumer Banker II, III or IV after December 17, 1997. All of these persons either were terminated by Defendant prior to December 17, 1997, or transferred out of these positions at issue prior to that date. After several interim responses disputed the facts as to certain individuals among the forty, Plaintiffs eventually filed a notice of non-opposition to the motion [DE 178]. Therefore, Defendant's motion is granted. Because these persons subject to this motion were not eligible for the proposed opt-in class in this case, they were not considered by this Court as similarly situated for purposes of the notification issue described above.

**C. Appeal of Discovery Order**

Defendant has appealed Magistrate Judge Johnson's January 30, 2001 Order [DE 171] granting Plaintiffs' Emergency Motion for Protective Order stopping Defendant from taking depositions of all opt-in Plaintiffs. The Order stated that such depositions were premature at this

time, but strongly implied that after written discovery is propounded to these opt-in Plaintiffs, such depositions may be allowed at a further time. Although Defendant consented to Magistrate Jurisdiction on February 2, 2001, Defendant filed this appeal.[6]

Pursuant to 28 U.S.C. § 636(b)(1)(A), Magistrate Judges may decide non-dispositive motions. Upon objection by a party, the District Court may reconsider any pretrial matter where it has been shown that the Magistrate Judge's order is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1); Massey v. United Transp. Union, 868 F. Supp. 1385, 1388 (S.D.Ga.1994) (stating that a magistrate judge's order will be set aside when clearly erroneous or contrary to law), aff'd, 65 F.3d 183 (11th Cir.1995). Accordingly, unless Magistrate Judge Johnson's determination with respect to the timing of opt-in Plaintiffs' depositions was clearly erroneous, or contrary to law, that determination shall not be disturbed.

Upon a review of the record by this Court, Judge Johnson's Order is affirmed, as it was not erroneous nor contrary to law. In addition, her order is not a final order, but merely postpones the depositions of opt-in Plaintiffs until after written discovery has been completed. Finally, as noted above, the Court is now entering an Order of Reference, in accordance with the parties' consent to magistrate jurisdiction, which in effect would moot the appeal.

III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111] is hereby

---

[6] The Court does not imply that the appeal is improper for this reason, since at the time the Court had not accepted the consent and entered an Order of Reference. However, such consent, now being approved by this Court, does moot the appeal.

**DENIED**;

2. Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118] is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment [DE 120] is hereby **GRANTED**;

4. Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148] is hereby **DENIED as moot**, given Plaintiff's Suggestion of Mootness given Hensley's withdrawal from the case;

5. Defendant's Appeal [DE 184] of Order of Magistrate Judge is hereby **DENIED**, and Magistrate Judge Johnson's Order granting a protective order to Plaintiffs is affirmed

6. Defendant's Motion for Sanctions [DE 130] and the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183] are hereby **REFERRED** to Magistrate Judge Johnson;

7. The Court will separately enter an Order of Reference of this case for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the parties' written consent;

8. The Clerk may formally transfer this case to Magistrate Judge Johnson.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26 day of March, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Chief Magistrate Judge Linnea R. Johnson (WPB)
Susan Dolin, Esq./Daniel R. Levine, Esq.
Caryl Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq./J. Mark Langdon, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________/

**AFFIDAVIT OF JUAN C. VALDEZ SR.**

STATE OF MARYLAND )
) ss:
COUNTY OF MONTGOMERY )

BEFORE ME, the undersigned authority, on this date personally appeared JUAN C. VALDEZ SR. who, after first being duly sworn deposes and says:

1. My name is Juan C. Valdez Sr. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1991, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's Flower Avenue banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, the branch manager at NationsBank's Flower

Avenue banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Cecilia Sanders, Emily Harris, and a person named "Sharda" (I cannot recall her last name). These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

JUAN C. VALDEZ SR.

SWORN TO AND SUBSCRIBED before me this 20 day of July, ~~1999~~ 2000, by JUAN C. VALDEZ SR., who is personally known to me, or who produced __________ as identification, and who did take an oath.

Notary Public
My Commission Expires.
02/02/04

Acknowledger's Name Stamped, Typed or Printed

JACQUELINE CAPUTI
Notary Public State of Maryland
[illegible] George's County
My Commission Expires Feb 2 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________________/

**AFFIDAVIT OF CARI M. FORD**

STATE OF MISSOURI )
) ss:
COUNTY OF ST. LOUIS )

BEFORE ME, the undersigned authority, on this date personally appeared CARI M. FORD who, after first being duly sworn deposes and says:

1. My name is Cari M. Ford. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1990, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's Olivette banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, the branch manager at NationsBank's Olivette banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, the branch manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked. [illegible handwritten note]

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Herman Travis, Jennifer Sharp and Deborah Pollard. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

CARI M. FORD

SWORN TO AND SUBSCRIBED before me this 12 day of July, 2000, by CARI M. FORD, who is personally known to me, or who produced ______________ as identification, and who did take an oath.

Notary Public
My Commission Expires:

Acknowledger's Name Stamped, Typed or Printed

MARIE G. BADER
Notary Public — Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: March 8, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________________/

**AFFIDAVIT OF ELIZABETH ANN MELTON**

STATE OF GEORGIA )
) ss:
COUNTY OF GLYNN )

BEFORE ME, the undersigned authority, on this date personally appeared ELIZABETH ANN MELTON who, after first being duly sworn deposes and says:

1. My name is Elizabeth Ann Melton. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1997, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3 In or about December 1997, at which time I worked at NationsBank's Brunswick banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Lorrie Ethridge, the branch manager at NationsBank's Brunswick banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Lorrie Ethridge would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Greg Hollis, Julie Wynn, and Francis Bryant. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Elizabeth Ann Melton
ELIZABETH ANN MELTON

SWORN TO AND SUBSCRIBED before me this 5th day of July, 1999, by ELIZABETH ANN MELTON, who is personally known to me, or who produced GA DL as identification, and who did take an oath.

Doretha Lynn M. Lismore
Notary Public
My Commission Expires: Notary Public, Glynn County, Geo My Commission Expires June 3, 2
DoRetha Lynn M. Lismore
Acknowledger's Name Stamped, Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________/

**AFFIDAVIT OF VIRGINIA FRANCOIS**

STATE OF TEXAS )
) ss:
COUNTY OF FORT BEND )

BEFORE ME, the undersigned authority, on this date personally appeared VIRGINIA FRANCOIS who, after first being duly sworn deposes and says:

1. My name is Virginia Francois. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1990, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's Westheimer banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, ~~Barbara Baye,~~ the branch manager at NationsBank's Westheimer banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, ~~Barbara Baye~~ Manager would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Elaina Sanchez. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Virginia Francois
VIRGINIA FRANCOIS

SWORN TO AND SUBSCRIBED before me this 3 day of June, ~~1999~~ 2000, by VIRGINIA FRANCOIS, who is personally known to me, or who produced D.L. (Known) as identification, and who did take an oath.

Notary Public
My Commission Expires:

Marisela E. Rodriguez
Acknowledger's Name Stamped, Typed or Printed

MARISELA E. RODRIGUEZ
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 7-9-2003

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.

______________________________________/

**AFFIDAVIT OF MARILYN BLACKMON**

STATE OF MISSOURI )
) ss:
COUNTY OF JACKSON )

BEFORE ME, the undersigned authority, on this date personally appeared MARILYN BLACKMON who, after first being duly sworn deposes and says:

1. My name is Marilyn Blackmon. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1993, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker IV.

3. In or about December 1997, at which time I worked at NationsBank's 63 Street banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Patti Peterson, the branch manager at NationsBank's 63 Street banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Patti Peterson would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Lisa Bradley and Debbie Overton. These individuals worked hours in excess of forty (40) in given workweeks for which they did not receive appropriate compensation. I do not believe that they are aware of their legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Marilyn Blackmon

MARILYN BLACKMON

SWORN TO AND SUBSCRIBED before me this 11th day of July, ~~1999~~ 2000, by MARILYN BLACKMON, who is personally known to me, or who produced ______ as identification, and who did take an oath.

______________________
Notary Public
My Commission Expires:

HAZEL E. NUNN
Acknowledger's Name Stamped, Typed or Printed

Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Comm. Expires Mar. 16, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________/

**AFFIDAVIT OF ANGELA MOBLEY**

STATE OF GEORGIA )
) ss:
COUNTY OF FULTON )

BEFORE ME, the undersigned authority, on this date personally appeared ANGELA MOBLEY who, after first being duly sworn deposes and says:

1. My name is Angela Mobley. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1997, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker IV.

3. In or about December 1997, at which time I worked at NationsBank's Bankhead banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Tamara Lomax, the branch manager at NationsBank's Bankhead banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Tamara Lomax would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to fifty-five (55) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

ANGELA MOBLEY

SWORN TO AND SUBSCRIBED before me this 14th day of [illegible], 1999, by ANGELA MOBLEY, who is personally known to me, or who produced [illegible] as identification, and who did take an oath.

Notary Public
My Commission Expires:
Notary Public Fulton County, Georgia
My Commission Expires [illegible]
Acknowledger's Name Stamped, Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.

