UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS/Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendant.



### NationsBank's Opposition to Plaintiffs'
### Renewed Motion to Allow Notification to Potential Class Members

Bank of America Corporation (f/k/a BankAmerica Corporation) and Bank of America, N.A. (f/k/a

NationsBank, N.A.)(collectively referred to herein as "NationsBank"), by counsel, hereby oppose Plaintiffs'

June 27, 2001, Renewed Motion to Allow Notification to Potential Class Members, as Authorized by the

1



Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (hereinafter "Renewed Motion for Notification").

NationsBank states as follows in opposition to plaintiffs' Renewed Motion for Notification:

## Relevant Facts

1. On January 31, 2000, plaintiffs filed the above-captioned action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 et seq. ("FLSA") "on behalf of themselves and all others similarly situated." According to plaintiffs' core allegations: (1) they worked for NationsBank as Consumer Banker IIs and IIIs; (2) NationsBank reclassified their positions as non-exempt for purposes of the FLSA (effective December, 1997); (3) between December, 1997 and October 29, 1999, they worked "many times in excess" of forty hours per week; and (4) NationsBank failed to pay them for the hours they worked in excess of forty per week by preventing or restricting them from recording such hours – that is, that NationsBank required them to work "off the clock." See Complaint & Demand for Jury Trial ("Complaint"), ¶¶ 8-10, 13-15 (Dkt. Entry 1).

2. On August 21, 2000, nearly seven months after commencing this action, plaintiffs filed their original Motion to Allow Notification to Potential Class Members Pursuant to 29 U.S.C. § 216(b)(hereinafter "Original Motion for Notification") (Dkt. Entry 111). According to plaintiffs, the potential opt-in group consisted of current and former Consumer Banker IIs, IIIs and IVs who worked for NationsBank after December, 1997, at numerous NationsBank banking centers across the country.

3. On March 26, 2001, this Court denied plaintiffs' Original Motion for Notification. See District Court's March 26, 2001, Omnibus Order (Dkt. Entry 199) denying, inter alia, Plaintiffs' Original Motion

for Notification, appended hereto as Exhibit A (hereinafter "Order Denying Motion for Notification"). As the Court noted, despite having "had more than enough opportunity to meet [their] opt-in burden," plaintiffs failed to establish pursuant to Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir. 1991), that notice was appropriate. Id. After reviewing the numerous affidavits and deposition testimony plaintiffs submitted in support of their Original Motion for Notification, and the countervailing affidavits and deposition testimony NationsBank submitted in opposition to plaintiffs' Original Motion for Notification, this Court concluded that "Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case" and found "that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions." Id. The Court, therefore, in an exercise of its discretion, denied plaintiffs' Original Motion for Notification. Id.

4. On or about April 6, 2001, plaintiffs filed in the Eleventh Circuit a Petition for Permission to Appeal this Court's March 26, 2001, Order denying their Original Motion for Notification (hereinafter "Petition for Appeal").[1] Three days later, plaintiffs also filed a Motion pursuant to 28 U.S.C. §1292(b) requesting this Court to certify as "interlocutory appealable" its denial of plaintiffs' Original Motion for Notification (hereinafter "Motion to Certify Appeal"). See Dkt. Entry 204. In support of both their Petition to Appeal and Motion to Certify Appeal, plaintiffs argued that, based on the record evidence, this Court

_____

[1]       A copy of plaintiffs' Petition for Permission to Appeal to the Eleventh Circuit, in which plaintiffs argued the same points advanced in their Renewed Motion for Notification, is appended hereto as Exhibit B.

3

abused its discretion in denying their Original Motion for Notification by misconstruing and misapplying the "similarly situated" standard for FLSA collective actions enunciated in Dybach. 942 F.2d at 1567-68.

5. On May 16, 2001, this Court denied plaintiffs' Motion to Certify Appeal. See Dkt. Entry 217.

On July 27, 2001, the Eleventh Circuit denied plaintiffs' Petition to Appeal. See Exhibit C hereto.

## Argument

Plaintiffs assert in their Renewed Motion for Notification that this Court should revisit the "class" notice issue yet again because the Court failed to apply the correct legal standard and misinterpreted the evidentiary record before the Court while evaluating plaintiffs' Original Motion for Notification. See Renewed Motion for Notification, ¶¶9-11. Plaintiffs also assert that they deserve a fourth bite at the "class" notice apple based on "the new Eleventh Circuit case law and the evidence that has been unearthed so far during the parties' limited discovery...." See Renewed Motion for Notification, ¶7. Plaintiffs' arguments are without merit and NationsBank respectfully requests the Court to deny plaintiffs' Renewed Motion for Notification; just as it denied their Original Motion for Notification and their Motion to Certify Appeal, and just as the Eleventh Circuit denied their Petition for Appeal.

I.    This Court Applied the Correct Legal Standard in Denying Plaintiffs' Original Motion.

Plaintiffs submit that, while evaluating plaintiffs' Original Motion for Notification, this Court failed to apply the "two-tiered" analysis subsequently endorsed by the Eleventh Circuit in Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001), and instead utilized "a too-narrow and overly restrictive view of 'similarly situated' which effectively 'short-circuited' the process." See Renewed Motion for

4

Notification, ¶¶ 9-11. Plaintiffs' argument, however, is nothing more than a thinly-veiled attempt to divert attention from their inability to satisfy the "similarly situated" standard applicable in the Eleventh Circuit.

A.    The Court Applied the Correct Legal Standard to Plaintiffs' Original Motion.

In evaluating plaintiffs' Original Motion for Notification, this Court correctly stated that, in determining whether notice is appropriate in a collective action, the Court must "satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." See Order Denying Motion for Notification, appended hereto as Exhibit A, citing and relying upon Dybach, 942 F.2d at 1567-68. The standard on which this Court relied is consistent with the Eleventh Circuit's prior decision in Dybach and subsequent decision in Hipp, 252 F.3d at 1217-19. Both prior to and after Hipp, "[p]laintiffs bear the burden of demonstrating a reasonable basis for their claim of classwide discrimination," Id. at 1219, citing, Grayson v. K-Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996), and plaintiffs utterly failed to satisfy this burden in the instant case. See supra, ¶3 & infra, p. 7-11.

Unfortunately for plaintiffs, and contrary to the impression they attempt to create in their Renewed Motion for Notification, there is no requirement in the Eleventh Circuit, either prior to or after Hipp, that the trial court must "rubber stamp" plaintiffs' request for notification. See Hipp, 252 F. 3d at 1219. Rather, plaintiffs must "demonstrat[e] a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they propose." Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). Unsupported claims of widespread FLSA violations, or pools of potential "similarly situated" plaintiffs desiring to opt-in, will not satisfy this burden, Haynes, 696 F.2d at 887; instead, plaintiffs must

5

submit evidence at this "first tier" that substantiates their claims of class-wide FLSA violations. See Grayson, 79 F.3d at 1097. Again, plaintiffs failed to satisfy this burden. See supra ¶3 & infra p. 7-11.

B.    The "Second Tier" Analytic was Inapplicable to Plaintiffs' Original Motion.

Plaintiffs' assertion that the "two-tiered approach was never utilized by the trial court" is equally baffling. See Renewed Motion for Notification, ¶15. When plaintiffs filed their Original Motion for Notification in August, 2000, this matter was much closer to the "first tier" as defined by Hipp. See 252 F.3d at 1218. There was no need, therefore, for the Court to address the standard applicable to the so-called "second tier." Since that time, however, considerable discovery directed at the notice issue has been undertaken by the parties, and this matter now is ready for the so-called "second tier" review pursuant to NationsBank's June 8, 2001, Motion to Decertify. See Dkt. Entry 232 & NationsBank's Reply to Plaintiffs' Response to its Motion to Decertify and to Dismiss Opt-In Plaintiffs (Dkt. Entry 259).

II.    Plaintiffs' "First Tier" Analysis is Irrelevant and Inapplicable to Their Renewed Motion.

Plaintiffs also contend that the Court should permit "class" notice because at the notice stage – or "first tier" – the trial court evaluates plaintiffs' request for notice "using a fairly lenient standard, and typically results in...certification...." See Renewed Motion for Notification, ¶13. Plaintiffs' argument, however, is irrelevant; the "first tier" analytic is inapplicable to their Renewed Motion for Notification because this matter has progressed well past the "notice" stage.

This case has been pending for nineteen months. Plaintiffs and defendant have submitted numerous affidavits regarding the notice issue. Plaintiffs and defendants have taken several depositions during which they have explored issues relevant to the notice issue. And, NationsBank has served requests for admission

6


and interrogatories on the named and opt-in plaintiffs specifically designed to elicit information regarding whether the named and opt-in plaintiffs are "similarly situated" such that this matter may proceed as a collective action.[2]    Therefore, contrary to plaintiffs' constant refrain that "very little discovery" has been completed and that "discovery has just begun," see Renewed Motion for Notification, ¶¶15 & 25, this matter is well beyond the "first tier" or notice stage. Rather, this matter is at the "second tier" or decertification stage as defined by the Eleventh Circuit in Hipp. See 252 F. 3d at 1218. At this stage of the litigation, an FLSA plaintiff's burden is formidable. Indeed, at this stage of the litigation, "the vast majority of district courts deny certification...." See Thiessen v. General Electric Capital Corp., 996 F. Supp. 1071, 1080 (D. Kan. 1998). See also NationsBank's Motion to Decertify and to Dismiss Opt-In Plaintiffs, and Incorporated Memorandum of Law ("Motion to Decertify"), p. 5-6 & n.3 (Dkt. Entry 232).

III.    The Evidentiary Record Establishes that "Class" Notice is not Appropriate.

Plaintiffs also assert that "class" notice should now be permitted because this Court misinterpreted the evidentiary record when it denied plaintiffs' Original Motion for Notification, and because evidence supporting "class" notice has been "unearthed" since the Court denied its Original Motion for Notification. Once again, plaintiffs' arguments are unavailing. Indeed, the Court correctly analyzed the record before it pursuant to plaintiffs' Original Motion for Notification and the evidence subsequently "unearthed" confirms the appropriateness of the Court's decision to deny plaintiffs' initial request for "class" notice.

---

[2]    In fact, this evidence establishes that this matter is not appropriate for "class" notice or treatment. See infra, p. 7-11

7

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

A. The Evidence Before the Court When it Denied Plaintiffs' Original Motions for Notification and to Certify Appeal, and When the Eleventh Circuit Denied Plaintiffs' Petition for Appeal Establishes that "Class" Notice is Improper.

The record before the Court when it denied plaintiffs' Original Motion for Notification amply supports the Court's conclusion that "class" notice was not appropriate in this matter. Certainly, plaintiffs cannot credibly assert that this Court abused its discretion in denying their Original Motion for Notification; which is the applicable standard which plaintiff must satisfy before another Court could overrule this Court's decision to deny plaintiffs' Original Motion for Notification. See Dybach, 942 F.2d at 1562. A brief review of the record before the Court at the time it denied plaintiffs' Original Motion for Notification establishes that the Court's decision had ample evidentiary support.[3]

1. Other Potential Opt-in Plaintiffs

For example, plaintiffs failed to provide this Court sufficient factual support for their claim that other Consumer Bankers, who have not yet opted-in, desired to opt-in to this action. Plaintiffs filed thirteen affidavits in support of their Original Motion for Notification. NationsBank, however, raised serious questions regarding the veracity of these affidavits. Moreover, these affidavits included only boilerplate

---

[3] For a more comprehensive discussion of the factual support for this Court's denial of plaintiffs' Original Motion for Notification, see NationsBank's Opposition to Plaintiffs' Motion to Certify March 26, 2001, Order Denying Plaintiffs' Motion for Class Notification as Interlocutorily Appealable Pursuant to 28 U.S.C. §1292(b)(Dkt. Entry 217); NationsBank's Motion to Decertify (Dkt. Entry 232) & NationsBank's Reply to Plaintiffs' Response to its Motion to Decertify and to Dismiss Opt-in Plaintiffs (Dkt. Entry 259).

