UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-06145-CIV-DIMITROULEAS
Magistrate Judge Johnson

ROXANNA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf of
themselves and all others
similarly situated,

    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a
BANK OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national association,

    Defendant.

_____/



## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO ALLOW NOTIFICATION TO POTENTIAL CLASS MEMBERS

COME NOW the Plaintiffs, ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, and, pursuant to Local General Rule 7.1.A and 29 U.S.C. § 216(b), hereby file their Reply Memorandum in Support of Their Renewed Motion to Allow Notification to Potential Class Members, as Authorized by the Fair Labor Standards Act, 29 U.S.C. §216(b), and as grounds therefor show as follows:

As did their Motion to Decertify, Defendants' Response to the instant motion erroneously proceeds from the premise that the litigation in the instant case squarely is ripe for the second tier of the two-tiered analysis described in *Hipp v. Liberty National Life*



*Ins. Co.*, __ F.3d __, 2001 WL 575489 (11th Cir. 2001), and *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991). The Court has been briefed *ad infinitum* on this analysis, and it need not be repeated here. More significant are Defendants' misleading representations as to the posture of the instant litigation. Despite what the Defendants assert, as recited in detail in Plaintiffs' Motion itself, the discovery is at best, far mor incomplete than complete. At the very most, then, the Court should analyze the issue of notification somewhere between the first, most liberal tier of the *Dybach* analysis, and the second, most rigid, tier. In *Thiessen v. General Elect. Capital Corp.*, 13 F. Supp.2d 1131 (D. Kan. 1998), the Kansas court adopted such an intermediate approach between the two tiers. It incorporated an analysis of the factors generally reserved for the second, post-discovery tier, but judged it against the more lenient, first-tier standard. In *Thiessen,* there were thirty opt-ins already and the parties had engaged in three months' of discovery, although the court does not specify what type or how fruitful the discovery was. The court did acknowledge, however, that the record was not sufficiently developed to allow it to review the matter under the more exacting second-tier standards.

If the Court does indeed take such an approach, it will see the fallacy in Defendants' reasoning. Initially, the Defendants continually challenge the Plaintiffs on the similarity of their "core issues" as raised both in the Complaint and after limited discovery. Defendants' contention is wide of the mark. The "core issue" is simply that the Defendants', despite having rectified the erroneous classification of the CB position from exempt to non-exempt, nevertheless continue to violate the FLSA by failing and refusing to pay these employees overtime as required by law. The affiants and deponents have all indicated widespread unlawful pay practices, each of which is designed to deliberately cheat employees out of

their overtime pay, and include and range from prohibiting employees from recording worked overtime to providing bogus "compensatory time"[1] to altering time cards. The "core issue" has never varied, Defendants' assertions to the contrary notwithstanding. That these practices are widespread is evidenced by the fact that the opt-ins and affiants come from Florida and beyond, encompassing many other states and regions.[2]

Nor does the allegedly "dwindling" opt-in class detract from the appropriateness of collective status. As the Court full well knows, the majority of the opt-ins were required to drop out because they had signed releases in the companion *Levine* suit. This shows nothing more than that after the Defendants finally came into FLSA compliance on the classification issue, they continued to violate the law by failing to pay the newly non-exempt CBs the overtime pay to which they were entitled (hence the opt-in in the first place), and

---

[1] The Defendants' assertion, at page 14 of their Response, that "compensatory time" was properly paid, as described by Rodney Sumpter and detailed in Plaintiffs' Motion, is so disingenuous that it borders on the sanctionable. In the first place, "compensatory time" in its true usage, which involves giving employees time off at one and one-half the regular time, is permitted only for government workers, as were the employees cited in the *Brennan* case relied upon by the Defendants. 29 U.S.C. § 207(o), Since NationsBank is decidedly *not* the government, it cannot take advantage of "compensatory time." Moreover, even if NationsBank could compensate its employees with compensatory time, it would have to be in the same, not the week after, the overtime is incurred. 29 U.S.C. § 207(o)(7). Further, the exception cited in *Brennan* is further only for those employees paid on a "fixed workweek," not on a *per annum* basis as are the CBs here. Still further, *Brennan* was overruled by the United States Supreme Court's holding in *National League of Cities v. Usery*, 426 U.S. 833 (1976), which itself was subsequently overturned in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S.528 (1985). *But see Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000)(finding ADEA not applicable to states under eleventh amendment).

[2] Indeed, Defendants cannot have it both ways. At page 11 of their response memorandum, Defendants state, albeit erroneously, that Plaintiffs did "not proffer any evidence that this purported 'scheme' is a corporate-wide policy *or was sufficiently widespread or similar to justify notification.*" [emphasis added]. In their Motion to Decertify, however, Defendants contend that the widespread nature of the alleged violations militates against collective action treatment. Motion at pp. 9 *et seq.*

can now get away with it solely because of the fortuitousness of the release. Moreover, affidavits and other materials produced in support of a request for collective action notification are not appropriate to trigger the making of judicial credibility findings or judicial findings on the merits of the claim. .As the Southern District of New York stated in *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997):

> [T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that the definable group of "similarly situated" plaintiffs can exist here. ...

