**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 00-6145-CIV-DIMITROULEAS/JOHNSON**

ROXANA L. ESCUDERO, and
KIMBERLY DRAKE, on behalf
of themselves and all others
similarly situated,

    Plaintiffs,

vs.

BANKAMERICA CORPORATION,
a foreign corporation d/b/a BANK
OF AMERICA CORPORATION,
a foreign corporation, f/k/a
NATIONSBANK, N.A., a national
association,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DECERTIFY AND TO DISMISS OPT-IN PLAINTIFFS

**THIS CAUSE** is before the Court on Defendant's Motion to Decertify and to Dismiss Opt-In Plaintiffs (Docket Entry No.232). This matter was referred to this Court by the Honorable William P. Dimitrouleas, United States District Judge for the Southern District of Florida, after the parties consented to trial before the undersigned United States Magistrate Judge. In view of said consent, the above-stated motion shall be disposed of by order rather than by report and

1



recommendation. For the following reasons Defendant's Motion to Decertify and to Dismiss Opt-In Plaintiffs is granted.

## BACKGROUND

Plaintiffs, Roxanna L. Escudero and Kimberly Drake (collectively "Plaintiffs"), filed the instant action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201, et seq. ("FLSA"), "on behalf of themselves and all others similarly situated" alleging their employer, BankAmerica Corporation, a foreign corporation d/b/a Bank Of America Corporation, a foreign corporation, f/k/a NationsBank, N.A., a national association ("Defendant"), failed to pay them overtime in accordance with the FLSA. In the Complaint Plaintiffs allege that they worked for Defendant as Consumer Banker IIs and IIIs; that NationsBank reclassified their positions as non-exempt for purposes of the FLSA in December, 1997; that NationsBank paid them on an hourly basis; that between December, 1997 and October 29, 1999, they worked "many times in excess" of forty hours per week; that NationsBank violated the FLSA by not paying them and other similarly situated employees overtime pay; and that they and those similarly situated to them are entitled to certain damages and other relief. Compl., ¶¶ 8-10, 13-15. Defendant denies the pertinent allegations and asserts that at all times it had a policy in place for Consumer Bankers that overtime must be calculated on a completed workweek and paid at time and a half for hours worked over forty (40) hours.

2

On August 21, 2000, nearly seven months after suit was commenced, Plaintiffs filed a Motion to Allow Notification to Potential Class Members pursuant to 29 U.S.C. §216(b). The District Court denied the motion on March 26, 2001, finding that despite having "had more than enough opportunity to meet [their] opt-in burden," Plaintiffs failed to establish that notice was appropriate pursuant to Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562 (11th Cir. 1991). Omnibus Order of March 26, 2001, pp. 3, 5.   In so ruling the District Court found that after reviewing the deposition testimony Plaintiffs submitted in support of their Motion for Notification, and the countervailing affidavits and deposition testimony NationsBank submitted in opposition, "Plaintiffs have not shown that similarly situated persons are willing to opt-in to this case." Id. at 5.  The Court further found that "resolution of the FLSA overtime issue in this case will vary from branch to branch, depending upon how individual branch managers handled overtime for the Consumer Banker II, III and IV positions." Id.   For these reasons Plaintiffs' Motion for Notification was denied. Id.

As of this date the following relevant evidence appears of record.  Among the evidence presented by Plaintiffs in support of their Motion for Notification, Plaintiffs' submitted affidavits from thirteen opt-in Plaintiffs as a "representative" cross sample of the putative class as well as a "master list" providing the location and name of the banking centers at which each opt-in Plaintiff in the putative class worked. Plaintiffs

subsequently filed "corrected" affidavits from several members of their "representative" cross sample of opt-in Plaintiffs, as well as affidavits from other opt-in Plaintiffs in support of or in opposition to other motions. Plaintiffs' counsel also has deposed seven current or former managerial employees of Defendant. Defendant, for its part, has deposed six named and opt-in Plaintiffs and has responded to three sets of Interrogatories and eight sets of Requests for Production of Documents served upon it by Plaintiffs' counsel.