______________________________/

**AFFIDAVIT OF JULIA KOZEL**

STATE OF FLORIDA )
) ss:
COUNTY OF SARASOTA )

BEFORE ME, the undersigned authority, on this date personally appeared JULIA KOZEL who, after first being duly sworn deposes and says:

1. My name is Julia Kozel. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1986, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's South Venice banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Janet Jones, the ~~branch manager~~ Retail Marketing Manager at

NationsBank's ~~South Venice banking center~~ South Sarasota/Charlotte Region, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During [redacted] meetings with employees, Janet Jones would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Tracy Blitch. This individual worked hours in excess of forty (40) in given workweeks for which she did not receive appropriate compensation. I do not believe that she is aware of her legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

Julia Kozel

JULIA KOZEL

SWORN TO AND SUBSCRIBED before me this 5 day of July, ~~1999~~ 200[illegible], by JULIA KOZEL, who is personally known to me, or who produced Florida drivers license as identification, and who did take an oath.

Tammie R Rife

Notary Public

My Commission Expires:

Acknowledger's Name Stamped, Typed or Printed

TAMMIE R. RIFE
MY COMMISSION # CC 838062
EXPIRES May 18, 2003
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_____________________________________/

**AFFIDAVIT OF MARY F. BOLDEN**

STATE OF MARYLAND )
) ss:
COUNTY OF BALTIMORE )

BEFORE ME, the undersigned authority, on this date personally appeared MARY F. BOLDEN who, after first being duly sworn deposes and says:

1. My name is Mary F. Bolden. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1990, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's Randallstown banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to

fill out time cards.

4. However, since December 1997, Barbara Mullin, the branch manager at NationsBank's Randallstown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Barbara Mullin would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

MARY F. BOLDEN

SWORN TO AND SUBSCRIBED before me this ___ day of ___________, 1999, by MARY F. BOLDEN, who is personally known to me, or who produced ____________________ as identification, and who did take an oath.

Notary Public
My Commission Expires:

Acknowledger's Name Stamped,
Typed or Printed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.

_______________________________/

**AFFIDAVIT OF JOHN BARI**

STATE OF CALIFORNIA )
) ss:
COUNTY OF SANTA CLARA )

BEFORE ME, the undersigned authority, on this date personally appeared JOHN BARI who, after first being duly sworn deposes and says:

1. My name is John Bari. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1997, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker II.

3. In or about December 1997, at which time I worked at NationsBank's Yorktown banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4. However, since December 1997, Theodore Gargagliano, the branch manager at NationsBank's Yorktown banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Theodore Gargagliano would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to fifty (50) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

John Bari

JOHN BARI

SWORN TO AND SUBSCRIBED before me this 14th day of July, ~~1999~~ 2000, by JOHN BARI, ~~who is personally known to me~~, or who produced Calif. Drivers License as identification, and who did take an oath.

Marietta Sibilia

Notary Public

My Commission Expires:

June 23, 2004

Acknowledger's Name Stamped, Typed or Printed

MARIETTA SIBILIA
Commission # 1265262
Notary Public - California
Santa Clara County
My Comm. Expires Jun 23, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________/

**AFFIDAVIT OF PAUL C. BARBER**

STATE OF FLORIDA )
) ss:
COUNTY OF SARASOTA )

BEFORE ME, the undersigned authority, on this date personally appeared PAUL C. BARBER who, after first being duly sworn deposes and says:

1. My name is Paul C. Barber. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1996, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker II.

3. In or about December 1997, at which time I worked at NationsBank's Southgate banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time

cards.

4. However, since December 1997, Laura Russo, the branch manager at NationsBank's Southgate banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Laura Russo would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to forty-five (45) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

[signature]
PAUL C. BARBER

SWORN TO AND SUBSCRIBED before me this 5 day of July, ~~1999~~ 2000, by PAUL C. BARBER, who is personally known to me, or who produced Fl. Driv. Lic as identification, and who did take an oath.

[signature: Kristin K Cawthorne]
Notary Public
My Commission Expires: Jan 7, 2001

Acknowledger's Name Stamped, Typed or Printed

KRISTIN K. CAWTHORNE
MY COMMISSION # CC 891664
EXPIRES: January 7, 2001
Bonded Thru Notary Public Underwriters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
______________________________/

**AFFIDAVIT OF DIANE KIRKLAND**

STATE OF FLORIDA )
) ss:
COUNTY OF POLK )

BEFORE ME, the undersigned authority, on this date personally appeared DIANE KIRKLAND who, after first being duly sworn deposes and says:

1. My name is Diane Kirkland. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1986, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker II.

3. In or about December 1997, at which time I worked at NationsBank's South Winter haven banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Louise Horne, the branch manager at NationsBank's South Winter haven banking center, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Louise Horne would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty-five (65) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Mickey Barnett. This individual worked hours in excess of forty (40) in given workweeks for which ~~he~~ she did not receive appropriate compensation. I do not believe that ~~he~~ she is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

DIANE KIRKLAND

SWORN TO AND SUBSCRIBED before me this 7 day of July, ~~1999~~ 2000, by DIANE KIRKLAND, who is personally known to me, or who produced __________ as identification, and who did take an oath.

Notary Public
My Commission Expires: 09/29/00

Acknowledger's Name Stamped, Typed or Printed

Dale C. Feliz
Notary Public, State of Florida
Commission No. CC 589229
My Commission Exp. 09/29/2000
1-800-3-NOTARY - Fla. Notary Service & Bonding Co.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
_______________________________/

**AFFIDAVIT OF JEFF MOTLEY**

STATE OF TEXAS )
) ss:
COUNTY OF COLLIN )

BEFORE ME, the undersigned authority, on this date personally appeared JEFF MOTLEY who, after first being duly sworn deposes and says:

1. My name is Jeff Motley. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1996, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker III.

3. In or about December 1997, at which time I worked at NationsBank's Plano banking center, NationsBank reclassified my position as non-exempt, which allowed me to be eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Shirley Stanley, a NationsBank sales manager, acting from instructions from the North Dallas Administration, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Shirley Stanley would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from fifty (50) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

7. I believe that there are other consumer bankers who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit. Although I cannot remember all of their names, I do recall Terrell Walker. This individual worked hours in excess of forty (40) in given workweeks for which he did not receive appropriate compensation. I do not believe that he is aware of his legal right to recover damages; I certainly was not until I consulted an attorney regarding unpaid overtime.

FURTHER AFFIANT SAYETH NAUGHT.

[signature]
JEFF MOTLEY

SWORN TO AND SUBSCRIBED before me this 17 day of July, ~~1999~~ 2000, by JEFF MOTLEY, who is personally known to me, or who produced Texas Driver L. as identification, and who did take an oath.

[signature]
Notary Public
My Commission Expires:
11/02/03
Acknowledger's Name Stamped, Typed or Printed

NOTARY PUBLIC STATE OF TEXAS
JONATHAN A. DAMON
Notary Public
State of Texas
My Comm Exp 11-02-03

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated of herself and all others

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendants.
______________________________/

**AFFIDAVIT OF OLGA VALDES**

STATE OF FLORIDA )
) ss:
COUNTY OF MIAMI-DADE )

BEFORE ME, the undersigned authority, on this date personally appeared OLGA VALDES who, after first being duly sworn deposes and says:

1. My name is Olga Valdes. I have personal knowledge of the facts recited in this Affidavit.

2. In or about 1993, I was employed by NationsBank. I was employed by NationsBank as a Consumer Banker II.

3. In or about December 1997, at which time I worked at NationsBank's Brickell banking center, NationsBank reclassified my position as non-exempt, which allowed me to be

eligible for overtime compensation. As of this date, I was also required to fill out time cards.

4. However, since December 1997, Donna Marie Kirlew, the regional manager for consumer bankers, indicated to myself and the other employees that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records. As a result of these instructions, I would only indicate forty (40) hours on my timecard each week even though I worked more than forty (40) hours.

5. During branch meetings with employees, Donna Marie Kirlew would reiterate that NationsBank would not pay for overtime work, regardless of whether it was worked, and that we were not to record overtime hours worked on our time records.

6. Since December 1997, when NationsBank reclassified my position, I worked anywhere from forty (40) to sixty (60) hours per week. However, NationsBank only paid me for forty (40) hours regardless of the number of hours worked.

FURTHER AFFIANT SAYETH NAUGHT.

Olga Valdes

OLGA VALDES

SWORN TO AND SUBSCRIBED before me this 28 day of July, ~~1999~~ 2000, by OLGA VALDES, who is personally known to me, or who produced personally known as identification, and who did take an oath.