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

assertions that the affiant "believe[s] there are other individuals who would desire to opt-in to this lawsuit if they were provided Court-approved notice of this lawsuit." Plaintiffs' affidavits, however, did not identify: (1) where these alleged potential opt-in plaintiffs worked; (2) what positions these alleged potential opt-ins held; or (3) whether the affiants in fact worked with the alleged potential opt-ins. Significantly, the affiants also did not describe how they knew the alleged potential opt-in plaintiffs worked overtime hours for which they allegedly were not compensated. These conclusory, hearsay statements, for which plaintiffs provided no foundation or basis in fact, did not satisfy their obligation of demonstrating that others wish to join this action. See Exhibit A. See also Haynes, 696 F.2d at 887.

In their Original Motion for Notification, plaintiffs also placed considerable stock in the argument that, at the time, sixty-nine opt-in plaintiffs had filed consents to join this collective action "without the benefit of Court-authorized notification." This argument also was unavailing. Contrary to plaintiffs' prediction that a large untapped group of potential plaintiffs exists, the group of opt-in plaintiffs in this matter continues to dwindle and diminish at a rapid pace; currently, only twenty-four remain. Moreover, the opt-ins are known to plaintiffs' counsel because they participated in another case they filed against the Bank, there was nothing miraculous or particularly persuasive about the number or identity of those who already had opted into this case.

2.    "Similarly Situated" and the Lack of a "Common Scheme"

Plaintiffs also failed to proffer any credible or persuasive evidence to the Court that there are other "similarly situated employees" sufficient to justify notice to potential opt-in plaintiffs. This Court, therefore,

9

correctly concluded that plaintiffs also failed to establish the second prong of the Dybach test. See Exhibit A.

For example, the named plaintiffs allege in their Complaint that NationsBank essentially forbade them, either directly or through intimidation, from recording any of the overtime hours they purportedly worked and consequently did not pay them any compensation for those alleged overtime hours. See Complaint, ¶¶14-15 (Dkt. Entry 1). However, according to the undisputed record evidence available to the Court when it denied plaintiffs' Original Motion for Notification, the Bank paid overtime compensation to twenty-two of the remaining twenty-four opt-in plaintiffs (including each of the individuals who plaintiffs allege in their Renewed Motion for Notification received absolutely no overtime compensation), see Renewed Motion for Notification, ¶¶17-22; some of whom earned and were paid many thousands of dollars in overtime pay. See Motion to Decertify, p. 7-8 (Dkt. Entry 232).[4] Therefore, as NationsBank argued in its Motion to Decertify, the members of the putative "class" are not even similarly situated with respect to the core allegations of the named plaintiffs' case against NationsBank. See Ray v. Motel 6, 1996 U.S. Dist. LEXIS 22565 (D. Minn. 1996). Plaintiffs have never responded to, or attempted to rebut this argument.

The nature of the alleged overtime violations in this action also was of critical importance to this Court's analysis of whether this matter should proceed as a collective action. See Exhibit A. Plaintiffs do

---

[4]     Opt-in Sherri Thomas did not record any overtime in 1998; but she left the Bank on March 24, 1998. See Exhibits D, E & F to NationsBank's Motion to Decertify (Dkt. Entry 232). The final opt-in plaintiff, Claudette Rose, also recorded overtime hours and received overtime pay as a non-exempt Consumer Banker.

10

not allege that NationsBank misclassified their positions as exempt for overtime pay purposes. Plaintiffs do not allege that NationsBank denied them overtime pay based on a written, corporate-wide payroll or compensation policy. Rather, they allege that NationsBank properly classified them as non-exempt, but failed to allow them to record their overtime hours and refused to pay them for their overtime hours – that is to work "off the clock." Plaintiffs, however, did not proffer any evidence that this purported "scheme" is a corporate-wide policy or was sufficiently wide-spread or similar as to justify notification. See Exhibit A.

Contrary to plaintiffs' contention, neither NationsBank nor this Court ever has contended that a "centralized scheme" is absolutely necessary to justify "class" notice. See Renewed Motion for Notification, ¶16. However, whether such a common scheme or policy exists which violates the law is highly probative, and often critical to whether a court will permit a group of plaintiffs to proceed collectively. See Lusardi v. Xerox Corp., 122 F.R.D. 463, 466 (D.N.J. 1988) (collective action decertified because plaintiffs failed to "uncover[] any policy or practice of age discrimination"). That is, the more decentralized the alleged wrongdoing, the less likely it is that the court will permit plaintiffs to proceed collectively. See Baum v. Shoney's Inc., 1998 U.S. Dist. LEXIS 21484 (M.D. Fla. 1998)(existence of a "centralized" scheme or policy probative in the determination whether putative class members are "similarly situated"). See also Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. at 567; Mertz v. Treetop Enterprises, Inc., 1999 U.S. Dist. LEIXS 18386; Reeves v. Alliant TechSystems, Inc., 77 F. Supp. 2d at 249; Ray, 1996 U.S. Dist. LEXIS 22565 & Harper v. Lovett's Buffett, 185 F.R.D. 358, 363 (M.D. Ala. 1999). Here, the record evidence establishes, and the Court correctly concluded, that any alleged violations of the FLSA

were random, sporadic and completely dependent on the actions of each plaintiff's Banking Center

Manager. See Exhibit A.

    B.    Contrary to Plaintiffs' Assertion, the Considerable Evidence "Unearthed" Since the Court Denied Plaintiffs' Original Motion for Notification Confirms that Neither "Class" Notice Nor Continued Collective Treatment is Appropriate.

        1.    The Expanded Evidentiary Record

Contrary to plaintiffs' assertions, the evidence developed since this Court denied plaintiffs' Original

Motion for Notification confirms that individual issues predominate and that continued consolidation of the

opt-in plaintiffs' claims – including by permitting "class" notice – is not appropriate pursuant to the collective

action statute. Indeed, the greatly expanded evidentiary record currently before the Court confirms Judge

Dimitrouleas' initial and well-considered judgment "that resolution of the FLSA overtime issues in this case

will vary from branch to branch, depending upon how individual branch managers handled overtime for the

Consumer Banker II, III and IV." See Exhibit A.

    For example, the opt-in plaintiffs' interrogatory responses, the opt-in plaintiffs' responses to

NationsBank's requests for admission and the disparate nature of the opt-in plaintiffs' allegations illustrate

that individual issues predominate and that continued consolidation of these disparate claims – including by

permitting "class" notice – is imprudent. See Thiessen v. General Electric Capital Corp., 13 F. Supp. 2d

1131, 1141-44 (D. Kan. 1998); Lusardi, 122 F.R.D. at 466.

    Some of the plaintiffs allege that they were not permitted to record any overtime hours, see

Complaint, ¶¶14-15 (Dkt. Entry 1); other plaintiffs allege that they were permitted to record some, but not

all of their overtime hours; still other plaintiffs allege they were required to alter their time cards or had them

12

altered; and some of the plaintiffs allege they were given illegal "compensatory time" in lieu of overtime pay.[5] These disparate allegations are not well-suited to collective treatment and further establish that plaintiffs' Renewed Motion for Notification should be denied and that this matter should not proceed any further as a collective action. See Ulvin v. Northwestern Nat'l Life Ins. Co., 141 F.R.D. 130, 131 (D. Minn. 1991)(implementation of policy on a decentralized level by local management insufficient to render class similarly situated).

## 2. Plaintiffs' Myriad and Evolving Theories

In their four bites at the "class" notice apple, plaintiffs have proffered several distinct, divergent and evolving theories of the Bank's alleged overtime violations. See supra at p. 11-12. They now submit for the first time that "class" notification is appropriate because the Bank may have given "compensatory time" in lieu of overtime pay. See Renewed Motion for Notification, p. 12-13. In support of this contention, plaintiffs cite the deposition testimony of a single banking center manager (Rodney Sumpter) who supervised a single plaintiff (Kimberly Drake) for only part of her tenure at a single banking center. Id. Rather than support plaintiffs' renewed plea for "class" notice, this new theory of liability simply underscores the disparate and fractured nature of plaintiffs' allegations and putative "class." See Baum v. Shoney's Inc., 1998 U.S. Dist. LEXIS 21484 (M.D. Fla. 1998) (existence of "centralized" scheme or policy probative in the determination whether putative class members are "similarly situated").[6]

---

[5]     See Exhibits 2 & 3 to NationsBank's Reply to Plaintiffs' Response to its Motion to Decertify and to Dismiss Opt-In Plaintiffs (Dkt. Entry 259).

[6]     Significant variations also exists among the opt-in plaintiffs regarding the damages to which they allege they are entitled, see Motion to Decertify (Dkt Entry 232); further "demonstrat[ing] a lack of

13

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

More fundamentally, however, plaintiffs' examination of this banking center manager does not establish that he violated the FLSA as to plaintiff Drake or any other employee. Contrary to plaintiffs' contention, "compensatory" time off during the same week or same pay period as the additional hours are incurred does not violate the FLSA. See Plaintiffs' Renewed Motion for Notification, p. 12. In addition, according to the United States Department of Labor,

> "it is permissible for the employer employing one at a fixed salary for a fixed work-week to lay off the employee a sufficient number of hours during some other week or weeks of the pay period to offset the amount of overtime worked (i.e. at the time and one-half rate) so that the desired wage or salary for the pay period covers the total amount of compensation including overtime."

See Brennan v. State of New Jersey, 364 F. Supp. 156, 158 (D.N.J. 1973), aff'd, 522 F.2d 504 (3rd Cir. 1975), quoting, Wage & Hour Division Opinion Letter No. 913 (December 27, 1968).

IV.    Plaintiffs' "Altered Time Card" Theory is Based on a Faulty Premise and is Irrelevant.

In support of their Renewed Motion for Notification, plaintiffs assert that several of the plaintiffs' time cards were "bogus," "forged" or "altered by their supervisors in order to eliminate overtime." See Renewed Motion for Notification, ¶¶5 & 24. According to plaintiffs, the time records for plaintiffs Escudero, Drake, Rojas and Kirkland contain "numerous alterations, both by white-out, erasure and write-overs." See Renewed Motion for Notification, ¶¶ 17-19 & 21. Plaintiffs made an identical allegation in their opposition to NationsBank's Motion to Decertify and, in support of their position, proffered the Declaration of Adam S. Chotiner; wherein he attests to the purported "alterations" he discovered upon

_____

commonality" and further illustrating why plaintiffs' claims should not proceed as a collective action. See Ray, 1996 U.S. Dist. LEXIS 22565.

14

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

personally inspecting plaintiffs' original timesheets. See Plaintiffs' Response at Exhibit 6, ¶¶4-5. These diversionary allegations, however, are irrelevant to plaintiffs' burden of establishing that potential opt-in plaintiffs exist who are similarly situated to the named plaintiffs.

More importantly, however, Mr. Chotiner's Declaration is more revealing in what it does not say. Plaintiffs fail to reveal that many of the timecard "alterations" to which Mr. Chotiner refers: (1) resulted in an increase of recorded hours for the particular individual; or (2) appear to be corrections of miscalculated hours based on the hours recorded by the opt-in plaintiffs. See Affidavit of June Such, a copy of which is appended hereto as Exhibit D. Indeed, plaintiffs admit in their deposition testimony that some of the purported "alterations" are in their handwriting and were made to correct miscalculations on their time cards and time sheets. See, e.g., Deposition of Diane Kirkland, pp. 120-123, 126, a copy of which is appended hereto as Exhibit E. This is hardly evidence of a common scheme to deny overtime pay to the opt-in plaintiffs; regardless of the form this scheme allegedly may have taken.

## Conclusion

Based on the foregoing, defendant NationsBank, by counsel, hereby requests the Court to enter an Order: (1) denying plaintiffs' ill-founded Renewed Motion for Notification pursuant to 29 U.S.C. §216(b); (2) awarding it the costs and attorneys' fees incurred in defending against plaintiffs' Renewed Motion for Notification; and (3) granting such other relief as the Court deems just and proper.

15

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

This the 6th day of August, 2001.