See also *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997). The only issue, therefore, is whether Defendants satisfied the following showing:

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.

*Thiessen, supra; Dybach, supra; Brooks v. BellSouth Tel., Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 948 (M.D. Fla. 1994). As the Plaintiffs point out in response to Defendants' Motion to Decertify, Defendants fall far short of having made this showing on the record now before the Court.

That this is so is pointed up by the Defendants' contention that Plaintiffs' "altered time card theory" is basically faulty and irrelevant besides. This contention, to quote one of Defendants' earlier pleadings, is such a *non sequitur* that it would make a red herring blush. Defendants conveniently forget, or simply ignore, the deposition testimony of the Plaintiffs that not only were many of their time cards altered, but many were missing and forged as well. *See* ¶ 17 *et seq.* at Plaintiffs' Motion. Ms. Such's (the Defense counsel's paralegal) affidavit thus only begs the question; the fact that the cards were altered, forged or simply missing evidences the time cards' lack of reliability such that they are of precious

little probative value in getting to the truth as to how many hours these Plaintiffs actually worked and got paid for.[3] Indeed, the fact that the very best evidence of the number of hours worked by the employees at issue, the time cards that Defendants are required by law to keep, are inaccurate, missing, or downright forged, is significant indeed both to Plaintiffs' ability to prove their claim and which party will bear the ultimate burden of proof, as well as Defendants' actions with respect to the proper payment of overtime. The "altered time card theory" is thus not only based on solid evidence, but is perhaps one of the most relevant aspects of this case.[4]

It therefore cannot be gainsaid that what the limited discovery has turned up thus far is at best the tip of the iceberg, and that additional discovery clearly needs to be done before the Court can make any decision to decertify this matter as a collective action. On the other hand, the Plaintiffs have more than met their burden under *Dybach* and *Hipp* to show that not only are there likely more potential plaintiffs in the Defendants' banking

---

[3] Moreover, even if some of the alterations were corrections, as Ms. Such suggests, there is no explication for why the corrections were not made by the employees themselves. Further, there is no explication for the alterations that are not corrections, for signatures which are not those of the employees, and for the cards that are missing.

[4] Defendants further make a claim for attorney fees and costs in connection with their filing a response to Plaintiffs' Motion. Tellingly, Defendants cite no reason or authority for such a request. Defendants have not pointed to any violation of Fed. R. Civ. P. 26 or 36 which would allow for such an award, nor have they followed the statutory protocol for such an award as sanctions pursuant to Fed. R. Civ. P. 11. There is no allegation or proof that Plaintiffs filed this Motion in bad faith so as to even possibly result in an award of sanctions under 28 U.S.C. § 1927, *Floyd v. American Airlines, Inc.*, 915 F.2d 1414 (10th Cir. 1990), and neither suggestion nor proof that either Plaintiffs' counsel or the Plaintiffs themselves were "substantially motivated by vindictiveness, obduracy or *mala fides...*" in filing this Motion so as to implicate an award of sanctions pursuant to the Court's inherent power. *Mark Indus., Ltd. v. Sea Captains Choice, Inc.*, 50 F.3d 730 (9th Cir. 1995). Indeed, there is nothing to show that the filing of this Motion is anything other than zealous, honest advocacy of counsel on behalf of their clients, made necessary by new evidentiary discoveries and new, controlling appellate case law, and in accordance with counsel's duties and obligations under the Rules Governing the Florida Bar.

system who will be unfairly deprived of the opportunity to vindicate their rights should notification continue to be denied, but that, based on "core issues" involved, these persons are undisputedly similarly situated sufficient appropriately to be afforded class treatment.

WHEREFORE, Plaintiffs ROXANNA L. ESCUDERO and KIMBERLY DRAKE, on behalf of themselves and all others similarly situated, request this Honorable Court to grant their Renewed Motion to Allow Notification to Potential Class Members.

Respectfully submitted,

MUCHNICK, WASSERMAN, DOLIN
& LEVINE, LLP
Attorneys for Plaintiffs
4000 Hollywood Boulevard, Ste 620N
Hollywood, FL 33021
(954) 989-8100 - Broward
(305) 624-9100 - Dade
(954) 989-8700 - Fax

By: *Susan L. Dol.*
SUSAN L. DOLIN, ESQ.
Fla. Bar No. 708690

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail this 16th day of August, 2001 to: Michael T. Burke, Esq., Johnson, Anselmo et al., 790 East Broward Boulevard, Suite 400, Fort Lauderdale, Florida 33303-0220, and Richard F. Kane, Esq., McGuireWoods LLP, 3700 NationsBank Plaza, 101 South Tyron Street, Charlotte, NC  28280, and BOIES, SCHILLER & FLEXNER, LLP, 2435 Hollywood Boulevard, Hollywood, Florida 33020.

By: _____
SUSAN L. DOLIN, ESQ.
e-mail: sldolin@mwdl-law.com

F:\WPDOCS\~SLD\Escudero\Pleading\replymotnotif.2d.wpd