During the course of this litigation, 116 individuals opted-in as Plaintiffs in this action. On March 26, 2001, the District Court dismissed forty opt-in Plaintiffs pursuant to Defendant's October 23, 2000 Motion for Summary Judgment. On July 19, 2001 the undersigned dismissed 26 opt-in Plaintiffs pursuant to two Motions for Summary Judgment filed by the Defendant. Numerous other opt-in Plaintiffs have voluntarily withdrawn from this action. As a result of the foregoing dismissals and voluntary withdrawals there are approximately 25 opt-in Plaintiffs remaining in this action at the present time.

## LEGAL ANALYSIS

29 U.S.C. §216(b) permits plaintiffs to proceed under the FLSA "for and in behalf of ... themselves and other employees similarly situated." While the statute does not define "similarly situated", the Eleventh Circuit has held that the "similarly situated" requirement of §216(b) is "more elastic and less stringent than the

4

requirements found in Rule 20 (joinder) and Rule 42 (severance)." Grayson v. K-Mart Corporation, 79 F.3d 1086, 1095 (11th Cir. 1996). To be "similarly situated," "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." Id. at 1096.

The Eleventh Circuit, like the majority of other courts which have addressed the issue, relies on a two-tiered analysis for making certification determinations under §216(b) of the FLSA. Under this approach, the "first determination is made at the so-called 'notice stage'" to assess whether "class" notice is appropriate. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001). At this early stage, because the court is presented with only minimal evidence, the "determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Id. (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207 (5th Cir. 1995)). "The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Id. At this second stage the court analyzes the "similarly situated" issue under a higher standard. Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D.Colo. 1997)("At this second stage, although not specifically deemed, the "similarly situated" standard is higher"); see also Hipp, 252

5

F.3d at 1218 ("'Based on our review of the case law, no representative class has ever survived the second stage of review.'")(quoting Mooney, 54 F.3d at 1207); Thiessen v. General Electric Capital Corp., 996 F.Supp. 1071, 1080 (D. Kan. 1998)(hereinafter "Thiessen I")(at this stage of the litigation, "the vast majority of district courts deny certification. ..."). If the plaintiffs are deemed "similarly situated," the district court allows the case to proceed to trial as a collective action under §216(b).

Despite the fact Judge Dimitrouleas previously undertook first stage review on March 26, 2001, when he denied Plaintiffs' Motion to Allow Notification to Potential Class Members pursuant to 29 U.S.C. §216(b), Plaintiffs argue this action should once again proceed under the more liberal first stage of review instead of the stricter second stage as might be expected. Plaintiffs premise their argument on the assertion that there remains "much discovery yet to be completed." Plaintiffs' Response, p.4. According to Plaintiffs, "the Court has little more before it to decide whether the 'class' should be decertified than it did when it was called upon to decide whether it should be certified in the first place. Further, no trial date has been set yet, and the case is not anywhere close to being ready for trial. Therefore, the stage of this litigation does not nearly approach that at which the type of inquiry requested by Defendant can be conducted." Id.

Plaintiffs' argument is unavailing. A court need not wait until the end of

6

discovery to resolve a defendant's motion to decertify; it need only satisfy itself that a sufficient factual record exists to evaluate whether the opt-in plaintiffs are similarly situated to the named plaintiffs such that the matter may proceed as a collective action pursuant to the Fair Labor Standards Act. See Hipp, 252 F.3d 1208 (generally); Ray v. Motel 6 Operating, Ltd. Partnership, 1996 WL 938231 (D. Minn. 1996)(sufficient factual record before the court warrants denial of class notification and dismissal of opt-in plaintiffs before discovery even begins); Mertz v. Treetop Enterprises, Inc., 1999 U.S. Dist. LEXIS 18386 (N.D. Ala. 1999)(noting the "second stage" of the class certification analysis may begin after the notice phase upon the completion of some discovery on the class members' allegations). As Defendant correctly observes, the key inquiry is whether the opt-in Plaintiffs' allegations are sufficiently similar to those of the named Plaintiffs such that it is appropriate to proceed as a collective action.