Ana Diaz

Notary Public
My Commission Expires:

Ana Diaz
Commission # CC 876830
Expires Oct. 5, 2003
Bonded Thru

Acknowledger's Name Stamped, Typed or Printed

***ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION***
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Albritton, Tina | | Florida | Midtown |
| Andrews, Kathy Foster | | Georgia | Lilburn Instore |
| Armstrong, Annette | | Georgia | East Albany |
| Banks, Patrick | | Texas | DeSoto |
| Barber, Paul | Sarasota | Florida | Southgate |
| Bari, John | Falls Church | Virginia | Yorktown |
| Barnes, Marilyn | | Florida | Downtown, Galleria |
| Barnett, Michelle | | Florida | Garden Grove |
| Barnette, Carrie | | South Carolina | Rockhill Mall |
| Batts, Eloise | Surf City, Holly Ridge | North Carolina | Surf City, Holly Ridge |
| Beach, Lisa | | Texas | |
| Biggs, Peggy | | Texas | Conroe |
| Blackmon, Marilyn | | Missouri | 63rd Street, 85 Holmes |
| Blitch, Tracie | | Florida | South Venice |
| Bolden, Mary | | Maryland | Randallstown |
| Buchanan, Margaret | Austin | Texas | Northwest, Showal Creek, Bevo's, Longhorn |
| Calvillo, Henry | Austin | Texas | Northwest Austin |
| Carlos Del Valle, Juan | Coral Gables | Florida | Coral Gables |

*ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION*
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Cole, Janice | | Maryland | Beltway Plaza, Belair-Bowie |
| Coleman, Chris | | Georgia | Roswell Instore |
| Copeland, James | | Georgia | Midtown |
| Cordell-Proper, Andrea | | Michigan | Baltimore Main Branch |
| Cox, Lydia | Columbia | South Carolina | Richland Mall |
| Crowder, Bryan | Des Moines Urbandale | Iowa | South Office Aurora Avenue |
| Czwojdak (Alsafi), Suzanne | Atlanta Ft. Myers | Georgia Florida | Perimeter Cypress Lake |
| Dantos, Stephanie | | Florida | Palm Beach Lakes Blvd. |
| Davis-Dunn, Candice | | Texas | Highland Village |
| Dickerson, Donna | | Maryland | Camp Springs |
| Dismukes, Dianne | | Texas | Tenneco, Red Oak, Hinble |
| DuPont, Laurie | | Florida | Venetian Isles Plaza |
| Elias, Debra | | Texas | Galveston - Downtown |
| Estrada, Rosemarie | | Texas | Galveston |
| Fleming, Barbara | Franklin | Tennessee | Public Square |
| Ford, Cari | | Missouri | Clayton, Olivette |
| Francois, Virginia | | Texas | Westheimer, Stafford |

***ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION***
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Fyffe, Sherry | | Maryland | Northwood, Charles St. |
| German, Nancy | | Florida | Baymeadows |
| Grant, Linda | Rock Hill | South Carolina | Rock Hill Mall, Rock Hill Main |
| Greene, Karen | | Virginia | Lake Ridge |
| Guerin-Davidson, M. Christine | | Maryland | Loch Raven, Lutherville, Security, Slade Avenue |
| Hardy, Joyce | Haines City | Florida | Haines City |
| Harris, Alex | | Florida | Capital |
| Hensley, Rodney | | Alabama | Harris Teeter Instore |
| Heuser, Marcia | | Florida | Bayshore |
| Hill, Todd | | Florida | McNab, University |
| Hill, Leslie Slater | Austin | Texas | South Park |
| Howard, Mary | | Texas | South Austin - Bevo's |
| Justice, Deana | Jacksonville | North Carolina | New River, Northwoods, Country Club, Brynn Marr |
| Kennedy, Katherine | Tamarac<br>Coral Springs | Florida | Tamarac<br>Wiles Road |
| Kirkland, Diane | | Florida | South Winter |
| Kozel, Julia | | Florida | South Venice |
| Langley, Elizabeth | | Maryland | La Plata |
| Lee, Philip | Baltimore | Maryland | 100 East Street |
| Lee, Peggy | | Florida | #207, #1544 |

***ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION***
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Louderback, Wendy | | Florida | Sunrise Lakes & Shenandoah |
| Martinez, Kathleen | | Maryland | Annapolis Road, Riverdale, Hanover Parkway, Cip Square |
| McKinley, June | | Florida | Gulf-to-Bay, Countryside, Delaney, University, Titusville |
| Meier, Janet | | Texas | Marsh Lane |
| Melton, Elizabeth Ann | Brunswick | Georgia | Main Branch (Brunswick) |
| Mobley, Angela | | Georgia | Bankhead |
| Monroe, Anastasia | | Florida | Southgate |
| Moreno, Lillian a.k.a Lillian Vaccato | | Florida | Pembroke Commons (formerly Citizens Federal) |
| Motley, Jeff | Plano | Texas | Plano |
| Murray, Patricia | | Georgia | Hartley Bridge Road Instore |
| Northcutt, Joe | | Texas | Southwest |
| Osavio, Miriam a.k.a. Miriam Penick | | Georgia | Market Square & Dekalb College |
| Parial, Anita | Lake Worth Boca Raton | Florida | Winn-Dixie Instore Boca Hamptons |
| Parker, Guilbert | | Maryland | Middlesex |

***ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION***
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Parks, Nettie | | Florida | Longwood, Lake Mary |
| Pehl, Dayton | Austin | Texas | Austin |
| Perlmutter, David | | Florida | Gulfview Square Mall Hudson |
| Powell, Irma | Lawrenceville | Virginia | Lawrenceville |
| Pumphrey, Jennie | | Pennsylvania | Benfield Road, Hillsmere, Oakland Church |
| Pye-Lee, Deborah | | Texas | Two Houston Center |
| Queen, Antoinette | | Maryland | Georgia Avenue |
| Ratcliff, Traci | | Florida | Jacksonville & Lake City |
| Reynolds, Susie | | Georgia | East Albany |
| Richardson, Steven | | Texas | Friendswood Instore |
| Rogers, Melanie | Lake City | Florida | Lake City |
| Rubenstein, Lily | | Florida | Northeast |
| Sierra, Joseph | Rio Rancho | New Mexico | Country Club |
| Silverman, Riitta | | Virginia | Old Town Alexandra |
| Skinner, Joann | | Georgia | Peach Orchard |
| Smith, Adelia | | Washington DC | 2001 Penn. Ave, Georgia Ave. |
| Smith, William | Naples | Florida | 5th Ave |
| Stewart, Fabiola | | Texas | Carrolltown |
| Strozier, Stephanie | Atlanta | Georgia | Kroger Citi-Center |

***ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, v. BANKAMERICA CORPORATION***
**Case No. 00-6145-CIV-DIMITROULEAS**

**LIST OF INDIVIDUALS WHO HAVE FILED CONSENT FORMS**

| NAME | CITY | STATE | BANKING CENTER |
|---|---|---|---|
| Taylor, Jeffrey | | Tennessee | Hermitage, Donelson, Opryland |
| Thomas, Sheri | Charlotte | North Carolina | South Park |
| Valdes, Olga | | Florida | Downtown |
| Valdez, Sr., Juan | | Maryland | Flower Avenue |
| Valdez, Ron | | Florida | DeSoto Square, Westside |
| Waddington, Julia | | Maryland | Hillsmere |
| Washington, Samuel | | Virginia | University, Orange |
| Wells, Barbara | | Maryland | Cross Keys, Roland Ave., Merritt Blvd. |
| Willis, Harold | | Maryland | Vermont Ave., 1801 K Street & Cleveland Park |
| Wilson, Angela | | North Carolina | South Park |
| Wood, Patricia | | Georgia | Stone Mountain, Conyers, Five Forks |
| Woroschinski, Karen | | Florida | Shamrock |
| Yancy, Evans | | Georgia | West Fork |
| | | | |
| | | | |
| | | | |
| | | | |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendant.

**AFFIDAVIT OF JOYCE BUTLER**

Joyce Butler, being first duly sworn, deposes and says as follows:

1. I am currently employed by the Defendant in the above-captioned action (the "Bank") as Loan Processor for the Montgomery/Frederick, Maryland Region. Prior to my promotion to this position in August of this year, I served as Vice President and Personnel Manager for the Bank. I am authorized by the Bank to make this Affidavit on its behalf.

2. I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records.

3. The Bank has employed Juan C. Valdez, Sr. as a Consumer Banker III/Senior Personal Banker since February 1, 1994. Mr. Valdez's current title is "Senior Personal Banker", as all Consumer Banker III and IV positions were so renamed by the Bank on September 1, 2000. The Bank reclassified Mr. Valdez's Consumer Banker III/Senior Personal Banker position

as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Valdez reported 19.75 hours of overtime on the time records he submitted to the Bank in 1998. Mr. Valdez reported 17.5 hours of overtime on the time records he submitted to the Bank in 1999, and between January 1 and August 31, 2000. The Bank's payroll register also indicates that the Bank paid Mr. Valdez overtime pay totaling $372.79 during 1998 and $336.96 during 1999 and 2000.

    4.    The Bank employed Cari M. Ford as a Consumer Banker III from January 1, 1997 through January 31, 2000. The Bank reclassified Ms. Ford's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Ford reported 377.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Ford reported 232.5 hours of overtime on the time records she submitted to the Bank in 1999, through January 1 and January 31, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Ford overtime pay totaling $9,224.98 during 1998 and $5,434.78 during 1999 and 2000.

    5.    The Bank employed John Bari as a Consumer Banker II from November 3, 1997 through June 22, 1998. The Bank reclassified Mr. Bari's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Bari reported 52.50 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Bari a total of $814.91 in overtime pay during 1998.