Michael T. Burke (Fla. Bar No. 338771)
Johnson, Anselmo, Murdoch, Burke & George, P.A.
790 East Broward Blvd., Suite 400
P.O. Box 030220
Fort Lauderdale, Florida 33303-0220
(954) 463-0100; Facsimile (954) 463-2444

Richard F. Kane (NC Bar No. 5694)
Bruce M. Steen (VA Bar No. 31062)
J. Mark Langdon (NC Bar No. 19359)
McGuireWoods LLP
3700 Bank of America Plaza
Charlotte, North Carolina 28280
(704) 373-8999; Facsimile (704) 373-8990

Counsel for NationsBank, N.A

Case No. 00-06145-CIV-DIMITROULEAS/Johnson
Escudero, et al vs. BankAmerica Corporation

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing in the above-captioned proceeding

has been served this first-class mail, postage prepaid, upon plaintiffs' counsel as listed below:

Susan L. Dolin, Esq.
Adam S. Chotiner, Esq.
Muchnick, Wasserman, Dolin & Levine, LLP
Presidential Circle Building, Suite 620 North
4000 Hollywood Blvd.
Hollywood, FL 33021

Caryl Boies, Esq.
Anne E. Hinds, Esq.
Boies, Schiller & Flexner, LLP
2435 Hollywood Boulevard, Suite 200
Hollywood, FL 33020

This the 6th day of August, 2001.

Michael T. Burke

17



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6145-CIV-DIMITROULEAS

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly situated,

Plaintiff,

vs.

BANKAMERICA CORPORATION,
d/b/a BANK OF AMERICA, f/k/a NATIONSBANK,

Defendant.

_____/

Magistrate Judge Johnson



## OMNIBUS ORDER

THIS CAUSE is before the Court upon Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111], Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118], Defendant's Motion for Summary Judgment [DE 120], Defendant's Motion for Sanctions [DE 130], Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148], the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183], Defendant's Appeal [DE 184] of Order of Magistrate Judge, and the parties' joint consent to magistrate judge jurisdiction. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

At the outset, the Court notes that the parties jointly executed a Consent to Exercise of Jurisdiction by a United States Magistrate Judge on February 2, 2001. This Court did not enter an order of reference, however, until today, in order to resolve the pending motions prior to referral to the magistrate judge. Because of this Court's experience in handling similar motions for notification to potential class members (see below), the Court concluded that judicial

economy would best be served by the undersigned first resolving the motions, and then transferring the case to the magistrate judge.

## I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker II, III or IV for defendant Bank of America (formerly known as Nationsbank). Plaintiff Escudero alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Plaintiff further alleges that Bank of America supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Bank of America's record-keeping obligation under the FLSA. Bank of America denies the allegations and further asserts that it has a policy in place for Consumer Bankers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

The docket for this case reflects that approximately 110 persons with the position of Consumer Banker II, III or IV have opted in to this lawsuit at one time or another.[1] In reviewing the record as of today, it appears that approximately 20 persons have withdrawn their consents,

---

[1] There were 100 persons who had filed consent forms at the time of Plaintiff's motion for notification. See Exhibit A to Plaintiff's Motion to Allow Notification to Potential Class Members [DE 111]. At the time of Defendant's response, there were 109.

2

and 40 persons are subject to Defendant's Motion for Summary Judgment because they were not

employed as a Consumer Banker II, III or IV after December 17, 1997, the time period at issue in

this lawsuit.[2]  Upon a review of the remaining 55 persons[3] who have opt-ed in to this lawsuit,

only 20 worked in Florida. Of those twenty, only four (4) worked in Broward County, and only

two (2) may have worked at the same branch as the two name plaintiffs.[4]

## II. DISCUSSION

### A. Motion for Notification

Plaintiff seeks an order of this court allowing nationwide notification of potential class

members under Section 216(b) of the FLSA. It is settled in the Eleventh Circuit that a district

court has the authority under the FLSA to issue an order requiring notice to similarly situated

persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991)

(noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best

served if the district court is deemed to have the power to give such notice to other potential

---

[2] Plaintiffs filed a Non-Opposition to Defendant's Motion for Summary Judgment [DE 178] after several interim responses directed to individual plaintiffs.

[3] There was some overlap among the withdrawn consents and those subject to summary judgment. This figure does not include name plaintiffs Roxanna Escudero and Kimberly Drake.

[4] Named Plaintiffs Roxanna Escudero and Kimberly Drake list an address in Sunrise, Florida as either their residence or their work address. No other opt-in Plaintiff is listed either by themselves on their consent forms or in Plaintiffs' motions as working in Sunrise, a city in western Broward County. One opt-in Plaintiff, Mary Ann O'Connor [DE 180] lists Plantation, Florida, a neighboring city to Sunrise, while another, Theresa Sutton Rubinfield lists Miramar, Florida, a city within commuting distance to Sunrise. Two additional opt-in Plaintiffs, Danielle Magan and Marilyn Barnes, either live on the east side of Broward County (Magan, see DE 109) or worked in a branch on the east side of Broward County (Barnes, See Exhibit A to Plaintiff's Motion to Allow Notification).

3

members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions.") (citations omitted). Before determining whether to exercise such power, however, Dybach instructs the district court that it "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Id. at 1567-1568. If the district court concludes that there are such other employees, the court then has the discretion to establish the specific procedures to be followed with respect to such possible opting-in. Id. at 1568.

As the parties are aware, the Court has had the opportunity to issue rulings in similar cases involving bank tellers (Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS), In-store Bankers (Perlman, et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), Consumer Bankers I (Mintz v. Nationsbank, 98-8632-CIV-DIMITROULEAS) and Consumer Bankers II, III, and IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS).[5] In Perlman and Levine, Bank of America (or its predecessors) had a clear policy of exempting all In-Store Bankers and Consumer Bankers II, III and IV from overtime pay, respectively. Thus, in those two cases the Court concluded under Dybach that those individuals were similarly situated. In Aldred and Mintz, the Court concluded that Plaintiffs had not met their burden of showing similarly-situated employees, as Bank of America did not exempt such employees from overtime, but rather left overtime decisions to individual branch mangers.

---

[5] The Levine case involved Consumer Bankers II, III, and IV who were allegedly wrongly classified as exempt from the overtime provisions of the FLSA, in comparison to the instant case in which the time period of alleged FLSA violations begins after Consumer Bankers II, III, and IV were classified as non-exempt on December 17, 1997.

4

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers II, III and IV in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers, making this case similar to Aldred and Mintz. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. Defendant argues that there was no such policy of discouragement, and whether an individual Consumer Banker received overtime depending on working conditions at each branch.

The record as described above shows only four (4) opt-in plaintiffs from Broward County, and no evidence that any of the opt-in plaintiffs worked in the same branch as Escudero or Drake. Moreover, Plaintiffs have had more than enough opportunity to meet this opt-in burden, as this case was filed in January, 2000. Therefore, Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case.

As to the second step of Dybach, Defendant argues that Plaintiffs have not shown that Consumer Banker II, III, and IV employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions. Individual

5

differences will certainly exist as to the hours, duration and location worked by individual plaintiffs. The Court also concludes that the affidavits and deposition transcripts provided by Plaintiffs are not sufficient to satisfy this Court that there are other employees of Bank of America who are similarly situated with respect to their job requirements and with regard to their pay provisions as the two named plaintiffs, since no person who worked at the same branch as named plaintiffs have opted in to this case. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

## B. Motion for Summary Judgment

Defendants moved for summary judgment as to forty different opt-in plaintiffs because they were not employed as a Consumer Banker II, III or IV after December 17, 1997. All of these persons either were terminated by Defendant prior to December 17, 1997, or transferred out of these positions at issue prior to that date. After several interim responses disputed the facts as to certain individuals among the forty, Plaintiffs eventually filed a notice of non-opposition to the motion [DE 178]. Therefore, Defendant's motion is granted. Because these persons subject to this motion were not eligible for the proposed opt-in class in this case, they were not considered by this Court as similarly situated for purposes of the notification issue described above.

## C. Appeal of Discovery Order

Defendant has appealed Magistrate Judge Johnson's January 30, 2001 Order [DE 171] granting Plaintiffs' Emergency Motion for Protective Order stopping Defendant from taking depositions of all opt-in Plaintiffs. The Order stated that such depositions were premature at this

6

time, but strongly implied that after written discovery is propounded to these opt-in Plaintiffs, such depositions may be allowed at a further time. Although Defendant consented to Magistrate Jurisdiction on February 2, 2001, Defendant filed this appeal.[6]

Pursuant to 28 U.S.C. § 636(b)(1)(A), Magistrate Judges may decide non-dispositive motions. Upon objection by a party, the District Court may reconsider any pretrial matter where it has been shown that the Magistrate Judge's order is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1); Massey v. United Transp. Union, 868 F. Supp. 1385, 1388 (S.D.Ga.1994) (stating that a magistrate judge's order will be set aside when clearly erroneous or contrary to law), aff'd, 65 F.3d 183 (11th Cir.1995). Accordingly, unless Magistrate Judge Johnson's determination with respect to the timing of opt-in Plaintiffs' depositions was clearly erroneous, or contrary to law, that determination shall not be disturbed.

Upon a review of the record by this Court, Judge Johnson's Order is affirmed, as it was not erroneous nor contrary to law. In addition, her order is not a final order, but merely postpones the depositions of opt-in Plaintiffs until after written discovery has been completed. Finally, as noted above, the Court is now entering an Order of Reference, in accordance with the parties' consent to magistrate jurisdiction, which in effect would moot the appeal.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.   Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111] is hereby

---

[6] The Court does not imply that the appeal is improper for this reason, since at the time the Court had not accepted the consent and entered an Order of Reference. However, such consent, now being approved by this Court, does moot the appeal.

**DENIED**;

2.    Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118] is hereby **DENIED**;

3.    Defendant's Motion for Summary Judgment [DE 120] is hereby **GRANTED**;

4.    Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148] is hereby **DENIED as moot**, given Plaintiff's Suggestion of Mootness given Hensley's withdrawal from the case;

5.    Defendant's Appeal [DE 184] of Order of Magistrate Judge is hereby **DENIED**, and Magistrate Judge Johnson's Order granting a protective order to Plaintiffs is affirmed

6.    Defendant's Motion for Sanctions [DE 130] and the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183] are hereby **REFERRED** to Magistrate Judge Johnson;

7.    The Court will separately enter an Order of Reference of this case for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the parties' written consent;

8.    The Clerk may formally transfer this case to Magistrate Judge Johnson.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of March, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

8

Copies furnished to:

Chief Magistrate Judge Linnea R. Johnson (WPB)
Susan Dolin, Esq./Daniel R. Levine, Esq.
Caryl Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq./J. Mark Langdon, Esq.

9

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

USCA CASE NO. _____
USDC CASE NO.00-06145-CIV-DIMITROULEAS

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,



      Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,

      Defendant.

_____/

## PLAINTIFFS' PETITION FOR PERMISSION TO APPEAL DISTRICT COURT ORDER DENYING PLAINTIFFS' MOTION FOR CLASS NOTIFICATION AS AUTHORIZED BY THE FAIR LABOR STANDARDS ACT

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, by and through their undersigned

counsel, and, pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5, hereby file their

Petition for Permission to Appeal District Court Order Denying Plaintiffs' Motion for Class

Notification as Authorized by the Fair Labor Standards Act, as follows:

## I.   BACKGROUND FACTS AND PROCEDURAL HISTORY NECESSARY TO UNDERSTAND THE QUESTION PRESENTED

The instant lawsuit, filed by ROXANNA L. ESCUDERO and KIMBERLY DRAKE on

or about January 31, 2000, has been brought to recover unpaid overtime compensation

pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. ("FLSA"). Plaintiffs'

substantive allegations are that Defendant, which correctly classified Plaintiffs' position as

non-exempt from the FLSA's overtime provisions, nevertheless failed to properly pay

overtime compensation to Plaintiffs and other current and former employees of Defendant

similarly situated to Plaintiffs. In paragraphs 14 and 15 of their Complaint, Plaintiffs allege

as follows:

> 14.   In the course of their employment as Consumer
> Bankers II, III or IV with NATIONSBANK, and subsequent to
> NATIONSBANK's reclassification of these positions as non-
> exempt in or about December, 1997, Plaintiffs, and other
> similarly situated employees throughout the NATIONSBANK
> system, including Consumer Bankers II, III and IV, worked the
> number of hours required of them, many times in excess of
> forty (40), but were not paid overtime.
>
> 15.   Moreover, NATIONSBANK's supervisory personnel
> either refused to permit Plaintiffs, and, upon information and
> belief, other similarly situated employees, to record the
> number of hours worked in excess of forty (40) or expressly
> instructed Plaintiffs, and, upon information and belief, other
> similarly situated employees, against recording the number of
> hours worked in excess of forty (40), both in clear violation of
> NATIONSBANK's record-keeping obligations under the FLSA,
> specifically §211(c).