In the instant case, the record evidence and state of discovery is more than sufficient for purposes of assessing whether the opt-in Plaintiffs and named Plaintiffs are similarly situated. Plaintiffs' allegations and the scope and nature of their claims are sufficiently described and developed in their responses to Defendant's Interrogatories and Requests for Admission. Defendant is correct when it observes that additional discovery will only serve to test the veracity of the opt-in Plaintiffs' claims and the nature of the opt-in Plaintiffs' damages; it will not alter the opt-in

Plaintiffs' fundamental allegations against the Defendant. It is these allegations, together with the opt-in Plaintiffs' own explanations of these allegations as found in their interrogatory and admission request responses, which serve as the best evidence of whether the opt-in Plaintiffs and the named Plaintiffs are similarly situated.

Plaintiffs related argument, that this Court should defer ruling on the Motion to Decertify because of the existence of what Plaintiffs allege to be altered and incomplete timecards, is equally unavailing. According to the affidavit of June Such, attached to Defendant's Reply memorandum as exhibit 1, many of the alterations to which Plaintiffs refer resulted in either an *increase* of recorded hours for the particular individual or appear to be corrections of miscalculated hours based on the timekeeper's recorded hours. This is hardly evidence of a common scheme to deny overtime pay to the Plaintiffs. In short, this Court finds this argument and the other ones like it irrelevant to Defendant's Motion to Decertify and unrelated to the Plaintiffs' burden of establishing that the named and opt-in Plaintiffs are similarly situated.

The Court now turns to the merits, and its analysis of the "similarly situated" issue. The parties are in agreement that at the second stage of review courts generally focus on two factors in determining whether plaintiffs are "similarly situated" and, therefore, entitled to proceed collectively. The first factor for

consideration is the predominance of individual issues. The issues considered are those regarding liability and defenses to liability. The second factor focuses on fairness and procedural considerations. The question is whether a trial of the action in which the plaintiffs proceed collectively could be coherently managed and whether evidence could be presented in such a manner that would not confuse the jury or unduly prejudice any party. See, e.g., Thiessen v. General Electric Capital Corp., 13 F.Supp.2d 1131, 1141-44 (D. Kan. 1998)("Thiessen II"), rev'd on other grounds, 255 F.3d 1221 (10th Cir. 2001); Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 568 (N.D. Ala. 1995), aff'd, 114 F.3d 1202 (11th Cir. 1997); Reeves v. Alliant Tech Systems, Inc., 77 F.Supp.2d 242, 247 (D. R.I. 1999). The Court is persuaded that application of the above two factors to the facts and circumstances of this case mandates decertification.

The record evidence in this case clearly demonstrates that individual issues predominate. The law is well established that the existence of a common scheme or policy which violates the law is probative, indeed often critical, in determining whether a collective action is warranted. See Lusardi v. Xerox Corp., 122 F.R.D. 463, 466 (D.N.J. 1988)(collective action decertified because plainitffs failed to "uncover[] any policy or practice of age discrimination"). That is, the more decentralized the alleged wrongdoing, the less likely it is that the court will permit plaintiffs to proceed collectively. See Baum v. Shoney's Inc., 1998 U.S. Dist. LEXIS

21484 (M.D. Fla. 1998)(existence of a "centralized" scheme or policy probative in the determination of whether putative class members are "similarly situated"); see also Brooks, 164 F.R.D. at 567; Reeves, 77 F.Supp.2d at 249; Mertz, 1999 U.S. Dist. LEXIS 18386; Ray, 1996 WL 938231; Harper v. Lovett's Buffet, 185 F.R.D. 358, 363 (M.D. Ala. 1999).