    6.    The Bank employed Virginia Francois as a Consumer Banker III from September 1, 1996 through October 12, 1999. The Bank reclassified Ms. Francois' Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my

review of the Bank's payroll register, Ms. Francois reported 99.75 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Francois reported 20 hours of overtime on the time records she submitted to the Bank in 1999. The Bank's payroll register also indicates that the Bank paid Ms. Francois overtime pay totaling $2,078.17 during 1998 and $408.24 during 1999 and 2000.

7. The Bank employed Mary F. Bolden as a Consumer Banker III from July 1, 1996 through April 18, 2000. The Bank reclassified Ms. Bolden's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Bolden reported 7.25 hours of overtime on the time records she submitted to the Bank in 1998. Ms. Bolden reported 36.7 hours of overtime on the time records she submitted to the Bank in 1999, and January 1 through April 18, 2000. The Bank's payroll register also indicates that the Bank paid Ms. Bolden overtime pay totaling $143.58 during 1998 and $768.98 during 1999 and 2000.

8. The Bank employed Paul Barber as a Consumer Banker II from December 1, 1996 through April 23, 1998. The Bank reclassified Mr. Barber's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Barber reported 21.25 hours of overtime on the time records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Barber a total of $331.64 in overtime pay during 1998.

9. The Bank employed Elizabeth Ann Melton as a Consumer Banker II from December 16, 1997 through January 12, 1999. Ms. Melton requested a leave of absence beginning September 10, 1998, which leave of absence was extended through her termination date of January 12, 1999. The Bank reclassified Ms. Melton's Consumer Banker II position as

non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Melton reported 155.75 hours of overtime on the time records she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Melton a total of $2,483.13 in overtime pay during 1998.

10. The Bank employed Diane Kirkland as a Consumer Banker II from December 16, 1993 through March 13, 1998. The Bank reclassified Ms. Kirkland's Consumer Banker II position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kirkland reported 11.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kirkland a total of $170.20 in overtime pay during 1998.

11. The Bank employed Angela Mobley as a Consumer Banker III from June 30, 1997 through February 25, 1998. The Bank reclassified Ms. Mobley's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Mobley reported 49.50 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Mobley a total of $990.99 in overtime pay during 1998.

12. The Bank employed Julia Kozel as a Consumer Banker III from December 1, 1995 through August 31, 1998. The Bank reclassified Ms. Kozel's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Kozel reported 41 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Kozel a total of $979.17 in overtime pay during 1998.

13.     The Bank employed Marilyn Blackmon as a Consumer Banker IV from March 1, 1997 through March 15, 1998. The Bank reclassified Ms. Blackmon's Consumer Banker IV position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Ms. Blackmon reported 66.75 hours of overtime on the time records that she submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Ms. Blackmon a total of $1,457.79 in overtime pay during 1998.

14.     The Bank's personnel records indicate that Olga Valdes was only employed as a Consumer Banker II from September 15, 1995 through April 30, 1996. After that date, Ms. Valdes was employed as a Relationship Associate in the Consumer International Banking Group until the end of her employment tenure with the Bank on September 11, 1998.

Further this affiant sayeth not.

Joyce Butler

STATE OF Virginia

COUNTY OF Fairfax

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me, Carol Kobustren, a Notary Public for the above-referenced jurisdiction, on September 15th, 2000 by JOYCE BUTLER.

Notary Public

(Official Seal)

My Commission Expires: April 30, 2002

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS/Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendant.

**SUPPLEMENTAL AFFIDAVIT OF JOYCE BUTLER**

Joyce Butler, being first duly sworn, deposes and says as follows:

1. I am currently employed by the Defendant in the above-captioned action (the "Bank") as Loan Processor for the Montgomery/Frederick, Maryland Region. Prior to my promotion to this position in August of this year, I served as Vice President and Personnel Manager for the Bank. I am authorized by the Bank to make this Affidavit on its behalf.

2. I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records.

3. The Bank employed Jeff Motley as a Consumer Banker III from February 16, 1997 through February 4, 1999. The Bank reclassified Mr. Motley's Consumer Banker III position as non-exempt for overtime pay purposes on December 17, 1997. Based upon my review of the Bank's payroll register, Mr. Motley reported 19.50 hours of overtime on the time

records he submitted to the Bank in 1998. The Bank's payroll register also indicates that the Bank paid Mr. Motley a total of $365.62 in overtime pay during 1998.

Further this affiant sayeth not.

Joyce Butler

STATE OF MARYLAND

COUNTY OF Montgomery

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me, JOHN D. SINDALL, a Notary Public for the above-referenced jurisdiction, on October 16, 2000 by JOYCE BUTLER.

Notary Public

(Official Seal)

My Commission Expires: 8-1-02

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendant.

**AFFIDAVIT OF DEBRA ROBINSON**

Debra Robinson, being first duly sworn, deposes and says as follows:

1. I am currently employed by Bank of America (the "Bank") as an Analyst II-Business Analysis, and am authorized by the Bank to make this Affidavit on its behalf.

2. As an Analyst II-Business Analysis for the Bank, I have authority to access personnel and payroll records and computer databases maintained by the Bank. I make this Affidavit based upon my personal knowledge and my review of the Bank's personnel and payroll records and computer databases, to which I have access in order to accomplish my daily job duties and responsibilities.

3. I understand from reviewing plaintiffs' Complaint in this action that the relevant time period for this lawsuit begins when Consumer Banker IIs, IIIs and IVs were re-classified as non-exempt employees.

4. My understanding is that the Bank re-classified Consumer Banker IIs, IIIs, and IVs as non-exempt on December 17, 1997.

5. Attached to my affidavit as Exhibit 1 is a chart listing the current and former Bank employees who I understand have joined as plaintiffs in the above-referenced lawsuit against the Bank pending in South Florida. My understanding from reviewing plaintiffs' Complaint is that the plaintiffs in this lawsuit contend that, while they worked as non-exempt Consumer Banker IIs, IIIs and IVs, the Bank failed to pay them overtime pay to which the plaintiffs believe they were entitled.

6. To date, I have collected and reviewed payroll and work history information from 1995, 1996, 1998 and 1999 contained in the Bank's files, business records and computer databases for 106 of the 109 plaintiffs listed on Exhibit 1. The data contained in Exhibit 1 accurately summarizes the information I found in the Bank's personnel, payroll and work history files, records and computer databases regarding these plaintiffs.

7. Exhibit 1 includes the plaintiff's name, the period of time, if any, during which the plaintiff worked as a Consumer Banker II, III or IV, the plaintiff's termination date (if a former employee), the plaintiff's employment status (full or part-time), the number of overtime hours recorded for each plaintiff in 1998 and 1999, and the amount of overtime pay the Bank paid each plaintiff in 1998 and 1999.

8. The entries on Exhibit 1 highlighted in yellow indicate plaintiffs who terminated their employment with the Bank before December 17, 1997.

9. The entries on Exhibit 1 highlighted in red indicate plaintiffs who transferred out of their Consumer Banker II, III or IV positions with the Bank prior to December 17, 1997.

Further this affiant sayeth not.

Debra Robinson

STATE OF Virginia

COUNTY OF Norfolk

To Wit:

The foregoing Affidavit was personally subscribed and sworn to before me,

Everett F Barnes, a Notary Public for the above-referenced jurisdiction, on October 13, 2000 by Debra Robinson.

Notary Public

(Official Seal)

My Commission Expires: 9/30/2003

Escudero v. et al. v. Bank of America
Opt-in Plaintiffs' 1998-1999 Payroll Information