Plaintiffs have thus brought the instant case as a potential collective action pursuant to the

FLSA.

As noted by the former Fifth Circuit in *LaChappell v. Owens-Illinois, Inc.*, 513 F.2d

286 (5th Cir. 1975), FLSA collective actions and class actions under Fed. R. Civ. P. are

"mutually exclusive" and "irreconcilable." *Id.* at 289. In particular, a Rule 23 class action

is an "opt-out" procedure, whereby class members are automatically a part of the putative

class unless they affirmatively opt-out of the class action. By contrast, a FLSA collective action is an "opt-in" mechanism, whereby class members are *not* part of the putative class unless they affirmatively *opt-in* to the litigation by filing a consent form.

As held by this Court in *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991), a district court has the authority, pursuant to 29 U.S.C. §216(b),[1] to authorize notification to potential class members, advising them of the pendency of a FLSA collective action and their right to opt-in by filing a consent form.

On or about August 21, 2001, Plaintiffs filed their Motion to Allow Notification to Potential Class Members as Authorized by the Fair Labor Standards Act, 29 U.S.C. §216(b) (hereinafter "Motion to Allow Notification").[2] Significantly, there currently are sixty-nine (69) opt-in Plaintiffs in this action, who have filed consent forms with the District Court

---

[1]    29 U.S.C. §216(b) provides, in pertinent part:

> an action to recover liability... may be maintained against any employer...by any one or more employees for and on behalf of ...themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless she gives her consent in writing to become such party and such consent is filed in the court in which such action is brought.

[2]    Plaintiffs' Motion to Allow Notification was supported by more than ten (10) affidavits. The affiants each testified that they worked hours over forty (40) but were not properly paid overtime compensation, all at the express instruction or acquiescence of Defendant's management personnel. The testimony also showed that other similarly situated employees were unlawfully denied overtime compensation, and that these other employees may not be aware of their legal right to recover damages.

3

and chosen to join this lawsuit *without the benefit of Court-authorized notification.*[3]

***Also significant is the fact that the sixty-nine (69) opt-in Plaintiffs worked at Defendant's banking centers in <u>ten (10) states as well as Washington, D.C.</u>***[4]

On March 26, 2001, the District Court, Dimitrouleas, J., entered an Omnibus Order, *inter alia,* denying Plaintiffs' Motion to Allow Notification. A copy of said Order is attached hereto as Exhibit "A."

Plaintiffs seek permission to appeal the District Court's denial of Plaintiffs' Motion to Allow Notification.

## II.    THE QUESTION PRESENTED

The issue is whether Plaintiffs have in fact satisfied this Court's requirements for notification to potential class members, as stated in *Dybach v. State of Florida Department of Corrections,* 942 F.2d 1562 (11th Cir. 1991). According to *Dybach,* Plaintiffs must demonstrate that a) there exist individuals similarly situated to the named plaintiff(s), b) who may be desirous of being notified of the action and their right to "opt-in." *Id.* at 1567-68.

A secondary issue is whether this Court's *Dybach* test should be modified for cases,

---

[3]    At the time Plaintiffs filed their Motion to Allow Notification, there were over one hundred (100) opt-in Plaintiffs. Since then, approximately forty-four (44) of these individuals have either voluntarily withdrawn as opt-in Plaintiffs or been dismissed on an unopposed motion for summary judgment by Defendant as not eligible to participate as opt-in Plaintiffs for various reasons unrelated to the merits of the above-referenced substantive allegations.

[4]    The sixty-nine (69) current opt-in Plaintiffs worked as non-exempt Consumer Banker II, III, and IV at Defendant's banking centers in Florida, Georgia, Texas, South Carolina, Virginia, Maryland, Iowa, North Carolina, New Mexico, Tennessee, and, as mentioned, the District of Columbia.

4

like the one *sub judice*, where it is undisputed that the plaintiffs were correctly classified

as non-exempt and thus eligible to receive overtime compensation, but where the plaintiffs

allege that the defendant unlawfully denied them proper overtime compensation for all

hours worked in excess of forty (40) per week.

## III.   THE RELIEF SOUGHT

Ultimately, Plaintiffs would respectfully request that this Honorable Court reverse

the District Court's March 26, 2001 Order denying Plaintiffs' Motion to Allow Notification.

## IV.   REASONS WHY THE APPEAL SHOULD BE ALLOWED

### A.   Applicability of Rule 23(f) to the Instant Case

The underlying basis for the instant Petition is Fed. R. Civ. P. 23(f), which states:

A court of appeals may in its discretion permit an appeal from an order of a
district court granting or denying class action certification under this rule if
application is made to it within ten days after entry of the order. An appeal
does not stay proceedings in the district court unless the district court or the
court of appeals so orders.

Plaintiffs concede that the instant case is not a Rule 23 class action. Nevertheless,

Plaintiffs submit that Rule 23(f) is equally applicable to FLSA collective actions such as the

case at bar.[5] Persuasive support for this proposition comes from this Court's opinion in

*Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir.) (*en banc*), *cert. denied*, 525

U.S. 1019 (1998).

The principal issue in *Armstrong* concerned the tolling of the statute of limitations

---

[5]     In an abundance of caution, and in the event that this Court deems Fed.
R. Civ. P. 23(f) inapplicable to the case *sub judice*, concurrently with the filing of this
Petition Plaintiffs are also filing a motion with the District Court to amend the Order
denying Plaintiffs' Motion to Allow Notificaiton, requesting that the District Court certify
said Order as interlocutorily appealable pursuant to 28 U.S.C. §1292(b).

in a "class action" brought under the Age Discrimination in Employment Act (hereinafter "ADEA"). As part of the analysis of the primary issue regarding tolling, this Court discussed the procedures and standards used by courts to review, on an interlocutory basis, orders denying or granting class certification. *Significantly, while Armstrong refers to an ADEA "class action," in fact, "class actions" brought under the ADEA are really collective actions of the same type brought in FLSA cases like the instant case. This is because the ADEA incorporates the FLSA's enforcement provision, 29 U.S.C. §216(b).* Indeed, just as in an FLSA collective action, class members in an ADEA action must affirmatively opt-in to the action in order to be part of the class. Accordingly, Rule 23 is not applicable to the ADEA in connection with maintaining a "class" action. *See Grayson v. K Mart Corp.*, 79 F.3d 1097 (11th Cir.), *cert. denied*, 519 U.S. 987 (1996).

When *Armstrong* was decided, Rule 23(f) had been proposed but not yet enacted, and thus the avenues available at that time with regard to an interlocutory appeal of an order granting or denying "class" certification were limited to three (3) options, as described in *Armstrong*:

> The most common way is review after a final judgment in the case, be it after trial, after summary judgment or dismissal, or on a partial final judgment under Fed. R. Civ. P. 54(b). A much narrower route to the court of appeals is interlocutory review of the district court's class certification order under 28 U.S.C. §1292(b). An even rarer basis for appellate review of a district court's certification decision is this court's mandamus jurisdiction.

*Id.* at 1385 (footnotes omitted).

This Court went on to conclude that, based on the above three (3) options,

6

"interlocutory appeals of denials of class certification are relatively uncommon and are very

rarely successful." *Id.* at 1389. *However, this Court then included the following in a*

*footnote:*

> Proposed Federal Rule of Civil Procedure 23(f), holds the potential to
> change this analysis if passed in its current form. Proposed Rule 23(f)
> reads:
>
> > (f) Appeals. A court of appeals may in its discretion permit an
> > appeal from an order of a district court granting or denying
> > class action certification under this rule if application is made
> > to it within ten days after entry of the order. An appeal does
> > not stay proceedings in the district court unless the district
> > judge or the court of appeals so orders.
>
> 167 F.R.D. 559, 560 (1996). If the rule passes, and if it significantly
> increases the frequency of interlocutory appeals of class certification
> orders--a development which would depend in large part upon how this court
> chooses to exercise the discretion granted to it by the proposed rule--then
> we may revisit the decision taken today, and might for instance allow
> continued tolling of statutes of limitations during the pendency of an appeal
> under the new rule. We decline, however, to speculate regarding how we
> might exercise our discretion under the proposed rule and to decide the
> instant case in reliance upon an as-yet un-enacted rule.

*Id.*, n. 35.[6]

Plaintiffs submit that this Court's prescience with respect to Rule 23(f), as reflected

in *Armstrong*, was right on target: Rule 23(f) has changed the analysis with respect to

allowing interlocutory appeals of orders denying or granting class certification. *Moreover,*

*and significantly, this Court's insertion of the above-quoted footnote in an ADEA*

*collective action case clearly signifies this Court's belief that Rule 23(f) applies to*

---

[6]     The proposed language of Rule 23(f) quoted in *Armstrong* is precisely the
same as the language ultimately enacted.

*ADEA and FLSA collective actions, as well as Rule 23 class actions.*[7]

**B.    Standards for Granting Permission to Appeal Pursuant to Rule 23(f)**

Recently, in *Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000), this Court described the factors to be considered in determining whether to grant a permission to appeal pursuant to Rule 23(f). In particular, this Court announced five (5) "guideposts" to be "utilized in determining whether to grant an interlocutory appeal under Rule 23(f)." *Id.* at 1274:[8]

1)    "First, and most important, the court should examine whether the district court's ruling is likely dispositive of the litigation by creating a 'death knell' for either plaintiff or defendant." *Id.*

2)    "Second, a court should consider whether the petitioner has shown a *substantial* weakness in the class certification decision, such that the decision likely constitutes an abuse of discretion." *Id.* (emphasis in original).

3)    "Third, a court should consider whether the appeal will permit the resolution of an unsettled legal issue that is 'important to the particular litigation as well as important

---

[7]    The question of whether Rule 23(f) applies to FLSA collective actions appears to be an issue of first impression, inasmuch as Plaintiffs have located no reported opinion on the matter.

[8]    In *Prado-Steiman*, this Court became the third Circuit to explore in detail the standards to be used in connection with Rule 23(f) petitions, following the Seventh Circuit's opinion in *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999), and the First Circuit's opinion in *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000). This Court "[found] both the *Blair* and *Mowbray* opinions to be cogent explications of the Rule 23(f) inquiry," *Prado-Steiman*, 221 F.3d at 1273, but thought it important "to emphasize some additional considerations that may weigh against frequent interlocutory appellate review of class action certification decisions." *Id.*

in itself.'" *Id.* at 1275, quoting *Mowbray*, 208 F.3d 294.

4)      "Fourth, a court should consider the nature and status of the litigation before the district court. . . .tak[ing] into account such considerations as the status of discovery, the pendency of relevant motions, and the length of time the matter already has been pending." *Id.* at 1276.

5)      "Finally, a court should consider the likelihood that future events may make immediate appellate review more or less appropriate." *Id.* Examples of such events could include "settlement negotiations. . ., or the prospect of an imminent change in the financial status of a party (such as a bankruptcy filing). . . ." *Id.*

## C.     Application of the Five Guideposts to the Instant Case

### 1.     First Guidepost

Plaintiffs concede that the District Court's denial of their Motion to Allow Notification is unlikely to sound the "death knell" for their case. Indeed, Plaintiffs, and the sixty-nine (69) current opt-in Plaintiffs intend to pursue their claims to the end, regardless of the ultimate decision on collective action status.

On the other hand, Plaintiffs submit that allowing notification to potential class members in this case may very well "raise[ ] the cost and stakes of the litigation so substantially that [Defendant] would feel irresistible pressure to settle." *Prado-Steiman*, 221 F.3d at 1274. Indeed, Plaintiffs believe that there are thousands of potential class members nationwide.

In order to understand Plaintiffs' estimation of the number of potential class members in the instant case, some additional background information is necessary. At all

9

times material to this action, Defendant has maintained an employment position called "Consumer Banker" (hereinafter "CB"). There were, and are,[9] four (4) categories of CB: CB I, CB II, CB III, and CB IV.