The evidence in this case is devoid of even a hint of any "centralized scheme" or pervasive practice to deny any bank employees overtime pay to which they were entitled. There is no allegation in this case that Defendant misclassified Plaintiffs' positions as exempt for overtime pay purposes, or that Defendant denied Plaintiffs overtime pay based on a written, corporate-wide payroll or compensation policy. Instead, Plaintiffs allege that Defendant *properly* classified them as *non-exempt*, but failed to allow them to record their overtime hours and refused to pay them for the overtime hours they worked "off-the-clock." As Defendant correctly points out, however, Plaintiffs have not proffered any evidence that this alleged "scheme" is a corporate-wide policy or was sufficiently wide-spread or pervasive as to warrant collective treatment.

Indeed, the evidence is to the contrary, revealing that to the extent any of the alleged FLSA violations can be proved, they were random, sporadic and completely dependent on the actions of each Plaintiff's Banking Center Manager. This fact is supported by the disparate nature of the Plaintiffs' allegations together with the

10

Plaintiffs' responses to Defendant's Admission and Interrogatory Requests. Plaintiffs acknowledge that how Defendant "managed" overtime was "within the province of either the regional managers or the banking center managers." See Plaintiffs' Response Brief, p.5. And further allege that how such overtime was managed was dramatically different depending on the manager in charge. So that some of the Plaintiffs allege they were not permitted to record *any* overtime, see Compl., ¶¶ 14-15; other Plaintiffs allege they were permitted to record some, but not all of their overtime hours, see Plaintiffs' responses to Defendant's First Set of Interrogatories, attached as Exh. 2 to Defendant's Reply Brief; other Plaintiffs allege they were required to alter their time cards or had them altered, Id. and Plaintiffs' Response Brief, pp.6-7; and, finally, still others allege they were given illegal "compensatory time" in lieu of overtime pay. Id. and Plaintiffs' responses to Defendant's Admission Requests, attached as Exh. 3 to Defendant's Reply Brief. Case law is clear that disparate allegations such as these are not well-suited to collective treatment. See Ulvin v. Nat'l Life Ins. Co., 141 F.R.D. 130, 131 (D. Minn. 1991)(implementation of policy on a decentralized level by local management insufficient to render class similarly situated). See also Baum, 1998 U.S. Dist. LEXIS 21484 (existence of a "centralized" scheme or policy probative in the determination of whether putative class members are "similarly situated").

Plaintiffs argue they have satisfied the "similarly situated" requirement by their

11

showing that Defendant "had a centralized policy of 'managing' its overtime" and that the "resultant unlawful conduct complained of in this litigation is the result of widespread company practice." See Plaintiffs' Response Brief, pp. 5-6. This argument is unavailing. Despite the argument's dire undertones, there is nothing sinister about the Defendant's efforts to "manage" overtime. The evidence cited by Plaintiffs in support of their position is the Defendant's concession that it "managed" overtime by "[s]chedul[ing] people properly so that we don't have people working a lot of overtime." See Plaintiffs' Response Brief and Exh. 8 attached thereto. As Defendant correctly observes, however, there is nothing illegal or improper about this policy. After all, businesses are in business to make money. One could say the hallmark of a well run business is its ability to control all of its expenses, including its labor costs. The fact a company has a plan in effect to "manage" overtime is to be expected and does not in any way demonstrate unlawful conduct by the company as a whole. [1]/

The disparate nature of Plaintiffs' allegations regarding how overtime was

---

[1] The Court further observes that it already has recognized that Defendant has a written policy "of compensating non-exempt employees who worked and recorded in excess of forty hours in a workweek [at] an overtime wage rate of one and one-half times the regularly hourly rate." See May 8, 2000 Order in Jacqueline Mintz, et al. v. NationsBank, N.A., Case No. 98-8632-CIV-DIMITROULEAS/JOHNSON, denying plaintiffs' Motion to Allow Notification to Potential Class Members and September 2, 1998, Omnibus Order in Juliet Aldred, et al. v. NationsBAnk, N.A., Case No. 97-7547-CIV-DIMITROULEAS/JOHNSON, denying plaintiffs' Motion to allow Notification to Potential Class Members.