| Name | Job In Date as a CB II, III and/or IV | Job Out Date as a CB II, III and/or IV | Termination Date | FT/PT Status | 1998 YTD Overtime Earnings | 1998 YTD Overtime Hours | 1999 YTD Overtime Earnings | 1999 YTD Overtime Hours |
|---|---|---|---|---|---|---|---|---|
| PYE-LEE, DEBORAH A. | | | 10/24/95 | | N/E | N/E | | |
| BIGGS, PEGGY J | | | 11/02/95 | PT | N/E | N/E | | |
| GERMAN, NANCY E. | | | 01/03/96 | | N/E | N/E | | |
| WALKER, CAROLYN S | | | 02/29/96 | PT | N/E | N/E | | |
| GEURIN-DAVIDSON, M. CHRISTINE | | | 03/29/96 | | N/E | N/E | | |
| SAVAGE, SALLIE M | | | 06/30/96 | PT | N/E | N/E | | |
| BEACH, LISA | 01/01/95 | 10/01/96 | 10/01/96 | FT | N/E | N/E | | |
| STUCHBERY-MARTINEZ, KATHLEEN | 01/16/95 | 10/04/96 | 10/04/96 | FT | N/E | N/E | | |
| VACCATO, LILLIAN MORENO | 07/01/96 | 10/12/96 | 10/12/96 | FT | N/E | N/E | | |
| LOUDERBACK, WENDY | 02/01/94 | 12/04/96 | 12/04/96 | FT | N/E | N/E | | |
| ALEXANDER, ANITA (PARIAL) | 09/09/96 | 12/31/96 | 01/28/97 | FT | N/E | N/E | | |
| COPELAND, JAMES CARL | 01/01/97 | 01/31/97 | 01/31/97 | FT | N/E | N/E | | |
| OSAVIO, MIRIAM | 07/22/94 | 02/14/97 | 02/14/97 | FT | N/E | N/E | | |
| ALBRITTON, TINA R | 02/01/94 | 03/13/97 | 03/13/97 | FT | N/E | N/E | | |
| QUEEN, ANTOINETTE | 04/30/95 | 03/18/97 | 03/18/97 | FT | N/E | N/E | | |
| KENNEDY, KATHERINE B | 12/01/93 | 03/28/97 | 03/28/97 | FT | N/E | N/E | | |
| COLE, JANICE M | 09/01/94 | 03/31/97 | 03/31/97 | FT | N/E | N/E | | |
| POWELL, IRMA W | 11/01/93 | 03/31/97 | 03/31/97 | FT | N/E | N/E | | |
| COLEMAN, CHRISTOPHER | 08/31/96 | 06/11/97 | 06/11/97 | FT | N/E | N/E | | |
| SILVERMAN, RIITTA | 11/04/93 | 06/30/97 | 06/30/97 | FT | N/E | N/E | | |
| HEUSER, MARCIA | N/E | N/E | 06/30/97 | FT | N/E | N/E | | |
| PUMPHREY, JENNIE C | 03/16/94 | 07/31/97 | 07/31/97 | FT | N/E | N/E | | |
| RUBENSTEIN, LILY | 09/01/94 | 08/10/97 | 08/10/97 | FT | N/E | N/E | | |
| NORTHCUTT, JOE J | 05/19/97 | 08/21/97 | 08/21/97 | FT | N/E | N/E | | |
| COX, LYNDIA M | 02/01/95 | 08/29/97 | 08/29/97 | FT | N/E | N/E | | |
| CORDELL, ANDREA M | 03/24/97 | 10/01/97 | 10/01/97 | FT | N/E | N/E | | |
| RATCLIFF, TRACI B | 04/11/97 | 10/15/97 | 10/15/97 | FT | N/E | N/E | | |
| STROZIER, STEPHANIE M | 07/10/97 | 11/10/97 | 11/10/97 | FT | N/E | N/E | | |
| HILL, TODD | 06/01/97 | 11/14/97 | 11/14/97 | FT | N/E | N/E | | |
| DISMUKES, DIANNE D | 11/16/93 | 12/31/97 | 12/31/97 | FT | N/E | N/E | | |
| PARKER, GUILBERT M | 01/21/97 | 02/11/98 | 02/11/98 | FT | 480.75 | 11.00 | | |
| BLITCH, TRACIE R | 08/15/94 | 02/13/98 | 02/13/98 | FT | 136.30 | 7.00 | | |
| MOBLEY, ANGELA A | 06/30/97 | 02/25/98 | 02/25/98 | FT | 990.99 | 45.25 | | |
| DICKERSON, DONNA H | 11/04/93 | 02/28/98 | 02/28/98 | FT | 0.00 | 0.00 | | |
| KIRKLAND, DIANE M | 12/16/93 | 03/13/98 | 03/13/98 | FT | 280.23 | 11.50 | | |
| THOMAS, SHERI L. | 06/01/96 | 03/24/98 | 03/24/98 | FT | 0.00 | 0.00 | | |
| MURRAY, PATRICIA B | 10/10/96 | 03/31/98 | 03/31/98 | FT | 1,438.51 | 97.50 | | |

v-06145-LRJ Document 232 Entered on FLSD Docket 06/11/2001 Pa

Escudero v. et al. v. Bank of America
Opt-in Plaintiffs' 1998-1999 Payroll Information

| Name | Job In Date as a CB II, III and/or IV | Job Out Date as a CB II, III and/or IV | Termination Date | FT/PT Status | 1998 YTD Overtime Earnings | 1998 YTD Overtime Hours | 1999 YTD Overtime Earnings | 1999 YTD Overtime Hours |
|---|---|---|---|---|---|---|---|---|
| CROWDER, BRYAN | 03/01/97 | 03/31/98 | 03/31/98 | FT | 654.16 | 26.25 | | |
| BARBER, PAUL | 12/01/96 | 04/23/98 | 04/23/98 | FT | 331.64 | 21.25 | | |
| DUNN-DAVIS, CANDICE | 07/01/96 | 04/24/98 | 04/24/98 | FT | 2,385.78 | 133.00 | | |
| ANDREWS, KATHY FOSTER | 06/28/96 | 05/01/98 | 05/01/98 | PT | 229.99 | 13.25 | | |
| ADAMS, ELKE G | 06/28/96 | 05/01/98 | 05/01/98 | FT | 328.10 | 16.50 | | |
| WOOD, PATRICIA J | 02/20/97 | 05/01/98 | 05/01/98 | FT | 693.39 | 42.75 | | |
| DANTOS, STEPHANIE | 11/25/96 | 05/08/98 | 05/08/98 | FT | 1,542.43 | 74.25 | | |
| HARRIS, ALEX L | 08/11/97 | 05/15/98 | 05/15/98 | FT | 156.30 | 12.75 | | |
| SIERRA, JOSEPH A | 04/16/97 | 05/19/98 | 05/19/98 | FT | 426.11 | 22.25 | | |
| LEE, PHILLIP M | 09/29/97 | 06/18/98 | 06/18/98 | FT | 352.30 | 12.75 | | |
| AGUILAR-DEMARCO, TEMPY | 04/01/94 | 06/19/98 | 06/19/98 | FT | 1,377.43 | 70.25 | | |
| BARI, JOHN R | 11/03/97 | 06/22/98 | 06/22/98 | FT | 814.91 | 52.50 | | |
| YANCY, EVANS R | 09/23/96 | 07/05/98 | 07/05/98 | FT | 267.91 | 13.25 | | |
| FLEMING, BARBARA J | 06/01/93 | 07/10/98 | 07/10/98 | FT | 1,047.37 | 35.50 | | |
| JUSTICE, DEANA B. | 11/06/97 | 08/07/98 | 08/07/98 | FT | 439.12 | 26.00 | | |
| KOZEL, JULIA | 12/01/93 | 08/31/98 | 08/31/98 | FT | 979.17 | 41.00 | | |
| LANGLEY, ELIZABETH A | 11/10/97 | 09/26/98 | 09/26/98 | FT | 250.96 | 14.50 | | |
| RICHARDSON, STEVEN K | 09/29/97 | 10/28/98 | 10/28/98 | FT | 1,379.39 | 73.25 | | |
| WASHINGTON, SAMUEL D | 06/30/97 | 10/30/98 | 10/30/98 | FT | 1,072.38 | 46.00 | | |
| SMITH, WILLIAM D | 09/30/96 | 05/31/98 | 10/31/98 | FT | 2,054.89 | 114.00 | | |
| MELTON, ELIZABABETH ANN | 12/16/97 | 01/12/99 | 01/12/99 | FT | 2,483.13 | 155.75 | 0.00 | 0.00 |
| TAYLOR, JEFFREY S | 06/01/93 | 01/15/99 | 01/15/99 | FT | 3,333.31 | 126.75 | 0.00 | 0.00 |
| BLACKMON, MARILYN D | 03/01/97 | 03/15/98 | 01/22/99 | FT | 1,457.79 | 66.75 | | |
| WILSON, ANGELA | 11/11/96 | 01/29/99 | 01/29/99 | FT | 3,680.16 | 207.00 | 142.79 | 8.25 |
| MOTLEY, JEFF F | 02/16/97 | 02/03/99 | 02/03/99 | FT | 365.62 | 19.50 | 0.00 | 0.00 |
| AGNEW, DEBORAH J | 11/16/92 | 06/17/99 | 06/17/99 | FT | 7,093.02 | 233.75 | 567.90 | 18.50 |
| BARNES, MARILYN G | 11/01/93 | 06/28/99 | 06/28/99 | FT | 1,823.08 | 105.00 | 935.30 | 58.75 |
| PARKS, NETTIE | 11/30/93 | 07/19/99 | 07/19/99 | FT | 1,832.94 | 103.00 | 36.09 | 0.50 |
| FRANCOIS, VIRGINIA M | 09/01/94 | 12/15/98 | 10/12/99 | FT | 2,078.17 | 99.75 | | |
| HOWARD, MARY | 12/16/92 | 10/30/99 | 10/30/99 | FT | 2,434.75 | 112.75 | 1473.61 | 65.25 |