In a companion case to the case at bar, styled *Levine et. al. v. NationsBank, N.A.*, CASE NO. 98-6308 CIV-DIMITROULEAS, where notification was granted and collective action status conferred, there were approximately *7,500* potential class members. In *Levine*, the Plaintiffs were current and former CB IIs, IIIs, and IVs. These positions were, during the time period relevant to the *Levine* litigation, classified by Defendant as *exempt* from the FLSA's overtime requirements. The *Levine* Plaintiffs challenged their exempt status. In or about December, 1997, Defendant re-classified the CB II, III, and IV positions as non-exempt from the FLSA's overtime requirements.

The Plaintiffs, opt-in Plaintiffs, and potential class members in the instant case are current and former *non-exempt* IIs, IIIs, and IVs employed by Defendant since the reclassification of these positions in or about December, 1997. Since approximately 7,500 CB IIs, IIIs, and IVs were implicated in *Levine*, it stands to reason that there are similar numbers of CB IIs, IIIs, and IVs who are potential class members in the case at bar.

Clearly, if Defendant is faced with thousands of party-Plaintiffs rather than seventy-one (71) (the two (2) named Plaintiffs plus the sixty-nine (69) current opt-in Plaintiffs), Defendant's ultimate risk will be much greater and the stakes of litigation will be much

---

[9]     Since the merger of NationsBank with Bank of America, consummated in or about March, 2000, the CB position has been called "Personal Banker." This appears to have been simply an issue of internal nomenclature, inasmuch as there seems to be no functional difference in the duties and responsibilities between the two positions. For convenience sake, Plaintiffs will refer to the position as "CB."

10

higher. Accordingly, Defendant will inevitably feel much greater pressure to settle the case. Indeed, the parties in *Levine* ultimately resolved their differences to the mutual satisfaction of all parties concerned.[10]

## 2. Second and Third Guideposts

Plaintiffs are combining the second and third *Prado-Steiman* guideposts, since in this case the District Court's erroneous application of the *Dybach* analysis is intertwined with what Plaintiffs submit to be an "unsettled legal issue that is 'important to th[is] particular litigation as well as important in itself.'" *Prado-Steiman*, 221 F.3d at 1275, quoting *Mowbray*, 208 F.3d at 294.

### a. *Introduction to the Dybach Test for Notification*

This Court's decision in *Dybach* naturally derived from the backdrop of that case's facts. In *Dybach*, the plaintiff was a probation officer employed by the State of Florida Department of Corrections ("DOC"). The underlying merits of *Dybach* involved whether the DOC had improperly classified the "probation officer" position as exempt from the FLSA overtime requirements pursuant to the "professional" exemption found at 29 U.S.C. § 213 (a)(1). Also, the plaintiff had sought an order from the district court authorizing notice to be sent to all similarly situated "probation officers," advising them of the pendency of the action and their right to opt-in pursuant to 29 U.S.C. §216(b), which was denied. *Dybach*, 942 F.2d at 1564.

This Court reversed the jury's verdict and found that, as a matter of law, the

---

[10]    There were approximately 1,500 party-Plaintiffs in *Levine*. Simply by way of example with respect to the potential damages in this case, the *Levine* Plaintiffs moved for summary judgment, seeking $48,711,472.00 in damages.

11

"probation officer" position was not a "professional" position exempt from the FLSA's overtime requirements. *Id.* at 1565-66.

At the same time, this Court "join[ed] the Second Circuit in concluding that the 'broad remedial purpose of the Act'. . . . is best served if the district court is deemed to have the power to give [court-authorized] notice to other potential members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of that power under appropriate conditions." *Id.* at 1567 (quoting *Braunstein v. Eastern Photographic Laboratories*, 600 F.2d 335, 336 (2ⁿᵈ Cir.1978), *cert. denied*, 441 U.S. 944 (1979)).

In so concluding, this Court advised as follows: "Before determining to exercise such power on application by Dybach upon remand of this case, the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* at 1567-68. This is the two-part test which the District Court utilized in the case at bar in denying Plaintiffs' Motion to Allow Notification. *See* Exhibit "A," p. 4.

### b. The District Court's Erroneous Application of Dybach

In the Order at issue, the District Court distinguished its prior order in the afore-mentioned *Levine* litigation granting notification by pointing out what it perceived to be key differences in the two cases. The problem with the District Court's *Dybach* analysis is that, if correct, it would essentially mean that notification can never be granted in a non-exemption case like the one at bar, in contract to an "exemption" case like *Dybach* or *Levine*.

12

The District Court found that there were no "similarly situated " individuals with

respect to the named Plaintiffs. According to the Court below, the

> resolution of the FLSA overtime issue in this case will vary from branch to
> branch, depending upon how individual branch managers handled overtime
> for the Consumer Banker II, III and IV positions. Individual differences will
> certainly exist as to the hours, duration and location worked by individual
> plaintiffs.

See Exhibit "A," pp. 5-6.

The District Court contrasted this holding with its previous decision to grant

notification in the afore-mentioned Levine litigation, as well as its decision to grant

notification in another companion litigation styled Perlman et al. v. NationsBank, N.A.,

Case No. 98-8805-CIV-DIMITROULEAS,[11] by noting that in Levine and Perlman Defendant

"had a clear policy of exempting all In-Store Bankers and Consumer Banker II, III and IV

from overtime pay. . . ." Exhibit "A," p. 4. Thus, according to the District Court, all potential

class members in Levine and Perlman were "similarly situated." Id.

In addition, although dozens of other CB II, III, and IV have opted-into this case,

none of them worked in the same banking center as the two (2) named Plaintiffs. The

District Court believed this fact required it to hold that there are no "similarly situated

persons willing to opt-in to this case." Exhibit "A," p. 5.

The infirmity of the District Court's ruling on Plaintiffs' Motion to Allow Notification

flows from its unduly narrow, and thus clearly erroneous, view of what it means to be

---

[11]    In Perlman, the plaintiffs were employed by Defendant as In-Store
Bankers, a position similar to the Consumer Banker position but which was performed
in a banking center located within a supermarket. The Perlman In-Store Banker
position was, like the CB II, III, and IV positions in Levine, classified by Defendant as
exempt from the FLSA's overtime requirements.

13

"similarly situated" in the context of an FLSA collective action. As mentioned above, this Court's *Dybach* test for notification refers to other employees "'similarly situated with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1568.

Plaintiffs submit that all of the Plaintiffs and opt-in Plaintiffs are in fact "similarly situated," as this Court defined the phrase in *Dybach*, since they each were unlawfully denied overtime compensation as alleged in the Complaint. Their "similarity" comes from the fact that they all held the same non-exempt position, with the same employer, doing the same job, with the same unlawful denial of overtime. The fact that these individuals worked at different branches is no more material in this case than it was in the companion *Levine* litigation, or for that matter than it was in *Dybach*, where the "probation officers" worked at different locations. In *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 303 (N.D. Cal. 1991), the court held as follows:

> ...the better view is that a class claim is not defeated simply because the proposed classes performed a variety of different jobs at different locations, reported to different supervisors or left employment than the named plaintiffs. What governs the scope of the class is whether the named [plaintiff] and [her] class members were all affected by a similar plan infected by [illegality]. The [plaintiff] need not be identically situated to potential class members.

*Id.* at 308. *See also Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D. N.Y. 1988) (to be "similarly situated," there is no requirement of "strict symmetry" or "absolute identity"; rather, potential class members must meet only a "sufficiently similar" standard).

Further compounding the District Court's error was its improper reliance on whether a corporate-wide scheme lay at the heart of the unlawful actions of which Plaintiffs

14

complain. This Court has held that, under the "liberal", "elastic and less stringent" similarly situated requirement of 29 U.S.C. § 216, "a unified policy, plan, or scheme of [illegality] may not be required." Grayson, 79 F.3d at 1095-96. In addition, this Court has also held that Plaintiffs' burden to establish the basis for notification **"is not [a] heavy" one**. Id. at 1086.

In contrast to the unduly and improperly narrow view towards notification taken by the District Court below, Plaintiffs would direct this Court to Belcher v. Shoney's, Inc., 927 F. Supp. 249 (M.D. Tenn. 1996). In Belcher, five (5) named plaintiffs alleged that the defendant[12] had failed to properly pay overtime compensation to **hourly** employees on a nationwide basis, by, for instance, paying the hourly employees "off the clock." Id. at 252. The Belcher plaintiffs moved for nationwide notification. At the time the motion was filed approximately 400 individuals had already filed consent forms, representing 22 states and over 200 cities. Id.

The Belcher court granted nationwide notification, holding that the plaintiffs had "made a sufficient showing . . . that the individuals to whom they seek to send notice of [the] lawsuit are 'similarly situated' to them to warrant the issuance of Court-supervised notice." Id. at 251. The court stated that the affidavits submitted in support of the motion for notification "indicate[d] that these practices were not limited to a single store or region." Id. at 252. The court ordered that such notice would be issued to **all** persons employed on a hourly basis by Shoney's anytime within the three (3) year period prior to the filing of

---

[12]    As the Court may be aware, Shoney's is a large nationwide chain of family-style restaurants.

15

the lawsuit. *Id.* at 252.

Significantly, the temporal and geographic scope of the notice provided in *Belcher* was for notification purposes only. In other words, simply because a person was receiving notice did not mean that they were, as a matter of law, "similarly situated" to the named plaintiffs, since, obviously, there might have existed Shoney's locations where unlawful pay practices did not occur. Also, the issuance of notice for a three (3) year period was also for notification purposes only; the court specifically noted that the issue of "wilfulness" was "an open issue to be resolved pending further proof." *Id.*

*Belcher* is quite instructive with regard to the instant case, which also involves hourly employees being denied overtime compensation, rather than salaried employees claiming an improper classification as exempt from overtime. The instant case is also similar to *Belcher* inasmuch as, at the time Plaintiffs filed their Motion to Allow Notification, a significant number of persons had already chosen to join this lawsuit, representing ten (10) states as well as Washington, D.C. In addition, as in *Belcher*, the Affidavits submitted in support of Plaintiffs' Motion to Allow Notification revealed that Defendant's unlawful pay practices are not limited to a single banking center or region. Thus, *Belcher* shows that nationwide notification is proper in a FLSA collective action involving hourly, non-exempt employees (as in the instant case), even where the unlawful acts may have taken place on a location-by-location basis.

Other courts have similarly authorized notification to potential class members in FLSA collective actions where the affected individuals were hourly, non-exempt employees working in various geographic locations. In *Foster v. The Food Emporium*, 2000 WL

16

1737858 (S.D. N.Y. 2000), the four named plaintiffs worked at the defendants'

supermarkets. The alleged unlawful pay practices in *Foster* nearly mirrored those involved

in the case *sub judice*. The court ruled that the named Plaintiffs and the proposed class

members were "similarly situated":

> All are hourly employees of the defendants. All are alleged to have been
> subjected to the same illegal work conditions. All are alleged not to have
> been paid for hours worked, to have been paid overtime, and to have been
> forced to work during lunch and break periods [sic].

*Id.* at *2 (footnotes omitted).

A motion for class notification was also granted in *McNeil v. District of Columbia*,

1999 WL 571004 (D. D.C. 1999). The named plaintiffs, guards employed on an hourly

basis with the D.C. Department of Corrections, alleged that they and other similarly

situated employees "worked during their lunch periods every day for thirty minutes and

were not paid overtime for the resulting two and a half hours a week which exceeded forty

hours." *Id.* at *1. Notably, the court was not impressed by the defendant's claim that it

would suffer "prejudice" if notification was granted:

> [I]f the defendant did not pay the guards what was due them, it broke the
> law. The defendants cannot claim any right to nevertheless escape liability
> for what is due by asking judicial assistance to keep the number of claimants
> to the barest minimum. Reduced to essentials, that is the only prejudice the
> defendants can claim from a successfully judicially supervised effort to locate
> potential claimants. I do not believe this is the kind of "prejudice" this court
> should recognize.

*Id.* at *2.

### c.    The Unsettled Legal Issue

The foregoing demonstrates how the District Court's analysis of the *Dybach* test in

connection with Plaintiffs' Motion to Allow Notification in the instant case simply cannot be

17

reconciled with the granting of similar motions by the *Belcher*, *Foster*, and *McNeil* courts. Indeed, all of these cases are factually analogous, involving hourly, non-exempt employees working in various locations and all alleging that they were unlawfully denied overtime compensation.