12

managed at the various branches is only made worse by the disparate nature of the opt-in Plaintiffs' damage claims. The damage claims asserted in this case vary significantly among the opt-in Plaintiffs due to the substantial differences in the length of time the opt-in Plaintiffs worked as non-exempt Consumer Bankers. For example, opt-in Plaintiff Diane Dismukes worked as a non-exempt Consumer Banker for only fourteen days. See Affidavit of Debra Robinson and chart appended thereto, attached as Exh. "F" to Defendant's Motion. Opt-in Plaintiffs Guilbert Parker and Trace Blitch worked as non-exempt Consumer Bankers for less than two months. Id. Others worked as non-exempt Consumer Bankers for anywhere from two to six months. Id. Still others worked as non-exempt Consumer Bankers for much longer periods of time. Id. The significant variation in the damages to which the opt-in Plaintiffs assert they are entitled "demonstrates a lack of commonality," and adds further support for the conclusion that permitting this case to proceed as a collective action would be unjustified. See Ray, 1996 WL 938231.

Individual issues also predominate with respect to the Defendant's available defenses. The existence, scope and substance of these defenses will depend on factors such as each Plaintiff's overtime recordation practices, his or her banking center manager's overtime policy, the work loads and customer traffic of the banking center at which he or she worked, the hours his or her banking center was open for customer traffic, the opt-in Plaintiff's attendance record, and the staffing practices at

13

the banking center at which he or she worked.[2]/ None of these defenses is applicable to the putative "class" as a whole and, in this posture, collective treatment is unwarranted. See Bayles v. American Med. Response of Colorado, Inc.,950 F.Supp. 1053,1067 (D. Colo. 1996)(decertifying class in FLSA context where the case was "fraught with questions requiring distinct proof as to individual plaintiffs" and defenses could not be addressed on a class-wide basis); Brooks, 164 F.R.D. at 569 (denying certification in part because the "circumstances of employment termination are diverse" and the court "would be faced with numerous individualized defenses," including waiver issues); Lusardi, 118 F.R.D. at 370 (denying certification in part because "[c]onsolidation of these claims into a representative class with the attendant defenses would not provide for an efficient proceeding").

Finally, the Court notes that the twenty-five or so opt-in Plaintiffs remaining in this action are not even "similarly situated" with respect to the core allegations of the Complaint. As noted previously, the named Plaintiffs allege in their Complaint that Defendant essentially forbade them and similarly situated employees, either through

---

[2] It is interesting to note that in the related case of Mintz v. NationsBank, 98-8632-CIV-DIMITROULEAS/JOHNSON, tried before the undersigned in December, 2000, the Defendant asserted numerous individualized defenses with respect to the varied claims of the opt-in Plaintiffs. For example, the Defendant denied the plaintiff worked any overtime, asserted it had paid a particular opt-in plaintiff for all the overtime hours he or she worked, and, contended that a particular opt-in plaintiff was not paid for all the overtime hours he or she worked because, contrary to the Bank's policy, the opt-in Plaintiff failed to report accurately his or her overtime hours.

14

explicit instruction or intimidation, from recording *any* of the overtime hours they purportedly worked and, consequently, did not pay them *any* compensation for those alleged overtime hours. See Compl., ¶¶14-15. The undisputed record evidence, however, shows that the Defendant paid overtime compensation to the vast majority of the remaining opt-in Plaintiffs who were employed by the Defendant in 1998 or 1999. Specifically, based on the opt-in count as of July 25, 2001, Defendant paid overtime compensation to twenty-two of the remaining twenty-four opt-in Plaintiffs; some of whom earned and were paid many thousands of dollars in overtime pay. See Affidavit of Joyce Butler, attached as Exh. "D" to Defendant's Motion; Supplemental Affidavit of Joyce Butler, attached as Exh. "E" to Defendant's Motion; Affidavit of Debra Robinson, attached as Exh. "F" to Defendant's Motion; and Defendant's Reply Brief, p.7. Thus, as Defendant correctly notes, the members of the putative "class" are not even similarly situated with respect to the core allegations of the Complaint, mandating decertification. See Ray, 1996 WL 938231("amount of overtime hours worked varies between Plaintiffs, which demonstrates a lack of commonality of damages").