Escudero v. et al. v. Bank of America
Opt-in Plaintiffs' 1998-1999 Payroll Information

| Name | Job In Date as a CB II, III and/or IV | Job Out Date as a CB II, III and/or IV | Termination Date | FT/PT Status | 1998 YTD Overtime Earnings | 1998 YTD Overtime Hours | 1999 YTD Overtime Earnings | 1999 YTD Overtime Hours |
|---|---|---|---|---|---|---|---|---|
| LEE, PEGGY H | 05/01/95 | 12/02/99 | 12/02/99 | FT | 3,835.92 | 151.00 | 1704.54 | 78.50 |
| VALDEZ, RON | 04/01/97 | 01/02/00 | 01/02/00 | FT | 1,465.12 | 91.00 | 208.75 | 12.50 |
| PERLMUTTER, DAVID | 06/04/1996 & 05/02/98 & 08/01/98 | 08/24/1997& 05/06/98 & 01/18/00 | 01/17/00 | FT | 0.00 | 0.00 | 246.51 | 9.50 |
| FORD, CARI M | 01/01/97 | 01/31/00 | 01/31/00 | FT | 9,224.98 | 377.25 | 4534.70 | 195.00 |
| ROJAS, NANCY M | 09/01/99 | 02/21/00 | 02/21/00 | FT | N/E | N/E | 338.84 | 18.50 |
| | | | | | | | | |
| PEHL, DAYTON J | 10/01/92 | 03/31/00 | 03/31/00 | FT | 18,726.84 | 583.00 | 6481.01 | 192.25 |
| ROGERS, MELANIE E | 03/31/97 | 04/04/00 | 04/04/00 | FT | 0.00 | 0.00 | 0.00 | 0.00 |
| BOLDEN, MARY F | 07/03/93 | 04/18/00 | 04/18/00 | FT | 143.58 | 7.25 | 528.73 | 25.00 |
| BUCHANAN, MARGARET | 01/01/96 | 12/31/98 | 08/31/00 | FT | 2,487.05 | 137.75 | | |
| WOROSCHINSKI, KAREN M | 01/16/96 | 02/24/98 | | FT | 430.01 | 36.00 | | |
| WELLS, BARBARA W | 12/18/93 | 08/31/00 | | FT | 622.03 | 33.00 | 0.00 | 0.00 |
| WILLIS, HAROLD | 11/04/93 | 12/15/98 | | FT | 1,985.28 | 88.50 | | |
| BARNETTE, CARRIE H | 01/01/94 | 08/31/00 | | FT | 0.00 | 0.00 | 56.80 | 3.25 |
| GRANT, LINDA H | 01/01/94 | 12/12/99 | | FT | 0.00 | 0.00 | 249.49 | 14.50 |
| REYNOLDS, SUSIE S | 09/01/93 | 08/31/00 | | FT | 3,127.43 | 188.75 | 37.11 | 2.00 |
| ARMSTRONG, ANNETTE B | 09/01/93 | 08/31/00 | | FT | 6,481.20 | 287.00 | 332.55 | 13.00 |
| HARDY, JOYCE ANN | 12/16/93 | 08/31/00 | | FT | 5,407.66 | 274.50 | 317.96 | 14.00 |
| DUPONT, LAURIE K | 12/01/93 | 08/31/00 | | FT | 7,116.29 | 323.50 | 1058.80 | 47.75 |
| | | | | | | | | |
| BARNETT, MICHELLE A | 02/01/95 | 08/31/00 | | FT | 3,414.36 | 176.50 | 1210.49 | 62.75 |
| ELIAS, DEBRA | 04/01/95 | 08/31/00 | | FT | 2,953.58 | 167.75 | 128.09 | 6.50 |
| | | | | | | | | |
| ESTRADA, MARYROSE | 04/24/92 | 08/31/00 | | FT | 8,333.86 | 299.00 | 84.76 | 2.50 |
| CALVILLO, HENRY D | 11/16/92 | 12/15/98 | | FT | 26,715.12 | 721.50 | | |
| STEWART, FABIOLA G | 12/16/96 | 08/31/00 | | FT | 2,729.77 | 117.50 | 4004.12 | 150.50 |
| MEIER, JANET E | 06/01/92 | 08/31/00 | | FT | 7,338.08 | 312.00 | 5427.47 | 219.75 |
| | | | | | | | | |
| VALDEZ, JUAN C | 02/01/94 | 08/31/00 | | FT | 372.79 | 19.75 | 327.22 | 17.00 |
| CZWOJDAK, SUZANNE | 08/18/1997 & 10/16/97 | 09/14/1997 & 10/09/98 | | FT | 3,812.31 | 202.75 | | |
| GREENE, KAREN G • | 11/01/94 | 08/31/00 | | | 806.37 | 43.75 | 464.00 | 23.50 |
| SKINNER, JOANN H | 07/01/93 | 08/31/00 | | FT | 3,736.40 | 163.25 | 2218.60 | 94.75 |
| Terminated before 12/17/97 | | | | | | | | |

Escudero v. et al. v. Bank of America
Opt-in Plaintiffs' 1998-1999 Payroll Information

| Name | Job In Date as a CB II, III and/or IV | Job Out Date as a CB II, III and/or IV | Termination Date | FT/PT Status | 1998 YTD Overtime Earnings | 1998 YTD Overtime Hours | 1999 YTD Overtime Earnings | 1999 YTD Overtime Hours | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JULIET ALDRED, on behalf of herself and all others similarly situated,

Plaintiff,

v.

NATIONSBANK OF FLORIDA, N.A., a national associates,

Defendant

CASE NO. 97-7547-CIV-UNGARO- BENAGES

AFFIDAVIT

1. I am Jill Borsky. I am a personnel generalist for NationsBank in the Northeast Broward Region. Prior to that, I was the personnel generalist for NationsBank in the East Broward Region. I am aware of NationsBank's policies and procedures concerning the payment of overtime compensation, the keeping of timecards and other general personnel matters. I am aware of the lawsuit involving Juliet Aldred and NationsBank concerning the alleged violation of the Fair Labor Standards Act. I have been deposed by Plaintiff's attorney in a separate case involving related issues.

2. I have been informed and I can verify that currently in Broward County there are 714 active tellers in the NationsBank system as of 1 May, 1998. Also, as of that date, from January , 1998, 110 tellers have terminated their positions. For the State of Florida, there are 5,599 total tellers and to-date, 828 have terminated their position. As of the year-end of 1997 the turnover rate for tellers in Broward County has been 53.8%. Florida wide the turnover rate for tellers has been 46.7%.

3. Currently in Broward County, there are over 90 NationsBank individual banking centers. Each banking center manager and a teller coordinator. The teller coordinator

is the direct supervisor of the other tellers who work in the bank. The banking center manager controls personnel issues, hours worked and general management of each banking center. The banking center manager at each banking center is charged with the responsibility for staffing and implementing bank policy. NationsBank's pay policy has been that overtime must be calculated on a completed workweek (Monday - Sunday) and is paid at time and one half for hours worked over forty (40). Associates to include tellers are encouraged to accurately complete their "in and out" times on a daily basis. Each week the associates should total the daily hours and record the results in weekly blocks. At the end of the pay period the associates should initial the timecard and return the timecard to the supervisor. Supervisors review the card for accuracy. Individual overtime is authorized and managed at the direct supervisor and banking center manager level.

Jill Borsky

STATE OF FLORIDA
COUNTY OF BROWARD

SWORN to and subscribed before me this the 6 day of May, 1998.

Notary Public (SEAL)

DEBORAH D. COOK
MY COMMISSION # CC 541272
EXPIRES: June 20, 2000
Bonded Thru Notary Public Underwriters

## TIMECARDS

(Timecards cont.)

- **Distribution:** The timecard for an upcoming pay period will be distributed with the pay check or deposit advice each payday (i.e., the card for the 16th - 31st will be received on the 15th).

- **Deadlines:** Timecards should be received by the Payroll Department by Payroll cutoff (refer to schedule in the Introduction). Any cards received after cutoff will be processed the following pay period.

**EXCEPTION HOURS:** Exception hours are other than normally scheduled and are defined as additional straifgt time, ovbertime, absence without pay and worked holiday hours.

- **Additional Straight Time:** Any hours worked over those regularly scheduled (as noted in the Sunday blocks on the Part-time Current card) and less than 40 are paid as additional straight time.

- **Overtime:** Must be caculated on a completed work week (Monday - Sunday) and is paid at time and a half for hours worked over 40.

- **Worked Holiday:** When an associate works on a paid holiday, the hours regularly scheduled for that day sould be recorded on the " Regular"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BANKAMERICA CORPORATION, a foreign corporation d/b/a BANK OF AMERICA CORPORATION, a foreign corporation, f/k/a NATIONSBANK, N.A., a national association,

Defendant.

**NationsBank's Responses**
**to Plaintiffs' First Set of Interrogatories**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America, N.A., (f/k/a NationsBank, N.A.), which are collectively referred to herein as "Defendants" or "NationsBank," respond as follows to Plaintiffs' First Set of Interrogatories to Defendant:

**Interrogatories**

1. Please provide the name, address and telephone number of each banking center manager under whom Plaintiffs Roxanna L. Escudero and Kimberly Drake worked for Defendant since December 1997 until the date Escudero and/or Drake separated from her employment with Defendant. For each such banking center manager, specify the branch

at which each such banking center manager worked from December 1997 to present, and state at which such branches he or she worked with one or both of the Plaintiffs Escudero and/or Drake.