At the very least, *Belcher*, *Foster*, and *McNeil* emphasize how this Court's *Dybach* test for notification does not easily lend itself to situations like the one presently at issue. Without further guidance from this Court, potentially thousands of potential class members in this case, unlawfully denied overtime compensation, will go without notification of the pendency of this action and their right to opt-in simply because they were non-exempt hourly employees, instead of wrongly classified as exempt employees, when both are equally violative of the FLSA. Obviously, such a result does not comport with the broad, remedial goals of the FLSA.

Moreover, this legal question is "likely to escape effective review if left hanging until the end of the case." *Prado-Steiman*, 221 F.3d at 1275, quoting *Mowbray*, 208 F.3d at 294. Indeed, if Plaintiffs are forced to wait to appeal the instant issue until the end of the case, the statute of limitations for the potential class members will probably expire, thus mooting the question entirely. Also, a settlement of this case would similarly result in no review of the legal question presented.

Plaintiffs would direct this Court to the analysis utilized in *Felix de Asencio v. Tyson Foods, Inc.*,___ F. Supp.2d ___, 2001 WL 96221 (E.D. Pa. 2001), a collective action where the plaintiffs, hourly employees, alleged widespread violations of the FLSA's minimum wage and overtime provisions. The court implemented a two-tier method for

18

analyzing a collective action. The first tier involves the notification process, which "typically results in 'conditional certification' of a representative class" and the issuance of notification to potential class members *Id.*[13] (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)). This is because, at the first tier, "the plaintiffs have a fairly low burden of proving the similarly situated requirement." *Id.*[14]

"The second tier determination of the similarly situated question. . . is typically precipitated by a motion for 'decertification' by the defendant filed after discovery is largely complete and the matter is ready for trial." *Id.* At this point, "the court typically has much more information on which to base its decision, and makes the final determination of whether the plaintiffs are similarly situated." *Id.*

This two-step approach has been used by other courts in the context of an FLSA collective action. *See, e.g., Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 308 (S.D. N.Y. 1998) (certifying proposed class for notice and discovery purposes only and noting the possibility of future decertification); *Thiebes v. Wal-Mart Stores, Inc.*, 1999 WL 1081357, *3 (D. Or. 1999) (same); *Herrera v. Unified Management Corp.*, 2000 WL 1220973, *1 (N.D. Ill. 2000) ("Initially, notice is sent to potential class members. Then, after discovery has taken place, the court determines whether the class should be restricted based on the 'similarly situated' requirement of the FLSA.").

Plaintiffs submit that this Court should modify its *Dybach* test in accordance with the

---

[13]   At the time the instant Petition was filed, publication page references were not available for the *Felix de Asencio* case.

[14]   The comports with this Court's holding in *Grayson* that a plaintiff's burden to establish the basis for notification "is not [a] heavy" one. *Grayson*, 79 F.3d at 1086.

19

above-described two-tier process. Such a modification is especially appropriate in the context of a case involving hourly, non-exempt employees, since in "exemption"-type cases like *Dybach* or *Levine*, the question is easier because, by definition, *all* potential class members are "similarly situated" as exempt from the FLSA's overtime requirements.

### 3.   Fourth Guidepost

With regard to the fourth *Prado-Steiman* guidepost, this Court instructed that the court "may take into account such considerations as the status of discovery, the pendency of relevant motions, and the length of time the matter already has been pending." *Prado-Steiman*, 221 F.3d at 1276.

In the case at bar, the parties have just recently begun engaging in substantive discovery. Moreover, although this case has been pending for more than one (1) year, Plaintiffs would point out that their Motion to Allow Notification was filed in August, 2000 and not ruled upon until March, 2001. Certainly Plaintiffs should not be penalized for the seven month period that elapsed prior to a ruling on the Motion to Allow Notification.

### 4.   Fifth Guidepost

Plaintiffs do not believe that the fifth *Prado-Steiman* guidepost is applicable to this case. If anything, this guidepost tilts in favor of permitting appellate review of the Order at issue, inasmuch as there are currently no settlement discussions taking place between the parties (nor is there a likelihood of such discussions in the near future) and no prospects "of an imminent change the financial status of a party." *Prado-Steiman*, 221 F.3d at 1276.

20

### D.    Conclusion

Based on the foregoing, it is clear that the instant question presented is appropriate

for interlocutory review by this Court pursuant to Fed. R. Civ. P. 23(f).

## V.    THE ORDER AT ISSUE

The Order at issue is attached hereto as Exhibit "A."

WHEREFORE, Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on

behalf of themselves and all others similarly situated, hereby respectfully request that this

Honorable Court grant their Petition for Permission to Appeal District Court Order Denying

Plaintiffs' Motion for Class Notification as Authorized by the Fair Labor Standards Act,

permit Plaintiffs to appeal said Order, and take such further action as it deems just and

proper.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP.
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Suite 620 North
Hollywood, FL 33021
(954) 989-8100 Broward
(305) 624-9100 Dade
(954) 989-8700 Fax

By:

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

## CERTIFICATE OF INTERESTED PERSONS

Counsel for the Plaintiffs/Appellants, ROXANNA L. ESCUDERO and KIMBERLY

DRAKE, on behalf of themselves and all others similarly situated, certifies that the

following persons and entities have or may have an interest in the outcome of this case:

1.  Burke, Michael T., Esq. (counsel for Defendant/Appellee)

2.  Kane, Richard F., Esq. (counsel for Defendant/Appellee)

3.  Steen, Bruce, Esq. (counsel for Defendant/Appellee)

4.  Langdon, J. Mark. (counsel for Defendant/Appellee)

5.  Dimitroleas, William P., United States District Court Judge, Southern District
    of Florida (District Court Judge)

6.  Johnson, Linnea R. (District Court Magistrate Judge)

7.  Levine, Daniel R., Esq. (counsel for Plaintiffs/Appellants)

8.  Dolin, Susan L., Esq. (counsel for Plaintiffs/Appellants)

9.  Chotiner, Adam S., Esq. (counsel for Plaintiff/Appellant)

10. Muchnick, Wasserman, Dolin & Levine, LLP (counsel for
    Plaintiffs/Appellants)

11. Boies, Schiller & Flexner, LLP (counsel for Plaintiffs/Appellants)

12. Boies, Caryl, Esq. (counsel for Plaintiffs/Appellants)

13. Hinds, Anne, Esq. (counsel for Plaintiffs/Appellants)

14. BankAmerica Corporation, a foreign corporation d/b/a Bank of America
    Corporation, a foreign corporation, f/k/a NationsBank, N.A., a national
    association (Defendant/Appellee)

22

15.    Escudero, Roxanna L. (Plaintiff/Appellant)

16.    Drake, Kimberly (Plaintiff/Appellant)

17.    Adams, Elke G. (Opt-in Plaintiff/Appellant)

18.    Agnew, Deborah J.  (Opt-in Plaintiff/Appellant)

19.    Aguilar-Demarco, Tempy (Opt-in Plaintiff/Appellant)

20.    Andrews, Kathy Foster (Opt-in Plaintiff/Appellant)

21.    Armstrong, Annette B.  (Opt-in Plaintiff/Appellant)

22.    Banks, Patrick A.    (Opt-in Plaintiff/Appellant)

23.    Bari, John (Opt-in Plaintiff/Appellant)

24.    Barnes, Marilyn (Opt-in Plaintiff/Appellant)

25.    Blitch, Tracie R.  (Opt-in Plaintiff/Appellant)

26.    Bolden, Mary F.  (Opt-in Plaintiff/Appellant)

27.    Brice, William B.  (Opt-in Plaintiff/Appellant)

28.    Buchanan, Margaret A.  (Opt-in Plaintiff/Appellant)

29.    Crowder, Bryan K.  (Opt-in Plaintiff/Appellant)

30.    Czwojdak (Alsafi) (Opt-in Plaintiff/Appellant)

31.    Dantos, Stepanie (Opt-in Plaintiff/Appellant)

32.    Davis-Dunn, Candice (Opt-in Plaintiff/Appellant)

33.    Del Valle, Juan Carlos (Opt-in Plaintiff/Appellant)

34.    Dickerson, Donna H.  (Opt-in Plaintiff/Appellant)

35.    Dismukes, Dianne (Opt-in Plaintiff/Appellant)

36.    DuPont, Laurie K.  (Opt-in Plaintiff/Appellant)

23

37.    Elias, Debra (Opt-in Plaintiff/Appellant)

38.    Estrada, Mary Rose (Opt-in Plaintiff/Appellant)

39.    Fyffe, Sherry E.  (Opt-in Plaintiff/Appellant)

40.    Greene, Karen G.  (Opt-in Plaintiff/Appellant)

41.    Hardy, Joyce A.  (Opt-in Plaintiff/Appellant)

42.    Harris, Alex L.  (Opt-in Plaintiff/Appellant)

43.    Hilbers, Jennifer (Opt-in Plaintiff/Appellant)

44.    Hill, Leslie Slater (Opt-in Plaintiff/Appellant)

45.    Howard, Mary (Opt-in Plaintiff/Appellant)

46.    Justice, Deana B.  (Opt-in Plaintiff/Appellant)

47.    Kirkland, Diane (Opt-in Plaintiff/Appellant)

48.    Langley, Elizabeth (Opt-in Plaintiff/Appellant)

49.    Lee, Philip M.  Jr.  (Opt-in Plaintiff/Appellant)

50.    Lee, Peggy H.  (Opt-in Plaintiff/Appellant)

51.    MacDonald, Cindy C.  (Opt-in Plaintiff/Appellant)

52.    Magan, Danielle L.  (Opt-in Plaintiff/Appellant)

53.    Martinez (Stuchbery), Kathleen (Opt-in Plaintiff/Appellant)

54.    Meier, Janet E.  (Opt-in Plaintiff/Appellant)

55.    Mobley, Angela (Opt-in Plaintiff/Appellant)

56.    Monroe, Anastasia (Opt-in Plaintiff/Appellant)

57.    Moreno, Lillian aka Lillian Vaccato (Opt-in Plaintiff/Appellant)

58.    Motley, Jeff (Opt-in Plaintiff/Appellant)

59. O'Connor, Mary Ann (Opt-in Plaintiff/Appellant)

60. Parial, Anita (Opt-in Plaintiff/Appellant)

61. Parker, Guilbert M. (Opt-in Plaintiff/Appellant)

62. Parks, Nettie (Opt-in Plaintiff/Appellant)

63. Pehl, Dayton (Opt-in Plaintiff/Appellant)

64. Perlmutter, David (Opt-in Plaintiff/Appellant)

65. Richardson, Steven (Opt-in Plaintiff/Appellant)

66. Rogers, Melanie E. (Opt-in Plaintiff/Appellant)

67. Rojas, Nancy (Opt-in Plaintiff/Appellant)

68. Rubinfeld, Theresa Sutton (Opt-in Plaintiff/Appellant)

69. Sierra, Joseph (Opt-in Plaintiff/Appellant)

70. Skinner, Joann (Opt-in Plaintiff/Appellant)

71. Smith, Adelia (Opt-in Plaintiff/Appellant)

72. Smith, William (Opt-in Plaintiff/Appellant)

73. Stewart, Fabiola, (Opt-in Plaintiff/Appellant)

74. Taylor, Jeffrey (Opt-in Plaintiff/Appellant)

75. Thomas, Sheri (Opt-in Plaintiff/Appellant)

76. Valdez, Ron (Opt-in Plaintiff/Appellant)

77. Waddington, Julia (Opt-in Plaintiff/Appellant)

78. Walker, Carolyn S. (Opt-in Plaintiff/Appellant)

79. Washington, Samuel D. (Opt-in Plaintiff/Appellant)

80. Wells, Barbara W. (Opt-in Plaintiff/Appellant)

81. Willis, Harold L. (Opt-in Plaintiff/Appellant)

82. Wilson, Angela (Opt-in Plaintiff/Appellant)

83. Wood, Patricia J. (Opt-in Plaintiff/Appellant)

84. Woroschinski, Karen (Opt-in Plaintiff/Appellant)

85. Yancy, Evans (Opt-in Plaintiff/Appellant)

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP.
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Suite 620 North
Hollywood, FL 33021
(954) 989-8100 Broward
(305) 624-9100 Dade
(954) 989-8700 Fax

By:

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent via

U.S. Mail this ⁄⁄ day of April, 2001 to: Michael T. Burke, Esq., Johnson, Anselmo et

al., 790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220, Richard

F. Kane, Esq., McGuireWoods LLP, 3700 NationsBank Plaza, 101 South Tyron Street,

Charlotte, NC  28280, and BOIES, SCHILLER & FLEXNER, LLP, 2435 Hollywood

Boulevard, Hollywood, Florida 33020.

MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP

Attorneys for Plaintiffs
4000 Hollywood Boulevard, Suite 620 North
Hollywood, FL 33021
(954) 989-8100 Broward
(305) 624-9100 Dade
(954) 989-8700 Fax

By

SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690
ADAM S. CHOTINER, ESQ.
Fla. Bar No. 0146315

27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6145-CIV-DIMITROULEAS

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly situated,

Plaintiff,

vs.

BANKAMERICA CORPORATION,
d/b/a BANK OF AMERICA, f/k/a NATIONSBANK,

Defendant.
_____/

Magistrate Judge Johnson



## OMNIBUS ORDER

THIS CAUSE is before the Court upon Plaintiffs' Motion to Allow Notification to

Potential Class Members [DE 111], Defendant's Motion for Leave to File a Supplemental

Response to motion for notification [DE 118], Defendant's Motion for Summary

Judgment [DE 120], Defendant's Motion for Sanctions [DE 130], Plaintiffs' Motion to Amend

Complaint to Add Rodney Hensley [DE 148], the parties' Joint Motion for Extension of

Discovery and other deadlines [DE 183], Defendant's Appeal [DE 184] of Order of Magistrate

Judge, and the parties' joint consent to magistrate judge jurisdiction. The Court has carefully

considered the motions, and is otherwise fully advised in the premises.

At the outset, the Court notes that the parties jointly executed a Consent to Exercise of

Jurisdiction by a United States Magistrate Judge on February 2, 2001. This Court did not enter

an order of reference, however, until today, in order to resolve the pending motions prior to

referral to the magistrate judge. Because of this Court's experience in handling similar motions

for notification to potential class members (see below), the Court concluded that judicial





economy would best be served by the undersigned first resolving the motions, and then transferring the case to the magistrate judge.

## I. BACKGROUND

Plaintiffs' complaint asserts a claim for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. §216, ("FLSA") for employees who were employed as a Consumer Banker II, III or IV for defendant Bank of America (formerly known as Nationsbank). Plaintiff Escudero alleges in this case that she and other similarly situated current and former non-exempt employees worked the number of hours required of them, many times in excess of forty (40) hours per week, but were not paid overtime for those hours. Plaintiff further alleges that Bank of America supervisory personnel either refused to permit her to record the number of hours she worked in excess of forty (40) or simply instructed her that she was not allowed to record the number of hours she worked in excess of forty (40) hours per week, both in violation of Bank of America's record-keeping obligation under the FLSA. Bank of America denies the allegations and further asserts that it has a policy in place for Consumer Bankers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

The docket for this case reflects that approximately 110 persons with the position of Consumer Banker II, III or IV have opted in to this lawsuit at one time or another.[1] In reviewing the record as of today, it appears that approximately 20 persons have withdrawn their consents,

---

[1] There were 100 persons who had filed consent forms at the time of Plaintiff's motion for notification. See Exhibit A to Plaintiff's Motion to Allow Notification to Potential Class Members [DE 111]. At the time of Defendant's response, there were 109.

2

and 40 persons are subject to Defendant's Motion for Summary Judgment because they were not employed as a Consumer Banker II, III or IV after December 17, 1997, the time period at issue in this lawsuit.[2] Upon a review of the remaining 55 persons[3] who have opt-ed in to this lawsuit, only 20 worked in Florida. Of those twenty, only four (4) worked in Broward County, and only two (2) may have worked at the same branch as the two name plaintiffs.[4]

## II. DISCUSSION

### A. Motion for Notification

Plaintiff seeks an order of this court allowing nationwide notification of potential class members under Section 216(b) of the FLSA. It is settled in the Eleventh Circuit that a district court has the authority under the FLSA to issue an order requiring notice to similarly situated persons. See Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir.1991) (noting a split in the circuits and "concluding that the 'broad remedial purpose of the Act' is best served if the district court is deemed to have the power to give such notice to other potential

---

[2] Plaintiffs filed a Non-Opposition to Defendant's Motion for Summary Judgment [DE 178] after several interim responses directed to individual plaintiffs.

[3] There was some overlap among the withdrawn consents and those subject to summary judgment. This figure does not include name plaintiffs Roxanna Escudero and Kimberly Drake.

[4] Named Plaintiffs Roxanna Escudero and Kimberly Drake list an address in Sunrise, Florida as either their residence or their work address. No other opt-in Plaintiff is listed either by themselves on their consent forms or in Plaintiffs' motions as working in Sunrise, a city in western Broward County. One opt-in Plaintiff, Mary Ann O'Connor [DE 180] lists Plantation, Florida, a neighboring city to Sunrise, while another, Theresa Sutton Rubinfield lists Miramar, Florida, a city within commuting distance to Sunrise. Two additional opt-in Plaintiffs, Danielle Magan and Marilyn Barnes, either live on the east side of Broward County (Magan, see DE 109) or worked in a branch on the east side of Broward County (Barnes, See Exhibit A to Plaintiff's Motion to Allow Notification).

3

members of the plaintiff class to 'opt-in' if they so desire and by the district court's exercise of
that power under appropriate conditions.") (citations omitted). Before determining whether to
exercise such power, however, Dybach instructs the district court that it "should satisfy itself that
there are other employees of the department-employer who desire to 'opt-in' and who are
'similarly situated' with respect to their job requirements and with regard to their pay
provisions." Id. at 1567-1568. If the district court concludes that there are such other
employees, the court then has the discretion to establish the specific procedures to be followed
with respect to such possible opting-in. Id. at 1568.

As the parties are aware, the Court has had the opportunity to issue rulings in similar
cases involving bank tellers (Aldred, et al. v. Nationsbank, 97-7547-C.V.-DIMITROULEAS),
In-store Bankers (Perlman, et al. v. Nationsbank, 98-8805-C.V.-DIMITROULEAS), Consumer
Bankers I (Mintz v. Nationsbank, 98-8632-CIV-DIMITROULEAS) and Consumer Bankers II,
III, and IV (Levine, et al. v. Nationsbank, 98-6308-C.V.-DIMITROULEAS).[5] In Perlman and
Levine, Bank of America (or its predecessors) had a clear policy of exempting all In-Store
Bankers and Consumer Bankers II, III and IV from overtime pay, respectively. Thus, in those
two cases the Court concluded under Dybach that those individuals were similarly situated. In
Aldred and Mintz, the Court concluded that Plaintiffs had not met their burden of showing
similarly-situated employees, as Bank of America did not exempt such employees from
overtime, but rather left overtime decisions to individual branch mangers.

---

[5] The Levine case involved Consumer Bankers II, III, and IV who were allegedly
wrongly classified as exempt from the overtime provisions of the FLSA, in comparison to the
instant case in which the time period of alleged FLSA violations begins after Consumer Bankers
II, III, and IV were classified as non-exempt on December 17, 1997.

4

Turning to the first step of the Dybach test outlined above, this case is distinguishable from Perlman and Levine, as the plaintiffs in those cases were all classified as exempt employees and thus were denied overtime by virtue of a blanket corporate policy. In contrast, the Consumer Bankers II, III and IV in this action were non-exempt, and thus eligible for overtime, but were allegedly denied such overtime by their branch managers, making this case similar to Aldred and Mintz. Plaintiffs argue, however, that upper management discouraged branch managers from approving overtime. Defendant argues that there was no such policy of discouragement, and whether an individual Consumer Banker received overtime depending on working conditions at each branch.

The record as described above shows only four (4) opt-in plaintiffs from Broward County, and no evidence that any of the opt-in plaintiffs worked in the same branch as Escudero or Drake. Moreover, Plaintiffs have had more than enough opportunity to meet this opt-in burden, as this case was filed in January, 2000. Therefore, Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case.

As to the second step of Dybach, Defendant argues that Plaintiffs have not shown that Consumer Banker II, III, and IV employees are similarly situated with respect to their job requirements and with regard to their pay provisions for purposes of allowing notification to potential class members were due overtime or were exempt under the FLSA. Plaintiffs argue that under Grayson v. K Mart Corporation, 79 F.3d 1086, 1097 (11th Cir. 1996), their burden is not a heavy one to allow for notification. The Court concludes that resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions. Individual

differences will certainly exist as to the hours, duration and location worked by individual plaintiffs. The Court also concludes that the affidavits and deposition transcripts provided by Plaintiffs are not sufficient to satisfy this Court that there are other employees of Bank of America who are similarly situated with respect to their job requirements and with regard to their pay provisions as the two named plaintiffs, since no person who worked at the same branch as named plaintiffs have opted in to this case. Dybach, 942 F.2d at 1567-1568; see also Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir.1983) (finding that unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores owned by employer not sufficient to authorize notice to other potential class members).

## B. Motion for Summary Judgment

Defendants moved for summary judgment as to forty different opt-in plaintiffs because they were not employed as a Consumer Banker II, III or IV after December 17, 1997. All of these persons either were terminated by Defendant prior to December 17, 1997, or transferred out of these positions at issue prior to that date. After several interim responses disputed the facts as to certain individuals among the forty, Plaintiffs eventually filed a notice of non-opposition to the motion [DE 178]. Therefore, Defendant's motion is granted. Because these persons subject to this motion were not eligible for the proposed opt-in class in this case, they were not considered by this Court as similarly situated for purposes of the notification issue described above.

## C. Appeal of Discovery Order

Defendant has appealed Magistrate Judge Johnson's January 30, 2001 Order [DE 171] granting Plaintiffs' Emergency Motion for Protective Order stopping Defendant from taking depositions of all opt-in Plaintiffs. The Order stated that such depositions were premature at this

6

time, but strongly implied that after written discovery is propounded to these opt-in Plaintiffs, such depositions may be allowed at a further time. Although Defendant consented to Magistrate Jurisdiction on February 2, 2001, Defendant filed this appeal.[6]

Pursuant to 28 U.S.C. § 636(b)(1)(A), Magistrate Judges may decide non-dispositive motions. Upon objection by a party, the District Court may reconsider any pretrial matter where it has been shown that the Magistrate Judge's order is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1); Massey v. United Transp. Union, 868 F. Supp. 1385, 1388 (S.D.Ga.1994) (stating that a magistrate judge's order will be set aside when clearly erroneous or contrary to law), aff'd, 65 F.3d 183 (11th Cir.1995). Accordingly, unless Magistrate Judge Johnson's determination with respect to the timing of opt-in Plaintiffs' depositions was clearly erroneous, or contrary to law, that determination shall not be disturbed.

Upon a review of the record by this Court, Judge Johnson's Order is affirmed, as it was not erroneous nor contrary to law. In addition, her order is not a final order, but merely postpones the depositions of opt-in Plaintiffs until after written discovery has been completed. Finally, as noted above, the Court is now entering an Order of Reference, in accordance with the parties' consent to magistrate jurisdiction, which in effect would moot the appeal.

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.    Plaintiffs' Motion to Allow Notification to Potential Class Members [DE 111] is hereby

---

[6] The Court does not imply that the appeal is improper for this reason, since at the time the Court had not accepted the consent and entered an Order of Reference. However, such consent, now being approved by this Court, does moot the appeal.