Fairness and procedural considerations also militate against allowing this action to proceed collectively. On this point, the question is whether trying this matter as a collective action could be coherently managed and whether evidence could be presented in such a manner that would not confuse the jury or unduly prejudice any

15

party. See, e.g., Brooks, 164 F.R.D. at 568; Reeves, 77 F.Supp.2d at 247. The answer to this question is a resounding no.

The collective action provisions of §216(b) of the FLSA are designed to assist the judicial system by allowing the "efficient resolution in one proceeding of *common* issues of law and fact." Reeves, 77 F.Supp.2d at 246 (emphasis added)(quoting Hoffman-LaRoche,Inc. V. Sperling, 493 U.S. 165, 170 (1989)). Where, however, the disparate factual nature and sheer size of the case would undermine the very goal §216(b) is designed to promote, then the trial court should not hesitate to decertify a FLSA collective action. See Bayles, 950 F.Supp. at 1067-68; see also Hipp, 252 F.3d at 1218.

While Plaintiffs contend that litigating the opt-in Plaintiffs' claims in a collective action furthers judicial economy, the opt-in Plaintiffs' discovery responses belie this conclusory assertion. According to the opt-in Plaintiffs, they worked in approximately thirty-eight banking centers for approximately fifty-seven different banking center managers. Given the number of individual issues and defenses which must be resolved in this case, what we are really dealing with is not a collective action at all but some twenty-odd separate FLSA actions, each with its own set of players, witnesses, claims, and defenses. Because there are no "class" issues which predominate, each plaintiff will be required to call his or her witnesses to substantiate each of his or her claims and Defendant will be required to call each of its distinct

16

witnesses to rebut each Plaintiff's claims. This would result in a parade of witnesses which would occupy the Court's calendar for weeks and perhaps months. Consequently, trying this matter as a collective action would not, by any stretch, significantly serve judicial economy.

In addition to the fact judicial economy would be ill-served by trying this action collectively, there is a serious risk of jury confusion and prejudice to the parties should this collective action not be decertified. As the court cogently observed in Thiessen I, which involved the disparate claims of twenty-three plaintiffs:

> The court is concerned with coherently managing a trial of the action and presenting evidence in a manner that will not confuse the jury or unduly prejudice any party. If the defendants actually do possess substantial evidence of bona fide individualized defenses, the result may be such a mish-mash of highly detailed evidence that in a collective action both the defendants and the opt-in plaintiffs would run the risk of having any individualized consideration of the claims lost in the mire. There is simply a realistic limit on what a jury may reasonably be expected to absorb, retain and process. ...

996 F.Supp. at 1084. The above-stated reasoning is directly applicable to this case, where the Plaintiffs have failed to show any overarching policy or practice which violated the law, the Plaintiffs' claims of wrongdoing are based on the actions of many different supervisors, the Defendants have asserted individualized defenses regarding Plaintiffs' various claims, and the volume of the evidence forecast for the trial is significant.

17

In conclusion, the Court finds that despite the potential benefits of proceeding as a collective action, Plaintiffs still must meet their burden of showing that they are similarly situated. Here, they have failed to do so. As such, and considering the added problems that judicial economy would be ill-served by trying this action collectively and the serious risk of jury confusion and prejudice to the parties should this action proceed collectively, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Decertify and to Dismiss Opt-In Plaintiffs (Docket Entry No.232) is **GRANTED**.

**DONE AND ORDERED** this September 10, 2001, in Chambers, at West Palm Beach, Florida.

LINNEA R. JOHNSON
CHIEF UNITED STATES MAGISTRATE JUDGE

CC: The Honorable William P. Dimitrouleas
Michael T. Burke, Esq.
Richard F. Kane, Esq.
Susan L. Dolin, Esq.
Caryl Boies, Esq.