**Response:**

1. Roxanna L. Escudero

Escudero was employed at the Nob Hill Banking Center from December, 1997 through October 30, 1999. She had the following banking center managers ("BCMs"):

a. John C. Martinez
c/o Bank of America
Port Everglades Office
901 SE 17th Street Causeway
Ft. Lauderdale, Florida 33316-2152
(954) 527-8507

Mr. Martinez's job history is as follows:

BCM at Nob Hill from 12/97-2/28/99
BCM at BayView Drive from 3/1/99-11/30/99
BCM at McNabb/Unv. from 12/1/99-11/17/00
BCM at Port Everglades from 1/18/00 to present

b. Helen Mootry
c/o Bank of America
Cypress Creek Office
888 NW 62nd Street
Ft. Lauderdale, Florida 33309-2010
(954) 846-7800

Ms. Mootry's job history is as follows:

BCM at Sawgrass Mills from 12/97-10/15/98
BCM at Sawgrass Office from 10/16/98-3/14/99
BCM at Nob Hill from 3/15/99-6/4/00
BCM at Cypress Creek from 6/5/00 to present

2. Kimberly Drake

Drake was employed at the Wiles Road Banking Center from December, 1997 through July 15, 1998. Her BCM was:

Lorraine Ann Roth Jackson
718 Apple Tree Lane
Boca Raton, Florida 33486
(954) 338-9074

Ms. Jackson's job history is as follows:

BCM at Wiles Road from 12/97-10/20/98.

Drake was employed at the Rock Island banking center from July 16, 1998 through October 30, 1999. She had the following BCMs at the Rock Island Banking Center:

a. Cynthia L. Carlton
c/o Bank of America
Margate Office
550 Main Boulevard
Margate, Florida 33063-4553
(954) 978-0431

Ms. Carlton's job history is as follows:

BCM at Rock Island from 11/1/98-12/31/98

b. Karen Lynn Robins
c/o Bank of America
University Drive Office
1333 South University Drive
Plantation, Florida 33324
(954) 474-7384

Ms. Robins' job history is as follows:

BCM at Pembroke Pines from 12/97-12/31/97
BCM at West Commercial from 1/1/98-8/31/98
BCM at Coral Springs from 9/1/98-12/15/98
BCM at Rock Island from 12/16/98-5/2/99

c. Nancy L. Parness
c/o Bank of America
Rock Island Road Banking Center
5900 Rock Island Road
Tamarac, Florida 33319
(954) 973-8607

Ms. Parness' job history is as follows:

BCM at Parkland from 12/97-2/28/98
BCM at Rock Island from 3/1/98-5/31/99
BCM at North Powerline from 6/1/99-3/12/00
BCM at East Oakland Park from 3/13/00-6/4/00
BCM at Rock Island from 6/5/00 to present

d. Rodney Sumter
c/o Bank of America
Normandy Office
7770 Normandy Boulevard
Jacksonville, Florida 32221-6639
(954) 973-8607

Mr. Sumter's job history is as follows:

BCM at Rock Island from 6/1/99-4/30/00
BCM at Sawgrass Office from 5/1/00-10/9/00
BCM at Norwood Avenue from 10/10/00-10/15/00
BCM at Normandy from 10/16/00 to present.

2. Please state the name, address, and telephone number of each consumer banker II, III or IV, and/or each instore banker I or II, who worked with Kimberly Drake and/or Roxanna L. Escudero from December 1997 to the date Drake and/or Escudero separated from their employment with the Defendant. For each such consumer banker II, III or IV, or each such in-store banker I or II, please specify at which banking center he or

she worked from December 1997 to the present (or, if terminated, state the date of termination) and state at which branch he or she worked with Drake and/or Escudero.

**Response**:

NationsBank, by counsel, objects to the foregoing interrogatory on the grounds that it is overbroad (e.g., by including within its scope Instore Bankers who are not proper parties to this action, and by requiring NationsBank to specify the job history of each Consumer Banker beyond that time period when he or she worked with plaintiff(s)), and it seeks information which is neither relevant to the above-captioned action or reasonably likely to lead to the discovery of admissible evidence.

Subject to and without waiving this objection, NationsBank agrees to identify the non-exempt Consumer Bankers with whom plaintiffs worked, but only pursuant to a Protective Order that prohibits plaintiff or plaintiffs' counsel from disclosing this information to anyone not a party to this action, and prohibits plaintiff or plaintiffs' counsel from contacting the individuals identified pursuant to the Protective Order without prior leave of court. Authority for NationsBank's position can be found in the "Omnibus Report and Recommendation" ("Perlman Omnibus Report") entered by Magistrate Judge Johnson on July 28, 1999, in Perlman, et al. v. NationsBank, N.A., CASE NO. 98-8805-CIV-DIMITROULEAS. The Perlman Omnibus Report, relying on the record established in Aldred v. Nations Bank of Florida, N.A. and Levine, et al. v. NationsBank, prohibited plaintiffs' counsel from contacting the individuals identified by NationsBank who had worked with the plaintiffs.

v-06145-LRJ Document 232 Entered on FLSD Docket 06/11/2001 Pa

Escudero , et al., v. Bank of America
Case No. 00-06145-CIV- DIMITROULEAS/JOHNSON

______________________________

STATE OF NORTH CAROLINA )

COUNTY OF MECKLENBURG )

BEFORE ME, the undersigned authority, personally appeared ________________ who, after being duly sworn according to law, deposes and says that he/she is authorized by Bank of America to make this declaration and that he/she has read the foregoing Answers to Interrogatories and they are true and correct to the best of his/her knowledge and belief.

Dated this ___ day of March, 2001

______________________________
Notary Public

My Commission Expires: ______________________________

6

This the 28th day of February, 2001.

Richard F. Kane, NC State Bar # 5694
Bruce M. Steen, VA State Bar # 31062
McGuireWoods LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
Telephone: (704) 373-8999
Facsimile: (704) 373-8990

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke
& George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
Telephone: (954) 463-0100
Facsimile: (954) 463-2444

Attorneys for Bank of America Corporation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served this day by U.S. mail, postage prepaid, upon plaintiffs' counsel as listed below:

Susan L. Dolin, Esq.
Adam S. Chotiner, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the 28th day of February, 2001.

Richard F. Kane

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 00-06145-CIV-DIMITROULEAS
Magistrate Judge Snow

ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others Similarly situated,

Plaintiffs,

Vs.

BANKAMERICA CORPORATION, a Foreign corporation d/b/a BANK OF AMERICA CORPORATION, a Foreign corporation f/k/a NATIONSBANK, N.A., a national Association,

Defendant.

COPY

---

337 E. Las Olas Boulevard
Fort Lauderdale, Florida
July 13th, 2000
9:30 a.m. - 12:05 p.m.

APPEARANCES:

MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP
By ADAM S. CHOTINER, ESQ., ESQ.
Attorney for the Plaintiffs

McGUIRE, WOODS, BATTLE & BOOTHE, LLP
By RICHARD F. KANE, ESQ.
Attorney for the Defendant

Also Present: Roxanna L. Escudero

- - - - - - - - -

DEPOSITION

OF

KIMBERLY DRAKE

- - - - - - - - -

A. Twenty-three six.

Q. Was that difference broken up into more than one pay increase or was that all one pay increase?

A. I believe it was two different pay increases.

Q. Were they annual increases?

A. One was an annual and the second one came with the promotion.

Q. Okay. Now, when you started for NationsBank, did you go through some training?

A. Yes, I did.

Q. And describe for me what type of training you received.

A. It was mainly like a school type atmosphere for three months.

Q. Classroom type thing?

A. First month was mainly classroom. The second and third month (sic) was mixture of on-job and classroom.

Q. Okay. And where would you go for the on-the-job piece of that training?

A. The bank that I was hired for.

Q. Okay. And what bank was that?

A. Wiles Road location.

Q. And where is that location?

A. Coral Springs.

Q. So at the start of your employment were you assigned to Wiles Road?

A. Uh-huh. That's the bank I was hired for.

Q. While you were training, you were at Wiles Road. After your three months of training, did you stay at Wiles Road?

A. I stayed there for six months, then moved to Rock Island.

Q. Did the six months include the three months of training?

A. Yes. From October of '97 till March of '98 was Wiles Road. March of '98 was just supposed to be a temporary move to Rock Island. It became permanent.

Q. Okay. So Rock Island is March of '98?

A. Uh-huh.

Q. Now, who were your supervisors or who was your supervisor at Wiles Road?

A. Lorraine Roth.

Q. And what was her title?

A. Bank manager.

Q. She was the center manager, banking center manager?

A. Uh-huh.

Q. Anyone else that you reported to?

week for it. They did not do that.

Q. Did that ever happen, that you were given time off during the week?

A. No, I was not.

Q. Okay. Now, what managers scheduled you for telemarketing without giving you time off?

A. All of them.

Q. Okay. Now, which managers did you discuss that with?

A. Discussing as far as what, complaining or just talking?

Q. Yes. That's a better word for now and we'll get on to the type of discussions.

Did you ever complain to a manager about working these telemarketing nights and not being paid?

A. I complained to Rodney Sumpter. I not so much -- like I said, did not like being paid but my big thing about it was I didn't get paid, I had to take my files everywhere and most of the time the telemarketing night would be on a Wednesday night. I go to church on Wednesday. I did not like missing church to go to a telemarketing night. I complained to Rodney about that and I also complained to a couple of my co-workers. The co-workers were Roxanna and Kemmie Salter, Kristi Mertz and that was pretty much it. I think Helen Mootry I

might have said something to. She was a branch manager at another bank. I didn't like going on Wednesdays. It was just not so much going in and sitting down and complaining, it was just in passing, conversation-wise.