**DENIED;**

2.   Defendant's Motion for Leave to File a Supplemental Response to motion for notification [DE 118] is hereby **DENIED;**

3.   Defendant's Motion for Summary Judgment [DE 120] is hereby **GRANTED;**

4.   Plaintiffs' Motion to Amend Complaint to Add Rodney Hensley [DE 148] is hereby **DENIED as moot,** given Plaintiff's Suggestion of Mootness given Hensley's withdrawal from the case;

5.   Defendant's Appeal [DE 184] of Order of Magistrate Judge is hereby **DENIED, and** Magistrate Judge Johnson's Order granting a protective order to Plaintiffs is affirmed

6.   Defendant's Motion for Sanctions [DE 130] and the parties' Joint Motion for Extension of Discovery and other deadlines [DE 183] are hereby **REFERRED** to Magistrate Judge Johnson;

7.   The Court will separately enter an Order of Reference of this case for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the parties' written consent;

8.   The Clerk may formally transfer this case to Magistrate Judge Johnson.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of March, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

8

Copies furnished to:

Chief Magistrate Judge Linnea R. Johnson (WPB)
Susan Dolin, Esq./Daniel R. Levine, Esq.
Caryl Boies, Esq.
Michael T. Burke, Esq.
Richard F. Kane, Esq./J. Mark Langdon, Esq.

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 01-90016-B

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUL 27 2001

THOMAS K. KAHN
CLERK

ROXANNA L. ESCUDERO,
KIMBERLY DRAKE, on behalf of
themselves and all others similarly situated,

Petitioners,

versus

BANKAMERICA CORP.,
a Foreign Corporation
d.b.a. Bank of America Mortgage
f.k.a. Nationsbank, N.A.,

Respondent.

--------------------------
Petition for Permission to Appeal an Order from
the United States District Court for the
Southern District of Florida
--------------------------

Before EDMONDSON, CARNES and BARKETT, Circuit Judges.

BY THE COURT:

The petition for permission to appeal under
Fed.R.Civ.P.23(f) is DENIED.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others similarly
situated,

        Plaintiffs.

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

        Defendant.

## AFFIDAVIT OF JUNE C. SUCH

June C. Such, being first duly sworn, deposes and says as follows:

1.    I am over twenty-one years of age, and suffer from no legal or mental disability or duress. I am competent to be a witness in this matter, and have personal knowledge of the facts to which I attest herein.

2.    I am currently employed as a paralegal by McGuireWoods LLP ("McGuireWoods"), which is the law firm defending the Bank in the above-captioned action. I am authorized by McGuireWoods to execute this affidavit on its behalf. The facts and matters to which I attest herein are based upon my participation in the search for and collection of timesheets requested by Plaintiffs' counsel for each Plaintiff in this action. The facts and matters

to which I attest herein are further based upon my review and maintenance of the timesheets retrieved for each plaintiff through this search.

3.      I have read the Declaration of Adam S. Chotiner, Esq. ("Declaration") attached to Plaintiffs' Response to NationsBank's Motion to Decertify and Dismiss Opt-In Plaintiffs as Exhibit 6. I was present during Mr. Chotiner's and Elissa Hulnick's review of the original timesheets referenced in Paragraph 3 of Mr. Chotiner's Declaration. I was present at this review as the custodian of these timesheets.

4.      Mr. Chotiner's Declaration fails to describe the "alterations" to which he refers in his Declaration. Therefore, after reviewing Mr. Chotiner's Declaration, I again reviewed the original timesheets to ascertain the extent and nature of these purported "alterations" for the following plaintiffs cited in Plaintiffs' Renewed Motion for Notification: (1) Roxanna Escudero; (2) Kimberly Drake; (3) Nancy Rojas; (4) Mary Bolden; (5) Dianne Kirkland; and (6) Angela Mobley.

5.      In reviewing the timesheets for these six plaintiffs, I observed 151 instances where it appears that the number of hours originally recorded on a timesheet may have been erased or covered with "white-out," and then replaced with a revised number of hours so that the both the original and revised figures were discernible. For these 151 instances, it was possible to discern whether the number of hours originally recorded subsequently were increased or decreased.

6.      Of these 151 apparent revisions, approximately 79 revisions appeared to increase the number of hours from the number of hours originally recorded. The remaining 72 revisions appeared to reduce the number of hours from the number originally recorded.

2

7.    With respect to each of the following plaintiffs, my review of their timesheets revealed:

a)    Kimberly Drake: Ms. Drake's timesheets appeared to contain fifty-three revisions which revealed both the original and revised number of hours. Thirty-four of these revisions appeared to increase the number of hours originally recorded; nineteen appeared to reduce the number of hours originally recorded;

b)    Nancy Rojas: Ms. Rojas' timesheets appeared to contain twelve revisions which revealed both the original and revised number of hours. Five of these revisions appeared to increase the number of hours originally recorded; seven appeared to reduce the number of hours originally recorded;

c)    Roxanna Escudero: Ms. Escudero's timesheets appeared to contain fifty-one revisions which revealed both the original and revised number of hours. Fifteen of these revisions appeared to increase the number of hours originally recorded; thirty-six appeared to reduce the number of hours originally recorded;

d)    Dianne Kirkland: Ms. Kirkland's timesheets appeared to contain seven revisions which revealed both the original and revised number of hours. Three of these revisions appeared to increase the number of hours originally recorded; four appeared to reduce the number of hours originally recorded;

e)    Angela Mobley: Ms. Mobley's timesheets appeared to contain five revisions which revealed both the original and revised number of hours. Two of these revisions appeared to increase the number of hours originally recorded; three appeared to reduce the number of hours originally recorded;

      (f)    <u>Mary Bolden</u>: Ms. Bolden's timesheets appeared to contain twenty-three revisions which revealed both the original and revised number of hours. Thirteen of these revisions appeared to increase the number of hours originally recorded; ten appeared to reduce the number of hours originally recorded.

      8.    Many of the revisions that reduced the number of hours originally recorded on a timesheet appeared to be corrections of addition errors -- e.g., mistakes made when adding daily hours worked to arrive at a daily or weekly sum. The timesheets also contain "revisions" that appear only to clarify or repeat the number of hours originally recorded in a more legible fashion.

Further this affiant sayeth not.

JUNE C. SUCH

Sworn to and subscribed before me,
a Notary Public, this _20th_ day of
_____, 2001.

Notary Public

My Commission Expires: _____

Chris Murphy, Notary Public
Mecklenburg County, North Carolina
My Commission Expires 6/15/2005



```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2
                   CASE NO. 00-6145-CIV-DIMITROULEAS
 3
   ROXANNA L. ESCUDERO, and            )
 4 KIMBERLY DRAKE, on behalf of        )
   themselves and all others similary  )
 5 situated,                           )
                                       )
 6                  Plaintiff's        )
                                       )
 7      vs.                            )
                                       )
 8 BANKAMERICA CORPORATION,            )
   a foreign corporation d/b/a         )
 9 BANK OF AMERICA CORPORATION,        )
   a foreign corporation, f/k/a        )
10 NATIONSBANK, N.A., a national       )
   association,                        )
11                                     )
                    Defendant,         )
12 ----------------------------------

13
                                337 East Las Olas Boulevard
14                              Fort Lauderdale, Florida
                                February 9, 2001
15                              2:30 p.m. - 5:30 p.m.

16
   APPEARANCES:
17
     MUCHNICK, WASSERMAN, DOLIN & LEVINE, LLP
18   BY:  SUSAN DOLIN, ESQ.
     Attorneys for the Plaintiffs
19
     MCGUIRE, WOODS, BATTLE & BOOTHE, LLP
20   BY:  J. MARK LANGDON, ESQ.
     Attorneys for the Defendant
21                                          ORIGINAL
22                   *  *  *

23                   DEPOSITION

24                      OF

25              DIANE M. KIRKLAND
```

DOWNTOWN REPORTING (954) 522-3376

```
 1  computer and continue to work?

 2       A.   No, because I needed my computer.

 3       Q.   Do you know who -- does your computer record

 4  the time you log in and the time you log off?

 5       A.   I'm sure it does.

 6       Q.   Do you know who has those?

 7       A.   No.

 8       Q.   Did you have an NB code or NationsBank code

 9  that you would code into your computer, code number?

10       A.   Not that I remember.

11       Q.   You don't remember the number?

12       A.   You mean in my computer to log in in the

13  morning?

14       Q.   Right.

15       A.   Just probably my password.

16       Q.   Do you remember your password?

17       A.   No.

18       Q.   NBK number?

19       A.   No, I don't remember it.

20            MS. DOLIN:   I have nothing further.

21            MR. LANGDON:   I have a few questions.

22                     REDIRECT EXAMINATION

23  BY MR. LANGDON:

24       Q.   Ms. Kirkland, Ms. Dolin asked you a series of

25  questions concerning timecards and what appears to be
```

```
 1  time entries over top of previous time entries, correct?
 2       A.   Correct.
 3       Q.   Is it possible that you could have made those
 4  entries up top over what you had previously entered?
 5            MS. DOLIN:  Object to form.
 6            You can answer.
 7            THE WITNESS:  Anything's possible.
 8  BY MR. LANGDON:
 9       Q.   Did you testify at some point you would go
10  back and change the time that you entered on the
11  timecard?
12       A.   Yes.
13       Q.   So it's possible that some of these entries
14  here could also be the ones or could be entries you went
15  back and modified, correct?
16       A.   Could be.
17       Q.   Do you have any knowledge of anyone altering
18  your timecards other than yourself?
19       A.   No knowledge of that, no.
20       Q.   If you will flip to the first front side --
21  front side rather of the third page of Exhibit Number 9.
22  If you will look in the second row of information under
23  the heading 25W; do you see that?
24       A.   Yes.
25       Q.   Do you see that entry?
```

```
 1        A.    Yes.
 2        Q.    Can you make out the number that appears under
 3 what appears there to be a 9?
 4        A.    Yes.
 5        Q.    What is that number?
 6        A.    9.75.
 7        Q.    Can you see what number may have existed
 8 underneath the 9 before the 9 was transcribed on top of
 9 it?
10        A.    Looks like 8.75.
11        Q.    I believe you testified earlier that as a
12 result of you finding out you were not going to be able
13 to recover any compensation for vacation time, Ms. Horne
14 allowed you to go in and record some overtime; is that
15 correct?
16        A.    Yes.
17        Q.    If you will flip back to the first page of
18 this exhibit.  Ms. Dolin asked you about the entry 14:30
19 and the column for Wednesday the 7th; is that correct?
20        A.    That's correct.
21        Q.    Did you at times also use military time to
22 record your time?
23        A.    No.
24        Q.    Had you in the past used a 24-hour clock to
25 record your time?
```

```
 1        A.    Yes.

 2        Q.    You testified --

 3        A.    I'm sorry.  You said a clock in the past?

 4        Q.    24-hour clock to record your time?

 5        A.    Military time, in the past?

 6        Q.    You, in fact, have done that?

 7        A.    Yeah, a long time ago.

 8        Q.    You testified at one point you used White-Out

 9 on a timecard; is that correct?

10        A.    One time, yes.

11        Q.    And you said somebody said something to you

12 about that?

13        A.    Right.

14        Q.    Who said something to you about it?

15        A.    Louise.

16        Q.    What did she say to you about using White-Out

17 on a timecard?

18        A.    She said we shouldn't use White-Out, just to

19 mark over.

20        Q.    To mark over?

21        A.    Right.

22        Q.    Now, Ms. Dolin also asked you a series of

23 questions about your understanding or your -- well, your

24 understanding that you were not to record hours worked

25 in excess of 40; is that correct?
```

1 hours does it show for the week?

2     A.    40.

3     Q.    And if you only had the 8, it wouldn't have

4 shown quite 40, would it?

5     A.    That's correct.

6     Q.    Now, let me ask you this, when you made the

7 changes on the timecards that you testified about before

8 so that you would only show 40 hours, did someone tell

9 you to do that?

10     A.    We knew we could only do 40, so I only -- I

11 made it so it would be 40.  Both of these on this

12 particular one, say where that 3 came from, I don't know

13 what that 3 is.  That says 40 and that says 40.

14     Q.    My question is, did somebody tell you to make

15 those changes?

16     A.    No.

17     Q.    When Louise Horne saw the White-Out -- why did

18 you make the White-Out on that one that Louise Horne saw

19 and counseled you about?

20     A.    That was probably one of the first ones maybe.

21     Q.    Was that to change your hours?

22     A.    It was to change it to make it 40.  And I

23 evidently had my time incorrect when I recalculated.

24     Q.    Did she say anything about you shouldn't have

25 changed your hours; you should have shown your true

DOWNTOWN REPORTING (954) 522-3376