Q. Okay. Roxanna. Kemmie. Who else?

A. Kristi Mertz and Helen Mootry.

Q. Okay. When did you complain or comment to Rodney about giving up your Wednesday nights?

A. I guess it was like July or August. It was shortly after he took on Rock Island.

Q. Was it on one occasion or more than one occasion?

A. Twice, that I recall, I mentioned it. I did not like the fact that it was on a Wednesday and I let him know that.

Q. What was the second occasion, what time frame that?

A. Probably late August, September. See, because they were both -- when it started out once a month, I didn't mind giving up a Wednesday once a month. But then when you're talking about every other week and I'm missing church sometimes two times a month, three times, depending on how many Wednesdays in that month, it was kind of frustrating. And I raised the conversation with them that -- I said it couple of times

 don't have overtime and you're not allowed to do that. And I said, no, that forty-one was Rock Island and I explained to her what happened. And she goes, well, that was your own -- own fault. You go ahead and you take it off your timecard. I said, well, I don't think I should. I sent the timecard in and then I found out that my timecard had been altered by Justine and she didn't tell me. So she altered it to reveal forty. So that's how that conversation occurred with her. She thought I was getting the overtime because of Nob Hill.

Q. Okay. Was Patti before or after Justine?

A. Patti was in and out. She's a banking center manager. So some days she was there, some days she wasn't. Justine was there. It was very confusing at our bank.

Q. Okay. Tell me about the second conversation.

When did the first conversation occur with Justine?

A. I don't recall. See, Justine was there the whole time, but she was a CSM until she had her baby. And then Patti and Liz and all those other people were BCMs that were kind of helping out throughout the time period. So you really didn't know where to turn to sometimes to ask people. You had to just grab who you

could get.

Q. So Justine was, at that time, handling your timecard?

A. No. Well, she was handling sending it in, that's it. She wasn't allowed to alter it. She didn't tell me my schedule. She didn't tell me what to work or how to work. All she was supposed to do was sign the timecard and send it in.

Q. Okay. Tell me about the second conversation with Justine.

A. The second conversation with Justine was more along the lines of are you still working at Nob Hill. Yeah. You really want to win that trip. Yeah. You're not putting it on your timecard. No. That was pretty much it.

Q. Okay. How much time passed between the first and the second conversation?

A. Maybe about four weeks.

Q. Now, the next manager you mentioned was Karen; is that right?

A. Karen was there when -- see, Karen was there until May. So Karen was there from like '97 -- oh, I'm sorry, '98 till May of '99.

Q. Okay.

A. Okay. And Patti was in and out from like

April 'cause she was helping Karen adjust to her new position, 'cause Karen was still in training and stuff. She was there from like April till whenever. And Justine was there -- I mean, there was like four or five bosses there.

Q. Okay. Did you have a conversation with Karen about overtime?

A. Karen said -- this is not regarding to Nob Hill. But Karen said there was no overtime, period.

Q. Do you recall exactly -- precisely what she said or how she phrased it?

A. No, no overtime. That's how she phrased it.

Q. Was this in a meeting with other employees?

A. Yes.

Q. Do you recall who was present?

A. Gerard McCombe, M-C-C-O-M-B-E, and that's pretty much it. It was just the two of us.

Q. What was Gerard's position?

A. Consumer Banker I, Personal Banker, I'm sorry, I.

Q. Well, at the time this happened was it a consumer banker person?

A. No, it was personal banker.

worked for the campaign but I didn't work very hard to get a trip 'cause I was still kind of new employee, kind of feeling the waters. But when I found out Roxanne, who had started the same time I did, had won the trip to San Francisco, it kind of motivated me to do a little bit harder for Beverly Hills.

Due to that fact, in October of '98, when that retention point started happening for the Beverly Hills campaign that I mentioned, I decided that I wanted to go ahead and work to get that Beverly Hills trip, because I was going to go to Beverly Hills no matter what.

So in October, November, December of '98 I was working until about 7:30, 8:00, getting retention points by means of the accounts, the loans, whatever. They had this new Advantage thing where if you made anything for Advantage you got some bonus points, that type of stuff.

When January rolled around in '99, January through May of '99, I wanted to go to Beverly Hills no matter what. I would stay at the Nob Hill branch, because I didn't want to be by myself at Rock Island, till 10:00, 10:30, 11:00 at night. Helen Mootry was there when I was there. And she goes, you're not going to get burned out, are you. I said, no. Rodney, who

bank, so busiest months would be September until about March, real business, real business, 'cause it was snowbirds.

Q. You're saying at Rock Island?

A. Yeah, Rock Island.

Q. Okay. Why didn't you keep any records of these times?

A. I didn't feel a need to.

We were point blank told there was no overtime. I'm an employee there. I'm not going to cause waves and problems on something that -- you know, I didn't want to cause any problems. The only strong thing that I really felt deeply about was the Wednesday nights, 'cause I'm really into church. That bothered me. So I did want to cause waves on that but I was advised not to.

Q. By Roxanna?

A. Roxanne and Helen Mootry.

Q. Okay. When did you begin completing timecards?

A. Begin filling them out, you mean?

Q. Yes.

A. January of '98 is when they started the timecards for us.

Q. Now, all of these managers that you've

overtime, I didn't get paid for it and I didn't get time off as compensation. And I didn't know why she asked me that. That was a strange question.

At this time Rodney's office is facing the parking lot. So I could see Roxanne's car out there waiting for me. And I said, you know what, since I'm already terminated and I'm already missing my concert, do you need anything else from me, 'cause I do have things I have to do tonight. And she goes, well, we just want to make sure that we have this question, you know, correct, you did work overtime, you didn't get paid for it and you didn't get compensated for it. And I said, yes. She says, did your manager know it. I said, yes, Rodney did know it. And she goes -- looked right at Rodney and she said did you know this was going on. And Rodney said, yes, I knew this was going on. And she just dropped it. She got real quiet and she didn't say anything else about the overtime issue.

I said, well, since I'm being terminated, I might as well let you know a few things. I said -- 'cause I don't really care right now, I said you have a brand-new consumer banker, 'cause we had just hired a new banker out there, she's working overtime, she's not writing it on her timecard, she's not getting compensated for it. And your manager here takes three

to four hour lunches on a Friday afternoon. And I said, if I'm going to be terminated, I'm going to let you know that that's what's going on. And she said, fine, I've been notified, you let me know.

I said, let me clear out my desk and let me clear out my safe deposit box and I'll be on my way, because I don't want to come back here to clear out my safe deposit box. And they said, okay, no problem.

So DonnaMarie stayed in the office, made some phone calls. Rodney went over with me to my desk and let me get my personal things. And he went into the actual safe deposit box with me to get my safety deposit box stuff. Then at that time he gave me a hug. And I said, Rodney, I didn't mean to get you in trouble, but if you're going to terminate me, I'm going to let them know what's going on. And he said, don't worry about it. I'll take care of myself. And then I left.

And I don't know what happened to Rodney but I do know -- a friend of mind informed me that he got a verbal final written warning for allowing me to work and not paying me for it.

And when I went out to the car to get with Roxanne, I told her the whole conversation. And she informed me the reason that they probably asked me the overtime question was 'cause she had called human

resources for Bank of America/NationsBank and told them that she had worked overtime and not got paid for it. So that's probably why DonnaMarie had asked me the question.

Q. After you were terminated, did anyone else ask you about whether you had worked overtime?

A. Yes.

Q. Who?

A. The human resource manager, Ilene is it -- oh, I'm sorry, Ellen Beganti, Biganti (phonetic), something like that.

'Cause what happened, I was terminated on Friday. And when I worked with G. Neil I was told when you get terminated there could be an exit interview from that you're supposed to fill out. So I called Ellen on Monday and I asked her about it. And she said, the State of Florida doesn't require it. And then that's when Ellen discussed overtime with me at that time.

Q. What did she ask you?

A. She asked me if I worked overtime and got paid for it.

Q. What did you tell her?

A. I told her no.

And then off and on between that week, that week of -- I guess it's the first week of November -- we

talked on and off about -- I told her that I wanted to make sure that I got my paycheck. She said, yes. I asked her about my unpaid vacation, my unused vacation, how that worked. she told me about it. There was some discrepancies on whether I would get my check the end of November, my final check, or sometime in December. I told her we needed to work on that. And I also told her -- I also informed her that I would probably be going to wage and labor about my overtime.

Q. Okay. Tell me the name of the new consumer banker you identified to DonnaMarie as working and not recording her overtime.

A. Giselle Hernandez. G-I-S-E-L-L-E Hernandez.

Q. G-I?

A. S-E-L-L-E. Gerard had gotten fired.

Q. Hernandez?

A. Uh-huh. Gerard had gotten fired and they hired Giselle.

Q. Gerard who?

A. McCombe. The gentleman I told you about before at Rock Island.

Q. Gerard McCombe?

A. Yeah.

MR. KANE: Okay. Let's take a short break.